2024-1201

---

**United States Court of Appeals
For the Federal Circuit**

---

**ESCAPEX IP, LLC,**

*Plaintiff-Appellant*

**v.**

**GOOGLE LLC,**

*Defendants-Appellee*

---

Appeal from the United States District Court for the
Northern District of California in No. 3:22-cv-08711-VC,
Judge Vince Chhabria.

---

**JOINT APPENDIX**

Attorneys for Appellants:

Ramey  LLP

<u>/s/ William P. Ramey, III</u>
William P. Ramey, III
Texas Bar No. 24027643
wramey@rameyfirm.com
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(713) 426-3923

i

# INDEX

| Description | Page(s) |
|---|---|
| **Orders on Appeal** | |
| Order Granting Motion for Attorney Fees (Aug. 16, 2023) | Appx0001 |
| Order Denying EscapeX's Motion to Alter Judgment (Oct. 30, 2023) | Appx0003 |
| Order Granting Second Motion for Attorney Fees (Feb. 12, 2024) | Appx0004 |
| **Docket Sheet** | |
| Civil Docket Sheet, No. 3:22-cv-8711 | Appx0007 |
| **Patents-in-Suit** | |
| U.S. Patent No. 9,009,113 | Appx0018 |
| **District Court Docket Items** | |
| Complaint (Apr. 28, 2022) | Appx0060 |
| Amended Complaint (May 23, 2022) | Appx0072 |
| Google's Answer to Amended Complaint (July 5, 2022) | Appx0084 |
| Second Amended Complaint (Sept. 29, 2022) | Appx0093 |
| Google's Answer to Second Amended Complaint (Oct. 17, 2022) | Appx0102 |
| Google's Motion to Transfer Case to N.D. Cal. (Nov. 21, 2022) | Appx0109 |
| Notice of EscapeX's Non-opposition to Transfer (Dec. 8, 2022) | Appx0130 |
| Order Granting Motion to Transfer (Dec. 11, 2022) | Appx0134 |
| Stipulation of Dismissal (Mar. 3, 2023) | Appx0137 |
| EscapeX's Notice of Withdrawal of Dkt. 37, Stipulation of Dismissal (Mar. 3, 2023) | Appx0141 |
| Joint Stipulation of Dismissal (Mar. 7, 2023) | Appx0143 |
| Google's Motion for Attorney Fees (Mar. 21, 2023) | Appx0147 |
| EscapeX's Opposition to Fee Motion [Dkt. 41] (Apr. 19, 2023) | Appx0422 |
| Declaration of Susan Kalra in Support of EscapeX's Opposition to Fee Motion (Apr. 19, 2023) | Appx0437 |
| Google's Reply in Support of Fee Motion [Dkt. 41] (Apr. 25, 2023) | Appx0461 |
| Order Reassigning Case to Judge Chhabria (June 16, 2023) | Appx0477 |
| Transcript of Proceedings (July 20, 2023) | Appx0478 |

| | |
|---|---|
| Google's Supplemental Evidence Regarding Fee Motion (July 25, 2023) | Appx0489 |
| EscapeX's Response to Google's Supplemental Evidence Regarding Fee Motion (July 27, 2023) | Appx0499 |
| EscapeX's Motion to Alter Judgment (Sept. 13, 2023) | Appx0502 |
| Google's Opposition to EscapeX's Motion to Alter Judgment (Sept. 27, 2023) | Appx0526 |
| Google's Second Motion for Attorney Fees (Nov. 13, 2023) | Appx0550 |
| EscapeX's Notice of Appeal (Nov. 27, 2023) | Appx0593 |
| EscapeX's Opposition to Google's Second Fee Motion (Dec. 4, 2023) | Appx0596 |
| Google's Reply in Support of Second Fee Motion (Dec. 18, 2023) | Appx0633 |
| Transcript of Proceedings (Jan. 25, 2024) | Appx0685 |
| Supplemental Evidence in Support of Google's Second Fee Motion (Jan. 29, 2024) | Appx0698 |
| EscapeX's Objections to Google's Supplemental Evidence (Jan. 30, 2024) | Appx0711 |
| Google's Response to EscapeX's Objections (Feb. 1, 2024) | Appx0721 |
| EscapeX's Reply in Support of Objections (Feb. 1, 2024) | Appx0726 |
| EscapeX's Amended Notice of Appeal (Feb. 12, 2024) | Appx0740 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ESCAPEX IP LLC,<br><br>       Plaintiff,<br><br>   v.<br><br>GOOGLE LLC,<br><br>       Defendant. | Case No.  22-cv-08711-VC<br><br>**ORDER GRANTING MOTION FOR ATTORNEYS' FEES UNDER 35 U.S.C. § 285**<br><br>Re: Dkt. No. 41 |

The motion for attorneys' fees is granted. This order assumes the reader's familiarity with the facts of the case, the relevant law, and the arguments made by the parties.

Google is the prevailing party because the parties stipulated to the dismissal of EscapeX's claims with prejudice. *United Cannabis Corporation v. Pure Hemp Collective, Inc.*, 66 F.4th 1362, 1367–68 (Fed. Cir. 2023). And Google has met its burden to show that this is an exceptional case under the meaning of the fee-shifting statute.

It is obvious that EscapeX conducted no serious pre-suit investigation and that this case was frivolous from the start. EscapeX's initial and first amended complaints cobbled together features from two different YouTube products to allege infringement of its purported patent. *See* Dkt. Nos. 1, 8. When alerted to this fact by Google—a fact that a basic pre-suit investigation would have uncovered—EscapeX amended its complaint to assert its infringement claim only against the YouTube Video product. *See* Dkt. No. 15. But EscapeX's infringement contentions asserted a priority date of October 21, 2014. Dkt. No. 41-7. A basic online search would have revealed that the accused "Auto Add" feature predated EscapeX's patent. *See* Dkt. No. 41-8 at 2.

Google placed EscapeX on notice of the baselessness of its claim early and often, urging

it to dismiss the case. *See* Dkt. Nos. 41-5; 41-8; 41-9; 41-10; 41-11; 41-12. But EscapeX pressed on. In fact, even after Judge Furman declared the '113 patent invalid in January 2023, EscapeX waited another month and a half before dismissing this case. *See EscapeX IP LLC v. Block, Inc.*, No. 22-cv-3575-JMF, 2023 WL 373180, at \*4–\*8 (S.D.N.Y. Jan. 24, 2023). Worse still, when it finally did so, it was by way of a "stipulated" dismissal, with each party to bear its own fees and costs, that Google had not agreed to. Dkt. No. 37; *see also* Dkt. Nos. 41-1 at 8–9; 41-15. Although this case would be exceptional under section 285 in any event, ExcapeX certainly poured dirt on itself by engaging in this litigation misconduct. The attorneys for EscapeX are lucky that Google did not separately ask the Court to impose sanctions on them. *See Segan LLC v. Zynga Inc.*, 131 F. Supp. 3d 956, 964 (N.D. Cal. 2015) ("[lawyers] could be held jointly and severally liable under Rule 11 for an entire section 285 fee award if they file such an objectively baseless patent infringement suit in the future.").

This was, in short, an effort to force a modest settlement by pestering a tech giant with a frivolous suit on the assumption that the tech giant will prefer to capitulate than fight back. Indeed, EscapeX and its parent company DynaIP have a history of bringing frivolous suits for this purpose. *See* Dkt. No. 41 at 15–16 (collecting cases); *see also* Dkt. No. 41 at 9 n.2 & 24 n.8. EscapeX is ordered to reimburse Google in the amount of $191,302.18. *See* Dkt. Nos. 41-1, 41-28 (requesting and justifying $140,615.73 in fees and costs incurred prior to the filing of this motion); Dkt. Nos. 55-1, 55-2 (requesting and justifying an additional $50,686.45 in fees and costs associated with this motion). The Court is satisfied that the declarations Google has submitted adequately justify this amount (which, in any event, is facially reasonable), and so EscapeX's objections based on Local Rule 54 are overruled. *See* Dkt. No. 56.

**IT IS SO ORDERED.**

Dated: August 16, 2023

_____
VINCE CHHABRIA
United States District Judge

**Tina Hueske**

| | |
|---|---|
| **From:** | ECF-CAND@cand.uscourts.gov |
| **Sent:** | Monday, October 30, 2023 1:48 PM |
| **To:** | efiling@cand.uscourts.gov |
| **Subject:** | Activity in Case 3:22-cv-08711-VC Escapex IP LLC v. Google LLC Order on Motion to Alter Judgment |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## U.S. District Court

## California Northern District

## Notice of Electronic Filing

The following transaction was entered on 10/30/2023 at 11:48 AM and filed on 10/30/2023

**Case Name:** Escapex IP LLC v. Google LLC
**Case Number:** 3:22-cv-08711-VC
**Filer:**
**WARNING: CASE CLOSED on 03/07/2023**
**Document Number:** 65(No document attached)

**Docket Text:**
**ORDER. EscapeX's [59] Motion to Alter Judgment is denied because EscapeX has wholly failed to meet the Rule 59(e) standard for amending a judgment. Signed by Judge Vince Chhabria. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (vclc2, COURT STAFF) (Filed on 10/30/2023)**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESCAPEX IP LLC,<br><br>               Plaintiff,<br><br>        v.<br><br>GOOGLE LLC,<br><br>               Defendant. | Case No.  22-cv-08711-VC<br><br>**ORDER GRANTING MOTION FOR ATTORNEYS' FEES UNDER 28 U.S.C. § 1927**<br><br>Re: Dkt. No. 66 |

The motion for attorneys' fees is granted. This order assumes the reader's familiarity with the facts of the case, the relevant law, and the arguments made by the parties.

When an attorney unreasonably or vexatiously multiplies the proceedings, courts may require the attorney to personally satisfy "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28. U.S.C. § 1927. To impose sanctions under § 1927, a court must find that the attorney's conduct was at least reckless. *See Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001). Here, the attorneys for EscapeX acted recklessly by filing a frivolous Rule 59(e) motion that unreasonably multiplied the proceedings of this case.

EscapeX's Rule 59(e) motion—seeking reversal of this Court's previous fee order—argued that reversal was warranted based on newly discovered evidence. *See* Dkt. No. 59. But the evidence EscapeX presented in no way met the standard of newly discovered evidence under Rule 59(e). EscapeX submitted two declarations—one from EscapeX's president and one from an engineer who drafted EscapeX's claim charts—both of which contained information that was already known by EscapeX at the time of Google's original fee motion. Just because EscapeX failed to include these declarations at that time does not mean that they constituted "newly

Appx0004

discovered evidence." *See School District No. 1J, Multnomah County, Oregon v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). EscapeX also provided no argument explaining why these declarations should have been considered "newly discovered evidence." Other than reciting the legal standard for a Rule 59(e) motion, EscapeX's motion cited no authority for its position that the declarations constituted new evidence. Instead, the motion simply summarized what was in the declarations and raised arguments that could have been made prior to entry of the initial fee award. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) ("Rule 59(e) . . . may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."). As a result, EscapeX's Rule 59(e) motion was frivolous. And EscapeX's attorneys' refusal to withdraw or amend their motion when informed by Google's counsel of its numerous problems, at a minimum, constitutes recklessness.

Moreover, in its opposition to Google's current attorneys' fees motion, EscapeX argues that it filed its Rule 59(e) motion based on its belief that the original fee order was manifestly unjust. *See* Dkt. No. 73. However, this argument is found nowhere in EscapeX's actual motion. If the basis for the motion was indeed a belief that there was manifest injustice, then that is even more reason to find that EscapeX's attorneys acted recklessly or in bad faith by filing a motion to reconsider on the grounds of newly discovered evidence.

In light of this conduct, Google requests reimbursement for its attorneys' fees and costs in the amount of $92,602.95. *See* Dkt. No. 66 (requesting $34,447.65 in fees and costs incurred in responding to the Rule 59(e) motion and in preparing this fees motion); Dkt. No. 83 (requesting an additional $58,155.30 in fees and costs incurred in filing this fees motion, preparing/filing a reply, and arguing at the hearing). While Google's request for $34,447.65 in connection with responding to the Rule 59(e) motion and preparing this fees motion is facially reasonable, its request for $58,155.30 for its subsequent work is not. It is unreasonable for the cost of filing—as opposed to preparing—a fees motion, preparing and filing a reply brief, and arguing at a 13-minute hearing to be more than 1.5 times greater than responding to a Rule 59(e) motion and preparing a fees motion. Therefore, Google is entitled to reimbursement of its

reasonable attorneys' fees and costs in the amount of $63,525.30 to be levied jointly and severally against EscapeX's attorneys, William P. Ramey, III and Susan S.Q. Kalra.[1]

**IT IS SO ORDERED.**

Dated: February 12, 2024

_____
VINCE CHHABRIA
United States District Judge

---

[1] Google also requests that the previously awarded fees and costs be levied jointly and severally against these attorneys. However, they did not make this request at the time they sought their original attorneys' fees award, making this current request untimely.

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:22−cv−08711−VC

Escapex IP LLC v. Google LLC
Assigned to: Judge Vince Chhabria
Case in other court:  Federal Circuit, 24−01201
                   Texas Western, 6:22−cv−00428
Cause: 35:271 Patent Infringement

Date Filed: 12/13/2022
Date Terminated: 03/07/2023
Jury Demand: Both
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

**Plaintiff**

**Escapex IP LLC**       represented by  **Kyril Talanov**
Spencer Fane LLP
3040 Post Oak Blvd.
Ste 1400
Houston, TX 77056
713−212−2723
Email: ktalanov@spencerfane.com
*TERMINATED: 11/15/2023*
*ATTORNEY TO BE NOTICED*

**Susan S.Q. Kalra**
Ramey LLP
5020 Montrose Blvd
Suite 800
Houston, TX 77006
800−993−7499
Email: skalra@rameyfirm.com
*ATTORNEY TO BE NOTICED*

**William Peterson Ramey , III**
Ramey LLP
5020 Montrose Blvd.
Ste 800
Houston, TX 77006
713−426−3923
Fax: 832−900−4941
Email: wramey@rameyfirm.com
*ATTORNEY TO BE NOTICED*

**William P. Ramey , III**
Ramey & Schwaller, LLP
5020 Montrose Boulevard, Suite 800
Houston, TX 77006
(713) 426−3923
Fax: (832) 689−9175
Email: wramey@rameyfirm.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Google LLC**       represented by  **Brian Christopher Banner**
Slayden Grubert Beard PLLC
401 Congress Avenue
Suite 1650
Austin, TX 78701
(512) 402−3569
Fax: 512−402−6865
Email: bbanner@sgbfirm.com
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Asim M. Bhansali**
Kwun Bhansali Lazarus LLP
555 Montgomery Street
Suite 750
San Francisco, CA 94111
(415) 630−2350
Fax: 415−367−1539
Email: abhansali@kblfirm.com
*ATTORNEY TO BE NOTICED*

**Darryl Adams**
Slayden Grubert Beard PLLC
401 Congress Ave., Ste. 1650
Austin
Austin, TX 78701
5124023562
Fax: 5124026865
Email: dadams@sgbfirm.com
*ATTORNEY TO BE NOTICED*

**Kate Ellis Lazarus**
Kwun Bhansali Lazarus
555 Montgomery Street, Suite 750
San Francisco, CA 94111
415−630−2353
Email: klazarus@kblfirm.com
*ATTORNEY TO BE NOTICED*

**Nellie Slayden**
Slayden Grubert Beard PLLC
401 Congress Ave.
Ste 1650
Austin, TX 78701
512−402−3557
Fax: 512−402−3560
Email: nslayden@sgbfirm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tecuan Flores**
Slayden Grubert Beard PLLC
401 Congress Ave., #1650
Austin, TX 78701
5124023566
Fax: 5124026865
Email: tflores@sgbfirm.com
*ATTORNEY TO BE NOTICED*

**Truman H Fenton**
Slayden Grubert Beard PLLC
401 Congress Avenue
Suite 1650
Austin, TX 78701
512−402−3572
Fax: 512−402−6865
Email: tfenton@sgbfirm.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|

| 04/28/2022 | 1 | COMPLAINT ( Filing fee $ 402 receipt number 0542−15977028), filed by Escapex IP LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit US9009113, # 3 Civil Cover Sheet)(Ramey, William) (Entered: 04/28/2022) |
|---|---|---|
| 04/28/2022 | 2 | Notice of Filing of Patent/Trademark Form (AO 120). AO 120 forwarded to the Director of the U.S. Patent and Trademark Office. (Ramey, William) (Entered: 04/28/2022) |
| 04/28/2022 | 3 | REQUEST FOR ISSUANCE OF SUMMONS by Escapex IP LLC. (Ramey, William) (Entered: 04/28/2022) |
| 04/28/2022 | | All parties shall flatten all documents before e−filing. All parties shall comply with the Standing Orders located at https://www.txwd.uscourts.gov/judges−information/standing−orders/ (Entered: 04/28/2022) |
| 04/28/2022 | 4 | Summons Issued as to Google LLC. (sv) (Entered: 04/28/2022) |
| 04/28/2022 | | Case assigned to Judge Alan D Albright. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (sv) (Entered: 04/28/2022) |
| 05/03/2022 | 5 | SUMMONS Returned Executed by Escapex IP LLC. Google LLC served on 4/29/2022, answer due 5/20/2022. (Ramey, William) (Entered: 05/03/2022) |
| 05/09/2022 | 6 | NOTICE of Attorney Appearance by Brian Christopher Banner on behalf of Google LLC. Attorney Brian Christopher Banner added to party Google LLC(pty:dft) (Banner, Brian) (Entered: 05/09/2022) |
| 05/11/2022 | 7 | NOTICE UNOPPOSED EXTENSION OF TIME TO FILE ANSWER OR OTHERWISE RESPOND TO COMPLAINT by Google LLC (Banner, Brian) (Entered: 05/11/2022) |
| 05/11/2022 | | Set/Reset Deadlines: Google LLC answer due 7/5/2022. (sm3) (Entered: 05/12/2022) |
| 05/23/2022 | 8 | AMENDED COMPLAINT First Amended Complaint against Google LLC amending, filed by Escapex IP LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit US9009113)(Ramey, William) (Entered: 05/23/2022) |
| 07/05/2022 | 9 | ANSWER to 8 Amended Complaint with Jury Demand by Google LLC.(Banner, Brian) (Entered: 07/05/2022) |
| 07/05/2022 | 10 | RULE 7 DISCLOSURE STATEMENT filed by Google LLC identifying Corporate Parent Alphabet Inc., Corporate Parent XXVI Holdings Inc. for Google LLC. (Banner, Brian) (Entered: 07/05/2022) |
| 07/05/2022 | 11 | NOTICE JOINT NOTICE REGARDING DISMISSAL AND DISCOVERY OF PRE−SUIT INDIRECT INFRINGEMENT AND WILLFULNESS CLAIMS PURSUANT TO OGP 4.1 SEC. VII by Google LLC (Banner, Brian) (Entered: 07/05/2022) |
| 07/15/2022 | 12 | NOTICE of Attorney Appearance by Darryl Adams on behalf of Google LLC. Attorney Darryl Adams added to party Google LLC(pty:dft) (Adams, Darryl) (Entered: 07/15/2022) |
| 07/15/2022 | 13 | NOTICE of Attorney Appearance by Truman H Fenton on behalf of Google LLC. Attorney Truman H Fenton added to party Google LLC(pty:dft) (Fenton, Truman) (Entered: 07/15/2022) |
| 07/15/2022 | 14 | NOTICE of Attorney Appearance by Tecuan Flores on behalf of Google LLC. Attorney Tecuan Flores added to party Google LLC(pty:dft) (Flores, Tecuan) (Entered: 07/15/2022) |
| 09/16/2022 | | Parties shall comply with Judge Albright's updated standing orders available by clicking the included hyperlinks. <br><br>The updated orders are as follows: <br>1. Standing Order Governing Proceedings Patent Cases, <br>2. Amended Standing Order On Pretrial Procedures and Requirements in Civil Cases. (bot4) (Entered: 09/17/2022) |

| 09/29/2022 | 15 | AMENDED COMPLAINT *Second* against Google LLC amending, filed by Escapex IP LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit US9009113)(Ramey, William) (Entered: 09/29/2022) |
|---|---|---|
| 10/17/2022 | 16 | NOTICE *of Unopposed Extension to Respond to Second Amended Complaint* by Google LLC (Banner, Brian) (Entered: 10/17/2022) |
| 10/17/2022 | 17 | ANSWER to 15 Amended Complaint with Jury Demand by Google LLC.(Banner, Brian) (Entered: 10/17/2022) |
| 11/21/2022 | 18 | MOTION to Transfer Case *to the Northern District of California* by Google LLC. (Attachments: # 1 Declaration of Brian C. Banner, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Proposed Order)(Banner, Brian) (Entered: 11/21/2022) |
| 11/21/2022 | 19 | Sealed Document: *Declaration of Andreas Katsiapis* of 18 MOTION to Transfer Case *to the Northern District of California* by Google LLC (Banner, Brian) (Entered: 11/21/2022) |
| 11/21/2022 | 20 | Sealed Document: *Declaration of Umang Sharan* of 18 MOTION to Transfer Case *to the Northern District of California* by Google LLC (Banner, Brian) (Entered: 11/21/2022) |
| 12/08/2022 | 21 | NOTICE *of Plaintiff's Non−Opposition to Defendant's Motion to Transfer Venue 18 and Status Report Under OGP 4.2 Section VI* by Google LLC (Banner, Brian) (Entered: 12/08/2022) |
| 12/11/2022 | 22 | ORDER GRANTING 18 Motion to Transfer Case. Signed by Judge Alan D Albright. (sm3) (Entered: 12/12/2022) |
| 12/15/2022 | 23 | Case transferred in from District of Texas Western; Case Number 6:22−cv−00428. Original file certified copy of transfer order and docket sheet received. (Entered: 12/15/2022) |
| 12/15/2022 | 24 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 3/10/2023. Initial Case Management Conference set for 3/17/2023 02:00 PM in San Francisco, Courtroom A, 15th Floor. (jml, COURT STAFF) (Filed on 12/15/2022) (Entered: 12/15/2022)** |
| 12/16/2022 | 25 | CLERK'S NOTICE TO PLAINTIFF AND DEFENDANT Re: Consent or Declination. Plaintiff/Defendant shall file a consent or declination to proceed before a magistrate judge by 12/30/2022. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms. (shy, COURT STAFF) (Filed on 12/16/2022) (Entered: 12/16/2022) |
| 12/20/2022 | 26 | NOTICE of Appearance by Kate Ellis Lazarus (Lazarus, Kate) (Filed on 12/20/2022) (Entered: 12/20/2022) |
| 12/20/2022 | 27 | NOTICE of Appearance by Asim M. Bhansali (Bhansali, Asim) (Filed on 12/20/2022) (Entered: 12/20/2022) |
| 12/20/2022 | 28 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Google LLC.. (Bhansali, Asim) (Filed on 12/20/2022) (Entered: 12/20/2022) |
| 12/20/2022 | 29 | CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE: The Clerk of this Court will now reassign this case to a District Judge because a party has not consented to the jurisdiction of a Magistrate Judge. You will be informed by separate notice of the district judge to whom this case is reassigned.<br><br>ALL HEARING DATES PRESENTLY SCHEDULED BEFORE THE CURRENT MAGISTRATE JUDGE ARE VACATED AND SHOULD BE RE−NOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THIS CASE IS REASSIGNED.<br><br>*This is a text only docket entry; there is no document associated with this notice.* (shy, COURT STAFF) (Filed on 12/20/2022) (Entered: 12/20/2022) |

| | | |
|---|---|---|
| 12/21/2022 | 30 | **ORDER REASSIGNING CASE. Case reassigned using a proportionate, random, and blind system pursuant to General Order No. 44 to Judge Haywood S. Gilliam, Jr for all further proceedings. Magistrate Judge Alex G. Tse no longer assigned to case. Signed by Clerk on 12/21/2022. (mbc, COURT STAFF) (Filed on 12/21/2022) (Entered: 12/21/2022)** |
| 12/21/2022 | 31 | CLERK'S NOTICE SETTING CASE MANAGEMENT CONFERENCE FOR REASSIGNED CIVIL CASE.Notice is hereby given that a Case Management Conference has been set for March 28, 2023, before Judge Haywood S. Gilliam, Jr., at 2:00 p.m. Case Management Statement due by March 21st. Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. All future filings should reflect the case number as 4:22−cv−08711−HSG.<br><br>The March 28th proceeding will be held by AT&T Conference Line. The parties are advised that in the event of an audio problem, counsel should be prepared to attend the hearing via Zoom conference at the Courts direction. The court circulates the following conference number to allow the equivalent of a public hearing by telephone.<br><br>For conference line information, see: https://apps.cand.uscourts.gov/telhrg/<br><br>All counsel, members of the public and press please use the following dial−in information below to access the conference line:<br><br>Dial In: 888−808−6929<br><br>Access Code: 6064255<br><br>The Court may be in session with proceedings in progress when you connect to the conference line. Therefore, mute your phone if possible and wait for the Court to address you before speaking on the line. For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines. The parties are further advised to ensure that the Court can hear and understand them clearly before speaking at length.<br><br>PLEASE NOTE: Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited. See General Order 58 at Paragraph III.<br><br>*(This is a text−only entry generated by the court. There is no document associated with this entry.)*(ndr, COURT STAFF) (Filed on 12/21/2022) (Entered: 12/21/2022) |
| 01/17/2023 | 32 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 317, receipt number ACANDC−17902319.) filed by Google LLC. (Attachments: # 1 Exhibit Certificate of Good Standing)(Banner, Brian) (Filed on 1/17/2023) (Entered: 01/17/2023) |
| 01/18/2023 | 33 | **ORDER by Judge Haywood S. Gilliam, Jr. Granting 32 Motion for Pro Hac Vice as to Banner, Brian. (ndr, COURT STAFF) (Filed on 1/18/2023) (Entered: 01/18/2023)** |
| 01/18/2023 | 34 | MOTION for leave to appear in Pro Hac Vice *Nellie F. Slayden* ( Filing fee $ 317, receipt number ACANDC−17907911.) filed by Google LLC. (Slayden, Nellie) (Filed on 1/18/2023) (Entered: 01/18/2023) |
| 01/19/2023 | 35 | **ORDER by Judge Haywood S. Gilliam, Jr. Granting 34 Motion for Pro Hac Vice for Nellie F. Slayden. (ndr, COURT STAFF) (Filed on 1/19/2023) (Entered: 01/19/2023)** |
| 03/03/2023 | 36 | NOTICE of Appearance by Susan S.Q. Kalra (Kalra, Susan) (Filed on 3/3/2023) (Entered: 03/03/2023) |
| 03/03/2023 | 37 | STIPULATION WITH PROPOSED ORDER of Dismissal Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) filed by Escapex IP LLC, Google LLC. (Attachments: # 1 Proposed Order)(Kalra, Susan) (Filed on 3/3/2023) Modified on 3/6/2023 (cjl, COURT STAFF). (Entered: 03/03/2023) |

| | | |
|---|---|---|
| 03/03/2023 | 38 | NOTICE OF WITHDRAWAL OF 37 JOINT STIPULATION OF DISMISSAL PURSUANT TO FED. R. CIV. P. 41(a)(1)(A)(ii) by Escapex IP LLC. (Kalra, Susan) (Filed on 3/3/2023) Modified on 3/6/2023 (cjl, COURT STAFF). (Entered: 03/03/2023) |
| 03/03/2023 | | ** 37 STIPULATION WITH PROPOSED ORDER − *of Dismissal Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii)* Terminated, See Docket No. 38 .** (ndr, COURT STAFF) (Filed on 3/3/2023) (Entered: 03/06/2023) |
| 03/06/2023 | 39 | CLERK'S NOTICE RE DOCKET NO. 37 and 38 . Docket No. 37 has been terminated but counsel should e−file either an amended notice or a notice of errata because the notice withdraws docket no. 47 (which doesn't exist) instead of docket no. 37 . Also, in the future when e−filing a notice of withdrawal of motion (including stipulation and proposed order) the proper event to use is Notice of Withdrawal of Motion located under Notices under the Other Filings category. Using the correct event allows counsel to terminate the pending motion as part of the e−filing process. *(This is a text−only entry generated by the court. There is no document associated with this entry.)* (ndr, COURT STAFF) (Filed on 3/6/2023) (Entered: 03/06/2023) |
| 03/07/2023 | 40 | JOINT STIPULATION OF DISMISSAL PURSUANT TO FED. R. CIV. P. 41(a)(1)(A)(ii) by Google LLC., Escapex IP LLC. (Banner, Brian) (Filed on 3/7/2023) Modified on 3/8/2023 (cjl, COURT STAFF). (Entered: 03/07/2023) |
| 03/07/2023 | | ***Civil Case Terminated, See Docket No. 40 .*** (ndr, COURT STAFF) (Filed on 3/7/2023) (Entered: 03/08/2023) |
| 03/21/2023 | 41 | MOTION for Attorney Fees *Pursuant to 35 U.S.C. 285* filed by Google LLC. Motion Hearing set for 6/29/2023 02:00 PM in Oakland, Courtroom 2, 4th Floor before Judge Haywood S Gilliam Jr.. Responses due by 4/4/2023. Replies due by 4/11/2023. (Attachments: # 1 Affidavit Banner Declaration, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20, # 22 Exhibit 21, # 23 Exhibit 22, # 24 Exhibit 23, # 25 Exhibit 24, # 26 Exhibit 25, # 27 Exhibit 26, # 28 Affidavit Bhansani Declaration, # 29 Proposed Order)(Banner, Brian) (Filed on 3/21/2023) (Entered: 03/21/2023) |
| 04/04/2023 | 42 | First MOTION for Extension of Time to File Response/Reply as to 41 MOTION for Attorney Fees *Pursuant to 35 U.S.C. 285 (Unopposed Motion)* filed by Escapex IP LLC. (Attachments: # 1 Proposed Order)(Kalra, Susan) (Filed on 4/4/2023) (Entered: 04/04/2023) |
| 04/05/2023 | 43 | **ORDER GRANTING 42 Unopposed First MOTION for Extension of Time to File Response/Reply as to 41 MOTION for Attorney Fees *Pursuant to 35 U.S.C. 285*. Reset Deadlines as to 41 MOTION for Attorney Fees *Pursuant to 35 U.S.C. 285* : Responses due by 4/18/2023 and Replies due by 4/25/2023. Signed by Judge Haywood S. Gilliam, Jr. on 4/5/2023. (ndr, COURT STAFF) (Filed on 4/5/2023) (Entered: 04/05/2023)** |
| 04/19/2023 | 44 | OPPOSITION/RESPONSE (re 41 MOTION for Attorney Fees *Pursuant to 35 U.S.C. 285* ) filed byEscapex IP LLC. (Kalra, Susan) (Filed on 4/19/2023) (Entered: 04/19/2023) |
| 04/19/2023 | 45 | DECLARATION of Susan Kalra in support of 44 Opposition/Response to Motion *for Attorneys' Fees* filed byEscapex IP LLC. (Attachments: # 1 Exhibit A − Comparison, # 2 Exhibit B − Order, # 3 Exhibit C − list)(Related document(s) 44 ) (Kalra, Susan) (Filed on 4/19/2023) Modified on 4/21/2023 (jrs, COURT STAFF). (Entered: 04/19/2023) |
| 04/25/2023 | 46 | REPLY (re 41 MOTION for Attorney Fees *Pursuant to 35 U.S.C. 285* ) filed byGoogle LLC. (Banner, Brian) (Filed on 4/25/2023) (Entered: 04/25/2023) |
| 06/12/2023 | 47 | **ORDER by Hon. Haywood S. Gilliam, Jr. DIRECTING the parties to meet and confer and determine whether they are willing to consent to the jurisdiction of a magistrate judge for all remaining purposes in the case, including resolution of Dkt. No. 41 , Motion for Attorneys' Fees. The parties shall file a short joint filing by July 16, 2023 indicating whether both parties consent. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse** |

| | | |
|---|---|---|
| | | substantive consequences. **The form is available at: http://cand.uscourts.gov/civilforms.** *(This is a text−only entry generated by the court. There is no document associated with this entry.)* **(cwlc2, COURT STAFF) (Filed on 6/12/2023) Modified on 6/12/2023 (cwlc2, COURT STAFF). (Entered: 06/12/2023)** |
| 06/12/2023 | | Set Deadline, See Docket No. 47 : Consent/Declination due by 7/16/2023. (ndr, COURT STAFF) (Filed on 6/12/2023) Modified on 6/12/2023 to add docket no as reference (ndr, COURT STAFF). (Entered: 06/12/2023) |
| 06/14/2023 | 48 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Google LLC.. (Banner, Brian) (Filed on 6/14/2023) (Entered: 06/14/2023) |
| 06/16/2023 | 49 | **ORDER OF RECUSAL. Signed by Judge Haywood S. Gilliam, Jr. on 6/16/2023. (ndr, COURT STAFF) (Filed on 6/16/2023) (Entered: 06/16/2023)** |
| 06/16/2023 | 50 | **ORDER REASSIGNING CASE. Case reassigned using a proportionate, random, and blind system pursuant to General Order No. 44 to Judge Vince Chhabria for all further proceedings. Judge Haywood S Gilliam, Jr no longer assigned to case, Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras. Signed by The Clerk on 6/16/2023. (Attachments: # 1 Notice of Eligibility for Video Recording)(bar, COURT STAFF) (Filed on 6/16/2023) (Entered: 06/16/2023)** |
| 06/20/2023 | 51 | CLERK'S NOTICE RE REASSIGNED CASE: <br><br> For a copy of Judge Chhabria's Standing Order and other information, please refer to the Court's website at www.cand.uscourts.gov. All pending motions will be taken off−calendar and must be re−noticed by the moving party for a new hearing according to Judge Chhabria's available dates, which are listed on his webpage under the section "Scheduling Notes." The new hearing date must be at least five weeks from the date the motion was filed and at least three weeks from the date the re−notice is filed. The due date for any opposition or reply papers not yet filed shall be calculated in accordance with Civil Local Rule 7−3. <br><br> *(This is a text−only entry generated by the court. There is no document associated with this entry.)* (bxs, COURT STAFF) (Filed on 6/20/2023) (Entered: 06/20/2023) |
| 06/28/2023 | 52 | Renotice motion hearing re 41 MOTION for Attorney Fees *Pursuant to 35 U.S.C. 285* filed byGoogle LLC. (Related document(s) 41 ) (Banner, Brian) (Filed on 6/28/2023) (Entered: 06/28/2023) |
| 06/28/2023 | 53 | CLERK'S NOTICE re 52 . <br><br> 41 MOTION for Attorney Fees *Pursuant to 35 U.S.C. 285* Hearing set for 7/20/2023 at 10:00 AM in San Francisco, Courtroom 04, 17th Floor before Judge Vince Chhabria. <br><br> *(This is a text−only entry generated by the court. There is no document associated with this entry.)*(bxs, COURT STAFF) (Filed on 6/28/2023) (Entered: 06/28/2023) |
| 07/20/2023 | 54 | **Minute Entry for proceedings held before Judge Vince Chhabria: Motion Hearing held on 7/20/2023 re 41 MOTION for Attorney Fees *Pursuant to 35 U.S.C. 285* filed by Google LLC.** <br><br> Oral arguments made and heard. Court to issue written ruling. <br> Defendant to submit supplemental filing setting forth the fees incurred in connection with this motion. Response to be limited to fees incurred, no further argument will be accepted. Supplemental filing due Tuesday, July 25. Objections due by Thursday, July 27. <br><br> Total Time in Court: 9 minutes. <br> Court Reporter: Hearing recorded via Zoom: 10:00 − 10:09. <br> Plaintiff Attorney: Susan Kalra. <br> Defendant Attorney: Brian Banner, Kate Lazarus. <br><br> *(This is a text−only entry generated by the court. There is no document associated with this entry.)* **(bxs, COURT STAFF) (Date Filed: 7/20/2023) (Entered:** |

| | | |
|---|---|---|
| | | 07/20/2023) |
| 07/25/2023 | 55 | Supplemental Brief re 41 MOTION for Attorney Fees *Pursuant to 35 U.S.C. 285* filed byGoogle LLC. (Attachments: # 1 Declaration Brian C. Banner, # 2 Declaration Asim M. Bhansali)(Related document(s) 41 ) (Banner, Brian) (Filed on 7/25/2023) (Entered: 07/25/2023) |
| 07/27/2023 | 56 | OPPOSITION/RESPONSE (re 41 MOTION for Attorney Fees *Pursuant to 35 U.S.C. 285* ) *(re 55 Supplemental Evidence)* filed byEscapex IP LLC. (Kalra, Susan) (Filed on 7/27/2023) (Entered: 07/27/2023) |
| 08/16/2023 | 57 | **Order by Judge Vince Chhabria granting 41 Motion for Attorney Fees. (vclc2, COURT STAFF) (Filed on 8/16/2023) (Entered: 08/16/2023)** |
| 08/17/2023 | 58 | TRANSCRIPT ORDER for proceedings held on 07/20/2023 before Judge Vince Chhabria by Google LLC, for Court Reporter Recorded Proceeding − San Francisco. (Lazarus, Kate) (Filed on 8/17/2023) (Entered: 08/17/2023) |
| 09/13/2023 | 59 | MOTION to Alter Judgment filed by Escapex IP LLC. Responses due by 9/27/2023. Replies due by 10/4/2023. (Attachments: # 1 Affidavit of Carlos Gorrichategui, # 2 Affidavit of Simon Sunatori, # 3 Exhibit 1)(Kalra, Susan) (Filed on 9/13/2023) (Entered: 09/13/2023) |
| 09/16/2023 | 60 | Transcript of Proceedings held on 07/20/23, before Judge Vince Chhabria. Court Reporter/Transcriber Echo Reporting, Inc., telephone number echoreporting@yahoo.com. Tape Number: 07/20/23. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 58 Transcript Order ) Redaction Request due 10/10/2023. Redacted Transcript Deadline set for 10/17/2023. Release of Transcript Restriction set for 12/15/2023. (Related documents(s) 58 ) (Jauregui, Tara) (Filed on 9/16/2023) (Entered: 09/16/2023) |
| 09/27/2023 | 61 | OPPOSITION/RESPONSE (re 59 MOTION to Alter Judgment ) filed byGoogle LLC. (Attachments: # 1 Declaration Brian C. Banner, # 2 Exhibit 1, # 3 Exhibit 2)(Banner, Brian) (Filed on 9/27/2023) (Entered: 09/27/2023) |
| 10/17/2023 | 62 | **TO BE REFILED BY FILER** MOTION to Alter Judgment *Re−Notice* filed by Escapex IP LLC. Motion Hearing set for 11/2/2023 10:00 AM in San Francisco, Courtroom 04, 17th Floor before Judge Vince Chhabria. Responses due by 10/31/2023. Replies due by 11/7/2023. (Kalra, Susan) (Filed on 10/17/2023) Modified on 10/19/2023 (bar, COURT STAFF). (Entered: 10/17/2023) |
| 10/18/2023 | 63 | Unopposed Notice of Change in Counsel and Motion to Withdraw and Proposed Order by Kyril Talanov (Talanov, Kyril) (Filed on 10/18/2023) Modified on 10/19/2023 (bar, COURT STAFF). (Entered: 10/18/2023) |
| 10/19/2023 | | Electronic filing error. Incorrect event used. The correct event is a notice. Please refile this. [err101] Re: 62 MOTION to Alter Judgment *Re−Notice* filed by Escapex IP LLC (bar, COURT STAFF) (Filed on 10/19/2023) (Entered: 10/19/2023) |
| 10/19/2023 | 64 | PLAINTIFFS RE−NOTICE OF MOTION TO AMEND JUDGMENT by Escapex IP LLC re 59 MOTION to Alter Judgment (Kalra, Susan) (Filed on 10/19/2023) Modified on 10/19/2023 (bar, COURT STAFF). (Entered: 10/19/2023) |
| 10/19/2023 | | Electronic filing error. Incorrect event used. The correct event is a motion. [err101]This filing will not be processed by the clerks office.Please re−file in its entirety. Re: 63 Notice of Change In Counsel filed by Escapex IP LLC (bar, COURT STAFF) (Filed on 10/19/2023) (Entered: 10/19/2023) |
| 10/30/2023 | 65 | **ORDER. EscapeX's 59 Motion to Alter Judgment is denied because EscapeX has wholly failed to meet the Rule 59(e) standard for amending a judgment. Signed by Judge Vince Chhabria. *(This is a text−only entry generated by the court. There is no document associated with this entry.)* (vclc2, COURT STAFF) (Filed on 10/30/2023) (Entered: 10/30/2023)** |

| | | |
|---|---|---|
| 11/13/2023 | 66 | MOTION for Attorney Fees filed by Google LLC. Motion for Attorney Fees Hearing set for 1/11/2024 10:00 AM in San Francisco, Courtroom 04, 17th Floor before Judge Vince Chhabria. Responses due by 11/27/2023. Replies due by 12/4/2023. (Attachments: # 1 Declaration Declaration of Brian C. Banner, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Declaration Declaration of Asim Bhansali)(Banner, Brian) (Filed on 11/13/2023) (Entered: 11/13/2023) |
| 11/14/2023 | 67 | Consent MOTION to Withdraw as Attorney *Unopposed Motion to Withdraw as Attorney* filed by Escapex IP LLC. Responses due by 11/28/2023. Replies due by 12/5/2023. (Talanov, Kyril) (Filed on 11/14/2023) (Entered: 11/14/2023) |
| 11/15/2023 | 68 | **Order by Judge Vince Chhabria granting 67 Motion to Withdraw as Attorney. (vclc2, COURT STAFF) (Filed on 11/15/2023) (Entered: 11/15/2023)** |
| 11/27/2023 | 69 | NOTICE OF APPEAL to the Federal Circuit as to 65 Order on Motion to Alter Judgment, 57 Order on Motion for Attorney Fees by Escapex IP LLC. Filing fee $ 505, receipt number ACANDC−18866852. Appeal Record due by 12/27/2023. (Kalra, Susan) (Filed on 11/27/2023) (Entered: 11/27/2023) |
| 11/27/2023 | 70 | Consent MOTION for Extension of Time to File Response/Reply as to 66 MOTION for Attorney Fees filed by Escapex IP LLC. (Attachments: # 1 Proposed Order)(Kalra, Susan) (Filed on 11/27/2023) (Entered: 11/27/2023) |
| 11/27/2023 | | Service Packet E−Mailed to the Federal Circuit Court of Appeals re 69 NOTICE OF APPEAL to the Federal Circuit. (krp, COURT STAFF) (Filed on 11/27/2023) (Entered: 11/27/2023) |
| 11/28/2023 | 71 | **Order by Judge Vince Chhabria granting 70 Motion for Extension of Time to File Response. Responses due by 12/4/2023. Replies due by 12/18/2023. (vclc2, COURT STAFF) (Filed on 11/28/2023) (Entered: 11/28/2023)** |
| 11/28/2023 | 72 | USCA Case Number 2024−1201 Federal Circuit for 69 Notice of Appeal to the Federal Circuit, filed by Escapex IP LLC. (sfb, COURT STAFF) (Filed on 11/28/2023) (Entered: 11/28/2023) |
| 12/04/2023 | 73 | OPPOSITION/RESPONSE (re 66 MOTION for Attorney Fees ) *Plaintiff's Response to Defendant's Motion for Attorneys' Fees Pursuant to 35 U.S.C.* filed byEscapex IP LLC. (Attachments: # 1 Declaration Declaration of William P. Ramey, III, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D)(Kalra, Susan) (Filed on 12/4/2023) (Entered: 12/04/2023) |
| 12/18/2023 | 74 | REPLY (re 66 MOTION for Attorney Fees ) filed byGoogle LLC. (Attachments: # 1 Declaration of Brian C. Banner, # 2 Exhibit Ex. 6, # 3 Exhibit Ex. 7, # 4 Exhibit Ex. 8, # 5 Exhibit Ex. 9, # 6 Exhibit Ex. 10, # 7 Exhibit Ex. 11)(Banner, Brian) (Filed on 12/18/2023) (Entered: 12/18/2023) |
| 01/09/2024 | 75 | STIPULATION WITH PROPOSED ORDER re 66 MOTION for Attorney Fees *Request for Order Changing Time for Hearing* filed by Escapex IP LLC. (Attachments: # 1 Proposed Order)(Kalra, Susan) (Filed on 1/9/2024) (Entered: 01/09/2024) |
| 01/09/2024 | 76 | **Order by Judge Vince Chhabria granting 75 Stipulated Request for Order Changing Time for Hearing. (bxs, COURT STAFF) (Filed on 1/9/2024) (Entered: 01/09/2024)** |
| 01/09/2024 | 77 | CLERK'S NOTICE RE 76 . 66 MOTION for Attorney Fees Hearing reset to 1/18/2024 at 10:00 AM in San Francisco, Courtroom 04, 17th Floor before Judge Vince Chhabria. *(This is a text−only entry generated by the court. There is no document associated with this entry.)*, (bxs, COURT STAFF) (Filed on 1/9/2024) (Entered: 01/09/2024) |
| 01/17/2024 | 78 | STIPULATION WITH PROPOSED ORDER re 66 MOTION for Attorney Fees *Joint Stipulated Request for Order Changing Time for Hearing on Motion for Attorneys' Fees* filed by Escapex IP LLC. (Attachments: # 1 Proposed Order)(Kalra, Susan) (Filed on 1/17/2024) (Entered: 01/17/2024) |

| | | |
|---|---|---|
| 01/17/2024 | 79 | STIPULATION WITH PROPOSED ORDER filed by Escapex IP LLC. (Attachments: # 1 Proposed Order)(Kalra, Susan) (Filed on 1/17/2024) (Entered: 01/17/2024) |
| 01/17/2024 | 80 | **Order by Judge Vince Chhabria granting AS MODIFIED 78 Stipulated Request for Order Changing Time for Hearing on Motion for Attorneys' Fees. (bxs, COURT STAFF) (Filed on 1/17/2024) (Entered: 01/17/2024)** |
| 01/17/2024 | 81 | CLERK'S NOTICE RE 80 . <br><br>66 MOTION for Attorney Fees Hearing continued to 1/25/2024 at 01:30 PM by Videoconference Only before Judge Vince Chhabria. This proceeding will be held via a Zoom webinar. <br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/vc <br><br>**Court Appearances:** Advanced notice is required of counsel or parties who wish to be identified by the court as making an appearance or will be participating in the argument at the hearing. One list of names of all counsel appearing for all parties must be sent in one email to the CRD at vccrd@cand.uscourts.gov no later than Monday, January 22, 2024, by no later than 12:00PM. <br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited. <br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/. <br><br>*(This is a text−only entry generated by the court. There is no document associated with this entry.)*(bxs, COURT STAFF) (Filed on 1/17/2024) (Entered: 01/17/2024) |
| 01/25/2024 | 82 | **Minute Entry for proceedings held before Judge Vince Chhabria: Motion Hearing held via Zoom on 1/25/2024 re 66 MOTION for Attorney Fees filed by Google LLC.** <br><br>Oral arguments made and heard. By Monday, 1/29/2024, defense to file a supplemental fee request specifying and justifying the total amount requested. Plaintiff may file objection to the amount by Tuesday, 1/30/2024. Court to issue ruling after filings have been submitted. <br><br>Total Time in Court: 13 minutes. <br>Court Reporter: Hearing recorded via Zoom: 1:32 − 1:45. <br>Plaintiff Attorney: William Ramey. <br>Defendant Attorney: Brian Banner, Kate Lazarus. <br><br>*(This is a text−only entry generated by the court. There is no document associated with this entry.)* **(bxs, COURT STAFF) (Date Filed: 1/25/2024) Transcriber − Tara Jauregui, email: echoreporting@yahoo.com 2/13/2024 (bns, COURT STAFF). (Entered: 01/26/2024)** |
| 01/29/2024 | 83 | Declaration of Brian C. Banner, Asim M. Bhansali in Support of 66 MOTION for Attorney Fees filed byGoogle LLC. (Attachments: # 1 Declaration Brian C. Banner, # 2 Declaration Asim M. Bhansali)(Related document(s) 66 ) (Banner, Brian) (Filed on 1/29/2024) (Entered: 01/29/2024) |
| 01/30/2024 | 84 | OPPOSITION/RESPONSE (re 66 MOTION for Attorney Fees ) *Plaintiff's Objections to Defendant's Supplemental Evidence re: Second Motion for Attorneys' Fees* filed byEscapex IP LLC. (Attachments: # 1 Declaration, # 2 Exhibit A)(Kalra, Susan) (Filed on 1/30/2024) (Entered: 01/30/2024) |
| 02/01/2024 | 85 | RESPONSE re 84 Opposition/Response to Motion, by Google LLC. (Banner, Brian) (Filed on 2/1/2024) (Entered: 02/01/2024) |
| 02/01/2024 | 86 | OPPOSITION/RESPONSE (re 66 MOTION for Attorney Fees ) *Reply in Support of Plaintiff's Objections to Defendant's Supplemental Evidence re. Second Motion for Attorneys' Fees* filed byEscapex IP LLC. (Attachments: # 1 Declaration, # 2 Exhibit, # |

| | | |
|---|---|---|
| | | 3 Exhibit)(Kalra, Susan) (Filed on 2/1/2024) (Entered: 02/01/2024) |
| 02/12/2024 | 87 | **Order by Judge Vince Chhabria granting 66 Motion for Attorney Fees. (vclc2, COURT STAFF) (Filed on 2/12/2024) (Entered: 02/12/2024)** |
| 02/12/2024 | 88 | AMENDED NOTICE OF APPEAL by Escapex IP LLC as to 87 Order on Motion for Attorney Fees, 65 Order on Motion to Alter Judgment, 57 Order on Motion for Attorney Fees . Appeal Record due by 3/13/2024. (Kalra, Susan) (Filed on 2/12/2024) (Entered: 02/12/2024) |
| 02/13/2024 | 89 | TRANSCRIPT ORDER for proceedings held on 01/25/2024 before Judge Vince Chhabria by Escapex IP LLC, for Recorded Proceeding − San Francisco. (Ramey, William) (Filed on 2/13/2024) (Entered: 02/13/2024) |
| 02/13/2024 | 90 | TRANSCRIPT ORDER for proceedings held on 01/25/2024 before Judge Vince Chhabria by Google LLC, for Recorded Proceeding − San Francisco. (Lazarus, Kate) (Filed on 2/13/2024) (Entered: 02/13/2024) |
| 02/27/2024 | 91 | Transcript of Proceedings held on 01/25/24, before Judge Vince Chhabria. Court Reporter/Transcriber Echo Reporting, Inc., telephone number echoreporting@yahoo.com. Tape Number: 1:32 − 1:45. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 89 Transcript Order ) Redaction Request due 3/19/2024. Redacted Transcript Deadline set for 3/29/2024. Release of Transcript Restriction set for 5/28/2024. (Related documents(s) 89 ) (Jauregui, Tara) (Filed on 2/27/2024) (Entered: 02/27/2024) |
| 03/05/2024 | 92 | ORDER of USCA Federal Circuit lifting the stay of the briefing schedule; EscapeX IP's opening brief is due no later than 60 days from the date of entry of this order Re 88 Amended Notice of Appeal filed by Escapex IP LLC (kmm2, COURT STAFF) (Filed on 3/5/2024) (Entered: 03/06/2024) |



US009009113B1

## (12) United States Patent
### Shapira

(10) **Patent No.:** **US 9,009,113 B1**
(45) **Date of Patent:** **Apr. 14, 2015**

(54) **SYSTEM AND METHOD FOR GENERATING ARTIST-SPECIFIED DYNAMIC ALBUMS**

(71) Applicant: **Escapemusic Limited**, Kowloon (HK)

(72) Inventor: **Sephi Joseph Shapira**, Ramot Hasavim (IL)

(73) Assignee: **Escapemusic Limited**, Kowloon (HK)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **14/519,168**

(22) Filed: **Oct. 21, 2014**

(51) **Int. Cl.**
*G06F 17/30* (2006.01)

(52) **U.S. Cl.**
CPC ................................ *G06F 17/30749* (2013.01)

(58) **Field of Classification Search**
None
See application file for complete search history.

(56) **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 8,515,979 | B2 | 8/2013 | Mehta | 707/758 |
| 8,560,950 | B2 | 10/2013 | Bull et al. | 715/716 |
| 8,694,813 | B2 | 4/2014 | Shayer | 713/323 |
| 2007/0174866 | A1 | 7/2007 | Brown et al. | 725/28 |
| 2009/0204490 | A1 | 8/2009 | Squillace et al. | 705/14 |
| 2009/0210808 | A1 | 8/2009 | West | 715/764 |
| 2010/0299212 | A1 | 11/2010 | Graylin et al. | 705/14.66 |
| 2011/0196726 | A1 | 8/2011 | Poellnitz | 705/14.16 |
| 2012/0042263 | A1 | 2/2012 | Rapaport et al. | 715/753 |
| 2012/0254250 | A1 | 10/2012 | Gentile et al. | 707/793 |
| 2013/0030987 | A1 | 1/2013 | Zuckerberg et al. | 705/39 |
| 2013/0031478 | A1 | 1/2013 | Strober | 715/716 |
| 2013/0160145 | A1 | 6/2013 | Henzie et al. | 726/29 |
| 2013/0254113 | A1 | 9/2013 | Singh et al. | 705/59 |
| 2013/0325621 | A1 | 12/2013 | Sanginiti et al. | 705/14.64 |
| 2014/0031086 | A1 | 1/2014 | Yoo | 455/566 |
| 2014/0059059 | A1 | 2/2014 | Barman et al. | 707/752 |
| 2014/0075394 | A1 | 3/2014 | Nawle et al. | 715/863 |
| 2014/0137204 | A1 | 5/2014 | Vitzthum et al. | 726/4 |

#### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| WO | WO 02/45316 | 6/2002 |

*Primary Examiner* — Bai D. Vu
(74) *Attorney, Agent, or Firm* — Pillsbury Winthrop Shaw Pittman LLP

(57) **ABSTRACT**

A system and method is provided that facilitate artist-specified dynamic albums that include music that may be changed with or without intervention by a user at a user device at which a dynamic album has been stored, according to an implementation of the invention. A dynamic album may include a set of songs provided through an artist specific application installed at a user device. The system may modify the dynamic album based on one or more album parameters that specify a change to be made to the set of songs. For example, the one or more album parameters specify the removal of one or more songs from the dynamic album, the addition of one or more new songs, the replacement of one or more songs, a rearrangement of (e.g., shuffling) the order of one or more songs, and/or other change to the set of songs.

**30 Claims, 22 Drawing Sheets**



1200

1202 Obtain album parameters

1204 Determine changes to be made to dynamic album based on the album parameters

1206 Generate album modification instructions

1208 Transmit the album modification instructions to cause the dynamic album to be changed



FIG. 1



FIG. 2



302 — Launch / initialize artist specific application and attempt communication with computer system

304 — Communication established?

306 — Music lease renewed?    No →    310 — Music lease expired?    Yes

Yes

308 — Update expiration of music lease

No

312 — Play music

314 — Updates from computer system?    No

Yes

316 — Apply updates for display to user

318 — Locally obtained updates?    No →    Display existing content with any updated content — 322

Yes

320 — Apply updates for display to user

300

FIG. 3





400

**SYSTEM INSTRUCTIONS 122**

| | | |
|---|---|---|
| COMMAND MANAGER 402 | SOCIAL MEDIA MANAGER 410 | DISCUSSION BOARD MANAGER 418 |
| UPDATE MANAGER 404 | ADVERTISEMENT MANAGER 412 | ACCOUNTING MANAGER 420 |
| USAGE ANALYTICS ENGINE 406 | ARTIST ENDORSEMENT MANAGER 414 | CROSS-APPLICATION MANAGER 422 |
| LOYALTY PROGRAM MANAGER 408 | FAN BOARD MANAGER 416 | PLAYLIST MANAGER 424 |
| | DYNAMIC ALBUM MANAGER 426 | |

FIG. 4



500

502 — Obtain first content related to first artist specific application

504 — Obtain second content related to second artist specific application

506 — Store first content and second content

508 — Receive a request for information from an artist specific application

510 — Search the first content and the second content

512 — Provide results

FIG. 5



FIG. 6



FIG. 7



FIG. 8



FIG. 9



FIG. 10



FIG. 11



1200

1202 — Obtain album parameters

1204 — Determine changes to be made to dynamic album based on the album parameters

1206 — Generate album modification instructions

1208 — Transmit the album modification instructions to cause the dynamic album to be changed

**FIG. 12**

Appx0030



FIG. 13



**FIG. 14**



FIG. 15



**FIG. 16**



FIG. 17

Appx0035



1800

Rewards
< Back     2800     • • •

1801    Free Ringtone
'Song 1'
♥ Open

1802    Album 1 Photoshoot
♥ 10000

1803    VIP Backstage Pass
22.08.14 Concert
♥ 8000

1804    Follow Me
On Twitter
♥ 6000

1805    Exclusive Chat
at the Recording Studio
♥ 1000

1806    Autographed Photo
On the beach
♥ 1000

FIG. 18

Appx0036



FIG. 19



FIG. 20



**FIG. 21**



FIG. 22

# SYSTEM AND METHOD FOR GENERATING ARTIST-SPECIFIED DYNAMIC ALBUMS

## RELATED APPLICATIONS

This application is related to U.S. patent application Ser. No. 14/519,125, entitled "System and Method of Creating and Managing Entity-specific Applications in an Integrated Platform", filed on Oct. 20, 2014; U.S. patent application Ser. No. 14/519,129, entitled "System and Method for providing individual client applications for artist-specific content", filed on Oct. 21, 2014; U.S. patent application Ser. No. 14/519,132, entitled "System and Method for facilitating co-play and download of artist specific client applications via user-provided playlists", filed on Oct. 21, 2014; and U.S. patent application Ser. No. 14/519,171, entitled "System and Method for facilitating cross-application functionality among artist specific client applications", filed on Oct. 21, 2014, all of which are incorporated by reference herein in their entireties.

## FIELD OF THE INVENTION

The invention relates to systems and methods of generating artist-specified dynamic albums that include music that may be changed with or without intervention by a user at a user device at which a dynamic album has been stored.

## BACKGROUND OF THE INVENTION

The music industry has been evolving as technology provides greater access to music created by artists (e.g., musicians, singers, bands, etc.). For example, music downloads and streaming services have created different models of providing music and other content. However, while providing easier access to music, these different provisioning models have had adverse effects on artists and fans (e.g., users) alike and also fail to integrate music with other content created by the artist.

For example, individual artists have been experiencing diminishing returns on the songs and albums they create. Various factors such as illegal music download and a la carte purchase of individual songs have contributed to this decline. For users, they must continue to purchase music downloads (or illegally obtain music) or subscribe to streaming services, which requires use of network bandwidth. Such network bandwidth places a burden on streaming services and also requires fans to use oftentimes expensive network services (whose availability may be erratic) and increased battery usage when streamed to mobile devices.

Furthermore, artists have been increasingly using social media (e.g., FACEBOOK, TWITTER, INSTAGRAM, etc.) and other content services to provide artist content to users. However, conventional music provisioning services typically ignore this content, requiring users to separately access music services and social media and other content services. Thus, even though fandom is ubiquitous in the music industry, conventional music delivery services typically ignore this information. What's more, each social media platform typically monetizes an artist's social media account by collecting advertising and other fees related to user interaction with the social media account, while providing little to no compensation to the artist in return.

Additionally, there is conventionally little to no connection between actual use (e.g., playback) of songs to income. For instance, in a content streaming model, payment is typically inversely related to usage because payment to artists is typically fixed regardless the number of times an artist's song is streamed, resulting in decreased revenue per stream as the number of streams increases. In a download model, after the initial payment for download, a given song may be played without further monetization opportunities.

Still further, once downloaded or streamed, artists typically lack control over music consumed by the user. Such lack of control prevents the artist from easily providing a new song, deleting an existing song, and/or otherwise exercising control over the music provided to their users.

Another problem of streaming services is that each individual artist whose music is streamed has little to no motivation to promote the streaming service (because they have little to no financial incentive to do so). These and other drawbacks of conventional content delivery (in particular music delivery) services exist.

## SUMMARY OF THE INVENTION

The invention addressing these and other drawbacks relates to systems and methods of generating artist-specified dynamic albums that include music that may be changed with or without intervention by a user at a user device at which a dynamic album has been stored, according to an implementation of the invention.

A dynamic album may include a set of songs provided through an artist specific application installed at a user device. An artist specific application may be created and branded for an artist that provides artist content such as music to users through the artist specific application. The artist specific application may facilitate monetizing and maintaining control over the artist content, such as music in the form of a dynamic album.

A dynamic album may be stored at a user device. Nevertheless, the system may modify the set of songs without intervention by the user of user device. Thus, while a user may be able to listen to a dynamic album at the user device even without a network connection, the system may maintain control over the dynamic album. In some implementations, the dynamic album may be subject to one or more music leases that, upon expiration, renders the dynamic album or portions thereof to be unplayable.

The system may modify the dynamic album based on one or more album parameters that specify a change to be made to the set of songs. For example, the one or more album parameters specify the removal of one or more songs from the dynamic album, the addition of one or more new songs, the replacement of one or more songs, a rearrangement of (e.g., shuffling) the order of one or more songs, and/or other change to the set of songs.

The album parameters may be specified by an artist. In this manner, an artist may use the features and functions of a dynamic album to send music and/or other updates to the dynamic album. For example, the artist may introduce new songs, delete old songs, replace one version of a song with another version of the song, present snippets of songs in production, re-arrange an order in which the songs of a dynamic album are played, specify a first song to be played, and/or otherwise change the dynamic album. As another example, the artist may send an audio and/or a video message (e.g., commentary, uncut versions of the song, outtakes, etc.) to be played in association with the dynamic album.

These and other objects, features, and characteristics of the system and/or method disclosed herein, as well as the methods of operation and functions of the related elements of structure and the combination of parts and economies of manufacture, will become more apparent upon consideration of the following description and the appended claims with

reference to the accompanying drawings, all of which form a part of this specification, wherein like reference numerals designate corresponding parts in the various figures. It is to be expressly understood, however, that the drawings are for the purpose of illustration and description only and are not intended as a definition of the limits of the invention. As used in the specification and in the claims, the singular form of "a", "an", and "the" include plural referents unless the context clearly dictates otherwise.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 illustrates a system for creating and managing entity-specific applications that each relates to an individual entity, integrates the entity's content, and connects fans with the individual entity through multimedia experiences provided through the entity-specific application, according to an implementation of the invention.

FIG. 2 illustrates a flow diagram depicting a process of providing a music lease and content to an artist specific application, according to an implementation of the invention.

FIG. 3 illustrates a flow diagram depicting a process for receiving a music lease and content at an artist specific application executing at a user device, according to an implementation of the invention.

FIG. 4 illustrates a block diagram depicting system instructions for providing a platform for integrating artist specific applications, according to an implementation of the invention.

FIG. 5 illustrates a flow diagram depicting a process of obtaining, storing, and querying content related to different artist specific applications at a computer system coupled to different artist specific applications executing at different user devices, according to an implementation of the invention.

FIG. 6 illustrates a flow diagram depicting a process of querying content associated with an artist specific application from a user device, according to an implementation of the invention.

FIG. 7 schematically illustrates a non-limiting example of a playlist, according to an implementation of the invention.

FIG. 8 illustrates a flow diagram depicting a process of switching artist specific applications to play a playlist, according to an implementation of the invention.

FIG. 9 illustrates a flow diagram depicting a process of switching artist specific applications to play a playlist as controlled locally at a user device, according to an implementation of the invention.

FIG. 10 illustrates a flow diagram depicting a process of switching artist specific applications to play a playlist, according to an implementation of the invention.

FIG. 11 illustrates a flow diagram depicting a process of switching artist specific applications to play a playlist, according to an implementation of the invention.

FIG. 12 illustrates a flow diagram depicting a process for changing a dynamic album at user devices based on album parameters received from an artist, according to an implementation of the invention.

FIG. 13 illustrates a flow diagram depicting a process for accounting for different versions of a dynamic album associated with an artist specific application at a user device, according to an implementation of the invention.

FIG. 14 illustrates a non-limiting example of a screenshot of a unified player interface that plays music from an artist specific application and/or music not associated with the artist specific application, according to an implementation of the invention.

FIG. 15 illustrates a non-limiting example of a screenshot of an interface for displaying content updates, according to an implementation of the invention.

FIG. 16 illustrates a non-limiting example of a screenshot of an interface for displaying a plurality of menu icons associated with an artist specific application, according to various implementations.

FIG. 17 illustrates a non-limiting example of a screenshot of an interface for displaying messages received by the user, according to an implementation of the invention.

FIG. 18 illustrates a non-limiting example of a screenshot of an interface that facilitates redemption of one or more loyalty points for a reward, according to an implementation of the invention.

FIG. 19 illustrates an example of the fan board display, according to an implementation of the invention.

FIG. 20 illustrates a non-limiting example of a screenshot of an interface 2000 for displaying the discussion board to which users and the artist may post messages, including content such as music, according to an implementation of the invention.

FIG. 21 illustrates a non-limiting example of a screenshot of an interface for displaying the affiliation of the artist with one or more merchandise items, according to an implementation of the invention.

FIG. 22 illustrates a non-limiting example of a screenshot of an interface for displaying targeted advertisements in the artist specific application, according to an implementation of the invention.

## DETAILED DESCRIPTION OF THE INVENTION

FIG. 1 illustrates a system 100 for creating and managing entity-specific applications that each relates to an individual entity, integrates the entity's content, and connects fans with the individual entity through multimedia experiences provided through the entity-specific application, according to an implementation of the invention. An entity may include an individual performer (e.g., a singer), a group of performers (e.g., a band), a comedian, a celebrity, an item, and/or other subject to which an application relates.

System 100 may create and manage various types of entity-specific applications that integrate different types of content. For example, a movie-specific application that may be specific to a particular movie or a product-specific application that may be specific to a particular product may be created. For convenience, artist specific applications that provide music and other content related to an artist such as a musician/singer will be described herein. Furthermore, as used herein, the terms "song" and "music" may be used interchangeably and may refer to a musical performance that may be replayed, whether or not such musical performance includes lyrics sung by the artist.

Using the system, a given artist may create an artist specific application (hereinafter also referred to as "ASA") that includes music and other content related to the artist. Users may download the ASA (as well as other ASAs of other artists) or otherwise obtain and execute the ASA at a user device in order to listen to the artist's music and consume other content related to the artist through the ASA. Thus, instead of a single application that streams music from multiple artists, each ASA may relate to an individual artist.

In some implementations, a given artist may create other subject specific applications, such as a first album specific application that relates to one of the artist's album and a

5

second album specific application that relates to another one of the artist's albums. The artist may create other subject specific applications as well.

System Overview

System **100** may facilitate a new paradigm of content management, provision, and ownership of multimedia content. Specifically, system **100** may provide an "in-stream" content management and provisioning platform in which music and/or other content is downloaded to and streamed from ASAa user device executing an application provided by the in-stream content management and provisioning platform. For example, the content such as music may be downloaded to a user device but not be separately available, other than through a corresponding ASA. Of course, the artist may continue to make the music available through conventional distribution channels (e.g., via download) separate from the in-stream content management and provisioning platform as well.

In an implementation, the music may be integrated with (e.g., compiled or otherwise encoded into) the ASA such that when the ASA is downloaded to the user device, a binary or other instructions that encode the music is downloaded to the user device as part of the ASA but is not separately available to be played other than through the ASA. In this implementation, the music may not be downloaded to the user device as a separate file, but is instead integrated within an ASA executable file so that the user does not have access to the given song file separate from the ASA. In another implementation, a given song may be encrypted or otherwise provided as a separate binary that only the ASA may play.

Because the music may not be accessed or played other than through a corresponding ASA, the system may exercise control over the music, via the ASA, even though information encoding the music is downloaded to and stored at the user device. For example, the system may remove or otherwise render unplayable a song from the user device. In the foregoing example, the user may not be provided with ownership rights over the music, yet possesses a copy of the music (e.g., information that encodes the music) at the user device such that that music may be played from local storage without a network connection.

In some implementations, the music may be provided to the user as an in-stream allotment (also referred to hereinafter interchangeably as a music lease) that must be renewed before expiration. If the system has not received and approved a request to renew the music lease from a given ASA installed at a user device, the system may cause the music to be removed or otherwise rendered unplayable. For example, an ASA may be programmed to periodically request a new lease from computer system **110**. If the new lease is not granted or the ASA cannot communicate with the computer system **110** before the music lease has expired, the ASA may not play some or all of the music associated with the ASA (e.g., the ASA may delete or otherwise render the music unplayable). In some instances, a music lease may relate to all music stored with an ASA such that all music stored with the ASA will have the same expiration time. In other instances, a music lease may relate to only a subset of the music stored with an ASA such that different music will have different expiration times.

Using the system, music may be provided to the user through an ASA based on a freemium model, giving the user an ability to store and play music locally without a network connection (while the music lease remains valid) and yet without expressly paying for a music download.

System **100** may also facilitate the monetization by the artist of artists' content. For example, by monitoring usage and other activity related to the ASA, the system may provide

6

an individual artist with a revenue share model that shares income derived from the use of the ASA between the artist and an entity that operates the system. The income may be based on advertising-related income (e.g., resulting from ads placed on the ASA), purchases made through an ASA or the ecosystem, and/or other income sources related to use of the ASA for an artist. Such income may be shared between the operators of the system and an artist

Each ASA may communicate with other ASAs also installed at user device **170**, computer system **110**, other user devices **170** that include at least one ASA installed thereon, and/or other devices. In this manner, system **100** may facilitate cross-application functionality across the same or different ASA installed at multiple devices.

To facilitate a cross-application ecosystem, the system may obtain, store, or otherwise access content such as music, social media posts, rewards, and/or other information from different ASAs. In this manner, such content may be searched for and provided to individual ASAs that may otherwise be unrelated to other ASAs. In this manner, the system may facilitate a unified ecosystem of different ASAs. Furthermore, the system may categorize different ASAs into different groups based on musical genres, fan base (e.g., fan demographics), interests, and/or other categorizations, thereby enabling searches for (and discovery of) new and additional artists.

The system may also support cross-application analytics. For example, the system may obtain usage and analytics information across different ASAs in order to assess popularity or trends. This may provide artists, studios, an operator of the system, and/or other entities with insight into user interests across a broad spectrum of ASAs.

In an implementation, the system may facilitate the creation and use of cross-application playlists. The system may allow the creation of a playlist that includes a plurality of songs from different ASAs to be played in a particular order (including a preset or random order). Because a given song may only be played/access from a corresponding ASA, a playlist that includes songs from different ASAs may cause ASAs to be opened or otherwise activated when a song included therein is next in line to be played.

ASAs that have already played a song in the playlist may be closed to minimize a memory footprint (or each ASA may remain open but be placed in a de-activated or unfocused state). Alternatively or additionally, the system may cause such opening and closing of ASAs in order to facilitate appropriate monetization by each artist in cases where opening or activating a given ASA **124** contributes to a potential payment to be made to the artist.

A playlist may be used to play songs locally at user device **170**, share the songs with other users (which may encourage the other users to download ASAs **124** included in the playlist that are not already installed at the other users' device), and/or for other purposes.

In an implementation, the system may create and maintain one or more dynamic albums. A dynamic album may include a set of songs provided through an ASA installed at user device **170**. The dynamic album may be stored at the user device **170** (e.g., in the manner as described herein with respect to music). Nevertheless, the system may modify the set of songs without intervention by the user of user device **170**. Thus, while a user may be able to listen to a dynamic album at the user device **170** even without a network connection, the system may maintain control over the dynamic album. In some implementations, the dynamic album may be subject to one or more music leases as described herein.

The system may modify the dynamic album based on one or more album parameters that specify a change to be made to the set of songs. For example, the one or more album parameters specify the removal of one or more songs from the dynamic album, the addition of one or more new songs, the replacement of one or more songs, a rearrangement of (e.g., shuffling) the order of one or more songs, and/or other change to the set of songs.

The album parameters may be specified by an artist. In this manner, an artist may use the features and functions of a dynamic album to send music and/or other updates to the dynamic album. For example, the artist may introduce new songs, delete old songs, replace one version of a song with another version of the song, present snippets of songs in production, re-arrange an order in which the songs of a dynamic album are played, specify a first song to be played, and/or otherwise change the dynamic album. As another example, the artist may send an audio and/or a video message (e.g., commentary, uncut versions of the song, outtakes, etc.) to be played in association with the dynamic album.

System Components

Other uses of system 100 are described herein and still others will be apparent to those having skill in the art. Having described a high level overview of some of the system functions, attention will now be turned to various system components that facilitate these and other functions.

System 100 may include a computer system 110, one or more databases 130, an application marketplace 140, one or more social media providers 150, one or more advertising providers 160, one or more user devices 170, and/or other components.

Computer System 110

Computer system 110 may generate and customize an ASA based on input from an artist, renew music leases, provide and communicate updates and new content to ASAs installed at user devices, facilitate communication between system users (e.g., artists, fans, etc.), obtain usage metrics from ASAs installed at user devices, and manage an ecosystem of ASAs for different artists. By communicating with ASAs installed at user devices, the system may exercise control over the music and other content available at the ASAs.

To facilitate these and other functions, computer system 110 may include one or more processors 112, one or more storage devices 114, and/or other components. Processor(s) 112 may be programmed by one or more computer program instructions, which may be stored in storage device(s) 114. The one or more computer program instructions may include, without limitation, a platform management application 120 and/or other instructions that program computer system 110. As used herein, for convenience, the various instructions will be described as performing an operation, when, in fact, the various instructions program the processors 112 (and therefore computer system 110) to perform the operation.

FIG. 2 illustrates a flow diagram depicting a process 200 for providing a music lease and content to an ASA, according to an implementation of the invention. The various processing operations and/or data flows depicted in FIG. 2 (and in the other drawing figures) are described in greater detail herein. The described operations may be accomplished using some or all of the system components described in detail above and, in some implementations, various operations may be performed in different sequences and various operations may be omitted. Additional operations may be performed along with some or all of the operations shown in the depicted flow diagrams. One or more operations may be performed simultaneously. Accordingly, the operations as illustrated (and

described in greater detail below) are exemplary by nature and, as such, should not be viewed as limiting.

In an operation 202, a communication may be received from an ASA 124 executing on a user device 170. The communication may include an identity of ASA 124 (e.g., an application identifier), an identity of user device 170, and/or other identification information.

In an operation 204, a determination of whether to provide a music lease renewal may be made. The determination may be based on whether the artist wishes to continue to allow certain music to be played, whether the particular ASA 124 executing on a user device 170 should be allowed to have a renewed music lease (e.g., older versions of an ASA may not be allowed to have a renewed music lease to encourage an update to a newer version), and/or other reason.

If a music lease is to be renewed, in an operation 206, the music lease renewal may be provided to ASA 124. The music lease renewal may include an indication of a length of time that the lease is renewed, an expiration time, a number of times music governed by the music lease is allowed to be played, a simple indication to renew the lease, and/or other indication that the music lease is renewed. In some implementations, the music lease renewal may include a code that when decoded at ASA 124 causes the lease renewal.

If a music lease is not to be renewed, in an operation 208, an indication may be provided to ASA 124 that the music lease is not to be renewed. In some instances, a reason for the refusal may be provided so that ASA 124 may remedy any issues (e.g., by causing or suggesting that a newer version of the ASA 124 be downloaded/installed).

In an operation 210, updated content may be obtained. For instance, content such as artist-provided content (e.g., messages, multimedia such as songs, endorsements, etc.), rewards, social media content, and/or other content related to the artist may be obtained. In some implementations, at least some of the foregoing content gathering may occur via a process executing at ASA 124.

In an operation 212, the updated content may be provided to ASA 124, which may integrate and display the content through one or more of its interfaces.

Generating ASAs

Having described an overview of interactions between computer system 110 and an ASA 124 executing at a user device 170, generation of an ASA 124 based on artist input will now be described.

In an implementation, platform management application 120 may generate an ASA based on one or more application parameters, which may be provided by an artist, a human developer working on behalf of an entity that operates system 100, and/or other entity. To receive the application parameters from an artist, platform management application 120 may expose an interface, such as a website, used by the artist to provide the application parameters.

The application parameters may specify the content, functionality, appearance, and/or other characteristic of an ASA. For example, the application parameters may specify/include one or more "skins" (e.g., templates) used to specify an overall appearance, one or more songs to be included in the ASA, one or more social media accounts from which to aggregate content, one or more rewards or loyalty specifications, and/or other parameters that may be used to specify and customize an ASA.

Platform management application 120 may obtain and use a template that specifies an appearance (e.g., "look and feel") for an ASA. A given artist may select from among several appearances for the application and may specify that a particular template be used. Alternatively or additionally, each

skin may specify content that should be included in the application. For instance, one skin may specify that social media content should be made available while another skin may specify that social media content should be excluded. Other appearance and/or content customizations may be made included in a template as well.

Platform management application 120 may obtain each song to be included in an ASA. For example, each song may be obtained from the artist, an entity acting on behalf of the artist (e.g., a studio, record label, etc.), and/or other entity. Platform management application 120 may compile each song into the ASA being generated or otherwise make each song not playable except through the ASA.

In an implementation, platform management application 120 may encrypt a song file for a given song using, without limitation, the Advanced Encryption Standard ("AES"). Platform management application 120 may then encode the encrypted song file into an ASA 124. For example, PMA 120 may use compilation procedures specified by operating system vendors (e.g., iOS, Android, Windows, etc.). Upon compilation, PMA 120 may obfuscate or otherwise secure code using obfuscation and/or other techniques (e.g., using Pro-Guard, DexGaurd, etc.).

Platform management application 120 may obtain a listing of social media accounts from which to aggregate social media content posted by the artist to provide such content through the ASA being generated. In this manner, the artist may specify social media accounts from which to aggregate social media content.

Platform management application 120 may obtain a loyalty specification that describes a loyalty program made available through the ASA. Generally speaking, the loyalty program may provide one or more types of loyalty items to users to incentivize continued use of the ASA. Such continued use, in turn, enhances revenue opportunities for the system and the artist through advertisements and other monetization strategies that are based on the use of the ASA.

The loyalty specification may be customized by the artist, and may include one or more loyalty parameters that specify how a user may acquire or spend loyalty awards. For example, the loyalty parameters may specify whether and how much real currency may be used to purchase a given loyalty award, conditions that must be satisfied by a user in order to accrue a given loyalty award, and/or other specifications related to loyalty awards. In this manner, an artist may customize the types of loyalty awards offered as well as how a user may accrue and/or spend such awards.

In some implementations, the system may require that a certain number of types of loyalty awards be made available by the artist before an ASA is allowed to be release for download by users. In this manner, the system may ensure that a sufficient number of different types of loyalty awards are to be made available to users to provide the users with a variety of available awards, keeping the users engaged with the ASA.

In an implementation, platform management application 120 may index and store content and customizations included in or associated with an ASA in a content database, such as a database 130. Each content item (e.g., song, message, loyalty program item, etc.) may be assigned with a unique identifier and stored in the content database. Such an index and storage may facilitate rapid identification of the content associated with a given ASA and cross-application functions such as cross-application search functions described herein.

In addition to customizations that a given artist may make to his or her ASA, each ASA may include a core set of system functions that facilitate the various features and functions

described herein. The core set of system functions is described further below with respect to the system instructions.

User Device 170

Once a given ASA is generated, the system may make the application available for download through an application marketplace 140 and/or other channel. For instance, user device 170 may download or otherwise store and install one or more ASAs each corresponding to an individual artist. A user who wishes to listen to the music of multiple artists (and/or obtain content related to such artists) may download each artist's ASA to a user device 170, which may execute multiple ASAs.

To facilitate these and other functions, user device 170 may include one or more processors 172, one or more storage devices 174, and/or other components. Processor(s) 172 may be programmed by one or more computer program instructions, which may be stored in storage device(s) 174. The one or more computer program instructions may include an ASA 124 and/or other instructions. In addition to one of more of system instructions 122 described below, ASA 124 may provide one or more user interfaces that collectively provide interfaces through which artist content is presented. The one or more user interfaces may include, for instance, a media player that plays music, videos, etc., a social media browser that displays social media content aggregated from various social media platforms (which may be integrated into a single display or separately navigable displays that each is displays social media content from a corresponding social media provider), a loyalty display that displays loyalty items, a fan board display, a network—e.g., Internet—browser that can monitor and display previous visit histories, and/or other displays to provide artist content described herein.

FIG. 3 illustrates a flow diagram depicting a process 300 for receiving a music lease and content at ASA 124 executing at user device 170, according to an implementation of the invention.

In an operation 302, ASA 124 may be launched or otherwise be activated (e.g., brought into a foreground/active state from a background/inactive state). In some implementations, upon being launched or otherwise activated, ASA 124 may attempt to communicate with computer system 110. Alternatively or additionally, ASA 124 may attempt such communication at other times.

In an operation 304, ASA 124 may determine whether a communication was established and/or whether a network connection is available. If the communication is established, in an operation 306, ASA 124 may determine whether a music lease renewal has been received from computer system 110. If the music lease renewal was received, in an operation 308, ASA 124 may update the music lease based on the music lease renewal. In an operation 312, ASA 124 may begin playing the music associated with the music lease.

Returning to operation 304, if a communication has not been established, in an operation 310, ASA 124 may determine whether the music lease has expired. If the music lease has not expired, in an operation 312, ASA 124 may begin playing the music associated with the music lease. If the music lease has expired, ASA 124 may skip operation 312, and proceed to operation 314. In some implementations (not illustrated in FIG. 3), if the music lease has expired, ASA 124 may render itself inoperable such as by shutting down or causing itself to be uninstalled from user device 170.

Returning to operation 306, if the music lease has not been renewed, ASA 124 may proceed to operation 310 and processing may proceed as previously described with respect to operation 310.

11

In an operation **314**, ASA **124** may determine whether any updates have been received from computer system **110**. If updates have been received from computer system **110**, ASA **124** may apply the updates for display to the user in an operation **316**. If no updates have been received from computer system **110**, ASA **124** may skip operation **316**.

In some implementations, an update from computer system **110** may include a new song to be added (e.g., through a dynamic album as described herein). In these implementations, ASA **124** the song may be encoded as information to be incorporated into the code or binary of the ASA **124** to render the song unusable other than through ASA **124**. In other implementations, ASA **124** may decrypt or otherwise decode the song in a manner that the song is unusable other than through ASA **124**. In some implementations, the new song to be added may be encrypted by PMA **120** and downloaded to user device **170**, where ASA **124** decrypts and provides the song. In some implementations, PMA **120** may generate an updated version of AMA **124** that includes the new song (or other dynamic album changes) for updating a current version of AMA **124** installed at a user device **170**. In this implementation, the PMA **120** may cause the updated AMA **124** to be incorporated with or otherwise replace the current version of AMA **124** using an application installer associated with user device **170**.

In an operation **318**, ASA **124** may determine whether any locally-obtained updates are available (e.g., in instances where ASA **124** aggregates social media content related to the artist, or otherwise obtains other content related to the artist or other users). If such updates are available, ASA **124** may apply the updates for display to the user in an operation **320**.

In an operation **322**, ASA **124** may display content related to the artist, including any applied updates. Such content may be displayed using one or more interfaces, such as those illustrated with respect to one or more screenshots described herein.

In an implementation, a user may be granted some level of control over the content such as music provided through an ASA **124**. For example, the user may select songs that are displayed in a listing of songs (or may cause an ASA **124** to remove one or more songs to save disk space). In some implementations, the user may be permitted to exercise such control under certain conditions. For example, the user may be permitted to modify content only if that content has not been interacted with for a certain period of time. In a particular example, a user may be permitted to delete a song only if that song has not been played within the last month.

### System Databases

In an implementation, computer system **110**, user device **170**, and/or other system components may access one or more database(s) **130**, which may include an application template database, an artist database, a user database, a reward database, a content database, and/or other databases.

### Application Marketplace **140**

Application marketplace **140** may include application markets that make available for download ASAs. For example, application marketplace **140** may include, without limitation, the GOOGLE PLAY store, APPLE APP store, WINDOWS PHONE store, BLACKBERRY WORLD, and/or other application markets. System **100** may make ASAs available for download from an application marketplace **140**. As such, users may download ASAs from application marketplace **140**. Alternatively or additionally, system **100** may make ASAs available for download from other sources, such as directly from computer system **110**.

12

### Social Media Providers **150**

Social media providers **150** may include, for example, social media platforms (e.g., FACEBOOK, TWITTER, INSTAGRAM, FLICKR, YOUTUBE, etc.), and/or other providers that generally distribute content uploaded by users to be consumed by other users. The content may be generated by content sources such as individuals, corporations, and/or other entities that may create content. Artists and users may post social media content to one or more social media providers **150**, from which system **100** may aggregate and present through ASAs as described herein.

### Advertisement Providers **160**

Advertisement provider(s) **160** may include entities that wish to promote an item such as a good or service. The system may obtain advertisements to from advertisement provider(s) **160** in order to leverage the ASA ecosystem to provide the advertisements. Advertisements may include promotional information, incentive information, marketing messages, and/or other information used to incentivize or otherwise introduce a user to a product or service.

Having described an overview of the system components, attention will now be turned to various system functions that facilitate connecting fans and artists through ASAs.

### System Instructions

Referring to FIG. **4**, which illustrates a block diagram depicting system instructions **122**, in an implementation, system instructions **122** may include various sets of instructions that program computer system **110** and/or user device **170**. In other words, platform management application **120** and/or an ASA **124** may include all or a portion of system instructions **122**.

System instructions **122** may include different sets of instructions, such as a command manager **402**, an update manager **404**, a usage analytics engine **406**, a loyalty program manager **408**, a social media manager **410**, an advertisement manager **412**, an artist endorsement manager **414**, a fan board manager **416**, a discussion board manager **418**, an accounting manager **420**, a cross-application manager **422**, a playlist manager **424**, a dynamic album manager **426**, and/or other instructions.

In an implementation, a given set of instructions described with respect to system instructions **122** may include a version that executes on computer system **110** (through platform management application **120**) and a version that executes on user device **170** (through ASA **124**). The version executing on computer system **110** may communicate with the version executing on user device **170**. Furthermore, in an implementation, a version that executes on a first user device **170** may communicate with a version that executes on a second user device **170**. Thus, the various system instructions may facilitate collaboration between computer system **110** and user device **170**, and/or between one user device **170** and another user device **170**.

### Receiving Commands from Artists and Other Users

In an implementation, command manager **402** may obtain and execute one or more commands to be performed with respect to an ASA. The one or more commands may relate to music or content that should be changed such as being updated, added, and/or removed from an ASA. For example, the one or more commands may be received from an artist that may wish to change the music or other content provided at the ASA of the artist. The command may relate to music, messages, loyalty items, and/or other content to be changed.

Command manager **402** may obtain the one or more commands in various ways. For example, command manager **402** may receive the one or more commands via a website exposed by system **100** that provides an interface used to receive changes to be made, via an electronic communication (such

13

as email, Short Message Service ("SMS") message, Multimedia Message Service ("MMS") message, etc.), an interface provided by an ASA, and/or other communication channel.

In whichever manner the one or more commands are received, a command may identify content that is to be changed. For example, when music is to be added (or otherwise rendered playable), the command may be associated with the music to be added. When music is to be deleted (or otherwise rendered unplayable), an identification of the music to be deleted may be provided with (e.g., specified by) the command. In some instances, the content, such as music, to be added may be stored by a content database (e.g., a database 130) such that an identifier of the content is sufficient to cause the content to be added, in which case command manager 402 may retrieve the content from the content database based on the identifier. In other instances, the content may be supplied along with the command. For example, to add new music, an artist may attach the new music to an MMS message with a command such as "add new music." Alternatively or additionally, the artist may simply specify an identification of the music to be added, assuming the system already has the music to be added.

Other commands may be used as well, such as a command to provide a message to fans, add a particular loyalty reward, and/or other command to cause other changes to occur. In some implementations, fans or users other than an artist may provide commands. In these implementations, command manager 402 may execute only a limited set of commands that are available for such users (while providing a higher level of control to artists for their respective ASAs). For instance, command manager 402 may allow other users to provide comments/messages on a message board displayed by an ASA, but not add music to the application. To distinguish between an artist and other users for such access control, command manager 402 may require user authentication (e.g., password and/or other shared secret) or provide an artist with a secret communication channel (e.g., a particular phone number to which to send text messages, or an unpublished website) for the artist.

Updating Content at ASAs

In an implementation, content manager 404 may obtain, manage, and store content related to an ASA. For example, content manager 404 may maintain a date when a message, a reward, music, and/or other content is received from an artist (or from a user). Content manager 404 may store the information in a content database for later retrieval.

Monitoring Usage and Generating Usage Analytics

In an implementation, usage analytics engine 406 may monitor and/or analyze user activity related to an ASA. For example, usage analytics engine 406 may monitor a number of times or duration that an ASA has been opened/activated, a number of times or duration a song has been played by the ASA, a number or duration in which social media content is accessed, a number of social media "likes" from the user, a number or value of purchases made, and/or other user activity in relation to an ASA that may indicate usage.

A version of usage analytics engine 406 executing on a user device 170 (e.g., via an ASA) may monitor the user activity and store the user activity in a local memory. In some implementations, a version of usage analytics engine 406 executing at the user device 170 may report the user activity to computer system 110 (e.g., to a usage analytics engine 406 executing at computer system 110).

A version of usage analytics engine 406 executing on computer system 110 may receive the user activity from various ASAs 124. For example, the user activity may be received from a first ASA 124 that relates to a first artist as well as user

14

activity from a second ASA 124 that relates to a second artist. Thus, the version of usage analytics engine 406 executing on computer system 110 may compile usage activity across a wide range of different ASAs 124, whether or not such ASAs relate to a single artist.

The user activity may be used by computer system 110 in various ways such as by ranking ASAs, ranking content within ASA, providing loyalty items, and/or other purpose.

In an implementation, platform management application 120 may use the user activity to rank ASAs 124 based on various metrics related to user activity. For example, platform management application 120 may rank different ASAs 124 based on a number of downloads, a number of times or duration a song has been played by the ASA, a number or duration in which social media content is accessed, a number of social media "likes" from the user, a number or value of purchases made, and/or other user activity in relation to an ASA. Likewise, platform management application 120 may use the user activity to rank particular content such as songs, social media posts, etc., in a similar manner. Thus, platform management application 120 may generate listings of what ASAs or content are currently popular (e.g., within the past week, month, or other time period), trending among users, and/or otherwise gauge which applications or content are successful.

Platform management application 120 may use such popularity/trending information to provide users with what may be of interest to the user. For instance, a user may be provided with an indication of a recently trending ASA, which may encourage the user to download that application.

In an implementation, platform management application 120 may use the user activity to determine whether a loyalty item should be awarded to a user.

Managing Artist Specific Loyalty Programs and Awarding the User with Loyalty Items

In an implementation, loyalty program manager 408 may award loyalty items to users in association with an ASA. A loyalty item may include a real or virtual item having a real or perceived value provided by the system, artist, and/or other entity. For example, a loyalty item may include, without limitation, a loyalty point, an achievement, a reward, and/or other items that may be obtained by the user in association with an ASA.

Loyalty program manager 408 may provide a loyalty item to the user as a reward for performing one or more user activities and/or as a purchase by the user using real or virtual currency. Loyalty program manager 408 may store (at user device 170 and/or at computer system 110) a user account of a user that tracks and maintains loyalty items provided to the user.

The user activities may include an action performed by the user in association with an ASA. For example, a user activity may include, without limitation, listening to a song, commenting on a message board, providing "likes" on content, launching or otherwise making active an application-specific application, and/or performing other activities with respect to the application-specific application.

Virtual currency may include other loyalty items (e.g., a reward may be purchased with a loyalty point and/or with real currency). For example, loyalty program manager 408 may facilitate redemption of one or more loyalty points for a reward and/or other loyalty items. In some instances, a given loyalty item may be redeemed only for another loyalty item associated with the same ASA. In other instances, a given loyalty item may be redeemed across different ASAs. In some implementations, a loyalty item may not be purchased. For example, certain loyalty items such as achievements may only be earned based on use of an ASA.

In implementations where loyalty items may be purchased, loyalty program manager **408** may store an indication of such purchase. In this manner, loyalty program manager **408** may distinguish between loyalty items that were earned and loyalty items that were purchased. For example, loyalty program manager **408** may store information used to distinguish between a loyalty point that was purchased versus one that was earned by the user.

Each artist may customize loyalty items that are made available as well as specify how users may accrue the loyalty items (e.g., a number of times that a user must listen to a song in order to obtain a loyalty item and/or an amount of real or virtual currency to obtain a loyalty item).

Loyalty program manager **408** may obtain user activity information that indicates user activities and may award the user with an appropriate loyalty item. In some implementations, loyalty program manager **408** may not provide an indication of the user activities that may be necessary to obtain a loyalty item. In such implementations, a loyalty item may be rewarded to the user as a surprise. In other implementations, loyalty program manager **408** may provide an indication of user activities that may be necessary to obtain an achievement.

Examples of Types of Loyalty Items

Having provided an overview of a loyalty program, specific, non-limiting examples of loyalty items will be described.

In an implementation, loyalty program manager **408** may provide a loyalty point. A loyalty point may indicate a level of user activity with respect to the ASA such that a user having a greater number of loyalty points has more user activity than another user having a lesser number of loyalty points. In some instances, a loyalty point may be redeemed for other loyalty items such as rewards.

In an implementation, loyalty program manager **408** may provide an achievement that corresponds to a particular type and/or volume of a user's activity. Different achievements may be awarded for different types of user activity. For example, an achievement may include an "old school" badge that indicates that the user has listened to an album cover to cover (e.g., that the ASA has played the album cover to cover), a "musical lover" badge that indicates that the user has downloaded more than five ASAs (such a badge may be displayed via all of the ASAs that the user has downloaded), and/or other types of badges. In some implementations, an achievement may not be purchased nor redeemed for other loyalty items. In such implementations, the achievement may indicate an actual level of user activity.

In some implementations, the achievements may be redeemable for rewards and/or merchandise offered from one or more ASAs. In such implementations, the user may redeem the achievements to obtain other loyalty items.

Loyalty program manager **408** may award a user with a reward provided by various entities such as, for example, the artist, the system, third parties, and/or other entities. A reward may include, for example, autographed photos, an exclusive chat opportunity, a wallpaper image, a ringtone, a backstage pass, a social media follow from the artist, and/or other rewards. In other implementations, the system may facilitate the provision of various rewards. The system may store various rewards, either at the server or at the user mobile device.

In some implementations, loyalty program manager **408** may provide different sets of rewards for different sets of users. For example, one set of users may be provided with an opportunity to obtain a first set of rewards while another set of users may be provided with an opportunity to obtain a second set of rewards that are different from the first set of rewards.

The different sets of users may be delineated by culture, geography, and/or other characteristic of a set of users. For example, a reward for fans in Japan may include a handshake with the artist or other culturally-specific reward whereas such a handshake award may not be provided to fans in other countries.

In some implementations, loyalty program manager **408** may provide a user-specific reward that is tailored to an individual user. For example, a reward may include a recorded personal greeting to the user from the artist (e.g. "Good morning Sam"), a handwritten note to the user from the artist, and/or other customized reward. The personalized reward may include actual personalized content (e.g., a greeting actually spoken by the artist for the user) and/or content that only appears to be personalized.

In some implementations, a reward may include providing a connection between a user's social media account and an artist's social media account. For example, loyalty program manager **408** may cause a TWITTER account of the artist to "follow" a TWITTER account of the user. The association may be made automatically without intervention by the artist (e.g., loyalty program manager **408** may logon to the TWITTER account of the artist on behalf of the artist to make the connection) or may be via a request made to the artist, who then connects with the user.

Aggregating and Managing Social Media Content

In an implementation, social media manager **410** may aggregate social media content that is relevant to an artist for presentation through an ASA. For example, an artist may specify social media accounts of the artist from which to aggregate social media content. Social media manager **410** may aggregate social media posts from those social media accounts (whether posted by the artist or by other users) and provide them through an ASA for presentation to users. For example, social media manager **410** may post TWEETS from the artist, TWEETS from followers directed to the artist, and/or other social media posts made in relation to the artist's social media accounts. In this manner, users may view social media posts related to the artist using an ASA.

Social media manager **410** may aggregate the social media posts via Application Programming Interfaces ("APIs") exposed by the social media providers. In this manner, social media manager **410** may automatically obtain such posts. In an implementation, social media manager **410** may obtain new social media posts by tracking a last time (e.g., most recent) that social media posts were provided through an ASA. In this manner, new social media posts may be obtained displayed through the ASA.

In an implementation, social media manager **410** may logon to one or more of the artist's social media accounts on behalf of the artist in order to automatically post social media content. Such automatically posted content may include, for example, promotions related to the artist (e.g., announcement of a new song, album, concert, etc.) and/or other content related to an artist.

In an implementation, a version of social media manager **410** executing at computer system **110** may aggregate and save the social media posts related to an artist. In this manner, a historical record of social media posts may be maintained and used to provide social media posts to ASA.

In an implementation, a version of social media manager **410** executing at user device **170** may aggregate the social media posts at the user device. In this implementation, user device **170** (e.g., ASA executing at user device **170**) may obtain the social media posts directly from the social media providers.

By integrating social media posts of the artist for display through the ASA, the system further facilitate fan engagement and provides an easy "one-stop" solution for providing artist-related content.

Managing Advertisements

In an implementation, advertisement manager **412** may obtain advertisements from one or more advertisement provider(s) **160** for display through an ASA. Certain advertisements may be targeted for presentation at particular ASAs based on user activity. For example, advertisement manager **412** may determine a relevance of a given advertisement based on particular user activity and provide the given advertisement to a particular user device **170** executing an ASA. In an implementation, advertisement manager **412** may determine that all ASAs related to an artist should display a particular advertisement. In this implementation, advertisement manager **412** may identify user devices **170** that have installed or otherwise have used a given ASA and provide the particular advertisement to all of those user devices for display through the given ASA.

The advertisement may be displayed at one or more interfaces of ASA.

In some implementations, the advertisement manager **412** may receive advertisements from the system server. For example, the system server may communicate banner advertisements to be displayed in association with one or more ASA.

Versions of advertisement manager **412** executing at a user device **170** may locally store advertisements at the user device, whether such advertisements are provided from versions of advertisement manager **412** executing at computer system **110** and/or directly from advertisement provider(s) **160**. Such implementations may allow advertisements to be displayed to the user even when user device **170** is offline.

In some implementations, advertisement manager **412** may monitor advertisement result information that indicates an effectiveness of the advertisements provided through an ASA. The advertisement result information may include a number of times a particular advertisement has been displayed, a click-through rate of the advertisement, and/or other information that indicates an effectiveness of the advertisements.

A version of advertisement manager **412** executing at user device **170** may report the advertising result information to a version of advertisement manager **412** executing at computer system **110** for centralized compilation. Such reporting may occur in real time, periodically, and/or at other times. For example, each time an advertisement is clicked or otherwise selected by a user, the version of advertisement manager **412** executing at user device **170** may report the click to the version of advertisement manager **412** executing at computer system **110**. In some implementations, the version of advertisement manager **412** executing at user device **170** may store the advertisement result information and send it to the version of advertisement manager **412** executing at computer system **110** on a periodic basis and/or when a network connection is available.

In an implementation, advertisement manager **412** may perform statistical analysis of the advertisement result information. Such information may be used to further target relevant advertisements to the user and/or a population of users.

Managing Artist Endorsements

In an implementation, artist endorsement manager **414** may obtain an endorsement of an item (e.g., a product or service) from an artist. The endorsement may be in the form of an identification of the item being endorsed, an identification of an image object in a photograph or other image (e.g.,

a photograph of an item worn by an artist), and/or other indication of an item being endorsed.

For example, artist endorsement manager **414** may receive a photograph of the artist wearing an item to be endorsed and display the photograph through an interface used by the artist to identify the item. The artist may point to or otherwise indicate the item via the interface. Artist endorsement manager **414** may identify the item based on a bitmap of the photograph or other coordinates of the photograph at which the artist has pointed. Artist endorsement manager **414** may also receive item information such as an name of the item, a price of the item, a manufacturer or retailer of the item, a URL link to a website from which to purchase the item, a link to a redemption page in which the user may redeem one or more loyalty points to obtain the item, and/or other information related to the item.

In an implementation, artist endorsement manager **414** may display, through an ASA of the artist, a photograph of the artist holding/wearing the item in association with a tag. For example, the tag may be overlaid onto, integrated with, or otherwise displayed in association with the photograph. The tag, when clicked or otherwise selected by the user, may cause the ASA to display the item information and/or cause the linked to site (e.g., URL or redemption page) to be displayed.

In some implementations, artist endorsement manager **414** may generate user alerts when an endorsement has been made by the artist. For example, the user may receive an alert that the artist has endorsed an item or cause (e.g., a charity or charitable event). The alert may be associated with content in the ASA.

Fan Boards

In an implementation, fan board manager **416** may obtain aggregate fan information for an artist. The fan information may indicate one or more loyalty items that a given user has accrued. For example, fan information may include a ranking of users based on a number of loyalty items they have accrued. In an implementation, fan board manager **416** may exclude loyalty items that were purchased, thereby providing an indication of actual user activity rather than purchased loyalty items.

In an implementation, the fan information may relate to a particular ASA. In this manner, users of the particular ASA may be ranked with respect to other users of the particular ASA so that the top fans (for example) of a particular artist may be identified. In an implementation, the fan information may relate to multiple ASAs such that users of different ASAs may be ranked with respect to one another so that the top fans (for example) of any artist may be identified. In an implementation, the fan board may relate to a ranking of fans within a particular time period (e.g., top fans within the last month, year, etc.).

In an implementation, the fan information may be displayed as a fan board in an ASA. The fan board may relate to the artist associated with the ASA or may relate to other artists associated with other ASAs.

Discussion Boards

In an implementation, discussion board manager **418** may obtain comments from an artist, users, and/or other entities in relation to an ASA. Discussion board manager **418** may present the comments in a discussion board, which may provide a forum for the artist, users, and others to discuss and share content. Such comments may be input via an ASA, via the command manager, via a website or other interface exposed by the system, and/or other communication channel. The comments may be obtained and displayed in real time through the ASA. In some implementations, the discussion board may be updated periodically.

In some implementations, discussion board manager **418** may analyze the discussion board to parse keywords that may indicate trends, user sentiment (e.g., by comparing words in the discussion board to predefined "happy," "sad," or other sentiment terminologies), and/or other content that may be relevant. In this manner, discussion board manager **418** may mine the discussion boards for relevant information that may assist with marketing, understanding which products/songs/content resonate with users, and/or otherwise gaining insight into user preferences.

Accounting Manager

In an implementation, accounting manager **420** may maintain an artist account used to track funds due to the artist. For example, based on pre-existing agreements between the system operator and the artist (and/or predefined generic agreements), the artist may be entitled to a share of profits resulting from the monetization of the user specific application of the artist. For example, a share of ad income may be provided to the user. As such, accounting manager **420** may track ad revenue (e.g., based on ad displays, click-through-rates, etc.) in order to apportion such revenue to the artist. In some implementations, the system may credit the artist account based on user activity (e.g., the artist may be paid based on a number of downloads, number of users, number of in-app purchases made, affiliation with vendors such as when an artist endorses an item, funds related to cross-selling other applications, share of fees related to data usage from mobile operators, deals involving pre-installation on user devices, etc.).

Cross-Application Functions

In an implementation, cross-application manager **422** may facilitate cross-application functionality. For instance, cross-application manager **422** may obtain, store, or otherwise access content such as music, social media posts, rewards, and/or other information from different ASAs **124**. In this manner, such content may be searched and provided to individual ASAs **124** that may otherwise be unrelated to other ASAs **124**. As such, cross-application manager **422** facilitates a unified ecosystem of different ASAs **124**. Furthermore, cross-application manager **422** may categorize different ASAs **124** into different groups based on musical genres, fan base (e.g., fan demographics), interests, and/or other categorizations, thereby enabling searches for (and discovery of) new and additional artists.

In an implementation, cross-application manager **422** may also support cross-application analytics. For example, cross-application manager **422** may obtain usage and analytics information across different ASAs **124** in order to assess popularity or trends. This may provide artists, studios, an operator of the system, and/or other entities with insight into user interests across a broad spectrum of ASAs **124**.

FIG. **5** illustrates a flow diagram depicting a process **500** for obtaining, storing, and querying content related to different ASAs at a computer system coupled to different ASAs executing at different user devices, according to an implementation of the invention.

In an operation **502**, cross-application manager **422** may obtain first content relevant to a first ASA **124**. In an operation **504**, cross-application manager **422** may obtain second content relevant to a second ASA **124**. The first content and the second content may each include songs, messages, social media content, and/or other content that is relevant to their respective ASAs. For example, cross-application manager **422** may obtain information related to songs of a first artist made available through an ASA of the first artist and information related to songs of a second artist made available

through an ASA of the second artist. Likewise, other types of content made available through an ASA may be obtained as well.

In an operation **506**, cross-application manager **422** may compile and index the first content and the second content. For example, the first content and the second content may be stored in a content database.

In an operation **508**, cross-application manager **422** may receive a search request from an ASA (which may be the first ASA, the second ASA, or other ASA) or other source.

In an operation **510**, cross-application manager **422** may search the content database and obtain results based on the search request.

In an operation **512**, cross-application manager **422** may provide the results to the ASA or the other source.

In this manner, cross-application manager **422** may facilitate the search or display of content related to different ASAs by storing or otherwise accessing the content from different ASAs. For instance, a user may execute a search to obtain content related to ASAs, whether or not the user has installed those ASAs. The search results may identify new ASAs that may be of interest to the user, incentivizing the user to download additional ASAs related to other artists. In another example, the user may access a listing of songs of a first ASA from a second ASA. Selection of a song of the first ASA may cause that application to be launched or otherwise cause that application to stream the song to the second ASA). In this manner, the user may need not individually launch different ASAs installed on a user device **170**.

In some implementations, the system may facilitate communication between only certain applications. For instance, a record label may wish for only applications specific to artists signed under its label to be permitted to communicate with one another. Of course, in other more preferred implementations, all ASAs may be permitted to communicate with one another.

As previously noted, the in-stream content management and provisioning platform may be used for various media content of which music from artists is one example. In particular, cross-application functionality described herein may be used in contexts other than music and artists as well. Cross-application manager **422** may manage content from applications that are specific to videos, text, and/or other types of media that is specific to other types of entities (other than artists), items (e.g., products, movies, etc.), and/or other subjects of an entity specific application. For example, and without limitation, television show specific applications may be created in which users may download applications specific to their favorite television shows from one or more networks. Each television show specific application installed on a user device, for example, may share information (e.g., episode listing, outtakes, cast information, etc.) to other applications. Thus, although described in the context of music shared by artists to their fans, the in-stream content management and provisioning platform (e.g., the functions and features of system **100**) described herein may be used to manage other types of content in relation to other entities of subjects of an entity specific application.

FIG. **6** illustrates a flow diagram depicting a process **600** for querying content associated with ASA **124** from user device **170**, according to an implementation of the invention.

In an operation **602**, ASA **124** may obtain one or more search terms relating to a request for information. In an operation **604**, ASA **124** may search content (e.g., songs, social media content, messages, rewards, etc.) associated with the ASA **124**. In an operation **606**, ASA **124** may obtain results based on the search.

In an operation **608**, ASA **124** may determine whether other ASAs on user device **170** should be searched. For example, the request for information may include a parameter that indicates sources that should be queried. Such sources may include, for example, an ASA **124** from which a search was initiated, other ASA **124** installed at user device **170**, other ASAs **124** that are not installed at user device **170** but are available for download, and/or other sources that can be queried for artist-related content.

If other ASAs on user device **170** should be queried, in an operation **610**, ASA **124** may identify other ASAs **124** installed on user device **170**. Such identification may be obtained based on an application registry maintained by an operating system of user device **170**, a registry of installed ASAs **124** that may be stored by each ASA **124** installed on user device **170**, a query to computer system **110**, which may maintain a registry of ASAs **124** installed at a given device, and/or other information source.

In an operation **612**, the identified ASAs **124** may be queried to obtain results therefrom.

In an operation **614**, ASA **124** may determine whether to search remote devices (e.g., content related to ASAs **124** not installed on user device **170**). If yes, ASA **124** may query a remote device (e.g., computer system **110**) in an operation **616** and obtain content based on the querying in an operation **618**. In an operation **620**, ASA **124** may display or otherwise provide the obtained results from the previous operations to the user.

Cross-Application Playlists

In an implementation, playlist manager **424** may allow the creation of a playlist that includes a plurality of songs from different ASAs **124** to be played in a particular order (including a preset or random order). Because a given song may only be played/access from a corresponding ASA **124**, a playlist that includes songs from different ASAs **124** may cause ASAs **124** to be opened or otherwise activated when a song included therein is next in line to be played. ASAs **124** that have already played a song in the playlist may be closed to minimize a memory footprint (or each ASA **124** may remain open but be placed in a de-activated or unfocused state). Alternatively or additionally, playlist manager **424** may cause such opening and closing of ASAs **124** in order to facilitate appropriate monetization by each artist in cases where opening or activating a given ASA **124** contributes to a potential payment to be made to the artist.

A playlist may be used to play songs locally at user device **170**, share the songs with other users (which may encourage the other users to download ASAs **124** included in the playlist that are not already installed at the other users' device), and/or for other purposes.

In an implementation, playlist manager **424** may generate a playlist based on an identification of a set of songs to include in the playlist. For example, the user, artist, or others may specify a playlist of songs to be included in the playlist. A given playlist may include songs from a plurality of different ASAs **124**. Playlist manager **424** may obtain a playlist (e.g., a user may select a playlist to be played) and cause the set of songs to be played.

Table 1 illustrates non-limiting examples of entries in a playlist. Such a playlist may have more (or less) entries, but the illustrated playlist is illustrated with five entries for illustrative purposes. Furthermore, a playlist table may include alternative or additional types of information. The following table is therefore included solely to illustrate aspects of the disclosure and will be described in conjunction with FIGS. **7-11** that follow.

| Playlist position | Application ID | Song ID |
|---|---|---|
| $t_1$ | 1 | SID (1) |
| $t_2$ | 2 | SID (2) |
| $t_3$ | 2 | SID (3) |
| $t_4$ | 3 | SID (4) |
| $t_5$ | 1 | SID (5) |
| ... | ... | ... |
| $t_n$ | N | SID (n) |

As illustrated in Table 1, an entry in the playlist (depicted as a table row) may have an associated playlist position, an application identifier (which identifies a corresponding ASA), and a song identifier (which identifies a song to be played by the corresponding ASA).

FIG. **7** schematically illustrates a non-limiting example of a playlist **700**, according to an implementation. Playlist **700** may include entries **701**, **702**, **703**, **704**, **705**, . . . , (N). Each entry may correspond to a song having a corresponding playlist position $t_{1, 2, 3, 4, 5, \ldots, n}$. In this example, which corresponds to Table 1, entries **701**-(N) may each be associated with an Application ID and Song ID. For example, SID (1) may be associated with ASA 1, SID (2) may be associated with ASA 2, SID (3) may be associated with ASA 2, SID (4) may be associated with ASA 3, SID (5) may be associated with ASA 1, and so on and so forth.

A handoff between different ASAs may occur when adjacent songs in the playlist are associated with different ASAs. For instance, a handoff may occur between playlist positions $t_1$ and $t_2$, $t_3$ and $t_4$, and $t_4$ and $t_5$. A handoff may involve opening or otherwise activating the next ASA (which is next in line to play the next song in the playlist) and closing or otherwise de-activating a previous ASA (which completed playing a song in the playlist). For instance, after SID (1) is played, Application ID (also referred to herein and in the Figures as "App ID") 2 (the next ASA) may be opened or otherwise activated while App ID 1 (the previous ASA) may be closed or otherwise de-activated. In some implementations, the previous ASA may not be closed, memory permitting. In some implementations, a certain number of previous or next ASAs may remain open while playing songs of the playlist, which may be subject to memory limits.

The previous ASA may handoff to the next ASA in various ways. For instance, an agent associated with the previous ASA may cause the next ASA to be opened or activated while causing the previous ASA to be closed or de-activated. In some implementations, the previous ASA may cause an operating system of user device **170** to launch the next ASA with a set of launch parameters that includes information that conveys the playlist, including any parameters used to determine what song should be played next. In these implementations, each ASA may parse such launch parameters to determine whether a given song should be played next in relation to the playlist, as well as any handoffs that it should make to other ASAs.

FIG. **8** illustrates a flow diagram depicting a process **800** for switching ASAs to play a playlist, according to an implementation of the invention.

In an operation **802**, playlist manager **424** may obtain a playlist. The playlist may be created by the user, shared to the user, provided to the user by the computer system **110**, and/or other obtained.

In an operation **804**, playlist manager **424** may generate playlist instructions based on the obtained playlist. The playlist instructions may include information that specifies a play-

list such as one illustrated in Table 1. In some implementations, the playlist may be communicated from a first ASA to a second ASA.

Playlist manager 424 may identify the ASA associated with the next song to be played.

In an operation 806, playlist manager 424 may open/activate the next ASA. In some implementations, the next ASA may be in a closed state and playlist manager 424 may open the next ASA. In some implementations, the next ASA may be running in a deactivated state in the background, and playlist manager 424 may activate the next ASA. As used herein throughout, the term "activate" may include putting into focus or otherwise placing into a state where an ASA may process instructions and play a song.

In an operation 808, playlist manager 424 may close/deactivate previous ASAs. In some implementations, playlist manager 424 may close/deactivate all the ASAs that were previously opened or activated. In some implementations, playlist manager 424 may selectively close/deactivate one or more artist applications based on the playlist. For example, playlist manager 424 may close the ASAs that do not have more songs to play. In some implementations, playlist manager 424 may keep a certain number of ASAs open/activated, memory permitting.

In an operation 810, playlist manager 424 may cause the next song to be played. The current ASA may receive the playlist table and, based on the song ID, may identify the song to be played.

In an operation 812, playlist manager 424 may determine whether the next song to be played is associated with the next ASA (e.g., the application currently open). If yes, playlist manager 424 may cause the next song to be played without opening or activating another ASA in operation 810. If no, playlist manager 424 may activate/open a next ASA in operation 806.

It should be noted that the operations of playlist manager 424 as described with respect to FIG. 8 may be included with an ASA 124 (in which case ASA 124 controls playing the playlist) or with platform management application 120 (in which case platform management application 120 controls the ASAs to play the playlist).

FIG. 9 illustrates a flow diagram depicting a process 900 of switching ASAs to play a playlist as controlled locally at a user device, according to an implementation of the invention.

In an operation 1002, ASA 124 may receive instructions from playlist manager 424 executing at computer system 110. In an operation 904, ASA 124 may identify, based on the received instructions, the next song to be played. For example, the instructions may include song ID that identifies the next song. In an operation 906, ASA 124 may cause the next song to be played. In an operation 908, ASA 124 may send an indication to playlist manager 424 that the song has been played.

FIG. 10 illustrates a flow diagram depicting a process of switching ASAs to play a playlist, according to an implementation of the invention.

In an operation 1002, ASA 124 may receive playlist instructions. In an operation 1004, ASA 124 may identify, based on the received instructions, a song to be played. In operation 1006, ASA 124 may cause the song to be played. In an operation 1008, ASA 124 may identify the next song to be played. In an operation 1010, ASA 124 may determine whether the next song is within the current ASA 124. If yes, ASA 124 may cause the next song to be played in operation 1006. If no, ASA 124 may identify the next ASA associated with the next song in an operation 1012. In an operation 1014, ASA 124 may pass the instructions to the identified next ASA

along with an indication of the next song to be played or may generate and provide a new set of instructions that includes the playlist and the next song to be played.

In some implementations, playlist manager 424 may account for the non-existence of one or more ASAs associated with the playlist. For example, a user may have received a playlist including songs that are associated with ASAs that are not installed on user device 170 of the user. In these implementations, playlist manager 424 may cause any missing ASAs to be installed at user device 170. In some implementations, such installation may be automatic without user intervention, may be based on input from a user (e.g., after having prompted the user to download any missing ASAs), and/or based on some other trigger.

FIG. 11 illustrates a flow diagram depicting a process 1100 of switching ASAs to play a playlist, according to an implementation of the invention.

In operation 1102, playlist manager 424 may obtain the playlist as described in various implementations above. In operation 1104, playlist manager 424 may generate playlist instructions, as described in various implementations above. In operation 1106, playlist manager 424, based on the playlist instructions, may identify the current ASA that includes the next song to be played. In operation 1108, playlist manager 424 may check if the identified current ASA is in the mobile user device. If no, the process moves to operation 1110 in which ASA 124 may be downloaded from the system server. If yes, the process may skip operation 1110 and move to operation 1112. In operation 1112, playlist manager 424 may activate/open the current application, as described in various embodiments described above. In operation 1114, playlist manager 424 may close/deactivate previous applications, as described in various embodiments above. In operation 1116, playlist manager 424 may pass instructions to the current ASA to play the current song. In operation 1118, playlist manager 424 may receive an indication that the current song has been played. In operation 1120, playlist manager 424 may identify the next ASA associated with the next song. In operation 1122, playlist manager 424 may check whether the next application is same as the current application. If yes, the process moves to operation 1116 in which playlist manager 424 may pass instructions to the current ASA to play the next song. If no, the process moves to operation 1108 in which playlist manager 424 may check if the next application exists in user device 170.

In some implementations, the user mobile device may be out of memory and may not be able to download one or more ASAs. In such implementations, playlist manager 424 may notify the user that the user mobile device is out of memory. Playlist manager 424 may request the user to clear up the requisite memory and try again. In some implementations, playlist manager 424 may download ASAs 124 as far as the memory can allow. In some implementations, playlist manager 424 may optimize the download based on the memory of the user mobile device. For example, playlist manager 424 may download ASAs 124 that occupy relatively less memory in the user mobile device.

In some implementations, a user may broadcast his/her playlist. For example, a user may share a playlist with his/her friends, with all the users, and/or any other subset of users. In some implementations, playlist manager 424 may receive the playlist and may cause any ASAs associated with the playlist to be installed at user devices with which the playlist have been shared (and which do not have the ASAs already installed).

In some implementations, one or more users may co-listen to a playlist. For example, the user may invite friends to listen

to songs from the playlist, which may be streamed from the user device **170**, from computer system **110**, and/or other device via network **102**. In some implementations, a user with whom the playlist has been shared (and who is co-listening to the playlist) may be invited to download all or a subset of the ASAs associated with the playlist. Responsive thereto, the user may elect to install all or a portion of the ASAs.

As previously noted, the in-stream content management and provisioning platform may be used for various media content of which music from artists is one example. In particular, playlist functionality described herein may be used in contexts other than music and artists as well. Playlist manager **424** may manage playlists related to other types of content such as videos, text, and/or other types of media that is specific to other types of entities (other than artists), items (e.g., products, movies, etc.), and/or other subjects of an entity specific application. For example, and without limitation, movie studios may provide different movie specific applications in which users may download applications specific to their favorite movies. A playlist in the foregoing example may include a series of trailers, movie clips, audio clips, and/or other content made available through movie specific applications, which may be activated or de-activated as described herein. Thus, although described in the context of music shared by artists to their fans, the in-stream content management and provisioning platform (e.g., the functions and features of system **100**) described herein may be used to manage other types of content in relation to other entities of subjects of an entity specific application.

Creating and Managing Dynamic Albums

In an implementation, dynamic album manager **426** may create and maintain one or more dynamic albums. A dynamic album may include a set of songs provided through an ASA **124** installed at user device **170**. The dynamic album may be stored at the user device **170** (e.g., in the manner as described herein with respect to music). Nevertheless, dynamic album manager **426** may modify the set of songs without intervention by the user of user device **170**. Thus, while a user may be able to listen to a dynamic album at the user device **170** even without a network connection, dynamic album manager **426** may maintain control over the dynamic album. In some implementations, the dynamic album may be subject to one or more music leases as described herein.

Dynamic album manager **426** may modify the dynamic album based on one or more album parameters that specify a change to be made to the set of songs. For example, the one or more album parameters specify the removal of one or more songs from the dynamic album, the addition of one or more new songs, the replacement of one or more songs, a rearrangement of (e.g., shuffling) the order of one or more songs, and/or other change to the set of songs.

As used herein and described more fully below, a song that is "added" to a dynamic album may actually be added such that instructions that encode the new song are provided to the ASA, which incorporates the new song into the ASA or otherwise stores the new song such that it is unplayable outside of the ASA. Alternatively, a song may be "added" by merely providing an indication to include a song already stored at the ASA to be added to the dynamic album. Likewise, a song that is "deleted" may actually be deleted or may simply be associated with an indication that indicates that the deleted song should not be played in association with the dynamic album (even though instructions encoding the song remain stored at the ASA).

The album parameters may be specified by an artist via command manager **402** described herein. In this manner, an artist may use the features and functions of a dynamic album

to send music and/or other updates to the dynamic album. For example, the artist may introduce new songs, delete old songs, replace one version of a song with another version of the song, present snippets of songs in production, re-arrange an order in which the songs of a dynamic album are played, specify a first song to be played, and/or otherwise change the dynamic album. As another example, the artist may send an audio and/or a video message (e.g., commentary, uncut versions of the song, outtakes, etc.) to be played in association with the dynamic album.

From the user's perspective, the dynamic album may be modified without the user's intervention so that the user may listen to one version of a dynamic album at a first time and listen to another version of the dynamic album at a later time after the dynamic album has been changed by the artist (or other user/entity). In other implementations, the user may be granted some control over whether a dynamic album is updated. Furthermore, in some implementations, the user may be granted control over what songs/music/content is retained by a given ASA **124**. For example, the user may choose to retain only a subset of songs (including only one song) provided by ASA **124**, enabling the user to select songs that the user wishes to retain subject to a music lease.

In some implementations, the dynamic album may start playing when the ASA is launched. For example, a first version of the dynamic album may be played when the ASA is launched at a first time and a second version of the dynamic album may be played when the ASA is launched at a later time after the dynamic album has been changed. In some implementations, the dynamic album may start playing when the user launches (e.g., starts playing) the dynamic album in the ASA.

FIG. **12** illustrates a flow diagram depicting a process **1200** for changing a dynamic album at user devices based on album parameters received from an artist, according to an implementation of the invention.

In an operation **1202**, dynamic album manager **426** may obtain one or more album parameters. For example, dynamic album manager **426** may receive the one or more album parameters from an artist via a communication channel provided by command manager **402**.

In an operation **1204**, dynamic album manager **426** may determine one or more changes to be made to the dynamic album based on the album parameters. For instance, dynamic album manager **426** may identify a new song to be added to the dynamic album, a song to be removed from the dynamic album, and/or otherwise identify one or more changes to be made to the dynamic album.

In an operation **1206**, dynamic album manager **426** may generate album modification information that indicates the changes to be made. The album modification information may include the album parameters and/or otherwise include information that indicates the one or more changes to be applied.

In an operation **1208**, dynamic album manager **426** may transmit the album modification information to the relevant ASA. The ASA may then apply the changes to the dynamic album. In some implementations, such changes are applied without the user's consent or intervention. In other implementations, the ASA provides the user with an opportunity to reject such changes.

Dynamic album manager **426** may identify user devices **170** (e.g., an ASA executing on a user device **170**) to which the album modification information should be provided. For example, first album modification information relating to a first ASA may be provided to user devices **170** that have the first ASA installed thereon, while second album modification

information relating to a second ASA may be provided to user devices **170** that have the second ASA installed thereon.

A user device **170** may be identified based on a communication received from the user device **170** and/or based on a registry of user devices that have downloaded ASAs. An ASA installed on a user device **170** may periodically provide a communication to a version of dynamic album manager **426** executing on computer system **110** (e.g., to request a new music lease or otherwise simply check-in each time the ASA is launched, expressly request the album modification information, etc.). The communication may include information used to identify the user device (e.g., a MAC address), the ASA (e.g., an application identifier, an application version, etc.), and/or other information used to determine that a given ASA is installed at the user device.

Responsive to the communication, dynamic album manager **426** may determine whether album modification information should be provided to the user device **170** (e.g., based on whether the album modification information relates to the ASA that is communicating with dynamic album manager **426**). If so, then dynamic album manager **426** may provide the relevant album modification information to the user device. Other factors may affect the determination of whether to provide the album modification information, such as whether the ASA is using a current version of the dynamic album, as described more fully below.

In an implementation, dynamic album manager **426** may identify one or more user devices that have downloaded the ASA and may push the album modification information to relevant devices. For example, in an implementation, dynamic album manager **426** may query a database that stores indications of devices that have previously downloaded the ASA related to the dynamic album.

In some implementations, the album parameter may indicate a delete operation to delete one or more songs from one or more albums in the ASA. To that end, the dynamic album manager may generate album modification instructions that include the delete operation. Based on the album modification instructions, the dynamic album manager may cause the deletion of one or more songs from the memory of the user mobile device.

In some implementations, the album parameter may indicate an add operation to add one or more songs to one or more albums in the ASA. To that end, the dynamic album manager may generate album modification instructions that include the add operation. Based on the album modification instructions, the dynamic album manager may cause the addition of one or more songs to the memory of the user mobile device.

In some implementations, the album parameter may indicate a replace operation to replace a first song with a second song in one or more albums in the ASA. To that end, the dynamic album manager may generate album modification instructions that include the replace operation. Based on the album modification instructions, the dynamic album manager may cause the replacement of the first song with the second song in the memory of the user mobile device.

In some implementations, the dynamic album manager may generate the album modification instructions to replace a first song with a second song as a combination of delete and add operation, according to the various implementations described above. For example, the album modification instructions may include a delete operation to delete the first song from a dynamic album, and an add operation to add the second song to the dynamic album.

The artist, using the replace operation, may replace a first song in a dynamic album with a second song. For example, the artist may want to replace a song with an entirely different

**28**

song. As another example, the artist may want to replace a studio-recorded song with a song recorded during a live concert. As another example, the artist may want to replace a short or a trial version of a song with the full version. As another example, the artist may want to replace an older version of the song with a re-mastered, re-conducted, or a re-mixed version of the song,

Alternatives to Actually Adding or Deleting Songs

In some implementations, a version of dynamic album manager **426** (e.g., part of the ASA) executing at a user device **170** may cause the ASA to maintain an album indicator for each of the songs in the dynamic album. The dynamic album manager may cause the ASA to set the album indicators to accomplish various operations included in the album modification instructions.

For example, when the ASA receives album modification instructions to delete one or more songs from the album, the ASA may set the album indicator for the one or more songs to indicate that the one or more songs are not to be played when the dynamic album is played. Alternatively, the ASA may set the album indicator for one or more undeleted songs to indicate that the one or more songs are to be played when the dynamic album is played. Alternatively and/or additionally the ASA may set the indicators for the one or more deleted songs to indicate that the deleted one or more songs are not to be played and to set the indicators for the undeleted one or more songs to indicate that that the undeleted one or more songs are to be played when the dynamic album is played. In some implementations, one or more songs that are indicated not to be played may not be seen by the user of the mobile device. In some implementations, one or more songs that are indicated not to be played may be seen by the user of the mobile device.

As another example, the ASA may receive album modification instructions to add one or more songs to the album. In some implementations, the one or more songs to be added may already be present in the memory of the user device but with its album indicator set to not be played when the dynamic album is played. In these implementations, the ASA may update the album indicator to indicate that the one or more songs are to be played when the dynamic album is played. As such, the version of dynamic album manager **426** executing at computer system **110** may not transmit the one or more songs to be added along with the album modification instructions.

In some implementations, the one or more songs to be added may not exist in the memory of the user mobile device. In such implementations, the one or more songs to be added may be included in or provided together with or separately from the album modification instructions. In such implementations, the ASA may receive the album modification instructions and may add the one or more songs to the memory of the user device **170**.

As another example, the ASA may receive album modification instructions to replace a first song with a second song. The replace operation may be accomplished by a combination of delete and add operations, according to various embodiments described above.

In some implementations, the album indicator may include a binary setting (e.g., a '0' may indicate that the associated song is not to be played when the dynamic album is played and a '1' may indicate that the associated song is to be played when the dynamic album is played). In other implementations, the indicator may be non-binary. The value of the indicator may be used to represent one of several possible states. For example, one value may indicate one or songs to be "not to be played, can be seen by the user" while another value may

indicate one or more songs to be "not to be played, cannot be seen by the user." In some implementations, the indicators may indicate the sequence in which the songs are to be played.

In some implementations, the album modification instructions may indicate a shuffle operation be performed to modify the sequence of songs to be played in the dynamic album. In some implementations, the artist may specify one or more shuffle criteria. For example, the artist may specify that the most recent song has to be played first, followed by the second most recent, and so on. In some implementations, the artist may randomize the order of songs as a shuffle criterion. In some implementations, the shuffle operation may be combined with add, delete, and/or replace operations as described in various implementations above. In some implementations, the shuffle operation may be accomplished by setting the indicators to change the sequence in which the songs are to be played.

As previously noted, the in-stream content management and provisioning platform may be used for various media content of which music from artists is one example. In particular, dynamic album functionality described herein may be used in contexts other than music and artists as well. Dynamic album manager **426** may provide, for example, different movie trailers, clips, and/or other content related to movie specific applications. Thus, although described in the context of music shared by artists to their fans, the in-stream content management and provisioning platform (e.g., the functions and features of system **100**) described herein may be used to manage other types of content in relation to other entities of subjects of an entity specific application.

Dynamic Album Version Control

In some implementations, dynamic album manager **426** may account for different versions of the dynamic album existing on an ASA of a user device **170**. The different versions may result from, for example, user device **170** not receiving an album modification instruction, not applying an album modification instruction, or otherwise being unable to synchronize its version of the dynamic album with the current version. In some implementations, dynamic album manager **426** may obtain the dynamic album version stored at the user device **170** and may compare the obtained version with the current version at computer system **110**. For example, the ASA may provide the dynamic album version to dynamic album manager **426**. Based on the comparison, dynamic album manager **426** may generate and provide album modification instructions to the user device **170** to account for any differences.

FIG. **13** illustrates a flow diagram depicting a process **1300** for accounting for different versions of a dynamic album associated with an ASA at a user device **170**, according to an implementation of the invention.

In an operation **1302**, dynamic album manager **426** may obtain the version of the dynamic album associated with an ASA at user device **170**. In some implementations, dynamic album manager **426** may communicate, to user device **170**, a request to send the version information of a dynamic album. In some implementations, dynamic album manager **426** may receive, from user device **170**, a communication that includes the version information of a dynamic album.

If the version information is received, in an operation **1304**, dynamic album manager **426** may compare the received version with the current version. In an operation **1306**, if the received version is current, processing may loop back to operation **1302** or may terminate. If the received version is not current, in an operation **1308**, dynamic album manager **426** may generate album modification instructions based on the comparison. In some implementations, the album modifica-

tion instructions may include add, delete, and/or replace operations to account for the difference between the received version and the current version. In some implementations, the modifications instructions may include operations for a complete replacement of the dynamic album at user device **170** with the current version.

In an operation **1310**, dynamic album manager **426** may cause the dynamic album at user device **170** to be modified based on the album modification instructions. In some implementations, dynamic album manager **426** may communicate the album modification instructions to user device **170**. In some implementations, dynamic album manager **426** may access the memory of the user device **170** to modify the dynamic album based on the album modification instructions.

In some implementations, the dynamic album manager **426** may store the differences between the successive versions of the dynamic album. For example, dynamic album manager **426** may store a delta that indicates a change from one version to the next version of the dynamic album. A series of deltas may therefore be applied in order to determine the current state of a dynamic album. Alternatively or additionally, whole copies of a given version of a dynamic album may be stored and marked with a corresponding version identifier.

In some implementations dynamic album manager **426** may receive a communication from user device **170** that indicates the user device does not have enough memory for the modification of the dynamic album. The user may be requested to try again after freeing up the memory required for the update or otherwise additional attempts may be made periodically.

In some implementations, dynamic album manager **426** may receive a communication including an amount of free memory for the dynamic album. In such implementation, dynamic album manager may communicate instructions to user device **170** to provide an option to the user for a partial modification. A partial modification may apply modifications as far as the memory can allow. For example, delete and replace operations, according to various implementations, may be applied but an add operation may not be applied. In some implementations, dynamic album manager **426** may optimize the album modification instructions so that a memory footprint required to carry out the album modification instructions is minimized. For example, delete operations may be performed before add operations.

In some implementations, one or more users of the ASAs may wish to control the modifications to the dynamic albums. To that end, dynamic album manager **426** may cause the ASA to provide options to the user to configure the dynamic modifications. In some implementations, the user may modify the dynamic album manually. In some implementations, the user may allow the modification of dynamic album periodically, for example, once every week, or once every month. In some implementations, the user may want only the "major" modifications, for example, when the artist adds or replaces more than five songs. In some implementations, dynamic album manager **426** may cause the ASA to allow the users to indicate that the one or more songs are not to be replaced or deleted. In some implementations, dynamic album manager **426** may cause modifications to be applied only when the dynamic album is not currently playing.

User Interfaces Provided by an ASA

Having described the various implementations of the system, attention will now be turned to examples of functions and interfaces provided by an ASA. As previously noted, a given ASA may be installed at a user device **170**. An ASA may

include some or all of system instructions **122**. As such, some or all of system instructions **122** may program user device **170** as well.

FIG. **14** illustrates a non-limiting example of a screenshot of a unified player interface **1400** that plays music from an ASA and/or music not associated with the ASA, according to an implementation of the invention.

The screenshot illustrated in FIG. **14** and other drawing figures are for illustrative purposes only. Various components may be added, deleted, moved, or otherwise changed so that the configuration, appearance, and/or content of the screenshots may be different than as illustrated in the figures. Accordingly, the graphical user interface objects as illustrated (and described in greater detail below) are exemplary by nature and, as such, should not be viewed as limiting. Furthermore, as would be appreciated, the various components of unified player interface **1400** may cause certain commands to be performed at or data provided to ASA (e.g., locally at a user device) and/or remote devices such as a computer system **110**.

The unified player interface **1400** may include a section **1402** that displays a plurality of songs that are associated with an ASA (e.g., songs that are not playable outside of the ASA). The songs listed in section **1403** may correspond to an album **1401**. In an implementation, album **1401** includes a dynamic album that may be changed by the artist with or without user intervention as described herein.

The songs in section **1402** may be associated with indicators of popularity (illustrated in FIG. **14** as stars with a corresponding number that indicates a number of users that have "liked" the song). Filled-in stars (or other differentially displayed indicators) may indicate that the user has liked a corresponding song as well.

Section **1404** may display other ASAs installed in user device **170**. Selection of another ASA may cause music from the selected application to be played. In some implementations, such selection may cause the selected application to be launched and its unified player interface to be launched as well, essentially replacing the unified player interface **1400**. In a sense, such selection may cause a handoff from one ASA to another ASA.

In some implementations, sections **1402** and **1404** may together represent a playlist described herein, where different songs from different ASAs in a playlist cause handoffs between ASAs to occur.

Section **1406** may display music that is not associated with an installed ASA. For example, unified player interface **1400** may search for locally stored music and display them for selection in section **1406**. Upon selection of such locally stored music, unified player interface **1400** may play the selected music, delivering a seamless experience for users who have locally downloaded music and ASAs. In some implementations, section **1406** may include streaming music sources as well.

Section **1408** may display controls used to quickly access downloaded songs/ASAs through icon **1408***a*, music playback controls **1408***b*, and messages through icon **1408***c*. Selection of icon **1408***a* may cause the ASA to display a selectable list of ASAs installed at user device **170**. Selection of a downloaded ASA may cause a handoff to that application. Selection of icon **1408***c* may cause the ASA to display alerts or other messages that the user has received.

FIG. **15** illustrates a non-limiting example of a screenshot of an interface **1500** for displaying content updates, according to an implementation of the invention. The interface **1500** may include section **1502** that displays a plurality of updates. In some implementations, the plurality of updates may include an alert for exclusive sound loop. In some implemen-

tations, the alert may include instructions to identify the exclusive sound loop existing in the ASA. In some implementations, the alert may include instructions to generate an exclusive sound loop form a combination of various portions of a plurality of songs. For example, an exclusive sound loop may include a combination of chorus from song A, chorus from song B, introduction from song C, and/or any other portions of a plurality of songs. In some implementations, the exclusive sound loop may be received by the ASA in association with the alert.

In some implementations, the plurality of alerts may include an alert inquiring whether the user likes a tune. In some implementations, the alert may include instructions to identify the tune existing in the ASA. In some implementations, the tune may be received by the ASA in association with the alert.

In some implementations, the plurality of alerts may include an alert associated with a sound clip. The sound clip may be received by the ASA in association with the alert. In some implementations, the alert may include an inquiry on whether the user likes the sound clip.

The plurality of alerts may include alerts for photographs, videos, and/or any other content provided to the user.

Section **1510** may also display the date/time when the alert was received. For example, an alert may be received 5 minutes ago, 6 days ago, at a certain date, and/or any other date/time. Section **1510** may also display the number of times the alert has been dubbed a favorite, indicated by the number of stars. The dark stars may indicate that the user has tagged the alert as a favorite, and the white stars may indicate that the user has not tagged the alert as a favorite.

FIG. **16** illustrates a non-limiting example of a screenshot of an interface **1600** for displaying a plurality of menu icons associated with an ASA, according to various implementations.

Menu icon **1601** may display the number of alerts **1601***a* the user has received. Selecting the menu icon **1601** may cause the ASA to display interface **1700** that displays messages.

Menu icon **1602** may be associated with a loyalty item such as a "heart" as illustrated. Selecting the menu icon **1602** may cause the ASA to display a number of loyalty items accrued by the user.

Selecting the menu icon **1603** may cause the ASA to display interface **1800** that displays rewards available for redemption. Menu icon **1604** may display the number of ASAs **1604***a* installed at user device **170**. Selecting the menu icon **1604** may cause the ASA to display ASAs installed at user device **170**. The ASA may allow the user to switch to one of the other ASAs, which may cause a handoff to occur.

Selecting menu icon **1605** may cause the ASA to display playlists described herein. In some implementations, selecting menu icon **1605** may cause the ASA to display unified player interface **1400**.

Selecting the menu icon **1606** may cause the ASA to display the website of the associated with an operator of the system. Selecting the menu icon **1607** may cause the ASA to display achievements such as badges accrued by the user. Selecting the menu icon **1608** may cause the ASA to display a fan board interface **1900** that display a fan board.

Selecting the menu icon **1609** may cause the ASA to display the purchases made by the user from one or more ASAs and/or interface **1800**. Selecting the menu icon **1610** may cause the ASA to display a log in interface for the user to log into the ASA.

Although described with respect to icons that represent various other interfaces, the various interfaces described

herein may be navigated by swiping a touchscreen (or performing another user interface action) to scroll through the various interfaces.

FIG. 17 illustrates a non-limiting example of a screenshot of an interface 1700 for displaying messages received by the user, according to an implementation of the invention. Section 1702 may display details of a message. Section 301 may include a number of input methods to create a message, such as an icon 304 that represents a text input, an icon 305 that represents an image/camera input, or an icon 306 that represents a voice input. Other types of input may be used as well. Icon 303 may allow the user to transmit a message (whether text, image, audio, and/or other format) to the artist (or other users).

FIG. 18 illustrates a non-limiting example of a screenshot of an interface 1800 that facilitates redemption of one or more loyalty points for a reward, according to an implementation of the invention. The interface 1800 may include a plurality of sections 401, 402, 403, 404, 405, and 406 that each displays information associated with an individual reward. Within a given section may display an avatar (e.g. a picture, image, and/or other representation) associated with the reward, a name of the reward, a description of the reward, and a number of loyalty points required to obtain the reward.

FIG. 19 illustrates an example of the fan board display 1900, according to an implementation of the invention. The exemplary fan board display facilitates the user to see the aggregate fan information of the artist associated with the ASA.

The fan board display 1900 may include the top fans of the artist based on the aggregate fan information. In some implementations, the fan board manager may communicate to the system server, the user activities associated with an ASA. The system server may use the information on the user activities to generate the fan boards.

FIG. 20 illustrates a non-limiting example of a screenshot of an interface 2000 for displaying the discussion board to which users and the artist may post messages, including content such as music, according to an implementation of the invention. The interface may include an avatar 2001 (e.g. a picture, image, and/or other representation) associated with the artist, a message 2002 from the artist, a comment window 2003 for the user to provide a comment, and a feed 2004 of messages made by users and replies/comments by the artist.

FIG. 21 illustrates a non-limiting example of a screenshot of an interface 2100 for displaying the affiliation of the artist with one or more merchandise items, according to an implementation of the invention. The interface 2100 may include a merchandise tag 2102 associated with an image 2101 of the artist holding/wearing the merchandise item. Upon selection of merchandise tag 2102, information related to the tagged merchandise (e.g., manufacturer, style, color, size, etc.) may be displayed and/or an interface to purchase the tagged merchandise may be displayed.

FIG. 22 illustrates a non-limiting example of a screenshot of an interface 2200 for displaying non-intrusive targeted advertisements in the ASA, according to an implementation of the invention. Interface 2200 may include a plurality of advertisement icons 2202 presented as favorite sites of the artist. The advertisement icons may include links to downloads of other ASAs. Selecting an icons associated with another ASA may cause the other ASA to be downloaded. Interface 2200 may also include a plurality of icons 2203 for social media that is of interest to the artist. Selecting on an icon may cause the ASA to display the respective social media feed.

In some implementations, interface 2200 may include a search window 801 that receives search input to search for content within the ASA, other ASAs, and/or remote devices (e.g., other user devices 170, computer system 110, etc.).

Computer system 110 and user devices 170 may each include, without limitation, server devices (e.g., server blades), desktop computers, laptop computers, tablet computers, mobile computers (e.g., smartphones), dedicated media player devices, and/or device that may be programmed with the various computer program instructions described herein (e.g., platform management application 120, system instructions 122, ASAs 124, etc.).

Although illustrated in FIG. 1 as a single component, computer system 110 may include a plurality of individual components (e.g., computer devices) each programmed with at least some of the functions described herein. In this manner, some components of computer system 110 may perform some functions while other components may perform other functions, as would be appreciated. The one or more processors 112 may each include one or more physical processors that are programmed by computer program instructions. The various instructions described herein are exemplary only. Other configurations and numbers of instructions may be used, so long as the processor(s) 112 are programmed to perform the functions described herein.

Furthermore, it should be appreciated that although the various instructions are illustrated in FIG. 1 as being co-located within a single processing unit, in implementations in which processor(s) 112, 172 includes multiple processing units, one or more instructions may be executed remotely from the other instructions.

The description of the functionality provided by the different instructions described herein is for illustrative purposes, and is not intended to be limiting, as any of instructions may provide more or less functionality than is described. For example, one or more of the instructions may be eliminated, and some or all of its functionality may be provided by other ones of the instructions. As another example, processor(s) 112, 172 may be programmed by one or more additional instructions that may perform some or all of the functionality attributed herein to one of the instructions.

The various instructions described herein may be stored in a storage device 114, 174 which each may comprise random access memory (RAM), read only memory (ROM), and/or other memory. The storage device may store the computer program instructions (e.g., the aforementioned instructions) to be executed by processor 112, 172 as well as data that may be manipulated by processor 112, 172. The storage device may comprise floppy disks, hard disks, optical disks, tapes, or other storage media for storing computer-executable instructions and/or data.

The various components illustrated in FIG. 1 may be coupled to at least one other component via network 102, which may include any one or more of, for instance, the Internet, an intranet, a PAN (Personal Area Network), a LAN (Local Area Network), a WAN (Wide Area Network), a SAN (Storage Area Network), a MAN (Metropolitan Area Network), a wireless network, a cellular communications network, a Public Switched Telephone Network, and/or other network. In FIG. 1 and other drawing Figures, different numbers of entities than depicted may be used. Furthermore, according to various implementations, the components described herein may be implemented in hardware and/or software that configure hardware.

The various databases 130 described herein may be, include, or interface to, for example, an Oracle™ relational database sold commercially by Oracle Corporation, MySQL,

35

SYBASE, Informix™, DB2 (Database **2**) or other data storage, including file-based, or query formats, platforms, or resources such as OLAP (On Line Analytical Processing), SQL (Structured Query Language), a SAN (storage area network), Microsoft Access™ or others may also be used, incorporated, or accessed. The database may comprise one or more such databases that reside in one or more physical devices and in one or more physical locations. The database may store a plurality of types of data and/or files and associated data or file descriptions, administrative information, or any other data.

Other implementations, uses and advantages of the invention will be apparent to those skilled in the art from consideration of the specification and practice of the invention disclosed herein. The specification should be considered exemplary only, and the scope of the invention is accordingly intended to be limited only by the following claims.

What is claimed is:

1. A computer implemented method for updating a dynamic album that includes a set of songs stored in relation to and played by an artist specific application associated with an artist, the method being implemented on a user device having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the user device to perform the method, the method comprising:

receiving, by the user device, one or more album parameters that specify a change to be made to the dynamic album that includes a plurality of songs, wherein the dynamic album is stored via information encoding the plurality of songs at the user device in association with the artist specific application that plays the dynamic album at the user device;

accessing, by the user device, the information encoding the plurality of songs responsive to receipt of the one or more album parameters;

modifying, by the user device, the information encoding the plurality of songs based on the one or more album parameters to change the dynamic album without intervention by a user of the user device;

storing, by the user device, the modified information encoding the plurality of songs at the user device; and

playing, by the user device, at least some of the dynamic album through the artist specific application based on the modified information encoding the plurality of songs at the user device.

2. The method of claim **1**, wherein the one or more album parameters originate from the artist associated with the artist specific application to change the dynamic album for users that have installed the artist specific application.

3. The method of claim **1**, wherein the information encoding the plurality of songs is integrated with an executable file associated with the artist specific application.

4. The method of claim **1**, wherein the one or more album parameters specify a new song to be added to the dynamic album, the method further comprising:

receiving information that encodes the new song, wherein modifying the information encoding the plurality of songs comprises re-encoding the information encoding the plurality of songs such that the new song is included in the dynamic album.

5. The method of claim **1**, wherein the one or more album parameters specify a song to be removed from the dynamic album, the method further comprising:

omitting the song to be removed during playback of the dynamic album.

36

6. The method of claim **5**, wherein omitting the song to comprises deleting the song.

7. The method of claim **5**, wherein omitting the song comprises updating an indicator associated with the song to be removed to indicate that the song should not be played in association with the dynamic album.

8. The method of claim **1**, wherein the one or more album parameters specify a song to be replaced with a replacement song, the method further comprising:

causing the replacement song to be played instead of the song to be replaced during playback of the dynamic album.

9. The method of claim **8**, wherein the replacement song comprises a different version of a song to be replaced.

10. The method of claim **1**, wherein the one or more album parameters specify a reshuffling of the dynamic album, the method further comprising:

changing an order in which the plurality of songs of the dynamic album is played based on the one or more album parameters.

11. The method of claim **1**, wherein the plurality of songs is playable at the user device through only the artist specific application.

12. The method of claim **1**, wherein the dynamic album is subject to a music lease that, when expires, renders the dynamic album unplayable, the method further comprising:

determining whether the music lease has been expired; and

rendering the dynamic album unplayable responsive to a determination that the music lease has expired.

13. The method of claim **1**, the method further comprising:

initiating playback of the dynamic album upon initiation of the artist specific application.

14. A system for updating a dynamic album that includes a set of songs stored in relation to and played by an artist specific application associated with an artist, the system comprises:

a user device comprising one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the user device to:

receive one or more album parameters that specify a change to be made to the dynamic album that includes a plurality of songs, wherein the dynamic album is stored via information encoding the plurality of songs at the user device in association with the artist specific application that plays the dynamic album at the user device;

access the information encoding the plurality of songs responsive to receipt of the one or more album parameters;

modify the information encoding the plurality of songs based on the one or more album parameters to change the dynamic album without intervention by a user of the user device;

store the modified information encoding the plurality of songs at the user device; and

play at least some of the dynamic album through the artist specific application based on the modified information encoding the plurality of songs at the user device.

15. The system of claim **14**, wherein the one or more album parameters originate from the artist associated with the artist specific application to change the dynamic album for users that have installed the artist specific application.

16. The system of claim **14**, wherein the information encoding the plurality of songs is integrated with an executable file associated with the artist specific application.

**37**

17. The system of claim **14**, wherein the one or more album parameters specify a new song to be added to the dynamic album, the user device further programmed to:

receive information that encodes the new song, wherein modifying the information encoding the plurality of songs comprises re-encoding the information encoding the plurality of songs such that the new song is included in the dynamic album.

18. The system of claim **14**, wherein the one or more album parameters specify a song to be removed from the dynamic album, wherein the user device is further programmed to:

omit the song to be removed during playback of the dynamic album.

19. The system of claim **18**, wherein to omit the song, the user device is further programmed to delete the song.

20. The system of claim **18**, wherein to omit the song, the user device is further programmed to:

update an indicator associated with the song to be removed to indicate that the song should not be played in association with the dynamic album.

21. The system of claim **14**, wherein the one or more album parameters specify a song to be replaced with a replacement song, the user device further programmed to:

cause the replacement song to be played instead of the song to be replaced during playback of the dynamic album.

22. The system of claim **20**, wherein the replacement song comprises a different version of a song to be replaced.

23. The system of claim **14**, wherein the one or more album parameters specify a reshuffling of the dynamic album, wherein the user device is further programmed to:

change an order in which the plurality of songs of the dynamic album is played based on the one or more album parameters.

24. The system of claim **14**, wherein the plurality of songs is playable at the user device through only the artist specific application.

25. The system of claim **14**, wherein the dynamic album is subject to a music lease that, when expires, renders the dynamic album unplayable, wherein the user device is further programmed to:

**38**

determine whether the music lease has been expired; and render the dynamic album unplayable responsive to a determination that the music lease has expired.

26. The system of claim **14**, wherein the user device is further programmed to:

initiate playback of the dynamic album upon initiation of the artist specific application.

27. A computer implemented method for receiving commands from an artist to update a dynamic album at a user device that includes a set of songs stored in relation to and played by an artist specific application associated with the artist, the method being implemented on a computer system having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the computer system to perform the method, the method comprising:

receiving, by the computer system, from the artist, one or more commands that specify a change to be made to the dynamic album played at the user device through the artist specific application associated with the artist;

generating, by the computer system, one or more album parameters used to change the dynamic album based on the one or more commands; and

providing, by the computer system, the one or more album parameters to at least the user device remote from the computer system at which the artist specific application is installed, wherein the one or more album parameters cause the user device to change the dynamic album in association with the artist specific application without intervention by a user of the user device.

28. The method of claim **27**, wherein providing the one or more album parameters to the user device comprises:

identifying the user device based on identifying information used to identify the user device, wherein the one or more album parameters are provided based on the identification.

29. The method of claim **28**, wherein the identifying information comprises a user account identifier that is associated with the user device.

30. The method of claim **27**, wherein the one or more album parameters is provided to the user device responsive to a communication received from the first user device.

\* \* \* \* \*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| ESCAPEX IP LLC,<br>    Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | Civil Action No. 6:22-cv-00428 |
| GOOGLE LLC,<br>    Defendant. | )<br>)<br>) | JURY TRIAL DEMANDED |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

EscapeX IP LLC ("EscapeX") files this Original Complaint and demand for jury trial seeking relief from patent infringement of the claims of U.S. Patent No. 9,009,113 ("the '113 patent") (referred to as the "Patent-in-Suit") by Google LLC ("Google").

**I.    THE PARTIES**

1.   Plaintiff EscapeX is a Texas Limited Liability Company with its principal place of business located in Travis County, Texas.

2.   On information and belief, Google is a Delaware corporation with a principal address of 1600 Amphitheatre Parkway, Mountain View, California 94043 and has regular and established places of business throughout this District, including at least at 500 W 2nd Street Suite 2900, Austin, Texas 78701. Defendant is registered to do business in Texas and has may be served via its registered agent at Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, located at 211 E. 7th Street, Suite 620 Austin, TX 78701.

3.   On information and belief, GOOGLE sells and offers to sell products and services throughout Texas, including in this judicial district, and introduces products and services that perform infringing methods or processes into the stream of commerce knowing that they would be sold in Texas and this judicial district.

1

## II.    JURISDICTION AND VENUE

4.   This Court has original subject-matter jurisdiction over the entire action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because Plaintiff's claim arises under an Act of Congress relating to patents, namely, 35 U.S.C. § 271.

5.   This Court has personal jurisdiction over Defendant because: (i) Defendant is present within or has minimum contacts within the State of Texas and this judicial district; (ii) Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas and in this judicial district; and (iii) Plaintiff's cause of action arises directly from Defendant's business contacts and other activities in the State of Texas and in this judicial district.

6.   Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(b).  Defendant has committed acts of infringement and has a regular and established place of business in this District. Further, venue is proper because Defendant conducts substantial business in this forum, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in Texas and this District.

## III.    INFRINGEMENT - Infringement of the '133 Patent

7.   On April 14, 2015, U.S. Patent No. 9,009,113 ("the '113 patent") entitled "SYSTEM AND METHOD FOR GENERATING ARTIST-SPECIFIED DYNAMIC ALBUMS," was duly and legally issued by the U.S. Patent and Trademark Office.  EscapeX owns the '133 patent by assignment.

8.   The '133 patent relates to a novel and improved method and system that facilitate artist-specified dynamic albums that include music that may be changed with or without intervention by

Appx0061

a user at a user device at which a dynamic album has been stored, according to an implementation of the invention.

9. GOOGLE offers for sale, sells, operates and manufactures one or more systems and methods that infringes one or more claims of the '133 patent, including one or more of claims 1-30, literally or under the doctrine of equivalents. Defendant put the inventions claimed by the '133 Patent into service (i.e., used them); but for Defendant's actions, the claimed-inventions embodiments involving Defendant's products and services would never have been put into service. Defendant's acts complained of herein caused those claimed-invention embodiments as a whole to perform, and Defendant's procurement of monetary and commercial benefit from it.

10. Support for the allegations of infringement may be found in the following preliminary table included as an attachment to this complaint.  These allegations of infringement are preliminary and are therefore subject to change.

11. GOOGLE has and continues to induce infringement from at least the filing date of the lawsuit. GOOGLE has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and services (e.g., Google YouTube Music) and related services that provide question and answer services across the Internet such as to cause infringement of one or more of claims 1-30 of the '133 patent, literally or under the doctrine of equivalents.  Google, from at least the filing date of the lawsuit, has continued to encourage and instruct others on how to use the products showing specific intent. Moreover, Defendant has known of the '133 patent and the technology underlying it from at least the filing date of the lawsuit.[1]  For clarity, direct infringement is previously alleged in this complaint.

---

[1] Plaintiff reserves the right to amend and add inducement pre-suit if discovery reveals an earlier date of knowledge.

Appx0062

12. GOOGLE has and continues to contributorily infringe from at least the filing date of the lawsuit. GOOGLE has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and services (e.g., Google YouTube Music) and related services that provide question and answer services across the Internet such as to cause infringement of one or more of claims 1-30 of the '133 patent, literally or under the doctrine of equivalents.  Google, from at least the filing date of the lawsuit, has continued to encourage and instruct others on how to use the products showing specific intent. Further, there are no substantial noninfringing uses for Defendant's products and services. Moreover, Defendant has known of the '133 patent and the technology underlying it from at least the filing date of the lawsuit. [2] For clarity, direct infringement is previously alleged in this complaint.

13. GOOGLE has caused and will continue to cause EscapeX damage by direct and indirect infringement of (including inducing infringement of) the claims of the '133 patent.

**IV.     JURY DEMAND**

EscapeX hereby requests a trial by jury on issues so triable by right.

**V.      PRAYER FOR RELIEF**

WHEREFORE, EscapeX prays for relief as follows:

a.      enter judgment that Defendant has infringed the claims of the '133 patent through selling, offering for sale, manufacturing, and inducing others to infringe by using and instructing to use Google YouTube Music and related systems and methods;

b.      award EscapeX damages in an amount sufficient to compensate it for Defendant's infringement of the Patents-in-Suit in an amount no less than a reasonable royalty or lost

---

[2] Plaintiff reserves the right to amend and add inducement pre-suit if discovery reveals an earlier date of knowledge.

4

profits, together with pre-judgment and post-judgment interest and costs under 35 U.S.C. § 284;

c.  award EscapeX an accounting for acts of infringement not presented at trial and an award by the Court of additional damage for any such acts of infringement;

d.  declare this case to be "exceptional" under 35 U.S.C. § 285 and award EscapeX its attorneys' fees, expenses, and costs incurred in this action;

e.  declare Defendant's infringement to be willful and treble the damages, including attorneys' fees, expenses, and costs incurred in this action and an increase in the damage award pursuant to 35 U.S.C. § 284;

f.  a decree addressing future infringement that either (if) awards a permanent injunction enjoining Defendant and its agents, servants, employees, affiliates, divisions, and subsidiaries, and those in association with Defendant from infringing the claims of the Patents-in-Suit, or (ii) awards damages for future infringement in lieu of an injunction in an amount consistent with the fact that for future infringement the Defendant will be an adjudicated infringer of a valid patent, and trebles that amount in view of the fact that the future infringement will be willful as a matter of law; and

g.  award EscapeX such other and further relief as this Court deems just and proper.

Respectfully submitted,

**Ramey LLP**

*/s/William P. Ramey, III*
William P. Ramey, III
Texas Bar No. 24027643
wramey@rameyfirm.com
Kyril V. Talanov
Texas State Bar No. 24075139
ktalanov@rameyfirm.com

5

Appx0064

5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)

*Attorneys for EscapeX IP LLC*

6

# EXHIBIT A

| US9009113 B1 | Google's YouTube Music |
|---|---|
| 1. A computer implemented method for updating a dynamic album that includes a set of songs stored in relation to and played by an artist specific application associated with an artist, the method being implemented on a user device having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the user device to perform the method, the method comprising: | <br><https://www.youtube.com/musicpremium><br><br>Google's YouTube Music has a computer implemented method for updating a dynamic album that includes a set of songs stored in relation to and played by an artist specific application associated with an artist, the method being implemented on a user device having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the user device to perform the method.<br><br>The reference includes subject matter disclosed by the claims of the patent after the priority date. |

Appx0067

| US9009113 B1 | Google's YouTube Music |
|---|---|
| receiving, by the user device, one or more album parameters that specify a change to be made to the dynamic album that includes a plurality of songs, wherein the dynamic album is stored via information encoding the plurality of songs at the user device in association with the artist specific application that plays the dynamic album at the user device; | <br><br><https://support.google.com/youtube/answer/6084053?hl=en><br><br>The reference describes receiving, by the user device, one or more album parameters that specify a change to be made to the dynamic album that includes a plurality of songs, wherein the dynamic album is stored via information encoding the plurality of songs at the user device in association with the artist specific application that plays the dynamic album at the user device [Playlists settings]. |

| US9009113 B1 | Google's YouTube Music |
|---|---|
| accessing, by the user device, the information encoding the plurality of songs responsive to receipt of the one or more album parameters; | With Auto add settings on your playlists, you can automatically have new videos added to the playlists you created.<br><br>The Auto add settings allow you to define rules for videos based on tags or keywords. If new videos meet the criteria, the videos are automatically added to the playlist.<br><br><https://support.google.com/youtube/answer/6084053?hl=en><br><br>The reference describes accessing, by the user device, the information encoding the plurality of songs responsive to receipt of the one or more album parameters [The Auto add settings allow you to define rules for videos based on tags or keywords]. |

| US9009113 B1 | Google's YouTube Music |
| --- | --- |
| modifying, by the user device, the information encoding the plurality of songs based on the one or more album parameters to change the dynamic album without intervention by a user of the user device;<br><br>storing, by the user device, the modified information encoding the plurality of songs at the user device; and | With Auto add settings on your playlists, you can automatically have new videos added to the playlists you created.<br><br>The Auto add settings allow you to define rules for videos based on tags or keywords. If new videos meet the criteria, the videos are automatically added to the playlist.<br><br><https://support.google.com/youtube/answer/6084053?hl=en><br><br>The reference describes modifying, by the user device, the information encoding the plurality of songs based on the one or more album parameters to change the dynamic album without intervention by a user of the user device [If new videos meet the criteria, the videos are automatically added to the playlist].<br><br>The reference describes storing, by the user device, the modified information encoding the plurality of songs at the user device [If new videos meet the criteria, the videos are automatically added to the playlist]. |

Appx0070

| US9009113 B1 | Google's YouTube Music |
|---|---|
| playing, by the user device, at least some of the dynamic album through the artist specific application based on the modified information encoding the plurality of songs at the user device. | **How playlists work**<br><br>Our music playlists pull in music from across YouTube by using various signals. These include machine learning, social signals, signals from other Google products and services, and human input (including from our listeners). These playlists serve as one of many inputs to YouTube's recommendation system. The stronger a track performs in our music playlists and across YouTube, the more likely it is to surface to listeners.<br><br><https://support.google.com/youtube/answer/7665542?hl=en><br><br>The reference describes playing, by the user device, at least some of the dynamic album through the artist specific application based on the modified information encoding the plurality of songs at the user device [Our music playlists pull in music from across YouTube by using various signals]. |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **ESCAPEX IP LLC,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 6:22-cv-00428** |
| **v.** | ) | |
| | ) | |
| **GOOGLE LLC,** | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

EscapeX IP LLC ("EscapeX") files this First Amended Complaint and demand for jury trial seeking relief from patent infringement of the claims of U.S. Patent No. 9,009,113 ("the '113 patent") (referred to as the "Patent-in-Suit") by Google LLC ("Google").

**I.     THE PARTIES**

1.   Plaintiff EscapeX is a Texas Limited Liability Company with its principal place of business located in Travis County, Texas.

2.   On information and belief, Google is a Delaware corporation with a principal address of 1600 Amphitheatre Parkway, Mountain View, California 94043 and has regular and established places of business throughout this District, including at least at 500 W 2nd Street Suite 2900, Austin, Texas 78701. Defendant is registered to do business in Texas and has may be served via its registered agent at Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, located at 211 E. 7th Street, Suite 620 Austin, TX 78701.

3.   On information and belief, GOOGLE sells and offers to sell products and services throughout Texas, including in this judicial district, and introduces products and services that perform infringing methods or processes into the stream of commerce knowing that they would be sold in Texas and this judicial district.

1

Appx0072

## II.      JURISDICTION AND VENUE

4.   This Court has original subject-matter jurisdiction over the entire action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because Plaintiff's claim arises under an Act of Congress relating to patents, namely, 35 U.S.C. § 271.

5.   This Court has personal jurisdiction over Defendant because: (i) Defendant is present within or has minimum contacts within the State of Texas and this judicial district; (ii) Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas and in this judicial district; and (iii) Plaintiff's cause of action arises directly from Defendant's business contacts and other activities in the State of Texas and in this judicial district.

6.   Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(b).  Defendant has committed acts of infringement and has a regular and established place of business in this District. Further, venue is proper because Defendant conducts substantial business in this forum, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in Texas and this District.

## III.      INFRINGEMENT - Infringement of the '113 Patent

7.   On April 14, 2015, U.S. Patent No. 9,009,113 ("the '113 patent") entitled "SYSTEM AND METHOD FOR GENERATING ARTIST-SPECIFIED DYNAMIC ALBUMS," was duly and legally issued by the U.S. Patent and Trademark Office.  EscapeX owns the '113 patent by assignment.

8.   The '113 patent relates to a novel and improved method and system that facilitate artist-specified dynamic albums that include music that may be changed with or without intervention by

2

Appx0073

a user at a user device at which a dynamic album has been stored, according to an implementation of the invention.

9. GOOGLE offers for sale, sells, operates and manufactures one or more systems and methods that infringes one or more claims of the '113 patent, including one or more of claims 1-30, literally or under the doctrine of equivalents. Defendant put the inventions claimed by the '113 Patent into service (i.e., used them); but for Defendant's actions, the claimed-inventions embodiments involving Defendant's products and services would never have been put into service. Defendant's acts complained of herein caused those claimed-invention embodiments as a whole to perform, and Defendant's procurement of monetary and commercial benefit from it.

10. Support for the allegations of infringement may be found in the following preliminary table included as an attachment to this complaint. These allegations of infringement are preliminary and are therefore subject to change.

11. GOOGLE has and continues to induce infringement from at least the filing date of the lawsuit. GOOGLE has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and services (e.g., Google YouTube Music) and related services that provide question and answer services across the Internet such as to cause infringement of one or more of claims 1-30 of the '113 patent, literally or under the doctrine of equivalents. Google, from at least the filing date of the lawsuit, has continued to encourage and instruct others on how to use the products showing specific intent. Moreover, Defendant has known of the '113 patent and the technology underlying it from at least the filing date of the lawsuit.[1]   For clarity, direct infringement is previously alleged in this complaint.

---

[1] Plaintiff reserves the right to amend and add inducement pre-suit if discovery reveals an earlier date of knowledge.

12. GOOGLE has and continues to contributorily infringe from at least the filing date of the lawsuit. GOOGLE has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and services (e.g., Google YouTube Music) and related services that provide question and answer services across the Internet such as to cause infringement of one or more of claims 1-30 of the '113 patent, literally or under the doctrine of equivalents.  Google, from at least the filing date of the lawsuit, has continued to encourage and instruct others on how to use the products showing specific intent. Further, there are no substantial noninfringing uses for Defendant's products and services. Moreover, Defendant has known of the '113 patent and the technology underlying it from at least the filing date of the lawsuit. [2] For clarity, direct infringement is previously alleged in this complaint.

13. GOOGLE has caused and will continue to cause EscapeX damage by direct and indirect infringement of (including inducing infringement of) the claims of the '113 patent.

## IV.   JURY DEMAND

EscapeX hereby requests a trial by jury on issues so triable by right.

## V.   PRAYER FOR RELIEF

WHEREFORE, EscapeX prays for relief as follows:

a.   enter judgment that Defendant has infringed the claims of the '113 patent through selling, offering for sale, manufacturing, and inducing others to infringe by using and instructing to use Google YouTube Music and related systems and methods;

b.   award EscapeX damages in an amount sufficient to compensate it for Defendant's infringement of the Patents-in-Suit in an amount no less than a reasonable royalty or lost

---

[2] Plaintiff reserves the right to amend and add inducement pre-suit if discovery reveals an earlier date of knowledge.

4

profits, together with pre-judgment and post-judgment interest and costs under 35 U.S.C. § 284;

c.   award EscapeX an accounting for acts of infringement not presented at trial and an award by the Court of additional damage for any such acts of infringement;

d.   declare this case to be "exceptional" under 35 U.S.C. § 285 and award EscapeX its attorneys' fees, expenses, and costs incurred in this action;

e.   declare Defendant's infringement to be willful and treble the damages, including attorneys' fees, expenses, and costs incurred in this action and an increase in the damage award pursuant to 35 U.S.C. § 284;

f.   a decree addressing future infringement that either (if) awards a permanent injunction enjoining Defendant and its agents, servants, employees, affiliates, divisions, and subsidiaries, and those in association with Defendant from infringing the claims of the Patents-in-Suit, or (ii) awards damages for future infringement in lieu of an injunction in an amount consistent with the fact that for future infringement the Defendant will be an adjudicated infringer of a valid patent, and trebles that amount in view of the fact that the future infringement will be willful as a matter of law; and

g.   award EscapeX such other and further relief as this Court deems just and proper.

Respectfully submitted,

**Ramey LLP**

*/s/William P. Ramey, III*
William P. Ramey, III
Texas Bar No. 24027643
wramey@rameyfirm.com
Kyril V. Talanov
Texas State Bar No. 24075139
ktalanov@rameyfirm.com

5

Appx0076

5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)

*Attorneys for EscapeX IP LLC*

6

# EXHIBIT A

| US9009113 B1 | Google's YouTube Music |
|---|---|
| 1. A computer implemented method for updating a dynamic album that includes a set of songs stored in relation to and played by an artist specific application associated with an artist, the method being implemented on a user device having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the user device to perform the method, the method comprising: | <br><https://www.youtube.com/musicpremium><br><br>Google's YouTube Music has a computer implemented method for updating a dynamic album that includes a set of songs stored in relation to and played by an artist specific application associated with an artist, the method being implemented on a user device having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the user device to perform the method.<br><br>The reference includes subject matter disclosed by the claims of the patent after the priority date. |

| US9009113 B1 | Google's YouTube Music |
|---|---|
| receiving, by the user device, one or more album parameters that specify a change to be made to the dynamic album that includes a plurality of songs, wherein the dynamic album is stored via information encoding the plurality of songs at the user device in association with the artist specific application that plays the dynamic album at the user device; | <br><https://support.google.com/youtube/answer/6084053?hl=en><br><br>The reference describes receiving, by the user device, one or more album parameters that specify a change to be made to the dynamic album that includes a plurality of songs, wherein the dynamic album is stored via information encoding the plurality of songs at the user device in association with the artist specific application that plays the dynamic album at the user device [Playlists settings]. |

Appx0080

| US9009113 B1 | Google's YouTube Music |
|---|---|
| accessing, by the user device, the information encoding the plurality of songs responsive to receipt of the one or more album parameters; | With Auto add settings on your playlists, you can automatically have new videos added to the playlists you created.<br><br>The Auto add settings allow you to define rules for videos based on tags or keywords. If new videos meet the criteria, the videos are automatically added to the playlist.<br><br><https://support.google.com/youtube/answer/6084053?hl=en><br><br>The reference describes accessing, by the user device, the information encoding the plurality of songs responsive to receipt of the one or more album parameters [The Auto add settings allow you to define rules for videos based on tags or keywords]. |

Appx0081

| US9009113 B1 | Google's YouTube Music |
|---|---|
| modifying, by the user device, the information encoding the plurality of songs based on the one or more album parameters to change the dynamic album without intervention by a user of the user device;<br><br>storing, by the user device, the modified information encoding the plurality of songs at the user device; and | With Auto add settings on your playlists, you can automatically have new videos added to the playlists you created.<br><br>The Auto add settings allow you to define rules for videos based on tags or keywords. If new videos meet the criteria, the videos are automatically added to the playlist.<br><br><https://support.google.com/youtube/answer/6084053?hl=en><br><br>The reference describes modifying, by the user device, the information encoding the plurality of songs based on the one or more album parameters to change the dynamic album without intervention by a user of the user device [If new videos meet the criteria, the videos are automatically added to the playlist].<br><br>The reference describes storing, by the user device, the modified information encoding the plurality of songs at the user device [If new videos meet the criteria, the videos are automatically added to the playlist]. |

Appx0082

| US9009113 B1 | Google's YouTube Music |
|---|---|
| playing, by the user device, at least some of the dynamic album through the artist specific application based on the modified information encoding the plurality of songs at the user device. | **How playlists work**<br><br>Our music playlists pull in music from across YouTube by using various signals. These include machine learning, social signals, signals from other Google products and services, and human input (including from our listeners). These playlists serve as one of many inputs to YouTube's recommendation system. The stronger a track performs in our music playlists and across YouTube, the more likely it is to surface to listeners.<br><br><https://support.google.com/youtube/answer/7665542?hl=en><br><br>The reference describes playing, by the user device, at least some of the dynamic album through the artist specific application based on the modified information encoding the plurality of songs at the user device [Our music playlists pull in music from across YouTube by using various signals]. |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| ESCAPEX IP LLC,<br>    **Plaintiff,** | ) | |
| | ) | |
| | ) | **Civil Action No. 6:22-cv-00428-ADA** |
| v. | ) | |
| | ) | |
| GOOGLE LLC, | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

EscapeX IP LLC ("EscapeX") files this Second Amended Complaint and demand for jury trial seeking relief from patent infringement of the claims of U.S. Patent No. 9,009,113 ("the '113 patent") (referred to as the "Patent-in-Suit") by Google LLC ("Google").

**I.      THE PARTIES**

1.   Plaintiff EscapeX is a Texas Limited Liability Company with its principal place of business located in Travis County, Texas.

2.   On information and belief, Google is a Delaware corporation with a principal address of 1600 Amphitheatre Parkway, Mountain View, California 94043 and has regular and established places of business throughout this District, including at least at 500 W 2nd Street Suite 2900, Austin, Texas 78701. Defendant is registered to do business in Texas and has may be served via its registered agent at Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, located at 211 E. 7th Street, Suite 620 Austin, TX 78701.

3.   On information and belief, GOOGLE sells and offers to sell products and services throughout Texas, including in this judicial district, and introduces products and services that perform infringing methods or processes into the stream of commerce knowing that they would be sold in Texas and this judicial district.

## II.      JURISDICTION AND VENUE

4.   This Court has original subject-matter jurisdiction over the entire action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because Plaintiff's claim arises under an Act of Congress relating to patents, namely, 35 U.S.C. § 271.

5.   This Court has personal jurisdiction over Defendant because: (i) Defendant is present within or has minimum contacts within the State of Texas and this judicial district; (ii) Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas and in this judicial district; and (iii) Plaintiff's cause of action arises directly from Defendant's business contacts and other activities in the State of Texas and in this judicial district.

6.   Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(b).  Defendant has committed acts of infringement and has a regular and established place of business in this District. Further, venue is proper because Defendant conducts substantial business in this forum, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in Texas and this District.

## III.      INFRINGEMENT - Infringement of the '113 Patent

7.   On April 14, 2015, U.S. Patent No. 9,009,113 ("the '113 patent") entitled "SYSTEM AND METHOD FOR GENERATING ARTIST-SPECIFIED DYNAMIC ALBUMS," was duly and legally issued by the U.S. Patent and Trademark Office.  EscapeX owns the '113 patent by assignment.

8.   The '113 patent relates to a novel and improved method and system that facilitate artist-specified dynamic albums that include music that may be changed with or without intervention by

2

Appx0094

a user at a user device at which a dynamic album has been stored, according to an implementation of the invention.

9. GOOGLE offers for sale, sells, operates and manufactures one or more systems and methods that infringes one or more claims of the '113 patent, including one or more of claims 1-30, literally or under the doctrine of equivalents. Defendant put the inventions claimed by the '113 Patent into service (i.e., used them); but for Defendant's actions, the claimed-inventions embodiments involving Defendant's products and services would never have been put into service. Defendant's acts complained of herein caused those claimed-invention embodiments as a whole to perform, and Defendant's procurement of monetary and commercial benefit from it.

10. Support for the allegations of infringement may be found in Exhibit A included as an attachment to this complaint.  These allegations of infringement are preliminary and are therefore subject to change.

11. GOOGLE has caused and will continue to cause EscapeX damage by direct infringement of the claims of the '113 patent.

## IV.    JURY DEMAND

EscapeX hereby requests a trial by jury on issues so triable by right.

## V.    PRAYER FOR RELIEF

WHEREFORE, EscapeX prays for relief as follows:

a.    enter judgment that Defendant has infringed the claims of the '113 patent;

b.    award EscapeX damages in an amount sufficient to compensate it for Defendant's infringement of the Patents-in-Suit in an amount no less than a reasonable royalty or lost profits, together with pre-judgment and post-judgment interest and costs under 35 U.S.C. § 284;

3

Appx0095

c.   award EscapeX an accounting for acts of infringement not presented at trial and an award by the Court of additional damage for any such acts of infringement;

d.   declare this case to be "exceptional" under 35 U.S.C. § 285 and award EscapeX its attorneys' fees, expenses, and costs incurred in this action;

e.   a decree addressing future infringement that either (if) awards a permanent injunction enjoining Defendant and its agents, servants, employees, affiliates, divisions, and subsidiaries, and those in association with Defendant from infringing the claims of the Patents-in-Suit, or (ii) awards damages for future infringement in lieu of an injunction in an amount consistent with the fact that for future infringement the Defendant will be an adjudicated infringer of a valid patent, and trebles that amount in view of the fact that the future infringement will be willful as a matter of law; and

f.   award EscapeX such other and further relief as this Court deems just and proper.

Respectfully submitted,

**Ramey LLP**

/s/William P. Ramey, III
William P. Ramey, III
Texas Bar No. 24027643
wramey@rameyfirm.com
Kyril V. Talanov
Texas State Bar No. 24075139
ktalanov@rameyfirm.com
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)

**Attorneys for EscapeX IP LLC**

4

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that all counsel of record who have appeared in this case are being served today, September 29, 2022, with a copy of the foregoing via the Court's CM/ECF system.

/s/ William P. Ramey, III
William P. Ramey, III

Appx0097

# EXHIBIT A

| US9009113 B1 Claim 1 | YouTube Video |
|---|---|
| 1. A computer implemented method for updating a dynamic album that includes a set of songs stored in relation to and played by an **artist specific application associated with an artist**, the method being implemented on a user device having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the user device to perform the method, the method comprising: |  Kate Bush - Wuthering Heights - Official Music Video - Version 1<br>32,388, 311K  DISLIKE  SHARE  CLIP  SAVE  ...<br><https://www.youtube.com/watch?v=-1pMMle4hb4&list=PL3014BDDD936B0ED8><br><br>YouTube Video has a computer implemented method for updating a dynamic album that includes a set of songs stored in relation to and played by an artist specific application associated with an artist, the method being implemented on a user device having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the user device to perform the method.<br><br>The reference includes subject matter disclosed by the claims of the patent after the priority date. |

| US9009113 B1 Claim 1 | YouTube Video |
|---|---|
| receiving, by the user device, one or more album parameters that specify a change to be made to the **dynamic album that includes a plurality of songs**, wherein the dynamic album is stored via information encoding the plurality of songs at the user device in association with the **artist specific application that plays the dynamic album** at the user device; | **Playlist settings**<br><br>Basic    Auto add<br><br>**Define rules for videos to be automatically added to this playlist.**<br>New videos fitting any of these rules will automatically be added.<br><br>Description contains ▾   mountain, winter, snow,   🗑<br><br>Tag ▾   skiing   🗑<br><br>⊕ Add rule<br><br>Delete playlist                Cancel   Save<br><br><https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634><br><br>The reference describes receiving, by the user device, one or more album parameters that specify a change to be made to the dynamic album that includes a plurality of songs, wherein the dynamic album is stored via information encoding the plurality of songs at the user device in association with the artist specific application that plays the dynamic album at the user device [Playlists settings].. |

| US9009113 B1 Claim 1 | YouTube Video |
|---|---|
| accessing, by the user device, the **information encoding the plurality of songs** responsive to receipt of the one or more album parameters; | With Auto add settings on your playlists, you can automatically have new videos added to the playlists you created.<br><br>The Auto add settings allow you to define rules for videos based on tags or keywords. If new videos meet the criteria, the videos are automatically added to the playlist.<br><br><https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634><br><br>The reference describes accessing, by the user device, the information encoding the plurality of songs responsive to receipt of the one or more album parameters [The Auto add settings allow you to define rules for videos based on tags or keywords]. |

| US9009113 B1 Claim 1 | YouTube Video |
|---|---|
| modifying, by the user device, the information encoding the plurality of songs based on the one or more album parameters to **change the dynamic album without intervention by a user of the user device**;<br><br>storing, by the user device, the **modified information encoding the plurality of songs at the user device**; and | With Auto add settings on your playlists, you can automatically have new videos added to the playlists you created.<br><br>The Auto add settings allow you to define rules for videos based on tags or keywords. If new videos meet the criteria, the videos are automatically added to the playlist.<br><br><https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634><br><br>The reference describes modifying, by the user device, the information encoding the plurality of songs based on the one or more album parameters to change the dynamic album without intervention by a user of the user device [If new videos meet the criteria, the videos are automatically added to the playlist].<br><br>The reference describes storing, by the user device, the modified information encoding the plurality of songs at the user device [If new videos meet the criteria, the videos are automatically added to the playlist]. |

| US9009113 B1 Claim 1 | YouTube Video |
|---|---|
| **playing**, by the user device, at least some of the dynamic album through the artist specific application based on the **modified information encoding the plurality of songs at the user device.** | **How playlists work**<br><br>Our music playlists pull in music from across YouTube by using various signals. These include machine learning, social signals, signals from other Google products and services, and human input (including from our listeners). These playlists serve as one of many inputs to YouTube's recommendation system. The stronger a track performs in our music playlists and across YouTube, the more likely it is to surface to listeners.<br><br><https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634><br><br>The reference describes playing, by the user device, at least some of the dynamic album through the artist specific application based on the modified information encoding the plurality of songs at the user device [Our music playlists pull in music from across YouTube by using various signals]. |

Appx0101

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| ESCAPEX IP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 6-22-cv-00428-ADA |
| vs. | § | |
| | § | JURY TRIAL DEMANDED |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**GOOGLE'S ANSWER TO SECOND AMENDED COMPLAINT**

Defendant Google LLC ("Google") states the following as its Answer to the Second Amended Complaint of Plaintiff EscapeX IP, LLC ("Plaintiff" or "EscapeX") in the above-entitled action in the correspondingly numbered paragraphs. Any factual allegation admitted below is limited to the specifically stated facts and not as to any assumptions, implications, inferences, conclusions, characterizations, or speculations that may be associated with any of the specifically admitted facts or allegations. Unless expressly admitted, each and every allegation, including any implication, inference, conclusion, characterization, or speculation, including in any headings or non-numbered paragraphs, is denied.

1.      Google lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 1 and accordingly denies them.

2.      Google admits that Google LLC is a Delaware corporation with a principal address of 1600 Amphitheatre Parkway, Mountain View, California 94043. Google admits that it maintains an office in Austin, Texas and that it is registered to do business in Austin, Texas. Except as expressly admitted, Google denies each and every allegation of paragraph 2.

3. Google admits that it provides services to users in Texas, including the Western District. Google denies that it has committed any acts of infringement in this District or any other district. Except as expressly admitted, Google denies each and every allegation of paragraph 3.

4. Google admits that this action invokes the United States patent laws, and that this Court has subject matter jurisdiction over patent law claims. Except as expressly admitted, Google denies each and every allegation of paragraph 4.

5. Google does not contest personal jurisdiction in this District solely for the purpose of this action. Google specifically denies that it has committed any acts of infringement within this District or any other district. Except as expressly admitted, Google denies each and every allegation of paragraph 5.

6. Google does not contest that venue is proper in this District solely for the purpose of this action. Google denies that this venue is convenient for the parties and witnesses or serves the interest of justice under 28 U.S.C. § 1404(a) and reserves the right to seek transfer to a more convenient forum. Google admits that it conducts business in Texas. Google denies that it has committed any acts of infringement in this District or any other district. Except as expressly admitted, Google denies each and every allegation of paragraph 6.

7. Google admits that U.S. Patent No. 9,009,113 ("the '113 Patent") bears the title "System and Method for Generating Artist-Specified Dynamic Albums," and on its face indicates an issue date of April 14, 2015. Google lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 7 and accordingly denies them.

8. Google denies each and every allegation of paragraph 8.

9. Google denies each and every allegation of paragraph 9.

Appx0103

10.     Google admits that Plaintiff's Complaint attaches as an exhibit a table purporting to support Plaintiff's allegations of infringement. Google denies that support for any allegations of infringement may be found in said exhibit and specifically denies that it has committed any acts of infringement. Google lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 10 and accordingly denies them.

11.     Google denies each and every allegation of paragraph 11.

**RESPONSE TO JURY DEMAND**

Plaintiff's demand for a trial by jury for all issues triable to a jury does not state any allegation, and Google is not required to respond. To the extent that any allegations are included in the demand, Google denies these allegations.

**RESPONSE TO PRAYER FOR RELIEF**

These paragraphs set forth the statement of relief requested by Plaintiff to which no response is required. Google denies that Plaintiff is entitled to any of the requested relief. To the extent that any allegations are included in the prayer, Google denies these allegations.

**AFFIRMATIVE DEFENSES**

Subject to the responses above, and without assuming any burden other than that imposed by operation of law, Google alleges and asserts the following defenses in response to Plaintiff's Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denoted below. All defenses are pled in the alternative and do not constitute any admission of liability. In addition to the defenses described below, and subject to its responses above, Google specifically reserves all rights to allege additional affirmative and other defenses that become known based on further investigation, as a result of discovery, or otherwise.

3

**FIRST DEFENSE**
**(FAILURE TO STATE A CLAIM)**

In addition to failing to meet the standard for pleading required by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), Plaintiff's Complaint does not state any viable claim on which relief may be granted. Plaintiff has also failed to provide any basis for damages, accounting, or any other relief sought.

**SECOND DEFENSE**
**(ENSNAREMENT)**

Plaintiff's claims of patent infringement under the doctrine of equivalents, if any, are barred under the doctrine of ensnarement.

**THIRD DEFENSE**
**(NON-INFRINGEMENT)**

Google does not infringe and has not infringed (not directly, contributorily, or by inducement), either literally or under the doctrine of equivalents, and is not liable for infringement of any valid and enforceable claim of the '113 Patent.

**FOURTH DEFENSE**
**(INVALIDITY)**

The claims of the '113 Patent are invalid and unenforceable under 35 U.S.C. § 101 because the claims are directed to abstract ideas or other non-statutory subject matter.

The claims of the '113 Patent are invalid and unenforceable under 35 U.S.C. § 102 because the claims lack novelty, and are taught and suggested by the prior art.

The claims of the '113 Patent are invalid and unenforceable under 35 U.S.C. § 103 because the claims are obvious in view of the prior art and/or the knowledge of one of ordinary skill in the art.

The claims of the '113 Patent are invalid and unenforceable for failure to satisfy the conditions set forth in 35 U.S.C. § 112, including failure of written description, lack of enablement, and claim indefiniteness.

## FIFTH DEFENSE
### (PROSECUTION HISTORY ESTOPPEL)

On information and belief, due to admissions and statements made to the United States Patent and Trademark Office during the prosecution of the applications that resulted in the asserted patent or related patent applications, Plaintiff is estopped from construing a valid and enforceable claim, if any, of the '113 Patent as infringed literally or under the doctrine of equivalents by the Google products accused in Plaintiff's Complaint.

## SIXTH DEFENSE
### (LIMITATION OF DAMAGES)

Plaintiff's claims for relief are barred, in whole or in part, by operation of the applicable statutes which limit damages and other relief, including 35 U.S.C. §§ 284, 286, 287, and/or 288. Even if Plaintiff were to prevail on a claim of infringement, Plaintiff is not entitled to any damages before notice of or after expiration of the asserted patent.

## SEVENTH DEFENSE
### (EQUITABLE DEFENSES)

On information and belief, Plaintiff's claims are estopped or barred, in whole or in part, by the doctrines of waiver, unclean hands, equitable estoppel, laches, acquiescence, and/or other equitable defenses.

## EIGHTH DEFENSE
### (EXHAUSTION)

On information and belief, Plaintiff exhausted the ability to claim infringement by Google of any valid and enforceable claim of the '113 Patent.

Appx0106

## NINTH DEFENSE
### (LACK OF STANDING)

To the extent EscapeX IP, LLC does not own all substantial rights in the '113 Patent, it lacks standing to pursue some or all of its claims against Google.

## PRAYER FOR RELIEF

WHEREFORE, Google denies that EscapeX is entitled to any relief whatsoever on its complaint and respectfully requests that this Court enter judgment as follows:

a. Dismissing Plaintiff's Complaint against Google with prejudice;

b. Finding that Google has not infringed, contributed to the infringement of, or induced others to infringe, either directly or indirectly, any valid and enforceable claim of the '113 Patent;

c. Finding that the '113 Patent is invalid and unenforceable;

d. Declaring that this case is exceptional in favor of Google and that Google is entitled to an award of its reasonable costs and expenses of litigation, including attorneys' fees and expert witness fees;

e. Limiting or barring Plaintiff's ability to enforce the '113 Patent in equity;

f. Granting Google such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Google hereby demands a trial by jury on all issues so triable.

Dated: October 17, 2022                    Respectfully submitted,

*/s/ Brian C. Banner*
Brian C. Banner (TX Bar No. 24059416)
bbanner@sgbfirm.com
Darryl J. Adams (TX Bar No. 00796101)
dadams@sgbfirm.com

6

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| ESCAPEX IP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 6-22-cv-00428-ADA |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**DEFENDANT'S MOTION UNDER 28 U.S.C. § 1404(a) TO TRANSFER VENUE TO
THE NORTHERN DISTRICT OF CALIFORNIA**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................ 1

II.   BACKGROUND ................................................................................................................. 2

   A.  Plaintiff's Allegations ............................................................................................ 2

   B.  Defendant's Relevant Witnesses and Documents are in the NDCA or
       Otherwise Outside of Texas .................................................................................. 2

   C.  Plaintiff Has No Real Ties to the WDTX .............................................................. 3

   D.  Relevant Third-Party Witnesses are in the NDCA ............................................... 4

III.  LEGAL STANDARD .......................................................................................................... 4

IV.  THE PRIVATE AND PUBLIC FACTORS WEIGH IN FAVOR OF TRANSFER ............ 5

   A.  The Private Interest Factors Favor Transfer ......................................................... 5

      1.  The Most Important Factor—Convenience of Witnesses—Strongly
          Favors Transfer ............................................................................................ 5

      2.  Availability of Compulsory Process Favors Transfer .................................. 7

      3.  Relative Ease of Access to the Evidence Favors Transfer .......................... 11

      4.  Other Practical Problems for an Easy, Expeditions, and Inexpensive
          Case Weigh in Favor of Transfer ............................................................... 12

   B.  The Public Interest Factors Favor Transfer .......................................................... 12

      1.  Local Interest Favors Transfer to the NDCA .............................................. 12

      2.  Relative Court Congestion Between the NDCA and the WDTX .................. 14

      3.  The Two Remaining Public Interest Factors are Neutral ............................. 15

V.   CONCLUSION .................................................................................................................... 15

i

## TABLE OF AUTHORITIES

**Cases**

*Bristol-Myers Squibb v. Ben Venue Lab'y*,
  246 F.3d 1368 (Fed. Cir. 2001) ...................................................................................... 9

*EscapeX IP LLC v. Apple, Inc.*,
  6:22-cv-00427 (W.D. Tex. Sept. 9, 2022) ..................................................................... 9

*In re Apple Inc.*,
  No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ..................................... 14

*In re Apple, Inc.*,
  581 F. App'x 886 (Fed. Cir. 2014) ............................................................................... 7

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020) ................................................................................... 12

*In re DISH Network L.L.C.*,
  No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021) ............................... 7, 12

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) .................................................................... 5, 11, 15

*In re Google Inc.*,
  No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) ...................................... 12

*In re Google LLC*,
  No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ............................. 2, 15

*In re Google LLC*,
  No. 2021-171, 2021 WL 4592280 (Fed. Cir. Oct. 6, 2021) ................................. 2, 12, 13, 14

*In re Google LLC*,
  No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ........................ 2, 11, 15

*In re Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009) ................................................................................... 13

*In re HP Inc.*,
  No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ..................................... 7

*In re Juniper Networks, Inc.*,
  14 F.4th 1313 (Fed. Cir. 2021) ............................................................................ passim

*In re Microsoft Corp.*,
  630 F.3d 1361 (Fed. Cir. 2011) ................................................................................ 1, 6

*In re Pandora Media, LLC*,
  No. 2021-172, 2021 WL 4772805 (Fed. Cir. Oct. 13, 2021) ............................... 7, 10

ii

*In re Samsung Elecs. Co.*,
  2 F.4th 1371 (Fed. Cir. 2021) ......................................................................................... 12

*In re Toyota Motor Corp.*,
  747 F.3d 1338 (Fed. Cir. 2014) ....................................................................................... 8

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ...................................................................................... 4, 12

*In re WMS Gaming Inc.*,
  564 F. App'x 579 (Fed. Cir. 2014) ................................................................................ 15

*J. McIntyre Mach., Ltd. v. Nicastro*,
  564 U.S. 873 (2011)......................................................................................................... 5

*Lynk Labs, Inc. v. Home Depot USA, Inc.*,
  6:21-cv-00097-ADA, 2022 WL 1593366 (W.D. Tex. Dec. 8, 2021)....................................... 7

*Motion Offense, LLC v. Google LLC*,
  No. 6:21-cv-00514-ADA, 2022 WL 5027730 (W.D. Tex. Oct. 4, 2022) ........................... 7, 11

*Parkervision, Inc. v. Intel Corp.*,
  No. 6:20-CV-00108, 2021 WL 401989 (W.D. Tex. Jan. 26, 2021) ........................................ 14

*Parus Holdings Inc. v. LG Elecs. Inc.*,
  No. 6:19-cv-00432-ADA, 2020 WL 4905809 (W.D. Tex. Aug. 6, 2020) ........................... 5, 11

*Polaris Innovations Ltd. v. Dell, Inc.*,
  No. 16-cv-451-XR, 2016 WL 7077069 (W.D. Tex. Dec. 5, 2016) ........................................ 12

*Receivership Estate of AudienceScience Inc. v. Google LLC*,
  No. 6:21-cv-1209-ADA, 2022 WL 3705022 (W.D. Tex. Aug. 18, 2022) ............................... 14

*Super Interconnect Techs. v. Google LLC*,
  No. 6:21-CV-00259-ADA, 2021 WL 6015465 (W.D. Tex. Nov. 5, 2021)................ 5, 7, 13, 15

*Traxcell Technologies, LLC, v. Google LLC*,
  No. 6:21-cv-1312-ADA, 2022 WL 3593054 (W.D. Tex. Aug. 22, 2022) ............................... 14

*VoIP-Pal.com, Inc. v. Google LLC*,
  No. 6:20-cv-00269-ADA, 2022 WL 4546553 (W.D. Tex. Sept. 21, 2022) ..................... 1, 6, 14

*XY, LLC v. Trans Ova Genetics, LC*,
  No. 16-CA-00447-RP, 2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) .................................... 13

iii

## I.   INTRODUCTION

Google LLC ("Google") respectfully requests transfer of this action to the Northern District of California ("NDCA") pursuant to 28 U.S.C. § 1404(a) because the NDCA is clearly the more convenient forum for this lawsuit.

This case belongs in the NDCA, where key relevant witnesses are located and evidence is created and maintained. Google's witnesses with knowledge about (1) the design and development of the accused YouTube Playlist "Auto Add" feature and (2) Google's own prior art work in Google's offices in the NDCA. Moreover, a substantial portion of the sources of proof are also created and maintained in Google's NDCA offices and not in the Western District of Texas ("WDTX"). In addition, a number of potentially relevant third parties, such as at least six prior artists, are located within or subject to the subpoena power of the NDCA.

In contrast, this case has no meaningful connection to the WDTX. While Google has an office in Austin, none of Google's potential trial witnesses are located there. And while Plaintiff asserts it is a Texas LLC with its principal place of business located in Travis County, Texas, its recent formation and transfer of patent rights just before filing lawsuits in the WDTX reveals its presence in this district is "recent, ephemeral, and a construct for litigation . . . exist[ing] for no other purpose than to manipulate venue . . . in anticipation of litigation." *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011). "Little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *VoIP-Pal.com, Inc. v. Google LLC*, No. 6:20-cv-00269-ADA, 2022 WL 4546553, at *8 (W.D. Tex. Sept. 21, 2022) (quoting *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320 (Fed. Cir. 2021)) ("*Google-VoIP-Pal.com*").

The Federal Circuit has explained that transfer should be granted in these circumstances: when "no witnesses reside [in the WDTX]; no evidence is present there; [] none of the conduct

1

Appx0113

giving rise to this action took place there," and the "only connection . . . between this case and the Western District of Texas is that Google has a general presence in the district." *In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *7 (Fed. Cir. Oct. 6, 2021) ("*Google-Jenam*"); *see In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *7 (Fed. Cir. Sept. 27, 2021) ("*Google-Sonos*"); *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *3 (Fed. Cir. Nov. 15, 2021) ("*Google-Express*").

## II.  BACKGROUND

### A.  Plaintiff's Allegations

Plaintiff accuses Google of infringing a single patent, U.S. Patent No. 9,009,113 ("the '113 patent"). Second Amended Complaint, Dkt. 15 ("SAC") ¶¶ 9–10. Plaintiff alleges the '113 patent is directed to a "method and system that facilitate artist-specified dynamic albums that include music that may be changed with or without intervention by a user at a user device at which a dynamic album has been stored." SAC ¶ 8. The SAC accuses Google's YouTube Playlist "Auto Add" feature ("Accused Auto Add Feature") on YouTube's main application (i.e., distinct from YouTube Music) of infringing claim 1 of the '113 patent. SAC, Ex. A at 2–5. As best understood, the SAC alleges infringement when the Accused Auto Add Feature automatically adds an artist's video to a playlist based on a user's input. *Id.* The Accused Auto Add Feature was a small feature and was removed in 2020—long before this lawsuit was filed. Decl. of Andreas Katsiapis ¶ 3 ("Katsiapis Decl.").

### B.  Defendant's Relevant Witnesses and Documents are in the NDCA or Otherwise Outside of Texas

Google was founded in the NDCA and has continued to maintain its headquarters there. The employees with the most relevant knowledge about the Accused Auto Add Feature are assigned to Google's Northern California Offices. *Id.* ¶¶ 2–4. During the creation of the Accused

2

Appx0114

Auto Add Feature, each member of the small team that designed and developed the Accused Auto Add Feature was assigned to Google's YouTube offices in San Bruno, California (in the NDCA). *Id.* ¶ 4. Only four members of that team still work at Google: three are still assigned to Google's Northern California Offices and one is now assigned to Google's Zurich, Switzerland Office. *Id.* The relevant source code, product requirement, and technical documents for the Accused Auto Add Feature were created and are maintained primarily in the NDCA. *Id.* ¶ 5.

In addition, Google has identified prior art systems released by Google years before the '113 patent's October 2014 priority date. One such system is the YouTube Music Discovery Project (also called "YouTube Disco") that was released in 2010. Decl. of Umang Sharan ¶ 2 ("Sharan Decl."). Much like the allegations in the SAC, YouTube Disco automatically generated a list of songs (e.g., added artist's videos to a playlist) based on a user's input. *Id.* ¶ 4. During the inception of YouTube Disco, each member of the small team responsible for YouTube Disco was assigned to Google's YouTube offices in San Bruno, California (in the NDCA). *Id.* ¶ 5. All five members of that team still work at Google: four still in Google's offices in the San Francisco Bay Area and one now in Washington D.C. *Id.* ¶ 6. The relevant source code and technical documentation for YouTube Disco were created and are maintained primarily in the NDCA. *Id.* ¶ 7.

### C. Plaintiff Has No Real Ties to the WDTX

Plaintiff is a patent assertion entity allegedly setup as a Texas limited liability company with its principal place of business located in Travis County, Texas. SAC ¶ 1. According to the Texas Comptroller of Public Accounts, Plaintiff registered as a Texas LLC on March 24, 2022, only about a month before Plaintiff filed this lawsuit. Banner Decl., Ex. B. The '113 patent was previously owned by an entity based in Hong Kong and was assigned to Plaintiff on April 8, 2022, less than three weeks before Plaintiff filed this lawsuit. *See id.*, Ex. E; Complaint, Dkt. 1 (filed

3

April 28, 2022). Other than setting up an LLC in this district for the purpose of filing lawsuits in this Court, Plaintiff does not appear to have any connection to the WDTX. According to the face of the '113 patent, the sole inventor, Sephi Joseph Shapira, resides in Ramot Hasavim, Israel. SAC, Dkt. 15-2 at 1. The attorney that prosecuted the '113 patent, Hean L. Koo, is a partner at Pillsbury Winthrop Shaw Pittman LLP in Northern Virginia. Banner Decl., Exs. C–D.

### D. Relevant Third-Party Witnesses are in the NDCA

Google has identified at least six third-party witnesses who are likely to be relevant to Google's defense and who are subject to the subpoena power of the NDCA and not the WDTX: four who reside in the NDCA and two who reside in other parts of California. Sean Anderson (San Francisco, CA) developed the prior art "Streamus" browser extension at least as early as February 2014. *Id.*, Exs. F–G. Michael Schneider (Los Angeles, CA) and Brock Batten (Los Angeles, CA) started a company named Mobile Roadie (headquartered in Palo Alto, CA) that released prior art artist-specific applications in 2009 and continues to do so today. *Id.*, Exs. J–L. Emily Clark Schubert (San Jose, CA), William Bull (Mountain View, CA), and Ben Rottler (San Francisco Bay Area, CA) are inventors listed on relevant patent prior art. *Id.*, Exs. N–R.

## III. LEGAL STANDARD

To evaluate transfer under 28 U.S.C. § 1404(a), courts first consider "whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008). If so, courts weigh eight private and public factors:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive[;] … [(5)] the administrative difficulties flowing from court congestion; [(6)] the local interest in having localized interests decided at home; [(7)] the familiarity of the forum with the law that will govern the case; and [(8)] the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

4

Appx0116

*Id.* at 315 (citations and quotation marks omitted).

## IV. THE PRIVATE AND PUBLIC FACTORS WEIGH IN FAVOR OF TRANSFER

As an initial matter, Plaintiff could have brought its case in the NDCA because Google is headquartered there. Accordingly, that court could properly exercise personal jurisdiction over Google and venue would be proper in that district. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). As explained below, the private and public factors also weigh in favor of transfer to the NDCA.

### A.      The Private Interest Factors Favor Transfer

The private interest factors strongly favor transfer to the NDCA because Google's potential trial witnesses pertaining to (1) the Accused Auto Add Feature and (2) Google's own prior art are both located there and the majority of Google's technical documents pertaining to (1) the Accused Auto Add Feature and (2) Google's own prior art were created and are maintained there. *See supra*, Section II.B (and evidence cited therein). Moreover, at least six third-party prior artists and some of their documents appear to be located within the subpoena power of the NDCA. In contrast, this case has no legally meaningful connection to the WDTX beyond a single prior artist located in Austin, TX.

### 1. *The Most Important Factor—Convenience of Witnesses—Strongly Favors Transfer*

"The convenience of witnesses is the single most important factor in the transfer analysis." *Super Interconnect Techs. v. Google LLC*, No. 6:21-CV-00259-ADA, 2021 WL 6015465, at *3 (W.D. Tex. Nov. 5, 2021); *Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-cv-00432-ADA, 2020 WL 4905809, at *5 (W.D. Tex. Aug. 6, 2020); *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). Here, where Google's witnesses are located in the NDCA along with many relevant third party and prior art witnesses (addressed further below), and only one potentially relevant witness is in the WDTX, the convenience of the witnesses favors transfer. *Google-VoIP-Pal.com*,

2022 WL 4546553, *5 (holding the willing witness factor favors transfer when there are multiple witnesses in the NDCA and only one witness in the WDTX).

The Accused Auto Add feature (1) was one small feature of the much larger YouTube platform, (2) was developed and maintained by a small engineering team, and (3) was removed from YouTube in 2020. Katsiapis Decl. ¶¶ 3–4. Accordingly, at this time Google has identified four potential trial witnesses at Google related to the accused product. Three of these witnesses at Google responsible for the Accused Auto Add feature (the technical lead, an additional software engineer, and the product specialist) are located in the NDCA. *Id.* ¶ 4. In addition, Google has identified at least one potential trial witness at Google related to the prior art YouTube Disco product. This witness, one of the engineers who worked on the YouTube Disco prior art product, is located in the NDCA. Sharan Decl. ¶¶ 2–3.

Moreover, nothing suggests the NDCA would be less convenient for Plaintiff. Plaintiff is a patent assertion entity that—just weeks before filing multiple lawsuits in this district—was formed in the WDTX and obtained the rights to the '113 patent. Banner Decl., Exs. B, E. Thus, Plaintiff's presence in this district is "recent, ephemeral, and a construct for litigation . . . exist[ing] for no other purpose than to manipulate venue . . . in anticipation of litigation." *In re Microsoft*, 630 F.3d at 1365. "Little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *Google-VoIP-Pal.com*, 2022 WL 4546553, *8 (quoting *In re Juniper Networks*, 14 F.4th at 1320). Additionally, the prosecuting attorney for the asserted patents is located in Northern Virginia, (Banner Decl., Exs. C–D), and the sole inventor of the asserted patents is located in Israel (SAC, Dkt. 15-2 at 1). Plaintiff's predecessor, EscapeX

6

Limited, is located in Hong Kong. Banner Decl., Ex. E. In short, Google is not aware of any willing witnesses relevant to this case who reside in the WDTX.

Because four identified party witnesses (Google's witnesses) are in the NDCA, and none are in WDTX, that is where the litigation should be conducted. *See In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at \*6 (Fed. Cir. Oct. 13, 2021) ("[T]he litigation should be conducted where more witnesses could testify without leaving their homes or their regular places of business."); *see also Lynk Labs, Inc. v. Home Depot USA, Inc.*, 6:21-cv-00097-ADA, 2022 WL 1593366, at \*12 (W.D. Tex. Dec. 8, 2021) (granting motion to transfer).

### 2. *Availability of Compulsory Process Favors Transfer*

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Super Interconnect*, 2021 WL 6015465, at \*5. This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). "[W]hen there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *Super Interconnect*, 2021 WL 6015465, at \*5 (*citing In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at \*3 (Fed. Cir. Oct. 21, 2021) *and In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at \*3 n.1 (Fed. Cir. Sept. 25, 2018)). Because at least six third-party witnesses relevant to Google's invalidity defenses are either located in or subject to the subpoena power of the NDCA, but only one third-party witness is within reach of the WDTX, this factor favors transfer. *See Motion Offense, LLC v. Google LLC*, No. 6:21-cv-00514-ADA, 2022 WL 5027730, at \*5 (W.D. Tex. Oct. 4, 2022)

(weighing the compulsory process factor "heavily in favor of transfer" where "third-party prior art witnesses" resided in the NDCA).

To date, Google has identified at least six third-party witnesses located in California (bolded along with relevant California companies in the list below) who are likely to be relevant to Google's defense:[1]

1.     **Sean Anderson** (San Francisco, CA): developer of a third-party extension to Google's Chrome browser called "Streamus" that was available to the public at least as early as February 2014. Banner Decl., Exs. F–G. The Streamus extension allowed a user to turn the Chrome "browser into a full fledged YouTube music player." *Id.*, Ex. F at 2. Streamus included an "integrated radio feature" so that it would "never run out of music." *Id.*, Ex. F at 7. To achieve that result, "Streamus will ***auto add*** similar songs to [a playlist] and keep on playing." *Id.* (emphasis added).

2.     **Michael Schneider** (Los Angeles, CA) and **Brock Batten** (Los Angeles, CA), the two founders of **Mobile Roadie** (a company headquartered in Palo Alto, CA). Banner Decl., Exs. J–L. In 2009, Mobile Roadie released its artist-specific application platform at the South by Southwest conference in Austin, Texas. *Id.*, Ex. H at 1. The Mobile Roadie app is likely relevant prior art because the '113 patent claims recite methods and systems "for updating a dynamic album that includes a set of songs stored in relation to and played by ***an artist specific***

---

[1] Although Google is continuing to develop its case, this list is inclusive of all prior artists located to date in California. Google has identified several prior artists outside either California or Texas (e.g., two in the United Kingdom and five on the East Coast) and only one in Texas (who Google acknowledges and discusses below). Of course, when comparing the ability of the transferee and transferor forums to secure the attendance of witnesses, "the presence of other witnesses and documents in places outside both forums" is irrelevant. *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014) ("The comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums.").

8

*application* associated with an artist." *E.g.*, '113 patent, claims 1 & 14 (emphasis added). "The first live app to be created using the Mobile Roadie platform was for the band Black Lips." Banner Decl., Ex. H at 1. A 2011 publication explained that Mobile Roadie designed an artist-specific application for Madonna, an application that "can be used for the same purposes as a website: promoting new music, videos, and shows; selling merchandise and music, posting news . . ." *Id.*, Ex. I. The Mobile Roadie website indicates that in 2012, "[a]pps created with the Mobile Roadie platform reach[ed] 20 million users in total." *Id.*, Ex. H at 3. And in 2013, Adele's artist-specific application reached 1.5 million downloads. *Id.*, Ex. H at 4. Witnesses with knowledge of the Mobile Roadie application are likely located in the NDCA because Mobile Roadie has its headquarters in Palo Alto, California. *Id.*, Ex. J. In addition, the founders are within the subpoena power of the NDCA because they both live in Los Angeles. *Id.*, Exs. K–L.

        3.      **Witnesses at Apple** (Cupertino, CA). At least as early as 2012, Apple's iTunes included features Plaintiff accused of infringement in a related case that was recently dismissed with prejudice, following Apple raising *inter alia* that this feature was prior art. *See EscapeX IP LLC v. Apple, Inc.*, 6:22-cv-00427, Motion to Dismiss, Dkt. 13 & 13-6 at 1 (W.D. Tex. Sept. 9, 2022); *id.*, Order Granting Motion to Dismiss, Dkt. 24 (W.D. Tex. Oct. 26, 2022). Of course, "it is axiomatic that that which would literally infringe if later anticipates if earlier." *Bristol-Myers Squibb v. Ben Venue Lab'y*, 246 F.3d 1368, 1378 (Fed. Cir. 2001). Witnesses with technical knowledge of the iTunes products are likely located at Apple's headquarters in the NDCA. Banner Decl., Ex. M (evidence of Apple's HQ). At the time it filed this motion, Google had not been able to identify any specific Apple witnesses in the NDCA. Google reserves the right to identify additional witnesses, for example, in the event discovery reveals Plaintiff has additional information related to the formerly-accused Apple iTunes product.

9

4.     Likewise, three third-party inventors listed on relevant patent prior art are believed to live and work in the NDCA: **Emily Clark Schubert** (San Jose, CA), **William Bull** (Mountain View, CA), and **Ben Rottler** (San Francisco Bay Area, CA). *Id.*, Exs. N–R. Ms. Schubert is one of the inventors of U.S. Patent No. 8,224,927, and Messrs. Bull and Rottler are the inventors of U.S. Patent No. 8,634,944. *Id.*, Exs. N–O. These two patents are all directed to dynamic music playlist management, i.e., similar to what is described and claimed in the '113 patent. *Id.*

In contrast, Google is aware of only one relevant third-party witness within this district's subpoena power (Policarpo Wood (Austin, Texas) inventor of U.S. Patent No. 8,819,553 directed to generating a playlist using metadata tags). *Id.*, Exs. S–T. Besides this sole prior artist, Google is aware of no other relevant third-party witnesses within this district's subpoena power. Plaintiff's predecessor, EscapeX Limited, is located in Hong Kong. *Id.*, Ex. E. The attorney that prosecuted the '113 patent, Hean L. Koo at Pillsbury Winthrop Shaw Pittman LLP, is located in Northern Virginia. *Id.*, Exs. C–D. The sole named inventor on the asserted patents resides in Ramot Hasavim, Israel, not in Texas. SAC, Dkt. 15-2 at 1. Even assuming these witnesses would need to travel a greater distance to reach the NDCA than the WDTX, this would not negate transfer to the NDCA. As the Federal Circuit recently explained in *Pandora*, for those "non-party witnesses, [they] 'will likely have to leave home for an extended period' whether or not the case was transferred, and thus those witnesses would be only slightly more inconvenienced by having to travel to California than to Texas." 2021 WL 4772805, at *5.

Because at least six potential third-party witnesses are within the subpoena power of the NDCA, but only one is within reach of the WDTX, this factor weighs heavily in favor of transfer.

10

*See Motion Offense*, 2022 WL 5027730, at *5 (compulsory process factor weighed "heavily in favor of transfer" where majority of "third-party prior art witnesses" resided in the NDCA).

### 3. Relative Ease of Access to the Evidence Favors Transfer

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Parus Holdings*, 2020 WL 4905809, at *3 (citing *In re Genentech*, 566 F.3d at 1345). "[T]he location of document custodians and location where documents are created and maintained, [] may bear on the ease of retrieval." *Google-Express*, 2021 WL 5292267, at *2. Here, the relevant sources of proof from Google and likely third parties were created and are maintained in the NDCA, whereas there are no known sources of relevant evidence in the WDTX.

The vast majority of Google's sources of proof were created and are maintained by employees based in the NDCA. Katsiapis Decl. ¶ 5; Sharan Decl. ¶ 7. Google largely created and currently maintains the technical documents relevant to the Accused Auto Add Feature in the NDCA. Katsiapis Decl. ¶ 5. Those documents are normally created and maintained by the employees who worked on the accused feature. *Id.* Three of the four current Google employees from the team that designed and developed the Accused Auto Add Feature are in the NDCA and none are in WDTX. *Id.* ¶ 4. Additionally, the documents relevant to Google's YouTube Disco prior art were created and are maintained in the NDCA. Sharan Decl. ¶ 7. Four of the five Google employees who worked on YouTube Disco are in the NDCA and none are in WDTX. *Id.* ¶ 6. In other words, Google is not aware of any relevant documents created or maintained in the WDTX concerning the design and development of the Accused Auto Add Feature or Google's YouTube Disco. Moreover, documents on iTunes and Mobile Roadie that are relevant to potential invalidity

Appx0123

defenses may be kept at or created and maintained from both Apple's and Mobile Roadie's headquarters in the NDCA. Banner Decl., Exs. J, M. Thus, this factor favors transfer.

### 4. Other Practical Problems for an Easy, Expeditions, and Inexpensive Case Weigh in Favor of Transfer

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen*, 545 F.3d at 315. This factor is neutral. This case and the parallel case against SiriusXM—the only other related case currently pending in this district—are in their early stages and this Court has not yet had occasion to gain substantive familiarity with the '113 patent. In fact, SiriusXM has yet to even be served. At the very least, the mere co-pendency of Plaintiff's suit against SiriusXM at this early stage does not weigh against transfer, especially where differences between the parties' independently developed products (i.e., Google's video-streaming platform and SiriusXM's music-streaming platform) would "result in significantly different discovery, evidence, proceedings, and trial." *In re DISH Network*, 2021 WL 4911981, at *3 (citation omitted); *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1379–80 (Fed. Cir. 2021); *see also In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017) (rejecting the district court's rationale that the co-pendency of related suits with co-pending transfer motions weighed against transfer).

### B. The Public Interest Factors Favor Transfer

#### 1. Local Interest Favors Transfer to the NDCA

Local interests in deciding local disputes favors transfer. This factor evaluates "significant connections between a particular venue and *the events that gave rise to a suit*." *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020) (citation omitted); *Google-Jenam*, 2021 WL 4592280, at *5. Moreover, "headquarters in a certain location gives [it] a strong local interest." *Polaris Innovations Ltd. v. Dell, Inc.*, No. 16-cv-451-XR, 2016 WL 7077069, at *11 (W.D. Tex. Dec. 5, 2016); *XY,*

12

*LLC v. Trans Ova Genetics, LC*, No. 16-CA-00447-RP, 2017 WL 5505340, at *9 (W.D. Tex. Apr. 5, 2017) (holding that the "district where a party has its principal place of business typically has a stronger local interest in the adjudication of the case"). Here, not only is Google headquartered in the NDCA, but the "events that form the basis for [Plaintiff's] infringement claims against Google occurred in the Northern District of California where Google developed the accused [product]." *Google-Jenam*, 2021 WL 4592280, at *5. Google was founded in the NDCA, has its headquarters in the NDCA, its potential witnesses reside there, the Accused Auto Add Feature was designed, developed, and maintained there (Katsiapis Decl. ¶¶ 4–5), and Google's own prior art was designed, developed, and maintained there (Sharan Decl. ¶¶ 5–7). Moreover, many prior art witnesses reside in the NDCA (*see* Section IV.A.2). "The NDCA would certainly have an interest in this case because the cause of action 'calls into question the work and reputation of several individuals residing in or near that district.'" *Super Interconnect*, 2021 WL 6015465, at *10 (*citing In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009)).

In contrast, the WDTX has no specific connection to the events giving rise to this suit. Google's general presence in Austin does not weigh against transfer. *Google-Jenam*, 2021 WL 4592280, at *5 ("The fact that a party may have a general presence in a particular district does not give that district a special interest in the case."); *see also In re Juniper Networks*, 14 F.4th at 1320–21. Nor does the fact that Google's servers or users of Google's services are distributed nationwide "give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche*, 587 F.3d at 1338; *Google-Jenam*, 2021 WL 4592280, at *5 ("[Plaintiff's] reference to the sale in the Western District of Texas of Google products that used the accused protocol does not give that district a substantial interest in the dispute.").

While Google has deep and broad connections to the NDCA that are directly relevant to this lawsuit, Plaintiff itself has only a "recent and ephemeral" connection to this forum that is legally insufficient to create a comparable local interest in the WDTX. *Google-VoIP-Pal.com*, 2022 WL 4546553, *8 (holding "[l]ittle or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum") (quoting *In re Juniper Networks*, 14 F.4th at 1320); *see also Google-Jenam*, 2021 WL 4592280, at *5–6 (concluding that even "[Plaintiff's] status as a Texas entity is insufficient").

Because the events giving rise to this suit are concentrated in the NDCA, Plaintiff has no legally relevant connection to the WDTX (its presence is "recent and ephemeral"), and Google has nothing more than a general presence in the WDTX, this factor favors transfer.

## 2. *Relative Court Congestion Between the NDCA and the WDTX*

The public interest factor weighing administrative difficulties flowing from court congestion is neutral. This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *Parkervision, Inc. v. Intel Corp.*, No. 6:20-CV-00108, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). Recently, the Federal Circuit noted that "the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics." *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *4 (Fed. Cir. Nov. 15, 2021). But even assuming this case will proceed to trial faster in the WDTX than in the NDCA, any such temporal advantage is too speculative to meaningfully alter the transfer analysis. The Court recently transferred two Google cases from the WDTX to the NDCA—despite a presumed faster time to trial in the WDTX than the NDCA—after explaining that the time to trial factor "is speculative." *Receivership Estate of AudienceScience Inc. v. Google LLC*, No. 6:21-cv-1209-ADA, 2022 WL 3705022, at *6 (W.D. Tex. Aug. 18, 2022); *see also Traxcell Technologies, LLC, v. Google LLC*, No. 6:21-cv-1312-ADA, 2022 WL 3593054 (W.D. Tex. Aug.

14

22, 2022); *Super Interconnect*, 2021 WL 6015465, at *9 (*citing In re Genentech*, 566 F.3d at 1347); *Google-Sonos*, 2021 WL 4427899, at 7; *Google-Express*, 2021 WL 5292267, at *3. Additionally, the "prospective speed with which [a] case might be brought to trial" is not "of particular significance" where the plaintiff "does not practice the patent and therefore . . . is not in need of a quick resolution of [a] case because its position in the market is threatened." *In re WMS Gaming Inc.*, 564 F. App'x 579, 581 (Fed. Cir. 2014); *see also In re Juniper Networks*, 14 F.4th at 1322. Thus, at most, this factor should be given neutral weight.

### 3. *The Two Remaining Public Interest Factors are Neutral*

The final two factors, familiarity with the law and avoidance of problems of conflicts of law or application of foreign law, are neutral. Both forums are familiar with patent law, and there is no prospect for any conflict of laws.

## V. CONCLUSION

Private interest factors 1–3 weigh in favor of transfer. Private interest factor 4 is neutral. Public interest factor 1 weighs in favor of transfer. And public interest factors 2–4 are, at most, neutral. Thus, the Court should transfer this case to the NDCA—a more convenient forum—in the interest of justice under 28 U.S.C. § 1404(a).

Dated: November 21, 2022

Respectfully submitted,

*/s/ Brian C. Baner*
Brian C. Banner (TX Bar No. 24059416)
bbanner@sgbfirm.com
Darryl J. Adams (TX Bar No. 00796101)
dadams@sgbfirm.com
Truman H. Fenton (TX Bar No. 24059742)
tfenton@sgbfirm.com
Tecuan Flores (TX Bar No. 24084569)
tflores@sgbfirm.com
SLAYDEN GRUBERT BEARD PLLC

15

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| ESCAPEX IP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 6-22-cv-00428-ADA |
| vs. | § | |
| | § | JURY TRIAL DEMANDED |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**NOTICE OF PLAINTIFF'S NON-OPPOSITION TO DEFENDANT'S MOTION TO
TRANSFER VENUE (D.I. 18) AND STATUS REPORT UNDER OGP 4.2 SECTION VI**

Pursuant to Local Rule CV-7(D)(2) and the Court's Standing Order Governing Proceedings (OGP) 4.2—Patent Cases ("OGP4.2"), Defendant Google LLC ("Google") submits this notice of status report regarding its Motion Under 28 U.S.C. § 1404(a) to Transfer Venue to the Northern District of California ("Transfer Motion") filed on November 21, 2022 (D.I. 18).

Under the OGP, a party who has "filed a motion to transfer shall provide the Court with a status report indicating whether the motion has been fully briefed . . . when the motion to transfer becomes ready for resolution." OGP4.2 § VI. Because Plaintiff EscapeX IP, LLC ("EscapeX") did not file a notice of venue discovery under OGP4.2 § V and has not conducted any venue discovery, EscapeX's response was due fourteen days after the Opening Brief—December 5, 2022. *See* OGP4.2 § VI (response due "14 days after the completion of venue or jurisdictional discovery, *if such discovery is conducted; otherwise, 14 days after the Opening brief*") (emphasis added); § V ("Parties shall file a notice of venue or jurisdictional discovery if the discovery will delay a response to a motion to transfer.").

1

EscapeX has not: (1) filed a notice of venue discovery pursuant to OGP4.2 § V; (2) conducted any discovery pursuant to OGP4.2 § VI; nor (3) filed a response to Google's Transfer Motion within the prescribed fourteen-day time period. Thus, the Transfer Motion is "ready for resolution." OGP4.2 § VI.

Google therefore requests its Transfer Motion be deemed unopposed and that the Court grant the relief requested therein to transfer this case to the Northern District of California. *See* D.I. 18; Local Rule CV-7(D)(2) ("If there is no response filed within the time period prescribed by this rule, the court may grant the motion as unopposed."); *Traxcell Techs., LLC v. Google LLC*, No. 6:21-CV-1312-ADA, 2022 WL 3593054, at *1 (W.D. Tex. Aug. 22, 2022) ("Because Plaintiff did not file a response or notice of venue discovery within 14 days, the Court considers this Motion unopposed. When motions are unopposed, a court may grant the motion."); *De La Vega v. Amazon (USA), Inc.*, No. 6-19-cv-00618-ADA (W.D. Tex. Feb. 7, 2020) (text order stating "[b]ecause Mr. De La Vega has not filed his response within the 7-day time period prescribed by Local Rule CV-7, the Court GRANTS this motion as unopposed"); *Jefferson Street Holdings Intellectual Property LLC v. Tech21 Inc.*, Case No. 5-18-cv-00806, Dkt. No. 32 at 1 (W.D. Tex. Oct. 29, 2019) ("Although the deadline has passed, no response has been received by the Court. Accordingly, the Court considers the motion to be unopposed."); *Yeti Coolers, LLC v. Rtic Coolers, LLC*, No. 1:15-CV-00597-RP, 2016 WL 5956081, at *2 (W.D. Tex. Aug. 1, 2016) ("For good cause shown, and as RTIC did not timely respond to YETI's motion for redaction, the Court grants YETI's motion as unopposed."); *Kaden v. Smith*, 3-15-cv-00146, Dkt. No. 26 at 1 (W.D. Tex. Mar. 09, 2016) ("As of this date, Defendant has filed no response. Therefore, the Court will grant Plaintiff's Motion as unopposed.").

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| ESCAPEX IP, LLC,<br>   *Plaintiff,* | § <br> § <br> § <br> § | |
| *v.* | § <br> § | CIVIL NO. 6:22-CV-00428-ADA |
| GOOGLE LLC,<br>   *Defendant.* | § <br> § <br> § | |

## ORDER GRANTING MOTION TO TRANSFER

Before the Court is Google LLC's ("Google") Motion to Transfer Venue to the Northern District of California Pursuant to § 1404(a). ECF No. 18. Google filed its Motion on November 21, 2022. Ordinarily, non-movants have 14 days to file a response to a motion. Local Rule CV-7(D)(1). Under this Court's Standing Order Governing Proceedings (OGP) 4.2 – Patent Cases ("the OGP") § V, when a defendant files a motion to transfer venue, the plaintiff may take venue discovery and move back the filing deadline for a response. Section V provides as follows:

> Venue or jurisdictional discovery automatically opens upon the filing of an initial venue or jurisdictional motion and shall be completed no later than 10 weeks after the filing of such motion. Parties shall file a notice of venue or jurisdictional discovery if the discovery will delay a response to a motion to transfer.

Although venue discovery is automatically granted, the plaintiff must still respond within 14 days in one of two ways: (1) file a response to the motion to transfer, or (2) file a notice of venue or jurisdictional discovery if the discovery will delay a response to a motion to transfer.

In this case, Plaintiff Escapex IP, LLC ("Escapex") neither filed a response nor filed a notice of intent to take venue discovery within 14 days after Google filed its Motion. Traxcell filed a notice of venue discovery on May 18, 2022. ECF No. 42. But because that notice was not filed within the 14-day window, the notice was untimely. As of the date of this Order,

Traxcell has still not filed a response.

Because Plaintiff did not file a response or notice of venue discovery within 14 days, the Court considers this Motion unopposed. When motions are unopposed, a court may grant the motion. Local Rule CV-7(D)(2) ("If there is no response filed within the time period prescribed by this rule, the court may grant the motion as unopposed."). Google cites to numerous cases where this Court and others in the Western District of Texas have granted unopposed motions. *See Traxcell Techs., LLC v. Google LLC*, No. 6:21-CV-1312-ADA, 2022 WL 3593054, at *1 (W.D. Tex. Aug. 22, 2022); *De La Vega v. Amazon (USA), Inc.*, No. 6-19-cv-00618 (W.D. Tex. Feb. 07, 2020) (Text order stating "[b]ecause Mr. De La Vega has not filed his response within the 7-day time period prescribed by Local Rule CV-7, the Court GRANTS this motion as unopposed."); *Jefferson Street Holdings Intellectual Property LLC v. Tech21 Inc.*, No. 5-18-cv-00806, slip op. at 1 (W.D. Tex. Oct. 29, 2019) ("Although the deadline has passed, no response has been received by the Court. Accordingly, the Court considers the motion to be unopposed."); *Yeti Coolers, LLC v. RTIC Coolers, LLC*, No. 1-15-cv-00597, 2016 WL 5956081, at *2 (W.D. Tex. Aug. 01, 2016) ("For good cause shown, and as RTIC did not timely respond to YETI's motion for redaction, the Court grants YETI's motion as unopposed."); *Kaden v. Smith*, No. 3-15-cv-00146, slip op. at 1 (W.D. Tex. Mar. 09, 2016) ("As of this date, Defendant has filed no response. Therefore, the Court will grant Plaintiff's Motion as unopposed."). Because Defendant's Motion is unopposed, the Court **GRANTS** Google's Motion to Transfer.

Most troublesome here is that the same counsel representing this same plaintiff has already been chastised by this Court for his repeated failure to file in a timely manner. *See Traxcell Technologies, L.L.C., v. Verizon Wireless Personal Communications*, No. 6:20-CV-01175, slip op.

at 3 (W.D. Tex. Jan. 20, 2022) ("All parties SHALL TAKE NOTICE that this Court is not inclined to grant future, opposed motions for extension of time by repeatedly late filers. E.g., *MCOM IP, LLC v. CSI, Inc.*, No. 6:21- cv-00196-ADA, Dkt. No. 28 (filing late response to motion to stay, Dkt. No. 27) (W.D. Tex. Dec. 15, 2021); *MCOM IP, LLC v. NCR Corp.*, No. 6:21-cv-00325-ADA, Dkt. No. 21 (filing late Case Readiness Status Report) (W.D. Tex. Aug. 12, 2021); *AML IP, LLC v. ArtCraft Entertainment, Inc.*, No. 6:21-cv-00036-ADA, Dkt. No. 15 (filing late Case Readiness Status Report more than six months after the March answer, Dkt. No. 11) (W.D. Tex. Oct. 10, 2021)). Counsel failed to heed that warning.

For those reasons, the Court **GRANTS** Google's Motion to Transfer Venue to the Northern District of California (ECF No. 18).

SIGNED this 11th day of December, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

Susan S.Q. Kalra (State Bar No. 167940)
Email: skalra@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (800) 993-7499
Fax: (832) 900-4941

William P. Ramey, III (*pro hac vice anticipated*)
Email: wramey@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175

*Attorneys for Plaintiff*
ESCAPEX IP, LLC


Kate E. Lazarus (SBN 268242)
klazarus@kblfirm.com
Asim M. Bhansali (SBN 194925)
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350

*Attorneys for Defendant*
GOOGLE LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESCAPEX IP, LLC, | Case No.: 4:22-cv-08711-HSG |
| Plaintiff, | |
| v. | **JOINT STIPULATION OF DISMISSAL PURSUANT TO FED. R. CIV. P. 41(a)(1)(A)(ii)** |
| GOOGLE, LLC, | |
| Defendant. | |

1

JOINT STIPULATION OF DISMISSAL - CASE NO.: 4:22-CV-08711-HSG

Appx0137

Pursuant to Federal Rule 41 (a)(1)(A)(ii), Plaintiff, Escapex IP, LLC and Defendant Google, LLC hereby jointly stipulate to the dismissal of this action for all of Plaintiff's claims.  The Parties further jointly stipulate and agree that the dismissal of Plaintiff's claims shall be WITH PREJUDICE as to the asserted patent.  The Parties further jointly stipulate and agree that each party shall bear its own costs, expenses and attorneys' fees.

Dated: March 3, 2023

Respectfully submitted,

RAMEY LLP

*/s/ Susan S.Q. Kalra*
Susan S.Q. Kalra (State Bar No. 167940)
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
Telephone: (800) 993-7499
Fax: (832) 900-4941
Email: skalra@rameyfirm.com

*/s/ William P. Ramey, III*
William P. Ramey, III (pro hac vice
   anticipated)
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175
Email: wramey@rameyfirm.com

Attorneys for Plaintiff
ESCAPEX IP, LLC

KWUN BHANSALI LAZARUS LLP

*/s/ Kate E. Lazarus*
Kate E. Lazarus
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350
Email: klazarus@kblfirm.com

Attorneys for Defendant
GOOGLE LLC

2

JOINT STIPULATION OF DISMISSAL - CASE NO.: 4:22-CV-08711-HSG

Appx0138

**SIGNATURE ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Susan Kalra, attest that concurrence in the filing of this document has been obtained from Defendants' counsel.

*/s/ Susan S.Q. Kalra*
Susan S.Q. Kalra

3

JOINT STIPULATION OF DISMISSAL - CASE NO.: 4:22-CV-08711-HSG

Appx0139

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ESCAPEX IP, LLC,<br><br>                    Plaintiff,<br><br>    v.<br><br>GOOGLE, LLC,<br><br>                    Defendant. | Case No.: 4:22-cv-08711-HSG<br><br>**[PROPOSED] ORDER ON JOINT STIPULATION OF DISMISSAL PURSUANT TO FED. R. CIV. P. 41(a)(1)(A)(ii)** |

FOR GOOD CAUSE APPEARING, THE FOLLOWING IS HEREBY ORDERED:

1.  The Stipulation is GRANTED;

2.  The case is dismissed pursuant to Federal Rule of Civil Procedure 41(a)(i)(A)(ii); and

3.   The Parties will bear its own costs, expenses and attorneys' fees.

IT IS SO ORDERED.

Dated: _____          _____

                                                HON. HAYWOOD S. GILLIAM, JR.
                                                UNITED STATES DISTRICT COURT JUDGE

1

_____
ORDER ON JOINT STIPULATION OF DISMISSAL - CASE NO.: 4:22-CV-08711-HSG

Appx0140

Susan S.Q. Kalra (State Bar No. 167940)
Email: skalra@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (800) 993-7499
Fax: (832) 900-4941

William P. Ramey, III (*pro hac vice anticipated*)
Email: wramey@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175

*Attorneys for Plaintiff*
ESCAPEX IP, LLC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESCAPEX IP, LLC, | Case No.: 4:22-cv-08711-HSG |
| Plaintiff, | |
| v. | **NOTICE OF WITHDRAWAL OF JOINT STIPULATION OF DISMISSAL PURSUANT TO FED. R. CIV. P. 41(a)(1)(A)(ii)** |
| GOOGLE, LLC, | |
| Defendant. | |

1

WITHDRAWAL OF JOINT STIPULATION OF DISMISSAL - CASE NO.: 4:22-CV-08711-HSG

Appx0141

Plaintiff, Escapex IP, LLC hereby withdraws the Joint Stipulation of Dismissal filed earlier today as ECF 47.

Dated: March 3, 2023

Respectfully submitted,

RAMEY LLP

*/s/ Susan S.Q. Kalra*
Susan S.Q. Kalra (State Bar No. 167940)
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
Telephone: (800) 993-7499
Fax: (832) 900-4941
Email: skalra@rameyfirm.com

*/s/ William P. Ramey, III*
William P. Ramey, III (pro hac vice
    anticipated)
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175
Email: wramey@rameyfirm.com

Attorneys for Plaintiff
ESCAPEX IP, LLC

2

WITHDRAWAL OF JOINT STIPULATION OF DISMISSAL - CASE NO.: 4:22-CV-08711-HSG

Susan S.Q. Kalra (State Bar No. 167940)
Email: skalra@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (800) 993-7499
Fax: (832) 900-4941

William P. Ramey, III (*pro hac vice* anticipated)
Email: wramey@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175

*Attorneys for Plaintiff*
ESCAPEX IP, LLC

Kate E. Lazarus (SBN 268242)
klazarus@kblfirm.com
Asim M. Bhansali (SBN 194925)
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350

Additional attorneys listed on signature page.

*Attorneys for Defendant*
GOOGLE LLC

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| ESCAPEX IP LLC,<br><br>    Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | § § § § § § § § § § § |  CASE NO. 3:22-cv-08711-HSG<br><br>**JOINT STIPULATION OF DISMISSAL PURSUANT TO FED. R. CIV. P. 41(a)(1)(A)(ii)** |

- 1 -

Pursuant to Federal Rule 41 (a)(1)(A)(ii), Plaintiff, EscapeX IP, LLC and Defendant Google, LLC hereby jointly stipulate to the dismissal of this action for all of Plaintiff's claims and Defendant's defenses. The Parties further jointly stipulate and agree that the dismissal of Plaintiff's claims shall be WITH PREJUDICE and that the dismissal of Defendant's defenses shall be WITHOUT PREJUDICE.

Dated: March 7, 2023

Respectfully submitted,

RAMEY LLP

By:     _/s/ Susan S.Q. Kalra_
        Susan S.Q. Kalra (State Bar No. 167940)
        RAMEY LLP
        5020 Montrose Blvd., Suite 800
        Houston, Texas 77006
        Telephone: (800) 993-7499
        Fax: (832) 900-4941
        Email: skalra@rameyfirm.com

        William P. Ramey, III (*pro hac vice*
        anticipated)
        5020 Montrose Blvd., Suite 800
        Houston, Texas 77006
        Telephone: (713) 426-3923
        Fax: (832) 689-9175 Email:
        wramey@rameyfirm.com

        *Attorneys for Plaintiff*
        ESCAPEX IP, LLC

KWUN BHANSALI LAZARUS LLP

        Kate E. Lazarus (SBN 268242)
        klazarus@kblfirm.com
        Asim M. Bhansali (SBN 194925)
        abhansali@kblfirm.com
        KWUN BHANSALI LAZARUS LLP
        555 Montgomery Street, Suite 750
        San Francisco, CA 94111
        Tel: (415) 630-2350

SLAYDEN GRUBERT BEARD PLLC

By:     _/s/ Brian C. Banner_
        Brian C. Banner (*pro hac vice*)

- 1 -                    JOINT STIPULATION OF DISMISSAL
                         CASE NO 3:22-cv-08711-HSG

Appx0144

Kate E. Lazarus (SBN 268242)
klazarus@kblfirm.com
Asim M. Bhansali (SBN 194925)
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350

Additional attorneys listed on signature page.

Attorneys for Defendant
GOOGLE LLC

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ESCAPEX IP LLC, | § CASE NO. 4:22-cv-08711-HSG |
| | § |
| Plaintiff, | § **GOOGLE LLC'S NOTICE OF MOTION** |
| | § **AND MOTION FOR ATTORNEYS'** |
| v. | § **FEES PURSUANT TO 35 U.S.C. § 285** |
| | § |
| GOOGLE LLC, | § <u>Hearing</u> |
| | § Date: June 29, 2023 |
| Defendant. | § Time: 2 p.m. |
| | § Dept.: 2 |
| | § Judge: Hon. Haywood S. Gilliam, Jr. |
| | § |
| | § Date Filed: April 28, 2022 |
| | § Trial Date: None set |
| | § |
| | § |
| | § |

Appx0147

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 1

II.     STATEMENT OF FACTS ......................................................................................... 3

    A.  Plaintiff EscapeX IP LLC ................................................................................. 3

    B.  Plaintiff Files this Lawsuit Relying on Combination of Features of Distinct Products .......................................................................................................... 4

    C.  Plaintiff's Second Amended Complaint Accuses YouTube Video's Auto Add Feature—a Feature that Predates the '113 Patent ..................................... 5

    D.  Google Requests Dismissal in View of Fatal Case Deficiencies Including (1) Asserting Infringement by the Prior Art and (2) Invalidity Under § 101 ............................................................................................................... 5

    E.  Google Incurs Attorneys' Fees while Plaintiff Willfully Ignores Google's Repeated Requests ......................................................................................... 8

    F.  Judge Furman (SDNY) Invalidates the '113 Patent, Google Seeks Dismissal, and Plaintiff Makes a False Representation to this Court ............................. 9

    G.  Plaintiff's Early Dismissals and Failure to Prosecute are Part of a Pattern ...................... 10

III.    LEGAL STANDARD.............................................................................................. 11

IV.    ARGUMENT.......................................................................................................... 12

    A.  Google is the Prevailing Party ....................................................................... 12

    B.  This Case Is Exceptional................................................................................ 13

        1.  Plaintiff Failed to Perform an Adequate Pre-Suit Investigation ................................... 13

        2.  Plaintiff Litigated this Case in an Unreasonable Manner ............................................. 15

        3.  This Case is Part of a Pattern of Abusive Litigation by DynaIP and Its Counsel........................................................................................................... 19

V.     CONCLUSION....................................................................................................... 21

GOOGLE LLC'S MOTION FOR ATTORNEYS' FEES
CASE NO 4:22-cv-08711-HSG

Appx0148

**TABLE OF AUTHORITIES**

**Cases**

*ALD Social, LLC v. Google, LLC*,
No. 6:22-cv-00972-FB (W.D. Tex. Sept. 16, 2022) ................................................................... 19

*Ask Sydney, LLC v. Google, LLC*,
No. 6:23-cv-00111-XR (W.D. Tex. Feb. 13, 2023) .................................................................... 19

*AttestWave, LLC v. Google, LLC*,
No. 6:22-cv-01102-OLG (W.D. Tex. Oct. 24, 2022) ................................................................. 19

*Bayer CropScience AG v. Dow AgroSciences LLC*,
851 F.3d 1302 (Fed. Cir. 2017) ......................................................................................... 13, 14

*Big Baboon, Inc. v. SAP America, Inc.*,
No. 17-cv-02082-HSG (EDL), 2019 WL 5088784 (N.D. Cal. Sept. 9, 2019),
*report and recommendation adopted by*, 2019 WL 5102644 (N.D. Cal. Oct.
11, 2019), *aff'd*, 819 F. App'x 928 (Fed. Cir. Sept. 2, 2020) ........................................... 17, 19

*Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*,
246 F.3d 1368, 1378 (Fed. Cir. 2001) ........................................................................................ 6

*CTD Networks, LLC v. Google, LLC*,
No. 6:22-cv-01042-XR (W.D. Tex. Oct. 6, 2022) ..................................................................... 19

*Eon-Net LP v. Flagstar Bancorp*,
653 F.3d 1314, 1327 (Fed. Cir. 2011) ...................................................................................... 20

*EscapeX IP LLC v. Apple Inc.*,
No. 6:22-cv-00427-ADA (W.D. Tex. Apr. 28, 2022) ................................................................ 10

*EscapeX IP LLC v. Block Inc.*,
No. 1:22-cv-03575-JMF (S.D.N.Y. Jan. 24, 2023) ..................................................................... 8

*EscapeX IP LLC v. Digital Trends*,
No. 1:22-cv-03512-CM (S.D.N.Y. Apr. 29, 2022) ............................................................. 10, 15

*EscapeX IP LLC v. Google LLC*,
No. 6:22-cv-00428-ADA (W.D. Tex. Apr. 28, 2022) ................................................................ 19

*EscapeX IP LLC v. Rockbot Inc.*,
2:22-cv-00130-RWS-RSP (E.D. Tex. Apr. 29, 2022) ............................................................... 10

*EscapeX IP LLC v. Sirius XM Int'l Inc.*,
No. 6:22-cv-00430-ADA (W.D. Tex. Apr. 28, 2022) ................................................................ 10

*Finnavations LLC v. Payoneer*, Inc.,
No. 1:18-cv-00444-RGA, 2019 WL 1236358 (D. Del. Mar. 18, 2019) ............................... 17

*Flick Intel., LLC v. Google, LLC*,
No. 6:23-cv-00051-ADA (W.D. Tex. Jan. 26, 2023) ................................................................. 19

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
876 F.3d 1372 (Fed. Cir. 2017) ................................................................................................. 17

GOOGLE LLC'S MOTION FOR ATTORNEYS' FEES
CASE NO 4:22-cv-08711-HSG

Appx0149

*Kilopass Tech., Inc. v. Sidense Corp.*,
    738 F.3d 1302 (Fed. Cir. 2013) ................................................................................... 1

*Koji IP, LLC v. Google, LLC*,
    No. 6:23-cv-00138-DC-DTG (W.D. Tex. Feb. 22, 2023) ................................................... 19

*Logic Devices, Inc. v. Apple Inc.*,
    No. C 13-02943 WHA, 2014 WL 6844821 (N.D. Cal. Dec. 4, 2014) ................................. 17

*LS Cloud Storage Techs., LLC v. Google LLC*,
    No. 6:22-cv-00318-ADA (W.D. Tex. Mar. 25, 2022) ....................................................... 19

*Mesa Digital, LLC v. Google, LLC*,
    No. 6:22-cv-00574-ADA (W.D. Tex. Jun. 3, 2022) ......................................................... 19

*My Health, Inc. v. ALR Techs., Inc.*,
    No. 2:16-cv-00535-RWS-RSP, 2017 WL 6512221 (E.D. Tex. Dec. 19, 2017),
    *report and recommendation adopted by*, 2018 WL 11327219 (E.D. Tex. Nov.
    30, 2018) ........................................................................................................... 18

*Octane Fitness LLC v. Icon Health & Fitness, Inc.*,
    572 U.S. 545 (2014) ......................................................................................... 1, 11, 14

*Order, P.S. Prods., Inc. v. Panther Trading Co.*,
    No. 4:22-cv-00473-JM (E.D. Ark. Jan. 30, 2023) ....................................................... 19

*Pedersen v. Google LLC*,
    No. 6:21-cv-01152-ADA (W.D. Tex. Nov. 9, 2021) ....................................................... 19

*Raniere v. Microsoft Corp.*,
    887 F.3d 1298 (Fed. Cir. 2018) ............................................................................. 12

*Realtime Adaptive Streaming LLC v. Netflix, Inc.*,
    No. CV 19-6359-GW-JCx, 2020 WL 7889048 (C.D. Cal. Nov. 23, 2020),
    *aff'd*, 41 F.4th 1372 (Fed. Cir. 2022) ................................................................... 12

*Romag Fasteners, Inc. v. Fossil, Inc.*,
    866 F.3d 1330 (Fed. Cir. 2017) ........................................................................... 12, 16

*SafeCast Ltd. v. Google, LLC*,
    No. 6:22-cv-00678-ADA (W.D. Tex. Jun. 27, 2022) ..................................................... 19

*SFA Sys., LLC v. Newegg Inc.*,
    793 F.3d 1344 (Fed. Cir. 2015) ........................................................................... 12, 18

*Shipping & Transit, LLC v. 1A Auto, Inc.*,
    283 F. Supp. 3d 1290 (S.D. Fla. 2017) .................................................................. 19, 20

*Stone Basket Innovations, LLC v. Cook Med. LLC*,
    892 F.3d 1175 (Fed. Cir. 2018) ............................................................................. 11

*Thermolife Int'l LLC v. GNC Corp.*,
    922 F.3d 1347 (Fed. Cir. 2019) ......................................................................... 11, 13, 14

*Traxcell Techs., LLC v. Google LLC*,
    No. 3:22-cv-04807-JSC (N.D. Cal. Oct. 25, 2022) ....................................................... 18

- iii -

*Traxcell Techs., LLC v. Google LLC*,
No. 6:21-cv-01312-ADA (W.D. Tex. Dec. 16, 2021) ............................................................. 19

*Traxcell Techs., LLC. v. AT&T Corp.*,
No. 2:17-cv-00718-RWS-RSP, 2022 WL 949951 (E.D. Tex. Mar. 29, 2022),
*report and recommendation adopted by*, 2022 WL 18507378 (E.D. Tex. Dec.
22, 2022) ............................................................................................................................... 21

*Valjakka v. Google LLC*, No. 6:22-cv-00004-ADA
(W.D. Tex. Jan. 3, 2022) ...................................................................................................... 19

*VIAAS, Inc. v. Google LLC*, No. 6:22-cv-01048-KC
(W.D. Tex. Oct. 6, 2022) ...................................................................................................... 19

*WirelessWerx IP, LLC v. Google, LLC*,
No. 6:22-cv-01056-RP (W.D. Tex. Oct. 7, 2022) ................................................................ 19

*WPEM, LLC v. SOTI Inc.*,
No. 2:18-CV-00156-JRG, 2020 WL 555545 (E.D. Tex. Feb. 4, 2020) .................... 14, 16, 20

*ZT IP, LLC v. VMware, Inc.*,
No. 3:22-CV-0970-X, 2023 WL 1785769 (N.D. Tex. Feb. 6, 2023) .............................. 16, 20

**Statutes**

35 U.S.C. § 285 ................................................................................................................. *passim*

GOOGLE LLC'S MOTION FOR ATTORNEYS' FEES
CASE NO 4:22-cv-08711-HSG

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on June 29, 2023, at 2 p.m., or as soon thereafter as this matter may be heard by the Honorable Haywood S. Gilliam, Jr. in Courtroom 2, located at 1301 Clay Street, Oakland, CA 94612, Defendant Google LLC will and hereby does move the Court under 35 U.S.C. § 285 and the Court's inherent powers for an order granting Google its reasonable attorneys' fees incurred in this litigation. Google makes this request as the prevailing party following Plaintiff's voluntary dismissal with prejudice (Dkt. No. 40). Google bases its motion on this notice, the accompanying memorandum of points and authorities, the supporting declarations of Brian C. Banner and Asim M. Bhansali, all pleadings and documents on file in this action, and other such materials or arguments as the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

"The aim of [an award under] § 285 is to compensate a defendant for attorneys' fees it should not have been forced to incur." *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013). As the Supreme Court has instructed, when deciding whether to award fees, a court can consider "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). EscapeX's conduct in this case is exactly what § 285 is intended to deter. Its lawsuit against Google was frivolous from the very start and, despite Google repeatedly pointing out the multiple fatal flaws in EscapeX's claim, EscapeX refused to dismiss, forcing Google and the courts to expend needless resources.

- 1 -

*First*, there is no dispute that Plaintiff failed to undertake a reasonable pre-suit investigation because, in its original complaint against Google, it improperly mixed and matched features of distinct products to make its allegations.

*Second*, after Google put EscapeX on notice of the baselessness of its claim, Plaintiff amended its complaint to accuse Google's YouTube Video "Auto Add" feature of infringement. But, as Google repeatedly pointed out, publicly available information confirms that the newly accused feature predates the asserted patent and thus, under EscapeX's theory of infringement, would invalidate the asserted patent.

*Third*, EscapeX was put on notice as early as September 8, 2022, that the asserted patent is invalid when Southern District of New York ("SDNY") Judge Colleen McMahon explicitly advised EscapeX that defendant Digital Trend's motion to dismiss under 35 U.S.C § 101 "raises serious Alice issues [and a decision] may affect cases relating to the same patent, but against different defendants…" To avoid an unfavorable ruling that would void its claims in the six other pending cases asserting the same patent, Plaintiff voluntarily dismissed the Digital Trends case before Judge McMahon, but continued to pursue its claims against Google and the other defendants, including a second SDNY case against Block, Inc. pending in front of a different judge, Judge Jesse M. Furman.

*Fourth*, shortly after EscapeX dismissed the case before Judge McMahon, Google once again notified EscapeX about the fatal flaws in its case, explaining both that the accused feature predated the patent and that the patent was invalid under § 101. Google also notified EscapeX that it would be seeking transfer of the case to the Northern District of California ("NDCA"). Rather than engaging on the transfer issues or dismissing its case in light of clear notice of the baselessness of its claim, EscapeX simply ignored Google's letter and subsequent attempts to get a response.

- 2 -

Google was thus forced to expend significant resources filing a motion to transfer, which EscapeX also ignored. The Western District of Texas ("WDTX") subsequently granted the motion as unopposed after noting EscapeX's failure to respond.

It was not until Judge Furman (the other SDNY case), found the asserted patent invalid under § 101 that EscapeX finally dismissed its suit against Google, but only after *Google* approached EscapeX seeking dismissal prior to this Court's pre-CMC deadlines.

Plaintiff's conduct was not harmless. To the contrary, its filing of this suit without conducting a reasonable investigation, continued maintenance of this suit despite repeated notice of its defects, and unreasonable conduct during the case forced Google to incur attorneys' fees and costs spent investigating and documenting EscapeX's frivolous claim as well as preparing and filing a motion to transfer that the WDTX court ultimately granted as unopposed.

In view of Plaintiff's inadequate pre-suit investigation and subsequent unreasonable litigation conduct, Google respectfully requests that the Court find this case exceptional under § 285 and award Google its reasonable attorneys' fees and costs.

## II. STATEMENT OF FACTS

### A. Plaintiff EscapeX IP LLC

Plaintiff is a patent assertion entity formed as a Texas limited liability company. Dkt. No. 15 ¶ 1. According to the Texas Comptroller of Public Accounts, Plaintiff registered as a Texas LLC on March 24, 2022, a month before Plaintiff filed this lawsuit. Ex. 1.[1] Plaintiff did not file a corporate disclosure statement (as required by Federal Rule of Civil Procedure 7.1), but public

---

[1] Citations to exhibits ("Ex.") refer to the exhibits attached to the Declaration of Brian C. Banner.

- 3 -

information suggests that Plaintiff is a subsidiary of Dynamic IP Deals LLC ("DynaIP"), an entity that purports to specialize in "intellectual property monetization."[2]

**B. Plaintiff Files this Lawsuit Relying on Combination of Features of Distinct Products**

Plaintiff filed its original complaint on April 28, 2022, in the Waco Division of the WDTX, asserting infringement of U.S. Patent No. 9,009,113 ("the '113 patent"). It then filed a first amended complaint ("FAC") on May 23, 2022 because the original complaint included the incorrect patent number. Dkt. No. 8. On April 28 and May 3, Plaintiff also filed six other cases alleging infringement of the '113 patent. *See infra*, Part I.G. Plaintiff is represented by the Ramey LLP law firm in all seven lawsuits. Dkt. No. 1 at 5–6.

As with other complaints filed by this same counsel, the FAC consists of a thin five pages; it purported to accuse only "Google's YouTube Music" as infringing the '113 patent. Dkt. No. 8 ¶¶ 11–12 and "Prayer for Relief." EscapeX and its counsel presumably accused YouTube ***Music*** since the asserted claim recites a "computer implemented method for updating *a dynamic album that includes a set of songs* stored in relation to and played by an artist specific application associated with an artist…" *Id.* (emphasis added). Yet, in Exhibit A attached to the complaint as a claim chart, while purporting to accuse YouTube ***Music***, EscapeX actually pointed to a different product, YouTube ***Video***, for nearly all the limitations of asserted claim 1. *Id.* at 3–5. In fact, in cobbling together its allegations, EscapeX pointed to YouTube ***Music*** as meeting the preamble

---

[2] *See* Unified Patents, $3,000 for Dynamic IP Deals entity EscapeX IP prior art (May 25, 2022), https://www.unifiedpatents.com/insights/2022/5/25/3000-for-dynamic-ip-deals-entity-escapex-ip-prior-art (last visited March 16, 2023); Dynamic IP Deals LLC, https://dynaipdeals.com/ (last visited March 16, 2023). DynaIP has filed nearly 300 cases in the past 30 months through shell companies formed solely to own and assert patents—apparently with the sole aim of forcing nuisance-value settlements. Plaintiff's counsel appears to be complicit in, if not a part of, DynaIP's abusive litigation tactics, as Ramey LLP is listed as having a financial interest in at least two other DynaIP cases filed against Google. Ex. 2–3. Google is a repeat target of both DynaIP and Ramey LLP, having been sued 15 times since November 2021 by plaintiff's counsel (five of those—including this case—by known DynaIP entities). *See infra*, nn. 7–8.

and the "playing…" limitation while importing YouTube *Video's* Auto Add feature for all other limitations of claim 1. *Id.* But YouTube *Music* and YouTube *Video* are two separate products; something any reasonable pre-suit investigation would have revealed and a fact Google conveyed in a letter to Plaintiff on August 5, 2022. Ex. 4 at 1–2.

**C. Plaintiff's Second Amended Complaint Accuses YouTube Video's Auto Add Feature—a Feature that Predates the '113 Patent**

On August 14, Plaintiff effectively admitted its pre-filing investigation was inadequate and provided a "claim chart in rebuttal" which now identified YouTube Video as the infringing product based on its Auto Add feature. Ex. 5. On August 29, 2022, Plaintiff filed a second amended complaint ("SAC") alleging infringement by YouTube Video's Auto Add feature. Dkt. No. 15-1 at 1–2. On October 27, 2022, Plaintiff served infringement contentions ("ICs"). Ex. 6. The ICs maintained the allegations against the Auto Add feature and asserted that "[t]he '113 patent claims an earliest priority date of October 21, 2014. This is the priority date for all asserted claims." *Id.* at 2; *see also id.* at 6 (claim chart).

As support for its damages period, EscapeX asserted that the "Start of Auto-Add feature" is 2015-07-26 (*id.* at 9) and the "End of Auto-Add feature" is 2021-03-03 (*id.* at 10). This is incorrect. As Google told EscapeX (*see infra*, Part I.D), publicly available information confirms the accused Auto Add feature was publicly available and in use at least as early as June 16, 2014— four months before the '113 patent's earliest October 21, 2014 priority date.

**D. Google Requests Dismissal in View of Fatal Case Deficiencies Including (1) Asserting Infringement by the Prior Art and (2) Invalidity Under § 101**

On November 7, Google sent a second letter to Plaintiff setting forth two independent reasons that EscapeX's suit should be dismissed. Ex. 7.

GOOGLE LLC'S MOTION FOR ATTORNEYS' FEES
CASE NO 4:22-cv-08711-HSG

Appx0156

First, Google explained that "EscapeX's investigation into the Accused Auto Add Feature was woefully deficient as the Auto Add feature … predates the '113 patent." Ex. 7 at 1–2. Google provided EscapeX with clear, indisputable evidence:

> For example, an internet search of the phrase "youtube 'auto add'" resulted in multiple videos prior to October 21, 2014 that show the accused Auto Add Feature in use:
>
> - June 16, 2014: "How To: Schedule Videos To Auto Add To Playlists Using Tags On YouTube," https://www.youtube.com/watch?v=rEd-RxiBASo.[3]
>
> - July 22, 2014: "YouTube Playlist Settings - Auto Add," https://www.youtube.com/watch?v=7A7-FvfNQk0.
>
> - August 19, 2014: "Auto Upload Videos to a YouTube Playlist," https://www.youtube.com/watch?v=YNZ8SQf0Gug.
>
> - September 7, 2014: "YouTube - Daily YouTube Tips - Episode 29 – 'Playlist Auto-Add'," https://www.youtube.com/watch?v=xSAmRhGMqbw.

*Id.* at 2.

In fact, Google even provided a comparison between a screenshot in Plaintiff's infringement chart (Dkt. No. 15-1 at 1) and a screenshot from the July 22, 2014 YouTube video, which confirms that the exact same features accused of infringement were available prior to the '113 patent's priority date.

---

[3] As of the filing of this motion, this video has been made private (as indicated when following the link). It was not private when Google sent its November 7 letter. The video is still available on the Internet Archive at https://web.archive.org/web/20200829163923/https://www.youtube.com/watch?v=rEd-RxiBASo&gl=US&hl=en.

GOOGLE LLC'S MOTION FOR ATTORNEYS' FEES
CASE NO 4:22-cv-08711-HSG



*Id.* at 3 (ICs, left; July 22, 2014 YouTube video, right). As Google explained:

> EscapeX's infringement theory is without merit because "it is axiomatic that that which would literally infringe if later anticipates if earlier." *Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001) (citations omitted). Thus, EscapeX's allegations render the '113 patent invalid and EscapeX must dismiss this lawsuit.

*Id.*

Second, Google's November 7 letter also explained that EscapeX's patent was invalid, citing Judge McMahon's September 8, 2022 statements in the Digital Trends SDNY case:

> The '113 patent is invalid under 35 U.S.C. § 101 "for reasons already raised by other defendants in parallel proceedings against Digital Trends and Block in the Southern District of New York. Tellingly, EscapeX promptly dismissed its case against Digital Trends after Judge McMahon stated that the defendant's § 101 motion "raises serious Alice issues . . . [and] [t]he court wishes to decide the outstanding motion promptly, as it may affect cases relating to the same patent, but against different defendants, that are pending before other judges of the court." *Digital Trends*, Dkt. No. 19 (Sept. 8, 2022).
>
> EscapeX knows the '113 patent is likely invalid for failure to claim patentable subject matter. Thus, it is unreasonable for EscapeX to continue to force Google to incur fees related to the meritless allegations in this case.

*Id.* at 5–6.

Google's letter put Plaintiff on notice that Google would seek fees under § 285 if Plaintiff refused to dismiss its meritless claims. *Id.* at 8. Google specifically provided early notice "so that the parties and the Court may avoid unnecessary expenditure of time and money by disposing of an action that has no colorable basis in law or fact." *Id.*

- 7 -

Finally, Google informed Plaintiff of its intent to file a motion to transfer the case from the WDTX to the more convenient NDCA, and warned that "Google should not have to incur the expenses related to a transfer motion and additional motion practice thereafter in a baseless lawsuit such as this." *Id.* Google asked for a response by November 14. *Id.*

**E.   Google Incurs Attorneys' Fees while Plaintiff Willfully Ignores Google's Repeated Requests**

Plaintiff ignored Google's November 7 letter, as well as its November 16 follow-up email. Banner Decl. ¶ 27; Ex. 8. Google thus was forced to spend time and resources to file a motion to transfer the case to the NDCA. Dkt. No. 18. Plaintiff never opposed that motion nor sought any discovery as provided for under the WDTX court's standing orders. On December 12, Judge Albright granted Google's motion because "Plaintiff did not file a response … [and] the Court considers this Motion unopposed." Dkt. No. 22 at 2. Tellingly, Judge Albright noted:

> Most troublesome here is that the same counsel representing this same plaintiff has already been chastised by this Court for his repeated failure to file in a timely manner. … Counsel failed to heed that warning.

*Id.* at 3.

Following the transfer order, Google again emailed Plaintiff's counsel on December 13, 2022, re-attaching Google's November 7 letter. Ex. 9. Plaintiff did not respond to that email. Banner Decl. ¶ 27. On December 21, Google's counsel called Plaintiff's counsel, and Plaintiff's counsel asked that Google forward the November 7 letter, which Google did that same day. Ex. 10. Once again, Plaintiff ignored the letter. Banner Decl. ¶ 27. On January 3, 2023, Google emailed Plaintiff to ask if a response was forthcoming. Ex. 11. Plaintiff's counsel replied the following day (January 4), stating "I've explained what is going on to the client and am waiting for a response. I asked again yesterday and haven't heard back yet. I'm going to start pushing for a response from them." Ex. 12. A response never came. Banner Decl. ¶ 27.

GOOGLE LLC'S MOTION FOR ATTORNEYS' FEES
CASE NO 4:22-cv-08711-HSG

Appx0159

**F. Judge Furman (SDNY) Invalidates the '113 Patent, Google Seeks Dismissal, and Plaintiff Makes a False Representation to this Court**

On January 24, 2023, Judge Furman invalidated the '113 patent under 35 U.S.C. § 101 in the SDNY case against Block, Inc.[4] *See* Opinion and Order, Dkt. No. 30, *EscapeX IP LLC v. Block Inc.*, No. 1:22-cv-03575-JMF (S.D.N.Y. Jan. 24, 2023). Plaintiff did not file a notice of appeal within 30 days of that judgment, rendering it final and non-appealable on January 24. Meanwhile, EscapeX still provided no substantive response to Google's November 7 letter or its repeated attempts to follow-up. Banner Decl. ¶ 27. Nor did EscapeX dismiss its suit against Google.

On March 2, 2023, having still heard nothing from EscapeX and with this Court's pre-CMC deadlines looming, Google sent yet another letter to Plaintiff demanding dismissal of this lawsuit. Ex. 13. Finally, on March 3, without any discussion with or review by Google, Plaintiff filed a purported "Joint Stipulation of Dismissal" pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). *See* Dkt. No. 37. The filing stated that the parties jointly stipulated to dismissal with prejudice as to the patent-in-suit, and that the parties "further jointly stipulate and agree that each party shall bear its own costs, expenses and attorneys' fees." *Id.* at 2. The filing included the electronic signatures of Plaintiff's counsel, Susan Kalra and Mr. Ramey, and purported to include that of Google's counsel Kate Lazarus. *Id.* Further, the joint stipulation included a signature attestation, stating: "Pursuant to Civil Local Rule 5-1(i)(3) [sic], I, Susan Kalra, attest that concurrence in the filing of this document has been obtained from Defendants' counsel." *Id.* at 3. All of the above assertions in the filing were false, however, and the use of Google's counsel's signature was unauthorized.

---

[4] EscapeX previously dismissed its *other* SDNY suit against Digital Trends after Judge McMahon stated the '113 patent had "serious Alice [§ 101] issues." *See infra*, Part I.G.

GOOGLE LLC'S MOTION FOR ATTORNEYS' FEES
CASE NO 4:22-cv-08711-HSG

Appx0160

Plaintiff did not obtain Google's consent to file the joint stipulation or use Ms. Lazarus's signature, much less even send the joint stipulation to Google for review. Banner Decl. ¶ 28. Indeed, Google's counsel had never seen the "joint stipulation" and were not aware of its terms until after receiving an ECF notice of the filing.

Google immediately notified Plaintiff of the unauthorized filing and requested that Plaintiff withdraw the filing and notify the Court that it had been filed without agreement or consent. Ex. 14. Although Plaintiff attempted to withdraw the filing, it did so without informing the Court of the reason for the withdrawal. Dkt. No. 38. On March 7, after obtaining agreement from Plaintiff, Google filed a Joint Stipulation of Dismissal Pursuant to Fed. R. Civ. P. 41 (a)(1)(A)(ii). Dkt. No. 40. The stipulation dismisses Google with prejudice and, because there was never an agreement on fees and costs, is silent as to any allocation of fees and costs. *Id.*

## G. Plaintiff's Early Dismissals and Failure to Prosecute are Part of a Pattern

Plaintiff's behavior in this suit is part of a pattern demonstrating its lack of belief in the merits of its cases asserting the '113 patent. Plaintiff also sued Sirius XM in the WDTX on the same day it sued Google. *See EscapeX IP LLC v. Sirius XM Int'l Inc.*, No. 6:22-cv-00430-ADA (W.D. Tex. Apr. 28, 2022). However, Plaintiff failed to prosecute, never served the defendant, and then voluntarily dismissed the case on February 16, 2023 (i.e., weeks after Judge Furman invalidated the '113 patent). Plaintiff also sued Apple Inc. in the WDTX on the same day it sued Google. *See EscapeX IP LLC v. Apple Inc.*, No. 6:22-cv-00427-ADA (W.D. Tex. Apr. 28, 2022). On September 9, 2022, Apple filed a motion to dismiss the case. *Id.*, Dkt. No. 13. Plaintiff did not respond to the motion to dismiss, but instead voluntarily dismissed Apple with prejudice on October 25, 2022. *Id.* Dkt. No. 23. Plaintiff sued Rockbot in the Eastern District of Texas. *EscapeX IP LLC v. Rockbot Inc.*, 2:22-cv-00130-RWS-RSP (E.D. Tex. Apr. 29, 2022). Plaintiff dismissed the suit with prejudice before the defendant answered the complaint. *Id.*, Dkt. No. 16.

GOOGLE LLC'S MOTION FOR ATTORNEYS' FEES
CASE NO 4:22-cv-08711-HSG

Finally, Plaintiff also filed suit against Digital Trends in the Southern District of New York on April 29, 2022. *EscapeX IP LLC v. Digital Trends*, No. 1:22-cv-03512-CM (S.D.N.Y. Apr. 29, 2022). On August 11, 2022, Digital Trends moved to dismiss, challenging the validity of the '113 patent under 35 U.S.C. § 101. *Id.*, Dkt. No. 17–18. On September 8, 2022, Judge McMahon observed that Plaintiff's response to Digital Trends' motion to dismiss was two weeks past due and that Plaintiff had not sought an extension. *See* Order at 1, *Id.*, Dkt. No. 19. Noting that Digital Trends' motion "raise[d] serious Alice issues," Judge McMahon gave EscapeX additional time to respond, but stated that she wished to consider and rule on the motion promptly, since her ruling might impact "cases relating to the same patent, but against different defendants, that are pending before other judges of the court." *Id.* But rather than oppose Digital Trend's motion, Plaintiff instead voluntarily dismissed its case against Digital Trends without filing an opposition to the motion to dismiss, preventing Judge McMahon from ruling on the validity of the '113 patent. *See Id.*, Dkt. No. 21 (Notice of Voluntary Dismissal).

## III. LEGAL STANDARD

In patent cases, a district court may award reasonable attorney fees to the prevailing party in exceptional cases. 35 U.S.C. § 285. To be entitled to an award under § 285, the prevailing party must prove the case is "exceptional" by a preponderance of the evidence. *Octane Fitness*, 572 U.S. at 554. An exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id*. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id*. In determining whether to award fees, district courts can consider a nonexclusive list of factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular

GOOGLE LLC'S MOTION FOR ATTORNEYS' FEES
CASE NO 4:22-cv-08711-HSG

Appx0162

circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (citation omitted). Additionally, "[t]here is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of [such] considerations…" *Id.* at 554 (quotation marks and citation omitted). "[O]ne consideration that can and often should be important to an exceptional-case determination is whether the party seeking fees 'provide[d] early, focused, and supported notice of its belief that it was being subjected to exceptional litigation behavior.'" *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1357 (Fed. Cir. 2019) (quoting *Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1181 (Fed. Cir. 2018)).

Further, the Federal Circuit has held it is error to "declin[e] to consider, in connection with [the] totality of circumstances analysis, [a party's] earlier litigation misconduct. … Indeed, the fact that this misconduct has already been sanctioned should be weighed more heavily, rather than be excluded, in the 35 U.S.C. § 285 analysis." *Romag Fasteners, Inc. v. Fossil, Inc.*, 866 F.3d 1330, 1340 (Fed. Cir. 2017); *see also SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015) ("a pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285").

## IV. ARGUMENT

### A. Google is the Prevailing Party

Google is a "prevailing party" for purposes of § 285 because Plaintiff voluntarily dismissed Google *with prejudice* after the '113 patent was found to be invalid by the SDNY court. *See Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1308 (Fed. Cir. 2018) ("district court's dismissal with prejudice … suffices to make [defendants] 'prevailing parties'"); *Realtime Adaptive Streaming LLC v. Netflix, Inc.*, No. CV 19-6359-GW-JCx, 2020 WL 7889048, at *4–6 (C.D. Cal. Nov. 23, 2020) (collecting cases and holding defendant was "prevailing party" for purposes of § 285

GOOGLE LLC'S MOTION FOR ATTORNEYS' FEES
CASE NO 4:22-cv-08711-HSG

following a voluntary dismissal *with prejudice*), *aff'd*, 41 F.4th 1372 (Fed. Cir. 2022). As the prevailing party, this Court may award reasonable attorney fees to Google upon a finding this case is exceptional. 35 U.S.C. § 285.

**B.      This Case Is Exceptional**

Google asks that the Court determine that this case is "exceptional" under § 285. Not only did Plaintiff and its counsel fail to conduct a reasonable pre-suit investigation and file a baseless initial complaint accusing a mix of features that does not exist in a single product, but it continued to pursue its meritless claim despite "early, focused, and supported notice" of Google's belief it was being subjected to exceptional litigation behavior. *Thermolife*, 922 F.3d at 1357. Plaintiff's litigation positions were meritless, and its failure to diligently respond to notice of serious defects, or to dismiss its case when faced with undisputed evidence of its meritlessness, was unreasonable.

**1.   *Plaintiff Failed to Perform an Adequate Pre-Suit Investigation***

Plaintiff failed to perform an adequate pre-suit investigation, which is grounds for finding this case exceptional. *See Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1307 (Fed. Cir. 2017) ("pre-suit diligence [is] a factor in the [§ 285] totality-of-the-circumstance approach"); *see also Thermolife*, 922 F.3d at 1356 (an inadequate pre-suit investigation supports an exceptional-case determination). First, the original complaint and the FAC alleged infringement by a feature that did not exist in the accused YouTube Music product. *See supra*, Part I.B. Specifically, Plaintiff's complaint and accompanying claim chart identified a single product, YouTube Music, while importing features found in a separate and distinct product, YouTube Video. *Id.* The disparate nature of the two products should have been self-evident to Plaintiff and its counsel based on Plaintiff's own claim charts at least because (1) YouTube Music is an application for playing music (songs), and (2) the Auto Add documentation cited in Plaintiff's infringement allegations is labeled as part of YouTube Video and expressly relates to "videos"

with no indication that it is related to playing music. Ex. 4 at 1–2 ("The other screenshot in EscapeX's claim chart similarly leaves no doubt this 'Auto add' feature relates to videos, not to music or songs…"). In addition, there is no way to get to the Auto Add dialogue from within YouTube Music, a fact that Plaintiff could easily have investigated and validated by using the free YouTube Music app before suing Google. Indeed, the deficiency was so glaring, it did not take long (only nine days) for Plaintiff to review Google's letter, recognize its pre-suit investigation was deficient, and prepare a "claim chart in rebuttal" that at least accused features found in the accused product (YouTube Video). *See supra*, Parts I.B–C.

However, Plaintiff's new allegations in its SAC were equally lacking. Rather than accusing a mixture of two products, the SAC asserted infringement by a product and feature (YouTube Video's Auto Add) that predates the '113 patent. This was confirmed when Plaintiff served its ICs on October 27, 2022, which state "[t]he '113 patent claims an earliest priority date of October 21, 2014." Ex. 6 at 2. The Auto Add feature was publicly available and in use at least as early as June 16, 2014. Ex. 7 at 1–2; *see also, supra*, Part I.D. As explained in Google's November 7 letter, Plaintiff could have easily uncovered this fact if it had performed simple internet searches, e.g., the search Google detailed in its letter showing at least four YouTube videos dated prior to October 21, 2014 demonstrating the Auto Add feature. Ex. 7 at 2.

This is a truly egregious fact pattern wherein Plaintiff twice asserted theories *at the pleading stage* that were readily disprovable based on easily accessed information. This conduct supports an award of fees. *See Bayer*, 851 F.3d at 1307; *see also WPEM, LLC v. SOTI Inc.*, No. 2:18-CV-00156-JRG, 2020 WL 555545, at *3 (E.D. Tex. Feb. 4, 2020) ("Having failed to conduct a pre-filing investigation, the Court finds that WPEM has unreasonably subjected SOTI to the costs of litigation and should properly bear its attorneys' fees.").

GOOGLE LLC'S MOTION FOR ATTORNEYS' FEES
CASE NO 4:22-cv-08711-HSG

### 2. *Plaintiff Litigated this Case in an Unreasonable Manner*

An "exceptional" case may also be based on "the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554. Google repeatedly notified EscapeX of the glaring deficiencies in its case; these gave EscapeX multiple opportunities to dismiss its baseless case, all of which EscapeX ignored. Indeed, in its November 7 letter, Google provided "early, focused, and supported notice of its belief that it was being subjected to exceptional litigation behavior." *Thermolife*, 922 F.3d at 1357. Plaintiff and its counsel ignored this letter and ignored each of Google's additional five attempts to get a response from Plaintiff in the ensuing two months. *See supra*, part I.E (explaining Google's outreach on November 7, November 16, December 13, December 21 (phone and email), and January 3).

In short, Plaintiff knew—or certainly should have known—that its infringement allegations were untenable because this was the second case in which it accused the prior art of infringing its patent (showing a pattern of failing to perform a pre-suit investigation). In EscapeX's case against Apple, Apple also provided notice to EscapeX that it was accusing the prior art by similarly providing screenshots pre-dating the '113 patent. Ex. 15 at 5–6 (Apple's "Motion to Dismiss Given EscapeX's Admission that 'Apple Does Not Infringe'"). In responding to Apple, EscapeX's counsel affirmatively *admitted* that Apple did not infringe the asserted claims. Ex. 15 at 5–6 & Apple Exhibit 1. Armed with this explicit admission, Apple was able to move to dismiss that case. Ex. 15. Following a familiar pattern, EscapeX then dismissed that case without filing any response to Apple's motion. Ex. 16. EscapeX then repeated this conduct when it accused a Google product that pre-dates the '113 patent. EscapeX ignored Google's attempts to point this out, forcing Google to continue to incur fees to defend itself against Plaintiff's baseless claims. For example, Google informed Plaintiff of its intent to file a motion to transfer the case from the WDTX to the more convenient and appropriate NDCA, and warned that "Google should not have to incur the expenses

GOOGLE LLC'S MOTION FOR ATTORNEYS' FEES
CASE NO 4:22-cv-08711-HSG

related to a transfer motion and additional motion practice thereafter in a baseless lawsuit such as this." *See* Part I.D. Plaintiff ignored Google's correspondence (and subsequent follow-up) forcing Google to file a transfer motion. Then Plaintiff didn't even bother to oppose Google's motion. *Id.*

Further, Plaintiff should have known that its patent had serious patent eligibility issues. Certainly by the time Google sent its November 7 letter, Plaintiff was keenly aware that the Digital Trends SDNY court was on the cusp of invalidating the '113 patent under § 101. *See Digital Trends*, No. 1:22-cv-03512, Dkt. No. 19 (Sept. 8, 2022) (warning that defendant's § 101 motion "raises serious Alice issues…"). Indeed, when Judge McMahon told EscapeX she wanted to rule on the § 101 motion promptly because her ruling "***may affect cases relating to the same patent, but against different defendants***," EscapeX sought to avoid that adverse ruling by voluntarily dismissing its case a mere **eight** days later. *See id.*, Dkt. No. 21. Google's November 7 letter further reiterated to EscapeX that the '113 was patent ineligible, but EscapeX continued to ignore Google's and at least one court's warnings. Ex. 7 at 5–6.

That is exactly the type of conduct that supports an exceptional case finding. Indeed, just last month, Judge Starr in the Northern District of Texas awarded attorneys' fees in a case where a DynaIP-affiliated[5] plaintiff represented by Plaintiff's counsel insisted on maintaining a baseless patent suit despite "ample opportunities to recognize the frivolousness of its position." *ZT IP, LLC v. VMware, Inc.*, No. 3:22-CV-0970-X, 2023 WL 1785769, at *4 (N.D. Tex. Feb. 6, 2023). Further, Judge Starr noted that "a previous warning about certain pre-filing failures aids the Court in finding frivolousness, motivation, and the need to advance considerations of compensation and deterrence." *Id.*, at *3 (citing *WPEM*, 2020 WL 555545, at *3–6, 8 (awarding $179,000 in fees against Plaintiff's counsel's client for filing and maintaining a lawsuit on an invalid patent)). Judge

---

[5] Ex. 17 at 4 & Ex. 18 (ZT IP, LLC is managed by Pueblo Nuevo LLC, which is managed by Dynamic IP Deals LLC).

- 16 -

GOOGLE LLC'S MOTION FOR ATTORNEYS' FEES
CASE NO 4:22-cv-08711-HSG

Appx0167

Starr's reasoning is consistent with Federal Circuit precedent finding a district court erred by declining to consider a party's earlier litigation misconduct as part of its exceptional case analysis. *See Romag Fasteners*, 866 F.3d at 1340.

This Court has also found a case "exceptional" for purposes of § 285 and awarded attorneys' fees based on conduct strikingly similar to Plaintiff's conduct here. In *Big Baboon, Inc. v. SAP America*, *Inc*., the Court adopted Magistrate Judge Laporte's report and recommendation finding the case "exceptional" under § 285 based in part on the plaintiff's pursuit of "an infringement case against what was undisputed prior art." No. 17-cv-02082-HSG (EDL), 2019 WL 5088784, at *6 (N.D. Cal. Sept. 9, 2019), *report and recommendation adopted by*, 2019 WL 5102644 (N.D. Cal. Oct. 11, 2019), *aff'd*, 819 F. App'x 928 (Fed. Cir. Sept. 2, 2020); *see also Tech. Props. Ltd. LLC v. Canon Inc.*, No. C 14-3640 CW, 2017 WL 2537286, at *2 (N.D. Cal. Jan. 26, 2017) (finding case "exceptional" in part because plaintiffs' "infringement theory essentially lay claim to prior art"). Further, in *Big Baboon* Magistrate Judge Laporte noted that the plaintiff continued litigating "an invalid patent long after [defendant] reminded it of . . . records showing the lack of merit." 2019 WL 5088784, at *6; *see also Logic Devices, Inc. v. Apple Inc.*, No. C 13-02943 WHA, 2014 WL 6844821, at *4 (N.D. Cal. Dec. 4, 2014) (finding case "exceptional" based in part on plaintiff ignoring "repeated warnings about the invalidity" of the asserted claims, and litigating a "validity position [that] was unsupported by the record"). The same is true here. Awarding attorneys' fees in such cases is proper "to deter similarly weak arguments in the future." *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1377–78 (Fed. Cir. 2017); *see Finnavations LLC v. Payoneer*, Inc., No. 1:18-cv-00444-RGA, 2019 WL 1236358, at *2 (D. Del. Mar. 18, 2019) (awarding attorneys' fees against plaintiffs asserting objectively weak patents "benefits the public generally by decreasing instances of transparently

meritless patent litigation—one of the many goals of the attorneys' fees provision").

In addition, Plaintiff's counsel's misrepresentation to the Court in filing a so-called stipulation without Google's consent further demonstrates that fees are warranted. *See supra*, Part I.F. For example, a court in the Eastern District of Texas considered a plaintiff's misrepresentation to the court of appeals as a circumstance rendering the case exceptional under § 285. *See My Health, Inc. v. ALR Techs., Inc.*, No. 2:16-cv-00535-RWS-RSP, 2017 WL 6512221, at *6 (E.D. Tex. Dec. 19, 2017), *report and recommendation adopted by*, 2018 WL 11327219 (E.D. Tex. Nov. 30, 2018). Counsel "represented to the Federal Circuit that the parties had met and conferred, agreed to dismiss the appeal, and agreed that each side would bear their own costs," facts the court concluded "appear[ed] to have been untrue." *Id.* Plaintiff here made a nearly identical misrepresentation to this Court when it filed its improper joint stipulation of dismissal (Dkt. No. 38) without ever showing it to Google or obtaining Google's consent. Banner Decl. ¶ 28. And this is not the first time this counsel has done this. In a case that was pending before Judge Corley,[6] the same counsel filed a motion for a continuance of a hearing on Google's motion to dismiss, representing that Google did not oppose the motion despite never having provided the motion to Google or obtained Google's consent. *See Traxcell Techs., LLC v. Google LLC*, Case No. 3:22-cv-04807-JSC, Dkt. No. 61 (N.D. Cal. Oct. 25, 2022) (Plaintiff's Motion for Continuance); *id.*, Dkt. No. 63 (October, 26, 2022) (Google's Statement in Response). An award of fees is warranted to deter this pattern of misrepresentation.

---

[6] This was yet another case filed by Plaintiff's counsel in WDTX where Google was forced to move to transfer and where the plaintiff eventually dismissed the case after failing to respond to the motion to transfer and a subsequent motion to dismiss.

GOOGLE LLC'S MOTION FOR ATTORNEYS' FEES
CASE NO 4:22-cv-08711-HSG

### 3. *This Case is Part of a Pattern of Abusive Litigation by DynaIP and Its Counsel*

Between April 28 and May 3, 2022, Plaintiff filed seven lawsuits alleging infringement of the '113 patent. *See supra*, Part I.G. Plaintiff voluntarily dismissed Rockbot before Rockbot answered or otherwise responded to the complaint, voluntarily dismissed Apple and Digital Trends rather than responding to their motions to dismiss, and never served Sirius XM. *Id.* These facts support "the conclusion that [Plaintiff] was filing lawsuits 'for the sole purpose of forcing settlements, with no intention of testing the merits of [the] claims.'" *See My Health*, 2017 WL 6512221, at *5; *see also SFA Sys.*, 793 F.3d at 1350 ("[A] pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285.").

The above deficiencies in Plaintiff's case are reason enough to award attorneys' fees. But there is more. This case is one of fifteen[7] that Plaintiff's counsel has brought against Google (five by known DynaIP entities[8]) that demonstrate a broader pattern of abusive litigation by DynaIP, its

---

[7] *Koji IP, LLC v. Google, LLC*, No. 6:23-cv-00138-DC-DTG (W.D. Tex. Feb. 22, 2023); *Ask Sydney, LLC v. Google, LLC*, No. 6:23-cv-00111-XR (W.D. Tex. Feb. 13, 2023); *Flick Intel., LLC v. Google, LLC*, No. 6:23-cv-00051-ADA (W.D. Tex. Jan. 26, 2023); *AttestWave, LLC v. Google, LLC*, No. 6:22-cv-01102-OLG (W.D. Tex. Oct. 24, 2022); *WirelessWerx IP, LLC v. Google, LLC*, No. 6:22-cv-01056-RP (W.D. Tex. Oct. 7, 2022); *CTD Networks, LLC v. Google, LLC*, No. 6:22-cv-01042-XR (W.D. Tex. Oct. 6, 2022); *VIAAS, Inc. v. Google LLC*, No. 6:22-cv-01048-KC (W.D. Tex. Oct. 6, 2022); *ALD Social, LLC v. Google, LLC*, No. 6:22-cv-00972-FB (W.D. Tex. Sept. 16, 2022); *SafeCast Ltd. v. Google, LLC*, No. 6:22-cv-00678-ADA (W.D. Tex. Jun. 27, 2022); *Mesa Digital, LLC v. Google, LLC*, No. 6:22-cv-00574-ADA (W.D. Tex. Jun. 3, 2022); *EscapeX IP LLC v. Google LLC*, No. 6:22-cv-00428-ADA (W.D. Tex. Apr. 28, 2022); *LS Cloud Storage Techs., LLC v. Google LLC*, No. 6:22-cv-00318-ADA (W.D. Tex. Mar. 25, 2022); *Valjakka v. Google LLC*, No. 6:22-cv-00004-ADA (W.D. Tex. Jan. 3, 2022); *Traxcell Techs., LLC v. Google LLC*, No. 6:21-cv-01312-ADA (W.D. Tex. Dec. 16, 2021); *Pedersen v. Google LLC*, No. 6:21-cv-01152-ADA (W.D. Tex. Nov. 9, 2021).

[8] EscapeX (Ex. 19), WirelessWerx (Ex. 20), Koji IP (Ex. 21), Flick Intelligence (Ex. 22), and Mesa Digital (Ex. 23). According to research performed by counsel for defendant Block, Inc., DynaIP entities—represented virtually every time by EscapeX's counsel—have filed 274 patent-infringement lawsuits over approximately the past 30 months. Ex. 24 at 2–3.

GOOGLE LLC'S MOTION FOR ATTORNEYS' FEES
CASE NO 4:22-CV-08711-HSG

Appx0170

web of patent-assertion entities, and their counsel. *See* Part I.G. An award of attorneys' fees is warranted to deter this conduct. *See, e.g.*, *Big Baboon*, 2019 WL 5088784, at *7 (plaintiff's "continued pursuit of meritless claims" and "serial [failed] lawsuits on the same patent" supported finding of "exceptional" case for purposes of § 285); *Shipping & Transit, LLC v. 1A Auto, Inc.*, 283 F. Supp. 3d 1290, 1300 (S.D. Fla. 2017) (plaintiff's "nationwide pattern of pervasive litigation" is a proper consideration in determining whether a case is exceptional); *Order, P.S. Prods., Inc. v. Panther Trading Co.*, No. 4:22-cv-00473-JM (E.D. Ark. Jan. 30, 2023), Dkt. No. 29 (granting attorneys' fees and awarding sanctions based on "Plaintiffs' history of repeatedly filing meritless lawsuits").

Indeed, an award of attorneys' fees may be the only way to deter this coordinated misconduct. As shell companies that do not actually practice the patents they assert, DynaIP entities like EscapeX "place[] little at risk when filing suit." *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011). They are "generally immune to counterclaims for patent infringement, antitrust, or unfair competition because [they do] not engage in business activities that would potentially give rise to those claims," and they do "not face any business risk resulting from the loss of patent protection over a product or process." *Id.* at 1327–28. Absent an award of fees, there is only upside. Here, "Plaintiff's conduct is a pattern and practice used to obtain financial advantage against defendants in costly patent litigation." *Shipping & Transit*, 283 F. Supp. 3d at 1302. That "*modus operandi* can no longer be ignored." *Id.*

Other courts have not hesitated to award fees against DynaIP entities and Plaintiff's counsel for exceptional litigation conduct similar to the conduct in this case. *See ZT IP, LLC v. VMware, Inc.*, No. 3:22-CV-0970-X, 2023 WL 1785769, at *2–5 (N.D. Tex. Feb. 6, 2023) (finding case exceptional and awarding $92,130.35 in attorneys' fees where DynaIP entity represented by

GOOGLE LLC'S MOTION FOR ATTORNEYS' FEES
CASE NO 4:22-cv-08711-HSG

Ramey LLP failed "to conduct an adequate pre-filing investigation and act diligently when it became aware that its investigation was inadequate"); *WPEM, LLC v. SOTI Inc.*, No. 2:18-CV-00156-JRG, 2020 WL 555545, at *3–6, 8 (E.D. Tex. Feb. 4, 2020) (finding case exceptional and awarding $179,622 in attorneys' fees where Ramey LLP "conducted no pre-filing investigation into the validity and enforceability of the Asserted Patent at all"), *aff'd*, 837 F. App'x 773 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2628 (2021); *Traxcell Techs., LLC. v. AT&T Corp.*, No. 2:17-cv-00718-RWS-RSP, 2022 WL 949951, at *4 (E.D. Tex. Mar. 29, 2022) (awarding defendant Verizon its attorneys' fees against plaintiff represented by Ramey LLP and calling the case "'exceptional' under § 285 based on [plaintiff's] pursuit of objectively baseless infringement theories…"), *report and recommendation adopted by*, 2022 WL 18507378, at *1 (E.D. Tex. Dec. 22, 2022) ("[Plaintiff] continued to pursue theories that it knew or should have known were baseless.").

## V.  CONCLUSION

Plaintiff and its counsel never should have filed this lawsuit. Google asks that the Court find this case exceptional and award Google its attorneys' fees and costs totaling approximately $140,615 to date (Banner Decl. ¶ 24), and if the Court deems it appropriate, for its additional fees and costs incurred through the conclusion of this motion.

Dated: March 21, 2023                    KWUN BHANSALI LAZARUS LLP

Kate E. Lazarus (SBN 268242)
klazarus@kblfirm.com
Asim M. Bhansali (SBN 194925)
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350

- 21 -

Kate E. Lazarus (SBN 268242)
klazarus@kblfirm.com
Asim M. Bhansali (SBN 194925)
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350

Additional attorneys listed on signature page.

Attorneys for Defendant
GOOGLE LLC

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ESCAPEX IP LLC,<br><br>           Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>           Defendant. | §<br>§  CASE NO. 4:22-cv-08711-HSG<br>§<br>§  **DECLARATION OF BRIAN C.**<br>§  **BANNER IN SUPPORT OF**<br>§  **DEFENDANT GOOGLE LLC'S**<br>§  **MOTION FOR ATTORNEYS' FEES**<br>§  **PURSUANT TO 35 U.S.C. § 285**<br>§<br>§  <u>Hearing</u><br>§  Date: June 29, 2023<br>§  Time: 2 p.m.<br>§  Dept.: 2<br>§  Judge: Hon. Haywood S. Gilliam, Jr.<br>§<br>§  Date Filed: April 28, 2022<br>§  Trial Date: None set<br>§ |

- 1 -
Appx0175

## ADDITIONAL FEES FOR BRINGING THIS MOTION

25.     Google further seeks attorneys' fees and costs incurred or paid by Google through the conclusion of this motion and offers to provide evidence in compliance with Local Rule 54-5 if the Court determines an award of those fees and costs is warranted.

## MY CORRESPONDENCE WITH PLAINTIFF'S COUNSEL

26.     On July 1, 2022, I spoke with Plaintiff's counsel (Jeffrey E. Kubiak) on the phone.

27.     On November 7, I sent a letter to Plaintiff setting forth two independent reasons that EscapeX's suit should be dismissed. (Exhibit 7, below.) Plaintiff ignored this November 7 letter, as well as the follow up email that I sent on November 16 (Exhibit 8, below). I emailed Plaintiff's counsel on December 13, 2022, re-attaching Google's November 7 letter. (Exhibit 9, below). Plaintiff did not respond to that email. On January 3, 2023, I emailed Plaintiff to ask if a response was forthcoming. (Exhibit 11, below.) Plaintiff's counsel replied the following day (January 4), stating "I've explained what is going on to the client and am waiting for a response. I asked again yesterday and haven't heard back yet. I'm going to start pushing for a response from them." (Exhibit 12, below.) I never received a response. The first time Plaintiff's counsel communicated with me after January 4, 2023, was in response to my letter sent March 2. (Exhibit 13, below.)

28.     On March 2, 2023, I sent a letter to Plaintiff's counsel requesting confirmation from Plaintiff by March 3 that Plaintiff would dismiss its case with prejudice, in view of a January 24, 2023 judgment in the Southern District of New York requested a response from Plaintiff's counsel. (Exhibit 13, below.) My letter did not reference a joint stipulation for dismissal or indicate that Google was consenting to terms regarding such a stipulation. *See id.* Plaintiff's counsel responded

DECLARATION OF BRIAN C. BANNER IN SUPPORT OF
GOOGLE LLC'S MOTION FOR ATTORNEY FEES
CASE NO 4:22-cv-08711-HSG

to the letter via email the next day, stating that counsel was "dismissing the case today." (Exhibit 26, below.) I responded and asked for confirmation that such dismissal would be with prejudice, and Plaintiff's counsel confirmed that dismissal would be with prejudice. *Id.* Neither the March 2 Google letter or the March 3 email reference the terms of a joint stipulation. And, because Plaintiff's counsel did not provide any draft pleadings, there was no reference to signature consent for any joint stipulation.

### **EXHIBITS**

29.     Attached as Exhibit 1 is a true and correct copy of the Texas Comptroller of Public Accounts' online record related to Plaintiff EscapeX IP, LLC, available at https://mycpa.cpa.state.tx.us/coa/ (enter "EscapeX IP LLC" into "Entity Name" field and click "Search" button).

30.     Attached as Exhibit 2 is a true and correct copy of plaintiff WirelessWerx IP, LLC's CERTIFICATE OF INTERESTED PARTIES, filed as Dkt. No. 4 in *WirelessWerx IP, LLC v. Google LLC*, No. 6:22-cv-01056 (W.D. Tex. Oct. 7, 2022).

31.     Attached as Exhibit 3 is a true and correct copy of plaintiff Koji IP, LLC's CERTIFICATE OF INTERESTED PARTIES, filed as Dkt. No. 4 in *Koji IP, LLC v. Google LLC*, No. 6:23-cv-00138 (W.D. Tex. Feb. 22, 2023).

32.     Attached as Exhibit 4 is a true and correct copy of a letter I sent to Plaintiff's counsel, William P. Ramey, III (wramey@rameyfirm.com) with a copy to Jeffrey E. Kubiak (jkubiak@rameyfirm.com), on August 5, 2022.

- 8 -

DECLARATION OF BRIAN C. BANNER IN SUPPORT OF
GOOGLE LLC'S MOTION FOR ATTORNEY FEES
CASE NO 4:22-cv-08711-HSG

# Exhibit 1





# Franchise Tax Account Status

As of : 10/18/2022 13:27:34

---

**This page is valid for most business transactions but is not sufficient for filings with the Secretary of State**

---

| ESCAPEX IP LLC | |
|---|---|
| **Texas Taxpayer Number** | 32083811706 |
| **Mailing Address** | 5900 BALCONES DR STE 100 AUSTIN, TX 78731-4298 |
| **❷ Right to Transact Business in Texas** | ACTIVE |
| **State of Formation** | TX |
| **Effective SOS Registration Date** | 03/24/2022 |
| **Texas SOS File Number** | 0804490304 |
| **Registered Agent Name** | TEXAN REGISTERED AGENT LLC |
| **Registered Office Street Address** | 5900 BALCONES DRIVE, SUITE 100 AUSTIN, TX 78731 |

Appx0188

# Exhibit 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| **KOJI IP, LLC,**<br>**Plaintiff,** | **Civil Action No. 6:23-cv-00138** |
| **v.** | |
| **GOOGLE, LLC,**<br>**Defendant** | **JURY TRIAL DEMANDED** |

## CERTIFICATE OF INTERESTED PARTIES

Pursuant to Fed. R. Civ. P. 7.1, Plaintiff Koji IP LLC, ("Plaintiff") discloses that it has no parent corporation, and there is no publicly held corporation that owns 10% or more of any stock. Plaintiff shows as follows:

A complete list of all persons, associations of persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent or subsidiary corporations, or other legal entities that are financially interested in the outcome of the case:

1. Koji IP, LLC

2. Ramey LLP

DATED: February 22, 2023

Respectfully submitted,

**Ramey LLP**

By: /s/ William P. Ramey, III
William P. Ramey, III
Texas Bar No. 24027643
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)
wramey@rameyfirm.com

*Attorneys for Koji IP, LLC*

# Exhibit 4

Appx0193



Brian C. Banner
Shareholder
bbanner@sgbfirm.com
[O] 512.402.3569
[C] 512.468.6297

***Via Electronic Mail to wramey@rameyfirm.com***

August 5, 2022

William P. Ramey, III
Ramey LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006

> **RE:**   *EscapeX IP LLC v. Google LLC*, 6-22-cv-00428 (W.D. Tex. April 28, 2022)

Dear Mr. Ramey:

We write to demand EscapeX dismiss this lawsuit with prejudice.  EscapeX failed to conduct an adequate pre-suit investigation of infringement: not only is the accused feature not part of YouTube Music, YouTube Music is squarely not an "artist-specific application." In addition, even a cursory search identifies prior art that demonstrates the invalidity of the asserted patent in light of the contentions against YouTube Music.

## I.   EscapeX Failed to Conduct an Adequate Pre-Suit Investigation

EscapeX failed to conduct an adequate pre-suit investigation before it alleged that U.S. Patent No. 9,009,113 ("the '113 patent") is infringed by Google.  "[A] party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims . . . ." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013).

### A.  The Identified "Auto-Add" Feature is Not Part of YouTube Music

As best understood, EscapeX alleges YouTube Music infringes by performing the method of claim 1 of the '113 patent.  *See* First Amended Complaint, Dkt. 8, ¶¶ 11–12; *see also id.*, Exhibit A at 1 ("Google's YouTube Music has a computer implemented method for updating a dynamic album . . . .").  Specifically, EscapeX has identified an "Auto add" feature as infringing the "receiving," "accessing," "modifying," and "storing" steps of claim 1.  *See id.*, Exhibit A at 3–5.

EscapeX's allegations are baseless because the cited "Auto add" feature is not part of YouTube Music at all.  Rather, the now-nonexistent "Auto add" feature was previously part

of YouTube Video.[1]  Indeed, the screenshots in EscapeX's own claim chart[2] show the "Auto add" feature as relating to *videos*—not music.  For example, the "Auto add" setting dialogue in Plaintiff's chart refers to adding "videos" to playlists:



Dkt. 8, Ex. A at 3 (annotated).  The other screenshot in EscapeX's claim chart similarly leaves no doubt this "Auto add" feature relates to videos, not to music or songs:

> With Auto add settings on your playlists, you can automatically have new videos added to the playlists you created.
>
> The Auto add settings allow you to define rules for videos based on tags or keywords. If new videos meet the criteria, the videos are automatically added to the playlist.

*Id.* at 4.

The distinction between YouTube Video and YouTube Music is important.  First, these are different products.  Thus, EscapeX's claim charts are deficient because the method steps are not performed by any product, much less in the manner EscapeX alleges.  Additionally, claim 1 of the '113 patent (and all other independent claims) requires a "dynamic album that includes a plurality of songs"—i.e., the claims are directed to albums of songs, not videos.  Thus, a feature of YouTube Video (e.g., "Auto add") cannot infringe claims that relate to dynamic albums *of songs*.  Had EscapeX performed even a cursory pre-suit

---

[1] The "Auto add" feature was removed from YouTube video by late 2020.  *See, e.g.,* https://support.google.com/youtube/thread/86654246/non-fixed-deleted-feature-why-did-you-cancel-auto-add-feature-in-playlist-settings?hl=en.

[2] Moreover, the webpages and URL citations in Plaintiff's claim chart are no longer functional and instead redirect to pages demonstrating this functionality does not exist even on YouTube Video.

investigation, it would have realized its allegations improperly cobbled together features from different products.

### B. *YouTube Music is Not an "Artist Specific Application"*

Claim 1 of the '113 patent requires a user device with an "artist specific application." (So does every other independent claim.) The '113 patent describes an "artist specific application," or "ASA," as an application that "includes music and other content related to [an] artist." '113 patent at 4:56–58. The patent distinguishes an ASA from a single application that streams music from multiple artists:

> **Thus, instead of a single application that streams music from multiple artists, each ASA may relate to an individual artist.**

'113 patent at 4:62–64. YouTube Music is a single application that streams music from multiple artists. Thus, according to the '113 patent's own specification, YouTube Music is not an "artist specific application" as required by each of the claims. Had EscapeX performed even a superficial pre-suit investigation, it would know YouTube Music streams music from multiple artists and, therefore, is not an "artist specific application" and does not infringe.

## II.    The '113 Patent is Invalid

If claim 1 of the '113 patent is as broad as EscapeX alleges in its Complaint, it is invalid under 35 U.S.C. §§ 102 and/or 103 in view of—at least—U.S. Patent No. 6,526,411 to Sean Ward titled "System and Method for Creating Dynamic Playlists," filed November 15, 2000 ("Ward"). A claim chart comparing Ward with claim 1 of the '113 patent is provided below:

| 9,009,113, Claim 1 | Ward, U.S. 6,526,411 |
|---|---|
| 1. A computer implemented method for updating a dynamic album that includes a set of songs stored in relation to and played by an artist specific application associated with an artist, the method being implemented on a user device having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, | To the extent the preamble is limiting, Ward discloses this limitation. <br><br> For example, Ward discloses a "computer implemented method for updating a dynamic album that includes a set of songs": <br><br> *"Method and system provided for creating a dynamic playlist including meta-data having potential association with a respective content item configured to be played on a content player, and having dynamic addition or subtraction of playlist items."* <br><br> Ward at Abstract. |

| cause the user device to perform the method, the method comprising: | *"The present invention relates generally to a system and method for music and/or video playback, and more particularly, providing to the user recommendations of items which have not yet been sampled by the user, based on a list of items already sampled by the user, utilizing a method for the dynamic addition, subtraction and sorting of a queue of items for playback."* Ward at 1:17–23. Further, Ward discloses "an artist specific application associated with an artist": *"Additionally, it would allow users to subscribe to artists and automatically have their playlists updated with new content, such as when an artist releases a new song, by having playlists which contained the meta-category of a particular artist included in their playlist. That would be a valuable opportunity for both users and artists to connect."* Ward at 4:52–58. Additionally, Ward discloses "a user device having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the user device to perform the method": *"The dynamic playlist client system 110 includes a content player 10, which includes known devices for playback of audio or video files, taking the form of popular computer programs for use on personal computers, as well as integrated video and audio stereo systems."* Ward at 5:46–51. |
|---|---|

| | |
|---|---|
| receiving, by the user device, one or more album parameters that specify a change to be made to the dynamic album that includes a plurality of songs, wherein the dynamic album is stored via information encoding the plurality of songs at the user device in association with the artist specific application that plays the dynamic album at the user device; | Ward discloses this limitation.<br><br>For example, Ward discloses "receiving, by the user device, one or more album parameters that specify a change to be made to the dynamic album that includes a plurality of songs":<br><br>*"Specifically, meta-elements can be added to the playlist, such as with music, the addition of an artist to the playlist. Then, when the playlist is used, the playlist queries a main server for the existence of content relating to that meta-data. I.e. adding an artist or group would add the entire given artist or groups content to the playlist, or would add the content not removed by anti-links (listed dislikes) existing in a user's profile. . . . Additionally, it would allow users to subscribe to artists and automatically have their playlists updated with new content, such as when an artist releases a new song, by having playlists which contained the meta-category of a particular artist included in their playlist. That would be a valuable opportunity for both users and artists to connect."*<br><br>Ward at 4:40–58.<br><br>Additionally, Ward discloses "the dynamic album is stored via information encoding the plurality of songs at the user device in association with the artist specific application that plays the dynamic album at the user device":<br><br>*"Content player 10 includes a data storage device 15 configured to operate one of any type of data storage model, including, but not limited to, a relational data base. Regardless of the data storage model employed, data storage device 15 includes storage of a meta-data playlist 16, optional storage of local content items 17, and at least one user profile 18, all to be described later."* |

| | Ward at 5:61–67. |
|---|---|
| accessing, by the user device, the information encoding the plurality of songs responsive to receipt of the one or more album parameters; | Ward discloses "accessing, by the user device, the information encoding the plurality of songs responsive to receipt of the one or more album parameters": <br><br> *"Additionally, it would allow users to subscribe to artists and automatically have their playlists updated with new content, such as when an artist releases a new song, by having playlists which contained the meta-category of a particular artist included in their playlist. That would be a valuable opportunity for both users and artists to connect."* <br><br> Ward at 4:52–58. |
| modifying, by the user device, the information encoding the plurality of songs based on the one or more album parameters to change the dynamic album without intervention by a user of the user device; | Ward discloses "modifying, by the user device, the information encoding the plurality of songs based on the one or more album parameters to change the dynamic album without intervention by a user of the user device": <br><br> *"Additionally, it would allow users to subscribe to artists and automatically have their playlists updated with new content, such as when an artist releases a new song, by having playlists which contained the meta-category of a particular artist included in their playlist. That would be a valuable opportunity for both users and artists to connect."* <br><br> Ward at 4:52–58. |
| storing, by the user device, the modified information encoding the plurality of songs at the user device; and | Ward discloses "storing, by the user device, the modified information encoding the plurality of songs at the user device": <br><br> *"Additionally, it would allow users to subscribe to artists and automatically have their playlists updated with new content, such as when an artist releases a new song, by having playlists which contained the meta-category of a* |

| | |
|---|---|
| | *particular artist included in their playlist. That would be a valuable opportunity for both users and artists to connect."*<br><br>Ward at 4:52–58. |
| playing, by the user device, at least some of the dynamic album through the artist specific application based on the modified information encoding the plurality of songs at the user device. | Ward discloses "playing, by the user device, at least some of the dynamic album through the artist specific application based on the modified information encoding the plurality of songs at the user device":<br><br>*"The present invention relates generally to a system and method for music and/or video playback, and more particularly, providing to the user recommendations of items which have not yet been sampled by the user, based on a list of items already sampled by the user, utilizing a method for the dynamic addition, subtraction and sorting of a queue of items for playback."*<br><br>Ward at 1:17–23.<br><br>*"Additionally, it would allow users to subscribe to artists and automatically have their playlists updated with new content, such as when an artist releases a new song, by having playlists which contained the meta-category of a particular artist included in their playlist. That would be a valuable opportunity for both users and artists to connect."*<br><br>Ward at 4:52–58. |

8

Further, Ward is just one example.  Artist-specific music applications were available at least as early as 2011 (long before the '113 patent's 2014 filing date):

*Should You Get One, and How Much Will It Cost?*

So should artists have their own apps? Companies such as Mobile Roadie, which designed Madonna's app, charge from $499 for setup and $29 per-month maintenance to $1,999 for setup and $99 per-month for additional features such as horizontal views. iLike is charging artists a onetime fee of $99 and will also participate in a revenue-sharing deal for those that want to charge for their applications (the current plan is for a fifty-fifty split). Artists that give their application away for free will have to pay only the initial fee. An app can be used for the same purposes as a website: promoting new music, videos, and shows; selling merchandise and music; posting news

Gordon, "The Future of the Music Business," at 172 (2011) (available at https://www.google.com/books/edition/The_Future_of_the_Music_Business/eiQmgEFs_4YC?hl=en&gbpv=1&dq=musician+smartphone+apps&pg=PA172&printsec=frontcover).

The prior art is also replete with systems and methods for modifying dynamic albums on user devices, including:

- U.S. Patent No. 9,317,185, "Dynamic Interactive Entertainment Venue" to Martin et al., assigned to Apple Inc. (2006 priority date).
- U.S. Patent No. 8,224,927, "Protocol for Remote User Interface for Portable Media Device with Dynamic Playlist Management" to Lydon et al., assigned to Apple Inc. (2008 priority date).
- U.S. Patent No. 8,819,553, "Generating a Playlist Using Metadata Tags" to Wood et al., assigned to Apple Inc. (2008).
- U.S. Patent No. 8,634,944, "Auto Station Tuning" to Bull et al., assigned to Apple Inc. (2008 priority date).

By the time Plaintiff applied for the '113 patent in 2014, dynamic albums, dynamic playlists, and artist-specific music applications had been developed and even sold in the U.S., thus confirming the '113 patent is not novel and should not have issued.

\* \* \*

Given the glaring deficiencies in EscapeX's infringement allegations and the demonstrated invalidity of the '113 patent, this litigation is clearly baseless—and a reasonable pre-suit investigation would have revealed as much.  Google has had to expend resources to defend itself in this litigation and will continue to incur expenses and fees that are unwarranted in light of the merits here.  Google therefore demands EscapeX confirms it will voluntarily dismiss this lawsuit with prejudice by **August, 19 2022**.  If, instead, EscapeX continues to pursue this cause of action, Google reserves its rights to pursue any and all remedies, including seeking attorneys fees.

Regards,

Brian C. Banner
*Attorney for Defendant Google*


cc: Jeffrey E. Kubiak (jkubiak@rameyfirm.com)

# Exhibit 5

Appx0203

**Brian Banner**

| | |
|---|---|
| **From:** | William Ramey <wramey@rameyfirm.com> |
| **Sent:** | Sunday, August 14, 2022 6:06 AM |
| **To:** | Brian Banner |
| **Cc:** | Jeff Kubiak; Darryl Adams; Nellie Slayden; SGB Litigation |
| **Subject:** | RE: EscapeX IP v. Google, 6-22-cv-00428: Google Letter re: Dismissal [IWOV-iManage.FID214285] |
| **Attachments:** | CLAIM CHART IN REBUTTAL.pdf |

Hi Brian,

We have reviewed your letter and prepared this claim chart in rebuttal.  Please review and let us know if a call would further help explain our position.  Jeff or I can walk you through it.

Thanks,

Bill

**From:** Brian Banner <bbanner@sgbfirm.com>
**Sent:** Friday, August 5, 2022 4:31 PM
**To:** William Ramey <wramey@rameyfirm.com>
**Cc:** Jeff Kubiak <jkubiak@rameyfirm.com>; Darryl Adams <dadams@sgbfirm.com>; Nellie Slayden
<nslayden@sgbfirm.com>; SGB Litigation <litigation@sgbfirm.com>
**Subject:** EscapeX IP v. Google, 6-22-cv-00428: Google Letter re: Dismissal [IWOV-iManage.FID214285]

Bill,

Please see the attached correspondence.

Regards,

Brian C. Banner

**sgb** I **SLAYDEN GRUBERT BEARD** PLLC

401 Congress Ave, Ste 1650 I Austin, TX 78701 I USA
[O] 512.402.3569 I [C] 512.468.6297  I  sgbfirm.com

This message was sent by an attorney at law and may contain privileged and/or confidential matter.  Please let the sender know if this message was received in error.

**CLAIM CHART IN REBUTTAL**

| US9009113 B1 Claim 1 | YouTube Video |
|---|---|
| 1. A computer implemented method for updating a dynamic album that includes a set of songs stored in relation to and played by an **artist specific application associated with an artist**, the method being implemented on a user device having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the user device to perform the method, the method comprising: |  <https://www.youtube.com/watch?v=-1pMMIe4hb4&list=PL3014BDDD936B0ED8> YouTube Video has a computer implemented method for updating a dynamic album that includes a set of songs stored in relation to and played by an artist specific application associated with an artist, the method being implemented on a user device having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the user device to perform the method. The reference includes subject matter disclosed by the claims of the patent after the priority date. |
| US9009113 B1 Claim 1 | YouTube Video |

| | |
|---|---|
| receiving, by the user device, one or more album parameters that specify a change to be made to the **dynamic album that includes a plurality of songs**, wherein the dynamic album is stored via information encoding the plurality of songs at the user device in association with the **artist specific application that plays the dynamic album** at the user device; | <br><https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634><br>The reference describes receiving, by the user device, one or more album parameters that specify a change to be made to the dynamic album that includes a plurality of songs, wherein the dynamic album is stored via information encoding the plurality of songs at the user device in association with the artist specific application that plays the dynamic album at the user device [Playlists settings].. |
| **US9009113 B1 Claim 1** | **YouTube Video** |
| accessing, by the user device, the **information encoding the plurality of songs** responsi | With Auto add settings on your playlists, you can automatically have new videos added to the playlists you created.<br><br>The Auto add settings allow you to define rules for videos based on tags or keywords. If new videos meet the criteria, the videos are automatically added to the playlist. |

| | |
|---|---|
| ve to receipt of the one or more album parameters; | <https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634><br><br>The reference describes accessing, by the user device, the information encoding the plurality of songs responsive to receipt of the one or more album parameters [The Auto add settings allow you to define rules for videos based on tags or keywords]. |
| **US9009113 B1 Claim 1** | **YouTube Video** |
| modifying, by the user device, the information encoding the plurality of songs based on the one or more album parameters to **change the dynamic album without intervention by a user of the user device**; storing, by the user device, the **modified information encoding the plurality of songs at the user device**; and | <br><https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634><br><br>The reference describes modifying, by the user device, the information encoding the plurality of songs based on the one or more album parameters to change the dynamic album without intervention by a user of the user device [If new videos meet the criteria, the videos are automatically added to the playlist].<br><br>The reference describes storing, by the user device, the modified information encoding the plurality of songs at the user device [If new videos meet the criteria, the videos are automatically added to the playlist]. |
| **US9009113 B1 Claim 1** | **YouTube Video** |

| | |
|---|---|
| **playing**, by the user device, at least some of the dynamic album through the artist specific application based on the modified information encoding the plurality of songs at the user device. |  <https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634>  The reference describes playing, by the user device, at least some of the dynamic album through the artist specific application based on the modified information encoding the plurality of songs at the user device [Our music playlists pull in music from across YouTube by using various signals]. |

TIMELINE ANALYSIS
- **US9009113 B1: "System and method for generating artist-specified dynamic albums"**
  - Priority date: 2014-10-21
- **Google's YouTube Video (2015-07-26) <- Start of Auto-Add feature**
<https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634>



• **Google's YouTube Video** **(2021-03-03) <- End of Auto-Add feature**
<https://web.archive.org/web/20210303061731/https://support.google.com/youtube/answer/6083634>





• **CONCLUSION: Google's YouTube Video infringed US9009113 for 6 years.**

# Exhibit 6

**Brian Banner**

| | |
|---|---|
| **From:** | William Ramey <wramey@rameyfirm.com> |
| **Sent:** | Thursday, October 27, 2022 12:11 PM |
| **To:** | Brian Banner; Jeff Kubiak |
| **Subject:** | RE: EscapeX v. Google - Request for Extension to Answer Second Amended Complaint |
| **Attachments:** | IC charts.pdf; 2022-10-27 Plaintiff's ICs EscapeX Google.pdf |

Hi Brian,

Please find EscapeX's infringement contentions attached.

Bill

**From:** Brian Banner <bbanner@sgbfirm.com>
**Sent:** Monday, October 17, 2022 5:55 PM
**To:** Jeff Kubiak <jkubiak@rameyfirm.com>; William Ramey <wramey@rameyfirm.com>
**Subject:** EscapeX v. Google - Request for Extension to Answer Second Amended Complaint

Bill & Jeff,

I just left voicemail for both of you.  Please see attached and let me know if EscapeX will agree to the requested 5-day extension of time for Google to answer/respond to EscapeX's second amended complaint.

Thanks,

Brian C. Banner

**sgb** | [O] 512.402.3569 | [C] 512.468.6297 | sgbfirm.com

This message was sent by an attorney at law and may contain privileged and/or confidential matter.  Please let the sender know if this message was received in error.

1

Exhibit 6, Page 1 of 24

Appx0213

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| ESCAPEX IP LLC, | ) | |
|     Plaintiff, | ) | |
| | ) | **Civil Action No. 6:22-cv-00428** |
| v. | ) | |
| | ) | |
| GOOGLE LLC, | ) | **JURY TRIAL DEMANDED** |
|     Defendant. | ) | |

**PLAINTIFF'S PRELIMINARY INFRINGEMENT CONTENTIONS**

EscapeX IP, LLC ("EscapeX") hereby serves its Preliminary Infringement Contentions for this matter. Attached are charts setting forth where in the accused products each element of the asserted claims of the following asserted patents is found:

- Exhibit A - US Patent No. 9,009,113 ("the '113 patent") (Claims asserted as charted) "Patent-in-Suit").

**I.      EARLIEST PRIORITY DATES**

The '113 patent claims an earliest priority date of October 21, 2014. This is the priority date for all asserted claims.

**II.      DOCUMENTS EVIDENCING CONCEPTION AND
         REDUCTION TO PRACTICE**

EscapeX is relying on the filed patent applications for conception and reduction to practice, but reserves the right to supplement if further information is discovered.

**III.      FILE HISTORIES OF EACH PATENT-IN-SUIT**

EscapeX is producing a copy of the file history for the Patents-in-Suit.

Sincerely,

**Ramey LLP**

2

Exhibit 6, Page 2 of 24

Appx0214

/s/William P. Ramey
William P. Ramey, III
Texas Bar No. 24027643
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)
wramey@rameyfirm.com

**Attorneys for EscapeX IP, LLC**

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that all counsel of record who have appeared in this case are being served on this day of October 27, 2022, with a copy of the foregoing via e-mail.

/s/ William P. Ramey, III
William P. Ramey, III

2

---

**Patent Claims Analysis**
**of**
**US9009113 B1: "System and method for generating artist-specified dynamic albums"**
**against**
**YouTube Video**

---

# US9009113B1

United States
Inventor     Sephi Joseph Shapira
Current Assignee Escapex Ltd

---

Worldwide applications
2014 US 2015 US 2016 US US

---

Application US14/519,168 events
2014-10-21     Application filed by Escapemusic Ltd
2014-10-21     Priority to US14/519,168
2014-10-21     Assigned to Escapemusic Limited
2015-04-14     Application granted
2015-04-14     Publication of US9009113B1
2015-10-19     Priority claimed from PCT/IB2015/002157
2015-12-30     Assigned to ESCAPEX LIMITED

---

**Owner name**: ESCAPEX LIMITED, HONG KONG
**Free format text**: CHANGE OF NAME;ASSIGNOR:ESCAPEMUSIC LIMITED;REEL/FRAME:037400/0022
**Effective date**: 20151016

---

CLAIMS
1. A computer implemented method for updating a dynamic album that includes a set of songs stored in relation to and played by an artist specific application associated with an artist, the method being implemented on a user device having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the user device to perform the method, the method comprising:
    receiving, by the user device, one or more album parameters that specify a change to be made to the dynamic album that includes a plurality of songs, wherein the dynamic album is stored via information encoding the plurality of songs at the user device in association with the artist specific application that plays the dynamic album at the user device;
    accessing, by the user device, the information encoding the plurality of songs responsive to receipt of the one or more album parameters;
    modifying, by the user device, the information encoding the plurality of songs based on the one or more album parameters to change the dynamic album without intervention by a user of the user device;
    storing, by the user device, the modified information encoding the plurality of songs at the user device; and
    playing, by the user device, at least some of the dynamic album through the artist specific application based on the modified information encoding the plurality of songs at the user device.

---

| US9009113 B1<br>Claim 1 | YouTube Video |
|---|---|
| 1. A computer implemented method for updating a dynamic album that includes a set of songs stored in relation to and played by an **artist specific application associated with an artist**, the method being implemented on a user device having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the user device to perform the method, the method comprising: | <br><https://www.youtube.com/watch?v=-1pMMIe4hb4&list=PL3014BDDD936B0ED8><br>YouTube Video has a computer implemented method for updating a dynamic album that includes a set of songs stored in relation to and played by an artist specific application associated with an artist, the method being implemented on a user device having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the user device to perform the method.<br>The reference includes subject matter disclosed by the claims of the patent after the priority date. |
| US9009113 B1<br>Claim 1 | YouTube Video |

| | |
|---|---|
| receiving, by the user device, one or more album parameters that specify a change to be made to the **dynamic album that includes a plurality of songs**, wherein the dynamic album is stored via information encoding the plurality of songs at the user device in association with the **artist specific application that plays the dynamic album** at the user device; | <br><<https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634>><br><br>The reference describes receiving, by the user device, one or more album parameters that specify a change to be made to the dynamic album that includes a plurality of songs, wherein the dynamic album is stored via information encoding the plurality of songs at the user device in association with the artist specific application that plays the dynamic album at the user device [Playlists settings]. |
| **US9009113 B1 Claim 1** | **YouTube Video** |
| accessing, by the user device, the **information encoding the plurality of songs** responsi | With Auto add settings on your playlists, you can automatically have new videos added to the playlists you created.<br><br>The Auto add settings allow you to define rules for videos based on tags or keywords. If new videos meet the criteria, the videos are automatically added to the playlist. |

Exhibit 6, Page 6 of 24

| | |
|---|---|
| ve to receipt of the one or more album parameters; | <https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634><br><br>The reference describes accessing, by the user device, the information encoding the plurality of songs responsive to receipt of the one or more album parameters [The Auto add settings allow you to define rules for videos based on tags or keywords]. |
| **US9009113 B1 Claim 1** | **YouTube Video** |
| modifying, by the user device, the information encoding the plurality of songs based on the one or more album parameters to **change the dynamic album without intervention by a user of the user device**; | <br><https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634><br><br>The reference describes modifying, by the user device, the information encoding the plurality of songs based on the one or more album parameters to change the dynamic album without intervention by a user of the user device [If new videos meet the criteria, the videos are automatically added to the playlist]. |
| **US9009113 B1 Claim 1** | **YouTube Video** |
| storing, by the user device, the **modified information encoding the plurality of songs at the user device**; and | <br><https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634><br><br>The reference describes storing, by the user device, the modified information encoding the plurality of songs at the user device [If new videos meet the criteria, the videos are automatically added to the playlist]. |

| US9009113 B1 Claim 1 | YouTube Video |
|---|---|
| **playing**, by the user device, at least some of the dynamic album through the artist specific application based on the modified information encoding the plurality of songs at the user device. | **How playlists work**<br><br>Our music playlists pull in music from across YouTube by using various signals. These include machine learning, social signals, signals from other Google products and services, and human input (including from our listeners). These playlists serve as one of many inputs to YouTube's recommendation system. The stronger a track performs in our music playlists and across YouTube, the more likely it is to surface to listeners.<br><br><https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634><br><br>The reference describes playing, by the user device, at least some of the dynamic album through the artist specific application based on the modified information encoding the plurality of songs at the user device [Our music playlists pull in music from across YouTube by using various signals]. |

2. The method of claim 1, wherein the one or more album parameters originate from the artist associated with the artist specific application to change the dynamic album for users that have installed the artist specific application.

3. The method of claim 1, wherein the information encoding the plurality of songs is integrated with an executable file associated with the artist specific application.

4. The method of claim 1, wherein the one or more album parameters specify a new song to be added to the dynamic album, the method further comprising:
    receiving information that encodes the new song, wherein modifying the information encoding the plurality of songs comprises re-encoding the information encoding the plurality of songs such that the new song is included in the dynamic album.

5. The method of claim 1, wherein the one or more album parameters specify a song to be removed from the dynamic album, the method further comprising:
    omitting the song to be removed during playback of the dynamic album.

6. The method of claim 5, wherein omitting the song to comprises deleting the song.

7. The method of claim 5, wherein omitting the song comprises updating an indicator associated with the song to be removed to indicate that the song should not be played in association with the dynamic album.

8. The method of claim 1, wherein the one or more album parameters specify a song to be replaced with a replacement song, the method further comprising:

causing the replacement song to be played instead of the song to be replaced during playback of the dynamic album.

9. The method of claim 8, wherein the replacement song comprises a different version of a song to be replaced.

10. The method of claim 1, wherein the one or more album parameters specify a reshuffling of the dynamic album, the method further comprising:

changing an order in which the plurality of songs of the dynamic album is played based on the one or more album parameters.

11. The method of claim 1, wherein the plurality of songs is playable at the user device through only the artist specific application.

12. The method of claim 1, wherein the dynamic album is subject to a music lease that, when expires, renders the dynamic album unplayable, the method further comprising:

determining whether the music lease has been expired; and

rendering the dynamic album unplayable responsive to a determination that the music lease has expired.

13. The method of claim 1, the method further comprising:

initiating playback of the dynamic album upon initiation of the artist specific application.

---

TIMELINE ANALYSIS
- **US9009113 B1: "System and method for generating artist-specified dynamic albums"**
  - Priority date: 2014-10-21
- **Google's YouTube Video (2015-07-26) <- Start of Auto-Add feature**
<https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634>





• **Google's YouTube Video (2021-03-03) <- End of Auto-Add feature**
<https://web.archive.org/web/20210303061731/https://support.google.com/youtube/answer/608363
34>



- **CONCLUSION: Google's YouTube Video infringed US9009113 for 6 years.**

CLAIMS

14. A system for updating a dynamic album that includes a set of songs stored in relation to and played by an artist specific application associated with an artist, the system comprises:

a user device comprising one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the user device to:

receive one or more album parameters that specify a change to be made to the dynamic album that includes a plurality of songs, wherein the dynamic album is stored via information encoding the plurality of songs at the user device in association with the artist specific application that plays the dynamic album at the user device;

access the information encoding the plurality of songs responsive to receipt of the one or more album parameters;

modify the information encoding the plurality of songs based on the one or more album parameters to change the dynamic album without intervention by a user of the user device;

store the modified information encoding the plurality of songs at the user device; and

play at least some of the dynamic album through the artist specific application based on the modified information encoding the plurality of songs at the user device.

| US9009113 B1 Claim 14 | YouTube Video |
|---|---|
| 14. A system for updating a dynamic album that includes a set of songs stored in relation to and played by an **artist specific application associated with an artist**, the system comprises: | <br><https://www.youtube.com/watch?v=-1pMMIe4hb4&list=PL3014BDDD936B0ED8><br>Tidal has a system for updating a dynamic album that includes a set of songs stored in relation to and played by an artist specific application associated with an artist.<br>The reference includes subject matter disclosed by the claims of the patent after the priority date. |
| US9009113 B1 Claim 14 | YouTube Video |
| a **user device comprising one or more physical processors programmed with computer program instructions** that, when executed by the one or more physical processors, cause the user device to: | <https://www.youtube.com/watch?v=CRJj3D_SAP0> |

| | The reference describes a user device comprising one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors. |
|---|---|
| **US9009113 B1 Claim 14** | **YouTube Video** |
| receive one or more album parameters that specify a **change to be made to the dynamic album** that includes a plurality of songs, wherein the dynamic album is stored via information encoding the plurality of songs at the user device in association with the **artist specific application** that plays the dynamic album at the user device; | <br><<u>https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634</u>><br>The reference describes receiving one or more album parameters that specify a change to be made to the dynamic album that includes a plurality of songs, wherein the dynamic album is stored via information encoding the plurality of songs at the user device in association with the artist specific application that plays the dynamic album at the user device [Playlists settings]. |
| **US9009113 B1 Claim 14** | **YouTube Video** |
| access the **information encoding the plurality of songs** responsive to receipt of the one or | With Auto add settings on your playlists, you can automatically have new videos added to the playlists you created.<br><br>The Auto add settings allow you to define rules for videos based on tags or keywords. If new videos meet the criteria, the videos are automatically added to the playlist.<br><<u>https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634</u>> |

| | |
|---|---|
| more album parameters; | The reference describes accessing information encoding the plurality of songs responsive to receipt of the one or more album parameters [The Auto add settings allow you to define rules for videos based on tags or keywords]. |
| **US9009113 B1 Claim 14** | **YouTube Video** |
| modify the information encoding the plurality of songs based on the one or more album parameters to **change the dynamic album without intervention by a user of the user device**; | <https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634> The reference describes modifying the information encoding the plurality of songs based on the one or more album parameters to change the dynamic album without intervention by a user of the user device [If new videos meet the criteria, the videos are automatically added to the playlist]. |
| **US9009113 B1 Claim 14** | **YouTube Video** |
| store the **modified information encoding the plurality of songs** at the user device; and | <https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634> The reference describes storing the modified information encoding the plurality of songs at the user device [If new videos meet the criteria, the videos are automatically added to the playlist]. |
| **US9009113 B1 Claim 14** | **YouTube Video** |

| | |
|---|---|
| **play** at least some of the dynamic album through the artist specific application based on the modified information encoding the plurality of songs at the user device. | **How playlists work**<br><br>Our music playlists pull in music from across YouTube by using various signals. These include machine learning, social signals, signals from other Google products and services, and human input (including from our listeners). These playlists serve as one of many inputs to YouTube's recommendation system. The stronger a track performs in our music playlists and across YouTube, the more likely it is to surface to listeners.<br><br><https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634><br><br>The reference describes playing at least some of the dynamic album through the artist specific application based on the modified information encoding the plurality of songs at the user device [Our music playlists pull in music from across YouTube by using various signals]. |

15. The system of claim 14, wherein the one or more album parameters originate from the artist associated with the artist specific application to change the dynamic album for users that have installed the artist specific application.

16. The system of claim 14, wherein the information encoding the plurality of songs is integrated with an executable file associated with the artist specific application.

17. The system of claim 14, wherein the one or more album parameters specify a new song to be added to the dynamic album, the user device further programmed to:
   receive information that encodes the new song, wherein modifying the information encoding the plurality of songs comprises re-encoding the information encoding the plurality of songs such that the new song is included in the dynamic album.

18. The system of claim 14, wherein the one or more album parameters specify a song to be removed from the dynamic album, wherein the user device is further programmed to:
   omit the song to be removed during playback of the dynamic album.

19. The system of claim 18, wherein to omit the song, the user device is further programmed to delete the song.

20. The system of claim 18, wherein to omit the song, the user device is further programmed to:
   update an indicator associated with the song to be removed to indicate that the song should not be played in association with the dynamic album.

21. The system of claim 14, wherein the one or more album parameters specify a song to be replaced with a replacement song, the user device further programmed to:
   cause the replacement song to be played instead of the song to be replaced during playback of the dynamic album.

22. The system of claim 20, wherein the replacement song comprises a different version of a song to be replaced.

23. The system of claim 14, wherein the one or more album parameters specify a reshuffling of the dynamic album, wherein the user device is further programmed to:
   change an order in which the plurality of songs of the dynamic album is played based on the one or more album parameters.

24. The system of claim 14, wherein the plurality of songs is playable at the user device through only the artist specific application.

25. The system of claim 14, wherein the dynamic album is subject to a music lease that, when expires, renders the dynamic album unplayable, wherein the user device is further programmed to:

determine whether the music lease has been expired; and
render the dynamic album unplayable responsive to a determination that the music lease has expired.

26. The system of claim 14, wherein the user device is further programmed to:
initiate playback of the dynamic album upon initiation of the artist specific application.

---

TIMELINE ANALYSIS
- **US9009113 B1: "System and method for generating artist-specified dynamic albums"**
  - Priority date: 2014-10-21
- **Google's YouTube Video (2015-07-26) <- Start of Auto-Add feature**
<https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634>



- **Google's YouTube Video (2021-03-03) <- End of Auto-Add feature**
<https://web.archive.org/web/20210303061731/https://support.google.com/youtube/answer/6083634>



Edit playlists

⚠ **Some playlist features going away soon:** The following playlist features will be discontinued:

- Video notes: This feature allowed you to add private notes to videos within a playlist.
- Translated playlist titles/descriptions: This feature allowed you to add your own translations for a playlist title and description.
- Remove duplicates button: This button allowed you to remove duplicate videos from a playlist.
- Auto add: This feature allowed you to set rules to auto add uploaded videos to a specific playlist.

These features were rarely used and we're removing them to focus on improving creator features. Playlists are core to YouTube and you can still use other features to manage your playlists. You have until October 8th, 2020 to download your data.

You can add or edit playlist titles and descriptions, reorder videos, or remove videos from a playlist.

- **CONCLUSION: Google's YouTube Video infringed US9009113 for 6 years.**

27. A computer implemented method for receiving commands from an artist to update a dynamic album at a user device that includes a set of songs stored in relation to and played by an artist specific application associated with the artist, the method being implemented on a computer system having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the computer system to perform the method, the method comprising:

receiving, by the computer system, from the artist, one or more commands that specify a change to be made to the dynamic album played at the user device through the artist specific application associated with the artist;

generating, by the computer system, one or more album parameters used to change the dynamic album based on the one or more commands; and

providing, by the computer system, the one or more album parameters to at least the user device remote from the computer system at which the artist specific application is installed, wherein the one or more album parameters cause the user device to change the dynamic album in association with the artist specific application without intervention by a user of the user device.

Exhibit 6, Page 17 of 24

Appx0229

| US9009113 B1 Claim 27 | YouTube Video |
|---|---|
| 27. A computer implemented method for receiving commands from an artist to update a dynamic album at a user device that includes a set of songs stored in relation to and played by an **artist specific application associated with the artist**, |  <https://www.youtube.com/watch?v=-1pMMIe4hb4&list=PL3014BDDD936B0ED8> YouTube Video has a computer implemented method for receiving commands from an artist to update a dynamic album at a user device that includes a set of songs stored in relation to and played by an artist specific application associated with the artist. The reference includes subject matter disclosed by the claims of the patent after the priority date. |
| US9009113 B1 Claim 27 | YouTube Video |
| the method being implemented on a **computer system having one or more physical processors programmed with computer program instructions** that, when executed by the one or more physical processors, cause the computer system to perform | A new music streaming service YouTube Music is a completely reimagined app and desktop product with official albums, playlists, singles and more. <https://www.youtube.com/watch?v=CRJj3D_SAP0> YouTube Video has a  method being implemented on a computer system having one or more physical processors programmed with computer program instructions that, when |

| the method, the method comprising: | executed by the one or more physical processors, cause the computer system to perform the method. |
|---|---|
| **US9009113 B1 Claim 27** | **YouTube Video** |
| receiving, by the computer system, from the artist, **one or more commands that specify a change to be made to the dynamic album played at the user device** throug h the artist specific application associated with the artist; |  <https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634> The reference describes receiving, by the computer system, from the artist, one or more commands that specify a change to be made to the dynamic album played at the user device through the artist specific application associated with the artist [Playlists settings]. |
| **US9009113 B1 Claim 27** | **YouTube Video** |
| generating, by the computer system, **one or more album parameters used to change the dynamic album** base d on the one | With Auto add settings on your playlists, you can automatically have new videos added to the playlists you created. The Auto add settings allow you to define rules for videos based on tags or keywords. If new videos meet the criteria, the videos are automatically added to the playlist. <https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634> The reference describes generating, by the computer system, one or more album parameters used to change the dynamic album based on the one or more commands [The Auto add settings allow you to define rules for videos based on tags or keywords]. |

| | |
|---|---|
| or more commands; and | |
| **US9009113 B1 Claim 27** | **YouTube Video** |
| providing, by the computer system, the one or more album parameters to at least the user device remote from the computer system at which the artist specific application is installed, wherein the one or more album parameters cause the user device to **change the dynamic album in association with the artist specific application without intervention by a user of the user device**. | <br>With Auto add settings on your playlists, you can automatically have new videos added to the playlists you created.<br><br>The Auto add settings allow you to define rules for videos based on tags or keywords. If new videos meet the criteria, the videos are automatically added to the playlist.<br><br><https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634><br><br>The reference describes providing, by the computer system, the one or more album parameters to at least the user device remote from the computer system at which the artist specific application is installed, wherein the one or more album parameters cause the user device to change the dynamic album in association with the artist specific application without intervention by a user of the user device [If new videos meet the criteria, the videos are automatically added to the playlist]. |

28. The method of claim 27, wherein providing the one or more album parameters to the user device comprises:

identifying the user device based on identifying information used to identify the user device, wherein the one or more album parameters are provided based on the identification.

29. The method of claim 28, wherein the identifying information comprises a user account identifier that is associated with the user device.

30. The method of claim 27, wherein the one or more album parameters is provided to the user device responsive to a communication received from the first user device.

| US9009113 B1 Claim 28 | YouTube Video |
|---|---|
| 28. The method of claim 27, wherein providing the one or more album parameters to the user device comprises: identifying the user device based on **identifying information used to identify the user device**, wherein the one or more album parameters are provided based on the identification. | **Google** Create your Google Account to continue to YouTube First name Last name Your email address You'll need to confirm that this email belongs to you. <https://www.youtube.com/signin?> The reference describes identifying the user device based on identifying information used to identify the user device, wherein the one or more album parameters are provided based on the identification. |
| US9009113 B1 Claim 29 | YouTube Video |

| | |
|---|---|
| 29. The method of claim 28, wherein the identifying information comprises **a user account identifier** that is associated with the user device. |  <br> <https://www.youtube.com/signin?> <br> The reference describes the identifying information comprises a user account identifier that is associated with the user device. |

TIMELINE ANALYSIS
- **US9009113 B1: "System and method for generating artist-specified dynamic albums"**
  - Priority date: 2014-10-21
- **Google's YouTube Video (2015-07-26) <- Start of Auto-Add feature**
<https://web.archive.org/web/20150726011321/https://support.google.com/youtube/answer/6083634>





• **Google's YouTube Video (2021-03-03) <- End of Auto-Add feature**
<https://web.archive.org/web/20210303061731/https://support.google.com/youtube/answer/6083634>





**Edit playlists**

⚠ **Some playlist features going away soon**: The following playlist features will be discontinued:

• **Video notes**: This feature allowed you to add private notes to videos within a playlist.

• **Translated playlist titles/descriptions**: This feature allowed you to add your own translations for a playlist title and description.

• **Remove duplicates button**: This button allowed you to remove duplicate videos from a playlist.

• **Auto add**: This feature allowed you to set rules to auto add uploaded videos to a specific playlist.

These features were rarely used and we're removing them to focus on improving creator features. Playlists are core to YouTube and you can still use other features to manage your playlists. You have until October 8th, 2020 to download your data.

You can add or edit playlist titles and descriptions, reorder videos, or remove videos from a playlist.

---

• **CONCLUSION: Google's YouTube Video infringed US9009113 for 6 years.**

---

# Exhibit 7

Appx0237



Brian C. Banner
Shareholder
bbanner@sgbfirm.com
[O] 512.402.3569
[C] 512.468.6297

***Via Electronic Mail to wramey@rameyfirm.com***

November 7, 2022

William P. Ramey, III
Ramey LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006

> **RE:**   *EscapeX IP LLC v. Google LLC*, 6-22-cv-00428 (W.D. Tex. April 28, 2022)

Dear Mr. Ramey:

We write to again demand EscapeX dismiss this lawsuit with prejudice. EscapeX failed to conduct an adequate pre-suit investigation and has now shifted to accusing the prior art of infringement. Indeed, readily accessible public documents confirm the accused YouTube Video Auto Add feature ("Accused Auto Add Feature") was available and used by the public before October 21, 2014 (the filing date of U.S. Patent No. 9,009,113 ("the '113 patent")). Thus, the '113 patent is invalid at least under 35 U.S.C. § 102 and EscapeX lacks a good faith basis for maintaining this action against Google. Moreover, the Accused Auto Add Feature is squarely not an "artist specific application" as required by the claims of the '113 patent. While Google already provided a wealth of prior art demonstrating the invalidity of the asserted patent in its August 5 letter, the universe of invalidating prior art grows in view of EscapeX's most recent infringement allegations in the Second Amended Complaint.

If EscapeX does not dismiss this lawsuit and continues to assert the '113 patent, Google will seek sanctions and all other remedies available by law pursuant to at least 35 U.S.C. § 285.

## I.    EscapeX Failed to Conduct an Adequate Pre-Suit Investigation

This is the second time EscapeX failed to conduct an adequate investigation before alleging Google infringes the '113 patent.[1] "[A] party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims . . . ." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013). Here, EscapeX's investigation into the Accused Auto Add Feature was woefully deficient as the Auto Add

---

[1] EscapeX's First Amended Complaint contained baseless allegations against YouTube Music by alleging infringement by a feature ("Auto add") that is not part—and has never been a part—of YouTube Music.

feature not only predates the '113 patent but also clearly does not infringe. EscapeX's allegations are objectively baseless and a reasonable inquiry would have revealed as much.

### A. The '113 Patent is Invalid Because the Accused Auto Add Feature Predates the '113 Patent Priority Date

As best understood, EscapeX alleges YouTube Video infringes claims 1, 14, and 27–29 of the '113 patent based on YouTube Video's "Auto add" feature. *See* EscapeX Preliminary Infringement Contentions, Ex. A (Oct. 27, 2022) ("PICs").

EscapeX's allegations are baseless because the Accused Auto Add Feature (and all other features identified in EscapeX's PICs) predates the '113 patent's October 21, 2014 priority date, thus rendering the '113 patent invalid under at least 35 U.S.C. § 102. Had EscapeX performed even a cursory internet search, it would have discovered that the Accused Auto Add Feature is prior art. For example, an internet search using the phrase "youtube 'auto add'" results in multiple videos prior to October 21, 2014, demonstrating the Accused Auto Add Feature:

- June 16, 2014: "How To: Schedule Videos To Auto Add To Playlists Using Tags On YouTube," https://www.youtube.com/watch?v=rEd-RxiBASo.

- July 22, 2014: "YouTube Playlist Settings - Auto Add," https://www.youtube.com/watch?v=7A7-FvfNQk0.

- August 19, 2014: "Auto Upload Videos to a YouTube Playlist," https://www.youtube.com/watch?v=YNZ8SQf0Gug.

- September 7, 2014: "YouTube - Daily YouTube Tips - Episode 29 – 'Playlist Auto-Add'," https://www.youtube.com/watch?v=xSAmRhGMqbw.

Each of these videos confirms the Accused Auto Add Feature was publicly available and in use prior to October 21, 2014. For example, comparing the video listed above dated July 22, 2014 with EscapeX's infringement allegations, the video shows the exact same "Auto add" options in YouTube's Video's "Playlist settings" window.

EscapeX infringement chart (Dkt. 15, Ex. A at 1):



July 22, 2014 "YouTube Playlist Settings – Auto Add" at 1:20:



Each of the above disclosures demonstrates EscapeX has alleged infringement by a feature that predates the '113 patent.

EscapeX's infringement theory is without merit because "it is axiomatic that that which would literally infringe if later anticipates if earlier." *Bristol-Myers Squibb v. Ben Venue Labs*, 246 F.3d 1368, 1378 (Fed. Cir. 2001) (citations omitted). Thus, EscapeX's allegations render the '113 patent invalid and EscapeX must dismiss this lawsuit.

4

### B. YouTube Video is Not an "Artist Specific Application"

Claim 1 (and every other independent claim) of the '113 patent requires a user device with an "artist specific application." The '113 patent describes an "artist specific application," or "ASA," as an application that "includes music and other content related to [an] artist." '113 patent at 4:56–58. The patent distinguishes an *artist specific* application from a single application that streams music from multiple artists:

> **Thus, instead of a single application that streams music from multiple artists, each ASA may relate to an individual artist.**

'113 patent at 4:62–64. YouTube Video is a single application that is capable of streaming videos from multiple artists. EscapeX's infringement chart uses a "Kate Bush playlist" as an example. Dkt. 15, Ex. A at 1. But one can just as easily stream videos from virtually any other artist; for example Taylor Swift:



Similarly, a user can just as easily stream videos in a single playlist from a variety of artists, such as a Billboard Top 40 playlist:



Thus, according to the '113 patent's own specification, YouTube Video is not an "artist specific application" as required by each of the claims. Had EscapeX performed even a superficial pre-suit investigation, it would know YouTube Video is capable of streaming videos from multiple artists and, therefore, is not an "artist specific application" and does not infringe.

### C.  The Accused Auto Add Feature Has Been Retired, Yet EscapeX Accuses Ongoing Infringement

Further demonstrating EscapeX's lack of a reasonable presuit investigation, the Accused Auto Add Feature has been retired for two years, yet EscapeX alleges continued infringement and seeks, in part, "a decree addressing future infringement" that may include "damages for future infringement in lieu of an injunction." Dkt. 15 at 4. Not only would a cursory internet search reveal that this feature has been retired,[2] but Google also pointed this out at footnote 1 of its August 5 letter.

### D.  The '113 Patent is Invalid Under 35 U.S.C. § 101

The '113 patent is invalid under 35 U.S.C. § 101 for reasons already raised by other defendants in parallel proceedings against Digital Trends and Block in the Southern District

---

[2] *See, e.g.*, https://support.google.com/youtube/thread/86654246/non-fixed-deleted-feature-why-did-you-cancel-auto-add-feature-in-playlist-settings?hl=en.  Indeed even Plaintiff's exhibit to the Second Amended Complaint cites largely to information from "web.archive.org" that is no longer live.

of New York.[3] Tellingly, EscapeX promptly dismissed its case against Digital Trends after Judge McMahon stated that the defendant's § 101 motion "raises serious Alice issues . . . [and] [t]he court wishes to decide the outstanding motion promptly, as it may affect cases relating to the same patent, but against different defendants, that are pending before other judges of the court." *Digital Trends*, Dkt. 19 (Sept. 8, 2022).

EscapeX knows the '113 patent is likely invalid for failure to claim patentable subject matter. Thus, it is unreasonable for EscapeX to continue to force Google to incur fees related to the meritless allegations in this case.

### E.  The '113 Patent is Invalid in View of Other Prior Art

As explained in Google's previous letter dated August 5, 2022, the '113 patent is invalid based on other prior art including (1) U.S. Patent No. 6,526,411 to Sean Ward (claim chart provided in the previous letter); (2) patents disclosing systems and methods for modifying dynamic albums on user devices (e.g., U.S. Patent Nos. 9,317,185, 8,224,927, 8,819,553, and 8,634,944); and (3) the Mobile Roadie artist specific application platform described in Gordon, "The Future of the Music Business," at 172 (2011) (available at https://www.google.com/books/edition/The_Future_of_the_Music_Business/eiQmgEFs_4 YC?hl=en&gbpv=1&dq=musician+smartphone+apps&pg=PA172&printsec=frontcover).

Still today, Mobile Roadie provides artist specific applications. *See* https://mobileroadie.com/. The Mobile Roadie website confirms that its platform was launched in 2009 at South By Southwest in Austin, Texas with a live artist specific application for the band the Black Lips.[4] By 2010, over 10 million users had downloaded the Mobile Roadie app.[5] By 2012, Mobile Roadie indicates its apps were used by 20 million users in total, that the artist specific application for Madonna won the FWA award, and that Adele's artist specific application received recognition.[6] By 2013—still a year before the '113 patent's priority date—Adele's application was downloaded by 1.5 million users.[7]

In addition, EscapeX's allegations in the Second Amended Complaint (and EscapeX's PICs) confirm additional invalidating prior art, including Apple Inc.'s iTunes Smart Playlists and iTunes Radio. As EscapeX knows from its lawsuit against Apple Inc., the iTunes Smart Playlists and iTunes Radio features predate the '113 patent and render it invalid. *See* Motion to Dismiss, *EscapeX IP LLC v. Apple Inc.*, No: 6:22-cv-00427-ADA, Dkt. 13 (W.D. Tex.

---

[3] *See* Memorandum of Law in Support of Motion to Dismiss Under FRCP 12(b)(6), *EscapeX IP, LLC v. Digital Trends*, Case No. 1:22-cv-03512-CM, Dkt. 18 (S.D.N.Y. Aug. 11, 2022) ("*Digital Trends*"); Memorandum of Law in Support of Motion to Dismiss for Failure to Claim Patentable Subject Matter Under 35 U.S.C. § 101, *EscapeX IP, LLC v. Block, Inc.*, Case No. 1:22-cv-03575-JMF, Dkt. 20 (S.D.N.Y. Aug. 5, 2022) ("*Block*").

[4] *See* https://mobileroadie.com/about (scroll to "Our Story," click "2009" in timeline) (last visited 11/4/2022).

[5] *Id.* (scroll to "Our Story," click "2010" in timeline) (last visited 11/4/2022).

[6] *Id.* (scroll to "Our Story," click "2012" in timeline) (last visited 11/4/2022).

[7] *Id.* (scroll to "Our Story," click "2013" in timeline) (last visited 11/4/2022).

Aug. 9, 2022). Indeed, it appears EscapeX voluntarily dismissed its lawsuit against Apple rather than respond to Apple's motion to dismiss. *See id.*, Dkt. 23–24. This shows EscapeX knows its patent is invalid and that it has no basis to continue asserting it.

By the time Plaintiff applied for the '113 patent in 2014, dynamic albums, dynamic playlists, and artist specific music applications had been developed, sold, and used extensively in the U.S., thus confirming the '113 patent is not novel and should not have issued.

## II.    This is an Exceptional Case Warranting Fees

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." An exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health and Fitness, Inc.*, 572 U.S. 545, 554 (2014).

The Federal Circuit has identified circumstances that render a case exceptional under § 285, including: (1) plaintiff filing multiple nuisance value cases with no intent to test the merits (*AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1362 (Fed. Cir. 2017)); and (2) plaintiff failing to perform an adequate pre-filing investigation (*Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1307 (Fed. Cir. 2017)).

In *AdjustaCam* the Federal Circuit held the district court abused its discretion by not considering, as part of the exceptional case analysis, plaintiff's (1) asserting nuisance-value damages cases against many defendants and (2) continuing to press baseless infringement contentions against defendant Newegg. *Adjustacam*, 861 F.3d at 1362. Here, EscapeX has apparently filed nuisance value cases against many defendants, and its opening settlement offer to Google is no exception. As discussed above, (1) EscapeX's infringement allegations against Google are baseless due to its failure to perform an adequate pre-filing investigation at least by (a) initially accusing a product that doesn't exist and (b) now asserting infringement by a product that predates the patent, has been retired, and squarely does not infringe, and (2) the '113 patent is invalid. For at least these reasons, EscapeX's conduct is exceptional and warrants an award of attorney fees. *See, e.g.*, *Thermolife*, 922 F.3d at 1350 ("we see no abuse of discretion in the district court's determination of exceptionality based on plaintiffs' inadequate pre-suit investigation of infringement").

Moreover, Ramey LLP's track record of sanctionable behavior further demonstrates a pattern that would corroborate a finding of an exceptional case here, warranting an award of attorney's fees to Google.[8] Indeed, Ramey LLP previously represented a plaintiff who

---

[8] *See NetSoc, LLC v. Chegg Inc.*, 18-CV-10262 (RA), Dkt. 118 (S.D.N.Y. Dec. 10, 2020) (awarding fees under § 285 where the claim in plaintiff's infringement charts did not match the asserted claim in the complaint, and plaintiff failed to correct the error); *Traxcell Tech. v. Huawei Techs. USA Inc.*, 2:17-cv-00042-RWS-RSP, Dkt. 142 (E.D. Tex. Dec. 21, 2017)

was sanctioned for asserting infringement against products that predated the asserted patent. *See WPEM LLC v. SOTI Inc.*, 2:18-CV-00156-JRG, Dkt. 55 (E.D. Tex. Feb. 4, 2020) (awarding fees under § 285 where the accused products predated the asserted patent, and the court admonished plaintiff's lack of pre-suit investigation).

### III.   Google Therefore Demands Immediate Dismissal With Prejudice To Avoid Incurring Additional Unwarranted Expenses

Given the glaring deficiencies in EscapeX's infringement allegations and the demonstrated invalidity of the '113 patent, this litigation is clearly baseless—and a reasonable pre-suit investigation would have revealed as much. Google has expended resources to defend itself in this litigation and will continue to incur expenses and fees that are unwarranted.

Google provides this information now so that the parties and the Court may avoid unnecessary expenditure of time and money by disposing of an action that has no colorable basis in law or fact.

For example, given this suit has no connection to the Western District of Texas (as EscapeX is well aware) Google intends to file a motion to transfer to the Northern District of California ("NDCA") under 28 U.S.C. § 1404(a) because the NDCA is a more convenient venue. *See, e.g.*, Order Granting Defendants' Motion to Transfer, *Receivership Estate of Audioscience Inc. et al. v. Google LLC et al.*, Case No. 6:21-cv-1209-ADA, Dkt. 88 (W.D. Tex. Aug. 18 2022) (Albright granting transfer to NDCA in case alleging infringement by YouTube feature); Minute Entry Indicating Transfer to NDCA, *WAG Acquisition, L.L.C. v. Google LLC et al.*, Case No. 6:21-cv-00816-ADA (W.D. Tex. Oct. 6, 2022) (same). Google should not have to incur the expenses related to a transfer motion and additional motion practice thereafter in a baseless lawsuit such as this.

Google therefore demands that EscapeX confirm it will voluntarily dismiss this lawsuit with prejudice by **November 14, 2022**. If, instead, EscapeX continues to pursue this cause of action, Google reserves its rights to pursue any and all remedies, including seeking attorney fees under § 285.

Finally, Google requests that EscapeX preserve all documents, communications, and information maintained in any medium related to the subject matter of the various

---

(awarding sanctions and striking plaintiff's infringement contentions where plaintiff's infringement contentions were "unintelligible" and plaintiff failed to serve clearer contentions despite warnings and guidance from the district court); *Traxcell Tech. v. AT&T Corp.*, 2:17-cv-00718-RWS-RSP, Dkt. 520 (E.D. Tex. Mar. 29, 2022) (awarding fees under § 285 where plaintiff persisted with an infringement theory that was foreclosed by court's claim construction order); *KI Ventures, LLC v. Fry's Electronics, Inc.*, 13-1407, Dkt. 43 (S.D. Tex. Nov. 18, 2013) (issuing sanctions and dismissing the case with prejudice under Rule 11, because "[d]espite being ordered three times, KI Ventures still has not precisely explained how [defendants] infringed its patent").

complaints filed in this action, including any pre-suit investigation of the alleged infringement, asserted patent, file history, and Google's products.


Regards,

Brian C. Banner
*Attorney for Defendant Google*


cc: Jeffrey E. Kubiak (jkubiak@rameyfirm.com)

# Exhibit 8

## Brian Banner

| | |
|---|---|
| **From:** | Brian Banner |
| **Sent:** | Wednesday, November 16, 2022 8:35 AM |
| **To:** | William Ramey |
| **Cc:** | Jeff Kubiak; SGB Litigation |
| **Subject:** | RE: EscapeX v. Google - Letter Seeking Immediate Dismissal of Lawsuit |

Bill (& Jeff),

It's been over a week since our correspondence (below) requesting a response by November 14. Can you provide a response in the next few days? As always, I'm available if a phone call would be helpful.

Regards,
Brian


-------- Original message --------
From: Brian Banner <bbanner@sgbfirm.com>
Date: 11/7/22 4:43 PM (GMT-06:00)
To: William Ramey <wramey@rameyfirm.com>
Cc: Jeff Kubiak <jkubiak@rameyfirm.com>, SGB Litigation <litigation@sgbfirm.com>
Subject: EscapeX v. Google - Letter Seeking Immediate Dismissal of Lawsuit

Bill –

Please see the attached correspondence which requests a response on or before November 14, 2022.

Regards,

Brian C. Banner

**sgb | SLAYDEN GRUBERT BEARD PLLC**

401 Congress Ave, Ste 1650 I Austin, TX 78701 I USA

[O] 512.402.3569 I [C] 512.468.6297  I  sgbfirm.com

This message was sent by an attorney at law and may contain privileged and/or confidential matter.  Please let the sender know if this message was received in error.

# Exhibit 9

Appx0249

**Brian Banner**

| | |
|---|---|
| **From:** | Brian Banner |
| **Sent:** | Tuesday, December 13, 2022 3:04 PM |
| **To:** | William Ramey |
| **Cc:** | Jeff Kubiak; SGB Litigation |
| **Subject:** | Re: EscapeX v. Google - Letter Seeking Immediate Dismissal of Lawsuit |
| **Attachments:** | 2022-11-07 Ltr Banner to Ramey re Dismissal.pdf |

Bill,

I write to follow up on Google's letter that I sent to you over a month ago on November 7.  (I've reattached that letter for your convenience.)  The letter requested a response by November 14, and I followed up via email to you on November 16.  To date, we have not received a response.

As explained in the letter, Google believes this case is without merit and that Plaintiff's actions in this case are egregious. If Plaintiff will not voluntarily dismiss the case, Google will seek fees, including fees related to Google's recently-granted motion to transfer this case to the NDCA -- i.e., a motion Plaintiff didn't even bother responding to.

Please provide a response by Friday, December 16.  I'm available for a call to discuss if that would be helpful.

Regards,

Brian C. Banner

**sgb** I **SLAYDEN GRUBERT BEARD** PLLC
401 Congress Ave, Ste 1650 I Austin, TX 78701 I USA
[O] 512.402.3569 I [C] 512.468.6297  I  sgbfirm.com

This message was sent by an attorney at law and may contain privileged and/or confidential matter.  Please let the sender know if this message was received in error.

---

**From:** Brian Banner
**Sent:** Wednesday, November 16, 2022 8:35 AM
**To:** William Ramey <wramey@rameyfirm.com>
**Cc:** Jeff Kubiak <jkubiak@rameyfirm.com>; SGB Litigation <litigation@sgbfirm.com>
**Subject:** RE: EscapeX v. Google - Letter Seeking Immediate Dismissal of Lawsuit

Bill (& Jeff),

It's been over a week since our correspondence (below) requesting a response by November 14. Can you provide a response in the next few days? As always, I'm available if a phone call would be helpful.

Regards,
Brian


-------- Original message --------
From: Brian Banner <bbanner@sgbfirm.com>
Date: 11/7/22 4:43 PM (GMT-06:00)

1

To: William Ramey <wramey@rameyfirm.com>
Cc: Jeff Kubiak <jkubiak@rameyfirm.com>, SGB Litigation <litigation@sgbfirm.com>
Subject: EscapeX v. Google - Letter Seeking Immediate Dismissal of Lawsuit

Bill –

Please see the attached correspondence which requests a response on or before November 14, 2022.

Regards,

Brian C. Banner

**sgb | SLAYDEN GRUBERT BEARD  PLLC**

401 Congress Ave, Ste 1650 I Austin, TX 78701 I USA

[O] 512.402.3569 I [C] 512.468.6297  I  sgbfirm.com

This message was sent by an attorney at law and may contain privileged and/or confidential matter.  Please let the sender know if this message was received in error.

2

Appx0251

# Exhibit 10

## Brian Banner

| | |
|---|---|
| **From:** | Brian Banner |
| **Sent:** | Wednesday, December 21, 2022 4:25 PM |
| **To:** | Jeff Kubiak |
| **Subject:** | Fw: EscapeX v. Google - Letter Seeking Immediate Dismissal of Lawsuit |
| **Attachments:** | 2022-11-07 Ltr Banner to Ramey re Dismissal.pdf |

Jeff -

Thanks again for the call earlier today.  I'm forwarding the email/letter I previously sent re: the EscapeX v. Google case.  We appreciate you getting back to us on this.

Happy Holidays,

Brian C. Banner

**sgb I SLAYDEN GRUBERT BEARD PLLC**
401 Congress Ave, Ste 1650 I Austin, TX 78701 I USA
[O] 512.402.3569 I [C] 512.468.6297  I  sgbfirm.com

This message was sent by an attorney at law and may contain privileged and/or confidential matter.  Please let the sender know if this message was received in error.

---

**From:** Brian Banner <bbanner@sgbfirm.com>
**Sent:** Tuesday, December 13, 2022 3:03 PM
**To:** William Ramey <wramey@rameyfirm.com>
**Cc:** Jeff Kubiak <jkubiak@rameyfirm.com>; SGB Litigation <litigation@sgbfirm.com>
**Subject:** Re: EscapeX v. Google - Letter Seeking Immediate Dismissal of Lawsuit

Bill,

I write to follow up on Google's letter that I sent to you over a month ago on November 7.  (I've reattached that letter for your convenience.)  The letter requested a response by November 14, and I followed up via email to you on November 16.  To date, we have not received a response.

As explained in the letter, Google believes this case is without merit and that Plaintiff's actions in this case are egregious. If Plaintiff will not voluntarily dismiss the case, Google will seek fees, including fees related to Google's recently-granted motion to transfer this case to the NDCA -- i.e., a motion Plaintiff didn't even bother responding to.

Please provide a response by Friday, December 16.  I'm available for a call to discuss if that would be helpful.

Regards,

Brian C. Banner

**sgb I SLAYDEN GRUBERT BEARD PLLC**
401 Congress Ave, Ste 1650 I Austin, TX 78701 I USA
[O] 512.402.3569 I [C] 512.468.6297  I  sgbfirm.com

This message was sent by an attorney at law and may contain privileged and/or confidential matter.  Please let the sender know if this message was received in error.

**From:** Brian Banner
**Sent:** Wednesday, November 16, 2022 8:35 AM
**To:** William Ramey <wramey@rameyfirm.com>
**Cc:** Jeff Kubiak <jkubiak@rameyfirm.com>; SGB Litigation <litigation@sgbfirm.com>
**Subject:** RE: EscapeX v. Google - Letter Seeking Immediate Dismissal of Lawsuit

Bill (& Jeff),

It's been over a week since our correspondence (below) requesting a response by November 14. Can you provide a response in the next few days? As always, I'm available if a phone call would be helpful.

Regards,
Brian

-------- Original message --------
From: Brian Banner <bbanner@sgbfirm.com>
Date: 11/7/22 4:43 PM (GMT-06:00)
To: William Ramey <wramey@rameyfirm.com>
Cc: Jeff Kubiak <jkubiak@rameyfirm.com>, SGB Litigation <litigation@sgbfirm.com>
Subject: EscapeX v. Google - Letter Seeking Immediate Dismissal of Lawsuit

Bill –

Please see the attached correspondence which requests a response on or before November 14, 2022.

Regards,

Brian C. Banner

## sgb | SLAYDEN GRUBERT BEARD PLLC

401 Congress Ave, Ste 1650 I Austin, TX 78701 I USA
[O] 512.402.3569 I [C] 512.468.6297 I sgbfirm.com

This message was sent by an attorney at law and may contain privileged and/or confidential matter.  Please let the sender know if this message was received in error.

# Exhibit 11

**Brian Banner**

---

**From:** Brian Banner
**Sent:** Tuesday, January 3, 2023 10:53 AM
**To:** Jeff Kubiak
**Subject:** Re: EscapeX v. Google - Letter Seeking Immediate Dismissal of Lawsuit

Hi Jeff,

I hope you enjoyed the holidays and that all survived the freeze.  I had a couple plants that didn't make it, so damage was minor.

I jwanted to follow up on our conversation to see if you've had time to review with your client.  If you could let me know when we could expect a response, I would appreciate it.

Thanks,
Brian

---

**From:** Brian Banner <bbanner@sgbfirm.com>
**Sent:** Wednesday, December 21, 2022 3:24 PM
**To:** Jeff Kubiak <jkubiak@rameyfirm.com>
**Subject:** Fw: EscapeX v. Google - Letter Seeking Immediate Dismissal of Lawsuit

Jeff -

Thanks again for the call earlier today.  I'm forwarding the email/letter I previously sent re: the EscapeX v. Google case.  We appreciate you getting back to us on this.

Happy Holidays,

Brian C. Banner

**sgb | SLAYDEN GRUBERT BEARD PLLC**
401 Congress Ave, Ste 1650 I Austin, TX 78701 I USA
[O] 512.402.3569 I [C] 512.468.6297  I  sgbfirm.com

This message was sent by an attorney at law and may contain privileged and/or confidential matter.  Please let the sender know if this message was received in error.

---

**From:** Brian Banner <bbanner@sgbfirm.com>
**Sent:** Tuesday, December 13, 2022 3:03 PM
**To:** William Ramey <wramey@rameyfirm.com>
**Cc:** Jeff Kubiak <jkubiak@rameyfirm.com>; SGB Litigation <litigation@sgbfirm.com>
**Subject:** Re: EscapeX v. Google - Letter Seeking Immediate Dismissal of Lawsuit

Bill,

I write to follow up on Google's letter that I sent to you over a month ago on November 7.  (I've reattached that letter for your convenience.)  The letter requested a response by November 14, and I followed up via email to you on November 16.  To date, we have not received a response.

# Exhibit 13



Brian C. Banner
Shareholder
bbanner@sgbfirm.com
[O] 512.402.3569
[C] 512.468.6297

***Via Electronic Mail to wramey@rameyfirm.com
& jkubiak@rameyfirm.com***

March 2, 2023

William P. Ramey, III
Jeffrey E. Kubiak
Ramey LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006

> **RE:**   *EscapeX IP LLC v. Google LLC*, 4:22-cv-08711-HSG (N.D. Cal.)

Dear Bill & Jeff:

We have yet to receive any substantive response to my letter of November 7, 2022 laying out the multiple ways in which EscapeX should have known that it had no basis to bring this suit against Google including, among other things, that: 1) EscapeX was alleging infringement by functionality that pre-dated the asserted patent; and 2) that the asserted patent is invalid for failure to claim patentable subject matter under 35 U.S.C. § 101.  You have also not responded to my repeated attempts to follow-up by email on November 16, 2022, December 13, 2022, and by phone call (to Jeff) on December 21, 2022.  Google has continued to incur attorney's fees defending against EscapeX's meritless claims.

Since those communications, as you know, the asserted patent was adjudged invalid by District Judge Furman of the Southern District of New York on January 24 in a case brought by EscapeX against Block, Inc. for failure to claim patentable subject matter. That court's judgment is now final and non-appealable.Accordingly, EscapeX has no valid claim left to assert against my client and no recourse for challenging the Southern District of New York's final judgment.  I further note that EscapeX's failure to timely file a notice of appeal is further evidence that EscapeX had no basis to bring this suit.  And now that there is a final, non-appealable judgment of invalidity against EscapeX, EscapeX has no basis to maintain this suit.

Please confirm by close of business tomorrow, March 3, 2023, that EscapeX will dismiss its claims against Google **with prejudice**.

401 Congress Avenue, Suite 1650 | Austin, TX 78701 | 512.402.3550 | sgbfirm.com

Appx0264

2

I note that due to the upcoming scheduling conference set for March 28, the parties have a March 7, 2023, deadline to meet and confer to discuss initial disclosures, early settlement, ADR process selection, and a discovery plan. **That deadline is less than a week away.** Thus, time is of the essence for EscapeX to confirm it will dismiss this case with prejudice otherwise Google will continue to incur costs defending against an invalid patent.

Please respond promptly. I am available if a call would be helpful.

Regards,

Brian C. Banner
*Attorney for Defendant Google*

# Exhibit 14

## Brian Banner

| | |
|---|---|
| **From:** | Kate Lazarus <klazarus@kblfirm.com> |
| **Sent:** | Friday, March 3, 2023 8:24 PM |
| **To:** | skalra@rameyfirm.com; wramey@rameyfirm.com |
| **Cc:** | Asim Bhansali; Brian Banner; Nellie Slayden |
| **Subject:** | EscapeX v. Google |

Counsel -

You filed a stipulation for dismissal without Google's consent; Google did not stipulate to dismiss or to any arrangement on fees and costs.  Moreover, the stipulation improperly contains my signature without my consent, and a false certification under the Local Rules. You must immediately withdraw this stipulation, and notify the Court that it was filed without Google's permission, contains counsel's signature without permission, and that the certification is inaccurate.

In view of this serious breach of the rules and professional ethics, Google reserves all rights to seek appropriate relief.

Kate

--
**Kate E. Lazarus**
(415) 630-2353
klazarus@kblfirm.com
Firm Bio  |  LinkedIn
www.kblfirm.com



# Exhibit 15

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| ESCAPEX IP LLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 6:22-cv-00427 |
| APPLE INC., | § | |
| | § | |
| Defendant. | § | JURY TRIAL DEMANDED |
| | § | |
| | § | |

## DEFENDANT APPLE INC.'S MOTION TO DISMISS GIVEN ESCAPEX'S ADMISSION THAT "APPLE DOES NOT INFRINGE"

Pursuant to Federal Rules of Civil Procedure 12(b)(6), Defendant, Apple Inc. ("Apple"), moves to dismiss the patent infringement lawsuit filed by Plaintiff, EscapeX IP LLC ("EscapeX"), because EscapeX conceded Apple does not infringe the only claim set forth in EscapeX's Complaint.

## I.  INTRODUCTION

EscapeX is a non-practicing entity that is weaponizing its single acquired patent for continued litigation against Apple, even after full knowledge—and admission—that the asserted patent claims are invalid and/or not infringed.  Specifically, EscapeX's allegations of infringement accuse Apple Music and Smart Playlist functionalities that ***predate the earliest priority date of the patent-in-suit by more than three years***, as confirmed by the publicly-available Apple documents.  Soon after suit was filed, Apple notified EscapeX that it had accused the prior art and invited EscapeX to voluntarily dismiss the action before Apple expended additional time and resources litigating the action.  Though EscapeX admitted that "Apple does not infringe at least claim 1 and its dependencies" (*see* Ex. 1 (July 21 email fr Ramey Firm)), EscapeX refused to dismiss the suit.  *See* Ex. 2 (August 27 email to Ramey Firm).

## II.  FACTUAL BACKGROUND

On April 28, 2022, EscapeX filed a Complaint alleging infringement of U.S. Patent No. 9,009,113 ("the '113 Patent").  Dkt. No. 1.  The '113 Patent is purportedly directed towards a "novel and improved method and system that facilitate[s] artist-specified dynamic albums."  Dkt. No. 1, ¶ 8.  Specifically, EscapeX alleges that Apple Music and Smart Playlist features infringe claim 1 of the '113 Patent.  *Id.* at ¶¶ 9, 11, 12.  EscapeX attached a chart (Exhibit A) that purportedly maps elements of claim 1 of the '113 Patent against Apple Music.  *See id.* at ¶ 10, Ex. A.

1

On May 20, 2022, EscapeX amended its Complaint to correct a ubiquitous typographical error (*i.e.*, "'133 Patent" to "'113 Patent"). *See* Dkt. No. 8. The First Amended Complaint ("FAC") did not provide any additional facts to bolster EscapeX's infringement allegations, nor did it chart any additional claims beyond claim 1 that was first mapped in the original Complaint.

On June 1, 2022, Apple informed EscapeX that its infringement allegations are "objectively baseless" and the '113 Patent "is invalid at least under 35 U.S.C. § 102" because the accused Apple functionality predates the '113 Patent's filing date by more than three years. Ex. 3 (6/1/22 Ltr fr Elacqua to Ramey Firm) at 1. Apple further explained that "[i]f Apple is required to expend additional legal fees and costs to defend against objectively baseless allegations of infringement by EscapeX, Apple will seek to recover those fees and costs, and will further seek all other remedies available to it," such as those available under 35 U.S.C. § 285 and Fed. R. Civ. P. 11(b). *Id.* at 6. In support, Apple included an exemplary claim chart comparing EscapeX's infringement allegations to Apple's prior art disclosures. *Id.* at 2–5. Apple requested that EscapeX dismiss its claims against Apple because EscapeX has no "good faith basis for maintaining this action" and has failed to "present any colorable claim of infringement of any valid patent by Apple." *Id*. at 1.

On July 21, EscapeX agreed, conceding that "***Apple does not infringe at least claim 1 and its dependencies***." Ex. 1 (July 21 email fr Ramey Firm). In its response, EscapeX also provided Apple with a chart regarding claim 27 of the '113 Patent. Ex. 4 (July 21 chart). Notably, EscapeX did not move to amend its Complaint because, as discussed below, it has no basis to do so under Rule 11 because the accused features also predate the other claims in the '113 Patent.

On July 27, Apple again informed EscapeX that its infringement allegations related to claim 27 were directed to prior art. Ex. 5 (July 27 Ltr fr Elacqua to Ramey Firm) at 1. In support,

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| ESCAPEX IP, LLC, | ) | |
| Plaintiff, | ) | |
| | ) | **Civil Action No. 6:22-cv-00427-ADA** |
| v. | ) | |
| | ) | |
| APPLE, INC., | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR DISMISSAL WITH PREJUDICE**

Under Federal Rule of Civil Procedure 41(a)(1)(A)(i), Plaintiff, Escapex IP, LLC moves

to dismiss all of Plaintiff's claims against Defendant Apple Inc. in the above-captioned case WITH

PREJUDICE. For the avoidance of doubt, this motion does not preclude Apple Inc. from pursuing

any future claims or defenses relating to U.S. Patent No. 9,009,113.

Dated: October 25, 2022

Respectfully submitted,

**Ramey LLP**

William P. Ramey, III
Texas State Bar No. 24027643
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)
wramey@rameyfirm.com

*Attorneys for Escapex IP, LLC*

Appx0316

Susan S.Q. Kalra (State Bar No. 167940)
Email: skalra@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (800) 993-7499
Fax: (832) 900-4941

William P. Ramey, III (*pro hac vice anticipated*)
Email: wramey@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175

*Attorneys for Plaintiff*
ESCAPEX IP, LLC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESCAPEX IP, LLC, | Case No.: 4:22-cv-08711-HSG |
| Plaintiff, | |
| v. | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285** |
| GOOGLE LLC, | |
| Defendant. | **Hearing Date: June 29, 2023** |
| | **Time: 2 p.m.** |
| | **Dept.: 2** |
| | **Judge: Hon. Haywood S. Gilliam, Jr.** |
| | **Date Filed: April 28, 2022** |
| | **Trial Date: None set** |

1

OPP. TO MOTION FOR ATTY FEES - CASE NO.: 4:22-CV-08711-HSG

Appx0422

## I.       INTRODUCTION

Defendant GOOGLE LLC's ("Google") Motion for Attorneys' Fees Pursuant to 35 U.S.C. § 285 (ECF 41) ("Google's Motion") is based on speculation, conjecture, and mischaracterization. Moreover, Google's Motion fails to demonstrate that this case is a rare case warranting imposition of attorneys' fees under 35 U.S.C. § 285. Google's Motion should be denied in its entirety.

Google's Motion repeats four arguments: 1) that Escapex failed to undertake a reasonable pre-suit investigation; 2) that Google told Escapex that a "newly accused" feature, Auto Add, predated the asserted patent; 3) that Escapex dismissed a different case against a different defendant in a different court, to avoid an unfavorable ruling on a pending motion to dismiss; and 4) that Google sent a letter arguing its reasons why it believed Escapex should dismiss its pending Complaint, and advising that it would file a motion to transfer the case to this District.

Repetition does not make an argument true. Nor does Google's speculation regarding Escapex's actions rise to the level of facts.

## II.       FACTS

### A.       Google Filed A Single Motion – Not Addressed to the Pleadings

This was a short-lived case in which Google filed a single motion before filing its current Motion for fees. In fact, the only other substantive filings by Google were six-page long answers to Plaintiff ESCAPEX IP, LLC's ("Escapex") amended complaints – which were nearly identical (ECF 9 and 17; Ex. A to Kalra Decl.[1]).

Escapex filed its original Complaint for infringement of U.S. Patent No. 9,009,113 on April 28, 2022 (ECF 1). On May 11, 2022 Google filed a short unopposed Notice of Extension of Time To File Answer or Otherwise Respond to Complaint (ECF7).

---

[1] Declaration of Susan Kalra, filed herewith.

Escapex filed its First Amended Complaint on May 23, 2022 (ECF 8), and Google filed an Answer on July 5, 2022 (ECF 9). On September 29, 2022 Escapex filed a Second Amended Complaint (ECF 15), and Google filed its Answer on October 17, 2022 (ECF 17).

On November 21, 2022, Google filed a motion to transfer the case to this District pursuant to 28 U.S.C. § 1404(a) (ECF 18). The motion raises issues that one would anticipate would be addressed in such a motion: i.e., the convenience of witnesses, location of evidence, and private and public interest factors.

Notably, Google never filed a motion directed to the sufficiency of the allegations of Plaintiff's pleadings in this case. Google did not file a motion to dismiss. Google did not file a motion for summary judgment. Google did not file a motion for judgment on the pleadings.

Judge Alan D. Albright granted Google's motion to transfer the case to this Court on December 11, 2022. On March 3, 2023, shortly after a California attorney joined Plaintiff's counsel's practice, Escapex filed a Stipulation of Dismissal Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) (ECF 37).[2]  Google complained about the filing, and then filed a Joint Stipulation of Dismissal Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) (ECF 40) a few days later, on March 7, 2023.

## B.      EscapeX Is A Duly Registered Entity

As Exhibit 1 to the Declaration of Brian Banner (ECF 41-1, 41-2) demonstrates, Plaintiff ExcapeX was formed before Plaintiff's Complaint was filed. Google does not, and cannot argue, that there was any question that Plaintiff had standing as of the date the case was filed in the Western District of Texas.

## C.      EscapeX's Pleadings and Google's Correspondence

Google's letter to Plaintiff's counsel dated August 5, 2022 (Ex. 4 to Banner Decl. (ECF 41-5)) explains that the claim charts attached to EscapeX's First Amended Complaint accused

---

[2] The circumstances surrounding this filing and the subsequent withdrawal of it will be addressed below.

OPP. TO MOTION FOR ATTY FEES - CASE NO.: 4:22-CV-08711-HSG

YouTube Video of infringing the '113 patent. Google's letter includes the following annotated screenshot as an illustration:

of YouTube Video.[1]  Indeed, the screenshots in EscapeX's own claim chart[2] show the "Auto add" feature as relating to *videos*—not music.  For example, the "Auto add" setting dialogue in Plaintiff's chart refers to adding "videos" to playlists:



(ECF 4-5, at p. 3.)

The remainder of Google's August 5, 2022 letter raises additional arguments as to why Google believed it did not infringe Plaintiff's '113 patent. However, even a cursory review of the arguments raised in the letter reveal that Google's statements are just that – argument. For example, Google argues, without support, that YouTube Music is not an "Artist Specific Application" (*id.*, at p. 4). Whether this can be construed to mean *at least one artist* remains an open question.

Similarly, as discussed below with respect to Google's November 7, 2022 letter, other claimed features would also be subject to claim construction. Whether the YouTube Video artist videos such as "Taylor Swift Greatest Hits Full Album - Best Songs Of Taylor Swift Playlist 2021" and "Billboard Hot 100 Top Singles This Week 2022 - Top Billboard 2022", or others that predate them, use a "dynamic playlist" and, moreover, what that term means,

Notably, although EscapeX served its preliminary infringement contentions in the case (Ex. 6 to Banner Decl. (ECF 41-7)), Google never served invalidity contentions. Moreover, the case did not proceed to claim construction. Therefore, construction of the terms of the '113

OPP. TO MOTION FOR ATTY FEES - CASE NO.: 4:22-CV-08711-HSG

Appx0428

patent, including but not limited to "artist specific application", is a matter of claim construction, at best.

Furthermore, in response to Google's August 5, 2022 letter, EscapeX amended its claim charts (Ex. 5 to Banner Decl. (ECF 41-6)). In the transmittal email, ExcapeX's counsel invited Google's counsel to review the claim chart and to discuss EscapeX's position (*id.*). EscapeX then filed its Second Amended Complaint (ECF 15). As had been attached to EscapeX's earlier email, the claim charts attached to the Second Amended Complaint mapped the elements of Claim 1 of the '113 patent to YouTube *Video*, which, as Google admitted in its letter, "auto add" was, in fact, a feature of YouTube Video.

In response to EscapeX's Second Amended Complaint, Google did not file a motion to dismiss. Instead, it again filed an Answer (ECF 17),

Google's November 7, 2022 letter (Ex. 7 to Banner Decl. (ECF 41-8)) argues that YouTube Video does not infringe the '113 patent, and also argues that EscapeX's operative Complaint accuses prior art of infringement.

Google's arguments (Google's Motion at pp. 5-7; Ex. 7 to Banner Decl. (ECF 41-8)) with respect to the "auto add" feature and the claims of non-infringement are, at best, a matter of claim interpretation. For instance, the videos referenced on page 6 of Google's Motion do not disclose the '113 patent's distinguishing feature: i.e., "played by an artist specific application associated with an artist". Furthermore, the auto-add feature infringed the '113 patent between the patent's priority date and its retirement. Moreover, the arguments regarding whether and when YouTube Video had "dynamic playlist" capability would be another matter for claim construction and a tutorial. The screen-shotted videos in Google's letter (ECF 41-8, 41-9) "Taylor Swift Greatest Hits Full Album - Best Songs Of Taylor Swift Playlist 2021" and "Billboard Hot 100 Top Singles This Week 2022 - Top Billboard 2022 are clearly dated after the priority date of the '113 patent, and it appears that the videos use any kind of Dynamic Playlist whatsoever.

**D.    Other Cases, Even Those Filed by EscapeX's Counsel, Do Not Support Google's Motion**

Google makes much of other litigation involving the '113 patent, the number of cases filed against Google for patent infringement, and even the number of cases filed by EscapeX's counsel. Those arguments are unavailing.

First, Judge McMahon's September 8, 2022 statement in the *Digital Trends* New York case (Motion at p. 7; ECF 41-8) do not support Google's argument regarding EscapeX's knowledge that the '113 patent was invalid/ Judge McMahon's Order (Ex. B to Kalra Decl.) noted that there was a pending motion to dismiss in that case that "raises serious *Alice* issues." However, the motion was never adjudicated, and EscapeX voluntarily dismissed the case shortly after the Order was issued. Google's reliance on a statement in the Order that her decision "may affect cases relating to the same patent" against different defendants in the same court amounts to little more than speculation. Judge McMahon never adjudicated the motion. Nor does the *EscapeX v. Apple* motion (Google's Motion at p. 15) support Google's position here: the motion attached to Mr. Banner's Declaration as Exhibit 15 addresses claims made against *Apple* – not as against Google.

The number of cases Plaintiff's counsel has filed against Google (Motion, p. 19, fn. 7) has no bearing on whether *this* case is exceptional. The cases cited span several years and involve different patents and different plaintiffs. Furthermore, assuming the number of cases in Google's Motion is correct, only 5% if the patent infringement cases filed against Google that are currently open have been filed by Plaintiff's counsel. (Ex. C to Susan Kalra Decl., filed herewith.)

Moreover, the simple fact that Plaintiff's counsel files a number of cases on behalf of plaintiffs, including EscapeX (or DynaIP) or other plaintiffs is not surprising. There is nothing improper about specializing in patent cases. Nor does dismissing cases when warranted point to anything improper. A search of William Ramey's name will demonstrate that he has litigated

OPP. TO MOTION FOR ATTY FEES - CASE NO.: 4:22-CV-08711-HSG

Appx0430

cases vigorously, through the appeal process when warranted. Defendants rely on speculation and conjecture in arguing otherwise.

### E.  Dismissal of the Instant Case

As Google notes in its Motion, on January 4, 2023, Judge Fuhrman invalidated the '113 patent in *EscapeX IP LLC v. Block Inc.* (Motion, at p. 9). By that time, this case had been transferred to this Court. As set forth above, the *only* motion Google filed in this case was the motion to transfer – it did not file any motions addressed to the pleadings.

Following receipt of Google's November 7, 2022 letter and the *Block* order, and after consultation with the client, Plaintiff agreed to dismiss the case. Ramey LLP hired an attorney licensed in California in February 2023. A miscommunication resulted in the filing of the Stipulation of Dismissal (see Kalra Declaration). As soon as Plaintiff's counsel was made aware of the situation, the Stipulation was immediately withdrawn (ECF 38). Shortly thereafter, a Joint Stipulation was filed, and the case was terminated (ECF 40).

## III.  ARGUMENT

### A.  Google Is Not The Prevailing Party

A stipulated voluntary dismissal under Rule 41(a)(1)(A)(ii) does not confer prevailing party status on a litigant. *Realtime Adaptive Streaming LLC v. Netflix, Inc*., CV 19-6359-GW 2020 WL 8024356,citing  *Uniloc 2017 LLC v. Microsoft Cor*p., No. 18-cv-02053-JLS-(JDEx), 2019 U.S. Dist. LEXIS 236197 (C.D. Cal. Sept. 9, 2019) (Guilford, J.) (is not judicially sanctioned and thus does not convey prevailing party status). The parties here filed a Joint Stipulation of Dismissal. Accordingly, Google is not a prevailing party/

OPP. TO MOTION FOR ATTY FEES - CASE NO.: 4:22-CV-08711-HSG

**B.      This Case Is Not Exceptional[3]**

For the Court to award attorneys' fees pursuant to 35 U.S.C. § 285, the Court must first find that this case is "exceptional" - that is, one "that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.

Indeed, an exceptional case is "rare." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 134 S. Ct. 1749, 1756 (2014).  The Supreme Court defines exceptional "by its ordinary meaning,  i.e., 'uncommon, rare, or not ordinary.'" District courts have discretion to decide which cases are "exceptional" after considering the totality of the circumstances using a "nonexclusive list of factors, including 'frivolousness,   motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"

Fee awards, however, are not to be used as a penalty against unsuccessful patentees for failure to win a patent infringement suit. " *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015). "In other words, fees are not awarded solely because one party's position did not prevail." Such a rule would run afoul of the Supreme Court's mandate that Section 285 requires a case "stand[] out from the other" and "would have negative implications for access to justice." *Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, 79 F. Supp. 3d 1111, 1114-15 (C.D. Cal. 2015); *Univ. of Utah v. Max-Planck-Gesellschaft zur Foerderung der Wissenschaften e.V.*, 851 F.3d 1317 (Fed. Cir. 2017) (In general, the case must "set itself apart from mine-run cases" such that a fee award is warranted.) (citing *Octane Fitness*, 134 S. Ct. at 1757). By definition, "exceptional" cases are "uncommon," "rare," or "not ordinary." *Octane Fitness*, 134 S. Ct. at 1756. Exceptionality must be demonstrated by a preponderance of the evidence. *Id.* at 1758.

---

[3] Although Google's Notice of Motion purports to seek fees under the Court's inherent powers, its memorandum does not raise the issue. Google should not be permitted to raise this argument in its reply.

Generally, 'where a party has set forth some good faith argument in favor of its position, it will generally not be found to have advanced 'exceptionally meritless claims.'"

Furthermore, a party's "unreasonable manner" of litigating under *Octane Fitness* has usually concerned "egregious" examples of litigation *misconduct*. *Vasudevan Software*, 2015 WL 940635 at *5; *accord*, *RideApp, Inc. v. Lyft, Inc.,* No. 18-cv-07152-JST, 2020 WL 1047378 at *2 (N.D. Cal. Feb. 24, 2020); *cf. also Thought Inc. v. Oracle Corp.*, No. 12-cv-05601-WHO, 2016 WL 4426889 at *4-5 (N.D. Cal. Aug. 22, 2016); *France Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-cv-04967-WHO, 2015 WL 4396201 at *3-4 (N.D. Cal. July 17, 2015) ("good faith zealous advocacy [is] not exceptional").

Egregious conduct has been found where, for example, a patent had been obtained through false declarations; post-trial motions sought to relitigate the case that had concluded; a preliminary injunction was brought on an already-rejected theory; and, in one case, plaintiffs knew before filing suit they might not even own the patent, manufactured a venue argument, prejudiced the defendant with untimely documents and infringement contentions, and "played fast and loose" with the rules. *Vasudevan*, 2015 WL 4940635 at *5.

In this case, Plaintiff has litigated its case within the bounds of proper litigation conduct, vigorously representing EscapeX. Plaintiff addressed the concerns raised in Google's correspondence, even submitting claim charts before filing an amended complaint. EscapeX was not required to oppose Google's motion to transfer, and there was nothing improper about not filing an opposition. Google filed a notice of nonopposition, as it was entitled to do.

Moreover, once the patent had been invalidated in *Block*, Plaintiff dismissed the case shortly thereafter.

Google's Motion insists that EscapeX should have simply accepted the former's interpretation of the claims, without the benefit of claim construction, and without litigating construction of the terms and the patent claims. Until the patent was invalidated by the *Block* court, EscapeX's patent was entitled to a presumption of validity. EscapeX simply attempted in good faith to enforce its patent rights. Google has not provided any facts to the contrary.

## IV. GOOGLE FAILS TO DEMONSTRATE THAT THE FEES ITS SEEKS ARE WARRANTED OR REASONABLE

EscapeX believes that Google is not entitled to an award of attorney fees under the facts presented here. Moreover, Google failed to provide any evidence to support the conclusory assertions in Mr. Banner's declaration regarding the time spent by counsel on the matter.

The party seeking fees "bears the burden of submitting detailed time records" establishing the hours spent. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (1986). A reduction in the hours may be necessary "where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Id.* As the U.S. Supreme Court instructed: "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

To determine whether fees claimed are reasonable or require reduction, courts are to "carefully review attorney documentation of hours expended" because "'padding' in the form of inefficient or duplicative efforts is not subject to compensation." *In re Brand Affinity Tech., Inc.*, No. 8:14-bk-17244, 8:15-ap-01395, 2016 WL 8309669 at *2 (C.D. Cal. Bankr. April 29, 2016). Indeed, if the padding is extreme, a court may "reduce the award or deny one altogether." *Red v. Kraft Foods, Inc.*, No. 10-1028-GW, 2015 WL 12670201 at *4 (C.D. Cal. Apr. 29, 2015), *aff'd*, 680 F. App'x 597 (9th Cir. 2017). The rationale for an outright denial in such circumstances was explained in *Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd.*, No. 11-303-PSG (PLAX), 2012 WL 12883819 (C.D. Cal. June 12, 2012):

[I]f the Court "were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encourage[d] to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked in the first place. To discourage such greed, a severer reaction is needful." *Id.* at *4 (quoting *Serrano v. Unruh*, 32 Cal. 3d 621, 635 (1982)).

Tasks for which attorneys have submitted claims for fees that courts have reduced or disallowed as examples of inefficient, inflated billings include "intra-office conferences," "case analysis," and use of recycled "boilerplate" in motions. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949-50 (9th Cir. 2007). Courts have also reduced attorney time where a series of motions involved the same or overlapping issues. *Natural-Immunogenics Corp. v. Newport Trial Group*, No. 8:15-cv-02034, 2020 WL 7265418 at *10 (C.D. Cal. Oct. 7, 2020). The use of senior attorneys to perform tasks that could be delegated to more junior attorneys or paralegals at lower rates has also been recognized as an inefficiency requiring reductions. *See*, *e.g.*, *MacDougal v. Catalyst Nightclub*, 58 F. Supp. 2d 1101, 1105 (N.D. Cal. 1999) ("the Court does not approve of '[t]he wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates.'"). Senior attorneys' involvement in a case is expected to result in *fewer* hours spent, due to their greater expertise and familiarity with the issues, not an excuse for increasing the price of performing ordinary tasks an associate or paralegal could handle. *Cf.*, *e.g.*, *East West Bank v. Shanker*, No. 20-cv- 07364-WHO, 2021 WL 6049912 at *6 (N.D. Cal. Dec. 20, 2021) ("with such high rates comes an expectation of greater efficiency"). Routinely assigning multiple attorneys to attend hearings and depositions has also been recognized as excessive and requiring reductions. *See Universal Electronics, Inc. v. Universal Remote Control, Inc.*, 130 F. Supp. 3d 1331, 1338 (C.D. Cal. 2015). It is also inappropriate to include fees for time attorneys spent getting up to speed on the case. *See*, *e.g.*, *Thermolife Int'l, LLC v. Myogenix Corp.*, No. 13-cv-651 JLS (MDD), 2018 WL 325025 at *9 (S.D. Cal. Jan. 8, 2018), *aff'd sub nom. Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347 (Fed. Cir. 2019).

However, none of the foregoing excesses or improprieties can be found if the party seeking fees fails to submit evidence sufficient for the Court to tell how the time was spent. Here, Google did not submit any of the underlying records for the time its counsel allegedly spent working on the case. Instead, it submitted a summary in counsel's declaration. There was

no reason for Google to fail to produce the underlying records. It should be prohibited from doing so with its reply, because Plaintiff will not have the opportunity to respond.

**CONCLUSION**

For the reasons set forth above, Google's Motion should be denied in its entirety.

Dated: April 19, 2023                                 Respectfully submitted,

RAMEY LLP

*/s/ Susan S.Q. Kalra*
Susan S.Q. Kalra (State Bar No. 167940)
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
Telephone: (800) 993-7499
Fax: (832) 900-4941
Email: skalra@rameyfirm.com

*/s/ William P. Ramey, III*
William P. Ramey, III (pro hac vice
    anticipated)
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175
Email: wramey@rameyfirm.com

Attorneys for Plaintiff
ESCAPEX IP, LLC

15

Appx0436

Susan S.Q. Kalra (State Bar No. 167940)
Email: skalra@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (800) 993-7499
Fax: (832) 900-4941

William P. Ramey, III (*pro hac vice anticipated*)
Email: wramey@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175

*Attorneys for Plaintiff*
ESCAPEX IP, LLC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESCAPEX IP, LLC,<br><br>                Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>                Defendant. | Case No.: 4:22-cv-08711-HSG<br><br><br>**DECLARATION OF SUSAN KALRA IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285**<br><br>**Hearing Date: June 29, 2023**<br>**Time: 2 p.m.**<br>**Dept.: 2**<br>**Judge: Hon. Haywood S. Gilliam, Jr.**<br><br>**Date Filed: April 28, 2022**<br>**Trial Date: None set** |

1

I, Susan Kalra, state and declare as follows:

1.      I am over the age of 18, and I am Plaintiffs' counsel of record in the above captioned case. I would and could competently testify as set forth below in a court of law.

2.      I began working at Ramey LLP on or about February 4, 2023.

3.      I was aware that the parties had a deadline of March 7, 2023 to meet and confer in preparation for the case management conference, which was scheduled for March 28, 2023.

4.      On or about March 3, 2023 I was instructed to file a stipulation of dismissal on file as soon as possible, and that counsel for Defendant Google LLC had instructed it be filed immediately given the approaching deadline. It was my understanding that attorneys in our firm had obtained consent to file from Google's counsel.

5.      At the time I filed the stipulation of dismissal, it was my intent to comply with Google's request for immediate filing. A paralegal in the firm sent me a draft of the stipulation to be filed. Because I was informed and believed Google's counsel had already consented to filing the stipulation, I filed it. In addition, because I was informed and believed Google's counsel had given consent, I included the name of one of Google's attorneys who had appeared in the case on the stipulation as having consented to the filing.

6.      As soon as I was informed that I had mistakenly selected an attorney who had not given consent to file, I withdrew the stipulation. Both the filing and the withdrawal occurred on the same day. (ECF 37 and 38).  If I had known that a different attorney was the person who gave consent, I would have included his name, instead.

7.      Attached as Exhibit A is a comparison between Google LLC's Answer to Plaintiff's First Amended Complaint (ECF 9), and its Answer to Plaintiff's Second Amended Complaint (ECF 17).

8.      Attached as Exhibit B is a true and correct copy of the Order filed September 8, 2022 in *EscapeX IP LLC v. Digital Trends* in the U.S. District Court for the Southern District of New York. According to the docket report in that case, Plaintiff filed a Notice of Voluntary

Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) on September 19, 2022, and the motion to dismiss referred to in the Order was not adjudicated.

9.      Attaches as Exhibit C is a true and correct copy of a list of search results obtained on April 18, 2023 from Lexis for dockets in all cases on or after November 9, 2021 in which Google was or is named as a defendant in a patent infringement case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed April 19, 2023.                         */s/ Susan S.Q. Kalra*
                                                 Susan S.Q. Kalra

3

# EXHIBIT A



4/18/2023 7:15:16 PM

## Compare Results

| Old File: | | New File: |
|---|---|---|
| **9. Answer to Amended Complaint.pdf** | versus | **17. Answer to Amended Complaint.pdf** |
| **7 pages (191 KB)** | | **7 pages (189 KB)** |
| 4/18/2023 7:14:17 PM | | 4/18/2023 7:14:41 PM |

**Total Changes**

**22**

Text only comparison

**Content**

19   Replacements

2   Insertions

1   Deletion

**Styling and Annotations**

0   Styling

0   Annotations

Go to First Change (page 1)

Appx0441



**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| ESCAPEX IP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 6-22-cv-00428-ADA |
| vs. | § | |
| | § | JURY TRIAL DEMANDED |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**GOOGLE'S ANSWER TO SECOND AMENDED COMPLAINT**

Defendant Google LLC ("Google") states the following as its Answer to the Second Amended Complaint of Plaintiff EscapeX IP, LLC ("Plaintiff" or "EscapeX") in the above-entitled action in the correspondingly numbered paragraphs. Any factual allegation admitted below is limited to the specifically stated facts and not as to any assumptions, implications, inferences, conclusions, characterizations, or speculations that may be associated with any of the specifically admitted facts or allegations. Unless expressly admitted, each and every allegation, including any implication, inference, conclusion, characterization, or speculation, including in any headings or non-numbered paragraphs, is denied.

1.      Google lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 1 and accordingly denies them.

2.      Google admits that Google LLC is a Delaware corporation with a principal address of 1600 Amphitheatre Parkway, Mountain View, California 94043. Google admits that it maintains an office in Austin, Texas and that it is registered to do business in Austin, Texas. Except as expressly admitted, Google denies each and every allegation of paragraph 2.

1

Page: 2

Text Replaced
[Old]: "07/05/22"
[New]: "10/17/22"

Text Replaced
[Old]: "9"
[New]: "17"

3.      Google admits that it provides services to users in Texas, including the Western District. Google denies that it has committed any acts of infringement in this District or any other district. Except as expressly admitted, Google denies each and every allegation of paragraph 3.

4.      Google admits that this action invokes the United States patent laws, and that this Court has subject matter jurisdiction over patent law claims. Except as expressly admitted, Google denies each and every allegation of paragraph 4.

5.      Google does not contest personal jurisdiction in this District solely for the purpose of this action. Google specifically denies that it has committed any acts of infringement within this District or any other district. Except as expressly admitted, Google denies each and every allegation of paragraph 5.

6.      Google does not contest that venue is proper in this District solely for the purpose of this action. Google denies that this venue is convenient for the parties and witnesses or serves the interest of justice under 28 U.S.C. § 1404(a) and reserves the right to seek transfer to a more convenient forum. Google admits that it conducts business in Texas. Google denies that it has committed any acts of infringement in this District or any other district. Except as expressly admitted, Google denies each and every allegation of paragraph 6.

7.      Google admits that U.S. Patent No. 9,009,113 ("the '113 Patent") bears the title "System and Method for Generating Artist-Specified Dynamic Albums," and on its face indicates an issue date of April 14, 2015. Google lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 7 and accordingly denies them.

8.      Google denies each and every allegation of paragraph 8.

9.      Google denies each and every allegation of paragraph 9.

2

Appx0443

10.    Google admits that Plaintiff's Complaint attaches as an exhibit a table purporting to support Plaintiff's allegations of infringement. Google denies that support for any allegations of infringement may be found in said exhibit and specifically denies that it has committed any acts of infringement. Google lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 10 and accordingly denies them.

11.    Google denies each and every allegation of paragraph 11.

**RESPONSE TO JURY DEMAND**

Plaintiff's demand for a trial by jury for all issues triable to a jury does not state any allegation, and Google is not required to respond. To the extent that any allegations are included in the demand, Google denies these allegations.

**RESPONSE TO PRAYER FOR RELIEF**

These paragraphs set forth the statement of relief requested by Plaintiff to which no response is required. Google denies that Plaintiff is entitled to any of the requested relief. To the extent that any allegations are included in the prayer, Google denies these allegations.

**AFFIRMATIVE DEFENSES**

Subject to the responses above, and without assuming any burden other than that imposed by operation of law, Google alleges and asserts the following defenses in response to Plaintiff's Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denoted below. All defenses are pled in the alternative and do not constitute any admission of liability. In addition to the defenses described below, and subject to its responses above, Google specifically reserves all rights to allege additional affirmative and other defenses that become known based on further investigation, as a result of discovery, or otherwise.

3

Page: 3

Text Replaced
[Old]: "07/05/22"
[New]: "10/17/22"

Text Replaced
[Old]: "9"
[New]: "17"

Text Deleted
"12. Google denies each and every allegation of paragraph 12. 13. Google denies each and every allegation of paragraph 13."

**Page: 4**

**T** Text Replaced
[Old]: "07/05/22"
[New]: "10/17/22"

**T** Text Replaced
[Old]: "9"
[New]: "17"

## FIRST DEFENSE
### (FAILURE TO STATE A CLAIM)

In addition to failing to meet the standard for pleading required by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), Plaintiff's Complaint does not state any viable claim on which relief may be granted. Plaintiff has also failed to provide any basis for damages, accounting, or any other relief sought.

## SECOND DEFENSE
### (ENSNAREMENT)

Plaintiff's claims of patent infringement under the doctrine of equivalents, if any, are barred under the doctrine of ensnarement.

## THIRD DEFENSE
### (NON-INFRINGEMENT)

Google does not infringe and has not infringed (not directly, contributorily, or by inducement), either literally or under the doctrine of equivalents, and is not liable for infringement of any valid and enforceable claim of the '113 Patent.

## FOURTH DEFENSE
### (INVALIDITY)

The claims of the '113 Patent are invalid and unenforceable under 35 U.S.C. § 101 because the claims are directed to abstract ideas or other non-statutory subject matter.

The claims of the '113 Patent are invalid and unenforceable under 35 U.S.C. § 102 because the claims lack novelty, and are taught and suggested by the prior art.

The claims of the '113 Patent are invalid and unenforceable under 35 U.S.C. § 103 because the claims are obvious in view of the prior art and/or the knowledge of one of ordinary skill in the art.

4

Page: 5

T Text Replaced
[Old]: "07/05/22"
[New]: "10/17/22"

T Text Replaced
[Old]: "9"
[New]: "17"

The claims of the '113 Patent are invalid and unenforceable for failure to satisfy the conditions set forth in 35 U.S.C. § 112, including failure of written description, lack of enablement, and claim indefiniteness.

### FIFTH DEFENSE
### (PROSECUTION HISTORY ESTOPPEL)

On information and belief, due to admissions and statements made to the United States Patent and Trademark Office during the prosecution of the applications that resulted in the asserted patent or related patent applications, Plaintiff is estopped from construing a valid and enforceable claim, if any, of the '113 Patent as infringed literally or under the doctrine of equivalents by the Google products accused in Plaintiff's Complaint.

### SIXTH DEFENSE
### (LIMITATION OF DAMAGES)

Plaintiff's claims for relief are barred, in whole or in part, by operation of the applicable statutes which limit damages and other relief, including 35 U.S.C. §§ 284, 286, 287, and/or 288. Even if Plaintiff were to prevail on a claim of infringement, Plaintiff is not entitled to any damages before notice of or after expiration of the asserted patent.

### SEVENTH DEFENSE
### (EQUITABLE DEFENSES)

On information and belief, Plaintiff's claims are estopped or barred, in whole or in part, by the doctrines of waiver, unclean hands, equitable estoppel, laches, acquiescence, and/or other equitable defenses.

### EIGHTH DEFENSE
### (EXHAUSTION)

On information and belief, Plaintiff exhausted the ability to claim infringement by Google of any valid and enforceable claim of the '113 Patent.

Page: 6



Text Replaced
[Old]: "07/05/22"
[New]: "10/17/22"

Text Replaced
[Old]: "9"
[New]: "17"

Text Replaced
[Old]: "July 5,"
[New]: "October 17,"

Text Inserted
"Darryl J. Adams (TX Bar No. 00796101) dadams@sgbfirm.com"

### NINTH DEFENSE
### (LACK OF STANDING)

To the extent EscapeX IP, LLC does not own all substantial rights in the '113 Patent, it lacks standing to pursue some or all of its claims against Google.

### PRAYER FOR RELIEF

WHEREFORE, Google denies that EscapeX is entitled to any relief whatsoever on its complaint and respectfully requests that this Court enter judgment as follows:

a. Dismissing Plaintiff's Complaint against Google with prejudice;

b. Finding that Google has not infringed, contributed to the infringement of, or induced others to infringe, either directly or indirectly, any valid and enforceable claim of the '113 Patent;

c. Finding that the '113 Patent is invalid and unenforceable;

d. Declaring that this case is exceptional in favor of Google and that Google is entitled to an award of its reasonable costs and expenses of litigation, including attorneys' fees and expert witness fees;

e. Limiting or barring Plaintiff's ability to enforce the '113 Patent in equity;

f. Granting Google such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Google hereby demands a trial by jury on all issues so triable.

Dated: October 17, 2022          Respectfully submitted,

/s/ Brian C. Banner
Brian C. Banner (TX Bar No. 24059416)
bbanner@sgbfirm.com
Darryl J. Adams (TX Bar No. 00796101)
dadams@sgbfirm.com

6



Page: 7

Text Replaced
[Old]: "07/05/22"
[New]: "10/17/22"

Text Replaced
[Old]: "9"
[New]: "17"

Text Inserted
"Truman H. Fenton (TX Bar No. 24059742) tfenton@sgbfirm.com Tecuan Flores (TX Bar No. 24084569) tflores@sgbfirm.com"

Text Replaced
[Old]: "5th"
[New]: "17th"

Text Replaced
[Old]: "July"
[New]: "October"

Truman H. Fenton (TX Bar No. 24059742)
tfenton@sgbfirm.com
Tecuan Flores (TX Bar No. 24084569)
tflores@sgbfirm.com
SLAYDEN GRUBERT BEARD PLLC
401 Congress Ave., Suite 1650
Austin, TX 78701
tel: 512.402.3550
fax: 512.402.6865

***Attorney for Defendant Google LLC***

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of October 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Brian C. Banner
Brian C. Banner
*Attorney for Defendant Google LLC*

7

# EXHIBIT B

Appx0449

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————————x

ESCAPEX IP LLC,

                Plaintiffs,

        -against-

DIGITAL TRENDS,

                Defendant.

——————————————————————————x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/8/2022

No. 22-cv-3512 (CM)

## ORDER

McMahon, J.

      The Court set an initial conference in this case to take place today, September 8, 2022, at 11:15 AM. Plaintiff's counsel did not join the call. As a result, the conference was cancelled.

      The Court notes that there is a pending motion to dismiss in this case. (Dkt. No. 17). The motion was filed on August 11, 2022; Plaintiff's response was due two weeks later, or August 25, 2022. Plaintiff has neither responded to the motion – which raises serious *Alice* issues – nor sought an adjournment.

      The court wishes to decide the outstanding motion promptly, as it may affect cases relating to the same patent, but against different defendants, that are pending before other judges of the court. Accordingly, Plaintiff is ordered to file a response to the motion to dismiss by close of business on Friday, September 16, 2022. If Plaintiff does not file a response by that date, the Court will decide the motion without opposition.

Dated: September 8, 2022

                                        U.S.D.J.

BY ECF TO ALL COUNSEL

1
Appx0450

# EXHIBIT C



**Results for:** patent /10 infringement and (defendant-litigant(go...

**Dockets**

1.  ## U.S. Patent No. 7,679,637 Llc V. Google, Llc
    | **Court:** United States District Court, Washington Western | **Date:** Apr 18, 2023

2.  ## Wirelesswerx Ip, Llc V. Google, Llc
    | **Court:** United States District Court, California Northern | **Date:** Apr 17, 2023

3.  ## Wirelesswerx Ip, Llc V. Google, Llc
    | **Court:** United States District Court, California Northern | **Date:** Apr 17, 2023

4.  ## Mdsp Technologies Llc V. Google Llc
    | **Court:** United States District Court, Texas Western | **Date:** Apr 06, 2023

5.  ## Aml Ip, Llc V. Google Llc
    | **Court:** United States District Court, Texas Western | **Date:** Apr 04, 2023

6.  ## Dialect, Llc V. Google Llc Et Al
    | **Court:** United States District Court, Delaware | **Date:** Apr 03, 2023

7.  ## Sockeye Licensing Tx Llc V. Google Llc
    | **Court:** United States District Court, Texas Western | **Date:** Mar 30, 2023

8.  ## Web 2.0 Technologies, Llc V. Google Llc
    | **Court:** United States District Court, Delaware | **Date:** Mar 27, 2023

9.  ## Virtual Creative Artists, Llc V. Google Llc
    | **Court:** United States District Court, Texas Western | **Date:** Mar 17, 2023

Kate E. Lazarus (SBN 268242)
klazarus@kblfirm.com
Asim M. Bhansali (SBN 194925)
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350

Additional attorneys listed on signature page.

Attorneys for Defendant
GOOGLE LLC

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ESCAPEX IP LLC, | § CASE NO. 4:22-cv-08711-HSG |
| | § |
| Plaintiff, | § **GOOGLE LLC'S REPLY IN SUPPORT** |
| | § **OF MOTION FOR ATTORNEYS' FEES** |
| v. | § **PURSUANT TO 35 U.S.C. § 285** |
| | § |
| GOOGLE LLC, | § <u>Hearing</u> |
| | § Date: June 29, 2023 |
| Defendant. | § Time: 2 p.m. |
| | § Dept.: 2 |
| | § Judge: Hon. Haywood S. Gilliam, Jr. |
| | § |
| | § Date Filed: April 28, 2022 |
| | § Trial Date: None set |

Appx0461

# TABLE OF CONTENTS

I.      GOOGLE IS THE PREVAILING PARTY...........................................................................1

II.     THIS CASE IS EXCEPTIONAL ......................................................................................3

    A.  EscapeX's Misconduct Is Exceptional Because It Clearly "Stands Out
       From Others" ........................................................................................................3

    B.  Plaintiff's Post-Litigation Excuses Cannot Erase Its Misconduct ....................................6

    C.  EscapeX Tries to Create a New Requirement to Seek Fees in this District ...................10

III.    CONCLUSION.................................................................................................................11

- 1 -

To the extent EscapeX meant to rely on the *Uniloc 2017* case (Dkt. No. 44 at 10), Google respectfully submits that case was wrongly decided and this Court should instead follow the more recent reasoning of the *Internet Media Interactive* and *Realtime Adaptive* courts. The *Uniloc 2017* court's reasoning relied heavily on outdated Federal Circuit dicta (that the *Uniloc 2017* court recognized was "made in passing") and concluded that a "stipulated dismissal with prejudice . . . is not an enforceable judgment on the merits…." *Uniloc 2017 LLC v. Microsoft Corp.*, No. 18-cv-02053-JLS-(JDEx), 2019 U.S. Dist. LEXIS 236197, at *4, *6 (C.D. Cal. Sept. 9, 2019). However, after the *Uniloc 2017* decision, the Federal Circuit held that a "stipulated dismissal with prejudice … operated as an adjudication on the merits for claim preclusion purposes." *In re PersonalWeb Techs. LLC*, 961 F.3d 1365, 1379 (Fed. Cir. 2020). Thus, by finding that a stipulated dismissal with prejudice could be used for claim preclusion, the Federal Circuit confirmed that a stipulated dismissal is an enforceable judgment on the merits and is the precise sort of "material alteration of the legal relationship of the parties" that supports a prevailing party finding. *See CRST*, 578 U.S. at 422. Accordingly, there is no meaningful distinction between a notice of dismissal with prejudice under Rule 41(a)(1)(A)(i) and a stipulated dismissal with prejudice under Rule 41(a)(1)(A)(ii) for purposes of a prevailing party analysis.

Because all claims against Google were dismissed with prejudice leading to a material alteration of the legal relationship between EscapeX and Google, Google is the prevailing party.

## II. THIS CASE IS EXCEPTIONAL

### A. EscapeX's Misconduct Is Exceptional Because It Clearly "Stands Out From Others"

EscapeX does not dispute the facts that underlie its exceptional misconduct:

- EscapeX filed a facially defective complaint by mixing and matching features of two distinct products (YouTube Music and YouTube Video) in its infringement allegations.

GOOGLE LLC'S REPLY IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES
CASE NO 4:22-cv-08711-HSG

- EscapeX filed an amended complaint that alleged infringement by a product feature (YouTube Video "Auto Add") that predated the asserted patent, and a simple internet search would have revealed that the Auto Add feature predated the patent.

- Google informed EscapeX of the defects in its amended complaint on November 7, 2022, but Plaintiff ignored that communication and Google's additional five attempts to get a response over the next two months.

- Google asked for a response from EscapeX so that needless work could be avoided, including work to prepare a motion to transfer, but EscapeX refused to respond and then did not file an opposition causing Google to needlessly prepare and file a motion that was ultimately unopposed.

- EscapeX dismissed the *Digital Trend* case in the Southern District of New York to avoid an unfavorable ruling that would affect all of EscapeX's cases, including this case.

- EscapeX filed a stipulation in this Court that included a Google attorney's signature without contacting the attorney or obtaining permission from any Google attorney.

Based on these undisputed facts, EscapeX's conduct clearly "stands out from others" with respect to the weakness of this case and the unreasonable way it was litigated. *See Octane Fitness LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

The facts show EscapeX failed to undertake a reasonable investigation before filing two defective complaints. The original complaint combined features of distinct products. A reasonable investigation would have revealed that YouTube Music and YouTube Video are distinct products, and that functionality in one is not necessarily present in the other. In the amended complaint, EscapeX then accused a feature of YouTube Video (Auto Add) that predated the patent, a fact a simple internet search would have revealed. At a minimum, a search for the Auto Add feature

would have uncovered the four videos identified by Google in its November 7, 2022 letter. EscapeX never substantively responded to Google's letter.

EscapeX's manner of litigating the case was also clearly unreasonable. EscapeX ignored Google's communications that tried to reasonably resolve issues, and ignored Google's request to avoid incurring costs to file a motion to transfer. In the transfer order, Judge Albright pointed out that this is a pattern with EscapeX's counsel. Dkt. No. 22 at 3 ("the same counsel … has already been chastised by this Court for his repeated failure to file in a timely manner"). And EscapeX filed a purported "stipulation" in this Court misrepresenting that it had conferred with Google and had permission to use Google's counsel's signature.

EscapeX's litigation conduct reveals a shell game of delaying and dismissing cases to avoid adverse rulings in the hope of maintaining baseless claims against other defendants long enough to extract a settlement. *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011) (affirming exceptional case finding where plaintiff "exploited the high cost to defend complex litigation to extract . . . settlement"). Further, this conduct is a pattern that has been recognized as exceptional by multiple other courts. *See ZT IP, LLC v. VMware, Inc.*, No. 3:22-CV-0970-X, 2023 WL 1785769, at *2–5 (N.D. Tex. Feb. 6, 2023) (finding case exceptional and awarding $92,130.35 in attorneys' fees where DynaIP entity represented by Ramey LLP failed "to conduct an adequate pre-filing investigation and act diligently when it became aware that its investigation was inadequate"); *WPEM, LLC v. SOTI Inc.*, No. 2:18-CV-00156-JRG, 2020 WL 555545, at *3–6, 8 (E.D. Tex. Feb. 4, 2020) (finding case exceptional and awarding $179,622 in attorneys' fees where Ramey LLP "conducted no pre-filing investigation into the validity and enforceability of the Asserted Patent at all"), *aff'd*, 837 F. App'x 773 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2628 (2021); *Traxcell Techs., LLC. v. AT&T Corp.*, No. 2:17-cv-00718-RWS-RSP, 2022 WL 949951,

GOOGLE LLC'S REPLY IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES
CASE NO 4:22-cv-08711-HSG

Appx0469

at *4 (E.D. Tex. Mar. 29, 2022) (awarding defendant Verizon its attorneys' fees against plaintiff represented by Ramey LLP and calling the case "'exceptional' under § 285 based on [plaintiff's] pursuit of objectively baseless infringement theories…"), *report and recommendation adopted by*, 2022 WL 18507378, at *1 (E.D. Tex. Dec. 22, 2022) ("[Plaintiff] continued to pursue theories that it knew or should have known were baseless.").

### B.      Plaintiff's Post-Litigation Excuses Cannot Erase Its Misconduct

Against this documented backdrop of unreasonable litigation conduct, EscapeX offers a few excuses, all ultimately flawed. First, EscapeX argues it "addressed the concerns raised in Google's correspondence, even submitting claim charts before filing an amended complaint." Dkt. No. 44 at 12. But this all occurred before Google's November 7, 2022 letter. EscapeX has no response to its failure to respond to Google's November 7, 2022 letter regarding the defects in the amended complaint. Indeed, EscapeX does not dispute that, for months, it ignored Google's multiple attempts to discuss those glaring defects.

EscapeX also argues it was not required to oppose the motion to transfer. *Id*. While technically true, this does not render its conduct unexceptional. If EscapeX did not intend to oppose a motion to transfer, it should have informed Google of its position rather than ignoring Google's request to discuss the issue and causing Google to prepare and file a motion it would not oppose. And as the WDTX court noted in granting Google's motion to transfer, EscapeX's counsel has been previously chastised for missing deadlines. This failure to meaningfully engage and respect court rules caused Google to incur unnecessary fees and costs.

Next, EscapeX argues it dismissed the case shortly after the patent was invalidated by Judge Fuhrman based on patent ineligibility. Dkt. No. 44 at 12. But EscapeX did not dismiss the case for over a month after Judge Fuhrman's ruling, and only after multiple communications from

GOOGLE LLC'S REPLY IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES
CASE NO 4:22-cv-08711-HSG

Google forcing the issue. Dkt. No. 41 at 9. Further, EscapeX ignores the other defects in its case aside from patent ineligibility, such as asserting infringement against a product that predated the patent.

EscapeX tries to justify its defective allegations in the amended complaint by arguing the identified flaws were dependent on how claim terms were construed. *Id.* Not so. The substance of Google's November 7, 2022 letter was that EscapeX's own infringement allegations, based on EscapeX's own apparent read of its patent, showed the patent was invalid because EscapeX accused a product that predated the patent. Specifically, Google provided a comparison between a screenshot in Plaintiff's infringement chart (Dkt. No. 15-1 at 1) and a screenshot from the July 22, 2014 YouTube video, which confirms that the exact same features accused of infringement were available prior to the EscapeX's priority date. *See* Dkt. No. 41 at 6 (side-by-side screenshots for comparison). The thrust of Google's argument was that if EscapeX's infringement allegations were accurate, the patent was invalid because the accused feature predated the asserted patent. *See Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001) ("[I]t is axiomatic that that which would literally infringe if later anticipates if earlier." (citations omitted)). EscapeX's opposition never addresses this argument. Instead, EscapeX raises several "claim construction" arguments, but these are all strawmen arguments directed to Google's non-infringement arguments. Dkt. No. 44 at 7–8. Google's contention in its November 7, 2022 letter, supported by cited evidence, was that the exact feature EscapeX accused of infringement was publicly available before the priority date of the asserted patent. Google's reliance on the earlier existence of the exact same feature necessarily means that no claim construction was necessary. Rather than responding or engaging with Google, EscapeX chose to stick its head in the sand.[5]

---

[5] Indeed, EscapeX knows full well that this argument should lead to dismissal. It faced a similar argument in the *Apple* case where it had also accused functionality that pre-dated the asserted

GOOGLE LLC'S REPLY IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES
CASE NO 4:22-cv-08711-HSG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ESCAPEX IP LLC,

          Plaintiff,

    v.

GOOGLE LLC,

          Defendant.

Case No.  22-cv-08711-HSG

**ORDER REASSIGNING CASE**

IT IS ORDERED that this case has been reassigned using a proportionate, random and blind system pursuant to General Order No. 44 to the Honorable Vince Chhabria in the San Francisco division for all further proceedings.  Counsel are instructed that all future filings shall bear the initials VC immediately after the case number.

All hearing and trial dates presently scheduled are vacated.  However, existing briefing schedules for motions remain unchanged.  Motions must be renoticed for hearing before the judge to whom the case has been reassigned, but the renoticing of the hearing does not affect the prior briefing schedule.  Other deadlines such as those for ADR compliance and discovery cutoff also remain unchanged.

Dated:  June 16, 2023

_____
Mark B. Busby
Clerk, United States District Court

A true and correct copy of this order has been served by mail upon any pro se parties.

Appx0477

*United States District Court*
*Northern District of California*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, District Judge

ESCAPEX IP, LLC,                    )
                                    )
          Plaintiff,                )
                                    )
vs.                                 )   No. C 22-08711-VC
                                    )
GOOGLE, LLC,                        )
                                    )
          Defendant.                )
_____)

                         San Francisco, California
                         Thursday, July 20, 2023

  TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
            RECORDING 10:00 - 10:09 = 9 MINUTES

APPEARANCES:

For Plaintiff:
                         Ramy, LLP
                         5020 Montrose Boulevard
                         Suite 800
                         Houston, Texas 77006
                    BY:  SUSAN S. Q. KALRA, ESQ.

For Defendant:
                         Slayden Grubert Beard, PLLC
                         401 Congress Avenue
                         Suite 1650
                         Austin, Texas 78701
                    BY:  BRIAN CHRISTOPHER BANNER, ESQ.

                         Kwun Bhansali Lazarus
                         555 Montgomery Street
                         Suite 750
                         San Francisco, California
                           94111
                    BY:  KATE ELLIS LAZARUS, ESQ.

3

Tuesday, July 20, 2023                                    10:00 a.m.

P-R-O-C-E-E-D-I-N-G-S

--oOo--

THE CLERK:  Now calling civil case 22-8711, Escapex IP, LLC versus Google, LLC.

Will counsel please state your appearances for the record, starting with the Plaintiff.

MS. KALRA (via Zoom):  Yes.  Good morning, your Honor.  Susan Kalra from the Ramy Firm, appearing for the Plaintiff Escapex.

THE COURT:  Good morning.

MR. BANNER (via Zoom):  Good morning, your Honor.  Brian Banner from Slayden Grubert Beard on behalf of Google.  And with me today is Kate Lazarus, also no behalf of Google, and Ron Wen (phonetic) is here today as well, Google's representative.

THE COURT:  Good morning.

Okay.  Let me pull up the file real quick.

(Pause.)

THE COURT:  I guess, Ms. Kalra, I guess I should just ask.  I mean, it seems like you've given me basically no choice but to award attorney's fees.  You haven't responded in any meaningful way, nor -- nor do I think can you probably, on, you know, the issue of whether, you know, an adequate investigation was conducted and whether the --

4

whether the infringement claims were frivolous from the get go.  So, my pretty strong tentative inclination is to grant the motion and award the attorney's fees requested and, in addition, award the fees that were incurred in connection with this motion, which I guess they would make a further submission on.

So, what am I missing?  Why shouldn't I grant the motion?

MS. KALRA:  Well, initially, your Honor, in order to even be eligible for an award of fees under 285, the Defendant has to be a prevailing party.  Respectfully, in this case, I don't think the Defendant was a prevailing party.  This was a stipulated dismissal that didn't require any adjudication by the Court.

THE COURT:  Didn't the Federal Circuit resolve that question just a couple of months ago, establishing that they're the prevailing party?

MS. KALRA:  I'm not aware --

THE COURT:  The Cannabis Corporation case?

MS. KALRA:  I'm sorry?

THE COURT:  I mean, that issue -- the United Cannabis Corporation case, and that issue has now been decided by the Federal Circuit against you.

MS. KALRA:  So --

THE COURT:  So, what else do you have?

5

MS. KALRA:  Well, respectfully, there was a case that just came out the other day.  It's called Viavi v. Platinum Optics.  That case did not address the case you just mentioned, and it also didn't address whether a voluntary dismissal with prejudice confirms prevailing party status for 285 purposes.  And I'd refer the Court to footnote five, respectfully.

THE COURT:  What -- what court was that?

MS. KALRA:  I believe it was this one.

THE COURT:  This one meaning the Northern District of California?

MS. KALRA:  I believe it's the Northern District, yes.

THE COURT:  Which judge?

MS. KALRA:  I'm not certain.

THE COURT:  What's the case cite?

MS. KALRA:  Sorry?

THE COURT:  What's the cite?

MS. KALRA:  Viavi v. Platinum Optics, and I don't have the cite in front of me.  I'm sorry.

THE COURT:  Why not?

MS. KALRA:  Because it's in my laptop, and I have no Internet connection right now.

THE COURT:  Okay.  Anything else?

MS. KALRA:  As to prevailing party, no.

THE COURT: Okay.

MS. KALRA: I would submit on that. So, respectfully, your Honor, I would like to speak on sort of the -- the case history and the -- the course of conduct in the case, and just to note for the record that as soon as the Court in <u>Block</u>, the New York case, as soon as that decision became final and nonappealable -- there's a typo, by the way, in the Defendant's motion on page nine at line six where they say that it was rendered final and not appealable on January 24th of 2023. It's actually February 24th of 2023. And within a matter of a week, the case was dismissed.

THE COURT: Well, I -- but -- wait. You're -- you're talking about Jesse Furman's ruling invalidating the patent?

MS. KALRA: Yes.

THE COURT: But what about the frivolous infringement claims that you made? I mean, you keep jumping -- I mean, I think you did this in your brief too. You keep jumping to the -- you know, the discussion of invalidity and how you -- you know, they say you refused to acknowledge that the, you know, patent was invalid, you refused to engage on that. But even putting that aside, I mean, the -- you know, they seem to be do a pretty good job of showing that you made these frivolous -- you filed a frivolous

7

infringement lawsuit, and you didn't investigate it, and you didn't think about it.  You just mindlessly filed it, and it had no basis, and you haven't really responded to that, and you're doing -- you're kind of doing the same thing now. You're skipping over to the -- you know, Judge Furman's invalidation of the patent without addressing the -- the biggest problem with your -- your conduct and your client's conduct.

MS. KALRA:  So, I was not part of the firm when the case was filed, of course.

THE COURT:  That's not relevant.

MS. KALRA:  I understand.  But, respectfully, there's nothing except conclusory statements in the Defendant's brief about what, if any, pre-filing investigation was done.  And at the very least, I would respectfully request leave to file a declaration on behalf of --

THE COURT:  You've had a chance to respond to respond to the motion.  The motion was filed.  You've had your chance to respond.  So -- and I'm giving you a chance to respond now.  So, don't -- don't respond to my question by asking to file a declaration.  You're hear at argument. You had your chance to file your papers in opposition to the motion.  Tell me what you want to tell me.

MS. KALRA:  Simply that all the allegations and

*Echo Reporting, Inc.*

8

all the accusations in the Defendant's memorandum are simply conclusory and speculative.  There's no proof -- there's no proof of anyone's intent.  There's no proof of what anyone did.  It's just their conclusion.

THE COURT:  Okay.  Anything else?

MS. KALRA:  No.

THE COURT:  Anything you want to say, Mr. Banner?

MR. BANNER:  Your Honor, just briefly.  I think the -- the papers speak for themselves.  This case should not have even been filed from the get go.  It was deficient from the beginning.  And, of course, Defendant has no proof of what was done because nothing was actually done.  We contacted the Plaintiff many times, and our pleas to resolve this case in a reasonable manner were ignored.  So, for that reason, we filed for fees, and we'd ask that the Court grant those fees.

THE COURT:  Okay.  So, why don't you make a supplemental filing setting forth the fees incurred in connection with this motion, and when -- when do you want to file that?

MR. BANNER:  We can file that by -- in a week, if that's okay with the Court or we can do it sooner if -- if the Court prefers.

THE COURT:  Why don't you do -- why don't you file it on Tuesday.

*Echo Reporting, Inc.*

9

MR. BANNER:  Okay.

THE COURT:  Of next week, and then any objection to those fees, the fees incurred in connection with this motion can be filed by Thursday of next week.  And no -- no further argument.  I've -- this -- your response is limited just to what -- objecting to the additional fees that they're requesting incurred in connection with this motion. You've had your opportunity to make all the -- all your arguments, and it's too late to make -- file further declarations or make further arguments.

MS. KALRA:  Understood.

THE COURT:  So, you -- you should file any -- any objection you have should be filed -- must be filed by Thursday of next week, and then I'll issue a ruling.

MR. BANNER:  Your Honor, one point of clarification.  There was some question in the briefing as to whether the level of detail that was provided in the declaration that was submitted to support the fees motion was -- was adequate.  We read the role as -- as requiring, you know, a summary of the hours spent.  And then if the -- if the Court wants additional detailed billing records that, you know, the Court can ask for them.  And I just wanted to make sure I understood what the Court wants in Tuesday's filing.

THE COURT:  Just the support for the fees incurred

10

in connection with the filing of this motion, because you haven't submitted any --

MR. BANNER:  Correct?

THE COURT:  -- is that correct?

MR. BANNER:  That's correct, your Honor.

THE COURT:  Do I have that right?  Okay.  Yeah, that's all that's necessary.  I did not find -- I mean, first of all, the number that you have -- the fees you've requested, it's facially very reasonable.  I think you've -- you've probably exercised a little bit of mercy in -- in what you're requesting from -- from the other side.  And, so, between your summary and the fact that it's facially --

MR. BANNER:  Yes, sir.

THE COURT:  -- obviously reasonable, I don't think I need anything further there.  I just want you to justify your fees incurred in connection with this motion.

MR. BANNER:  Understood.  Thank you, your Honor.

THE COURT:  Okay.  Thank you.

(Proceedings adjourned at 10:09 a.m.)

Susan S.Q. Kalra (State Bar No. 167940)
Email: skalra@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (800) 993-7499
Fax: (832) 900-4941

William P. Ramey, III (*pro hac vice anticipated*)
Email: wramey@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175

*Attorneys for Plaintiff*
ESCAPEX IP, LLC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESCAPEX IP, LLC, | Case No.: 3:22-cv-08711-VC |
| Plaintiff, | |
| v. | **MOTION TO AMEND JUDGMENT** |
| GOOGLE LLC, | |
| Defendant. | |

1

Appx0502

On August 16, 2023, this Court issued an Order Granting Defendant's Motion for Attorneys' Fees Under 35 U.S.C. § 285 (Dkt. No. 57). Plaintiff respectfully request that the judgment be amended.

## I. BACKGROUND

On April 28, 2022, Plaintiff EscapeX IP LLC sued Google LLC for infringing its U.S. Patent No. 9,009,113 (the '113 patent") (Original Complaint, Dkt. No. 1). EscapeX filed a First Amended Complaint on May 23, 2022 (Dkt. No. 8) and a Second Amended Complaint on September 29, 2022 (Dkt. No. 15). Google filed an Answer to the First Amended Complaint on July 5, 2022 (Dkt. No. 9) and an Answer to the Second Amended Complaint on October 17, 2022 (Dkt. No. 17). Notably, the First Amended Complaint and the Second Amended Complaint are nearly identical (see Dkt. No. 45-1).

On November 21, 2022, Google filed a Motion Under 28 U.S.C. § 1404(a) to Transfer Venue to the Northern District of California (Dkt. No. 18). This Motion was not opposed, leading to this case being transferred to the Northern District of California. Consequently, prior to filing its Motion for Attorneys' Fees, Google's significant on-record actions were limited to the submission of two substantially similar Answers and a Motion to Transfer. Google also presented substantive arguments in letters dated August 5, 2022, and November 7, 2022, concerning the issues of invalidity and non-infringement (Dkt. Nos. 41-5 and 41-8, respectively). Notably, these letters were not made part of the official record until after the case's dismissal. This rendered EscapeX unable to address these critical allegations of invalidity and non-infringement on the record, and as such, the court did not have the opportunity to adjudicate these matters.

In a separate case, *EscapeX IP LLC v Block, Inc.*, 22-CV-3575 (JMF) (S.D.N.Y. Aug. 8, 2022), the '113 patent was invalidated as not being patent eligible under Section 101 of the Patent Act ("Opinion" Dkt. No. 30 for case no.

22-CV-3575). The Opinion, spanning 19 pages, provided a detailed and intricate analysis, underscoring the complexity of the matter and refuting any notion of frivolousness.

On March 3, 2023, EscapeX filed a Joint Stipulation of Dismissal (Dkt. No. 37), which erroneously stated that each party shall bear its own costs, expenses and attorneys' fees.  However, on the very same day, this Joint Stipulation of Dismissal was withdrawn (Dkt No. 38).  Nonetheless, even though the erroneous Stipulation of Dismissal was immediately withdrawn, Google alleges that the errors on the Stipulation of Dismissal somehow demonstrates fees are warranted. The parties subsequently filed a Joint Stipulation of Dismissal Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) on March 7, 2023 (Dkt. No. 40), resulting in the case's dismissal.

## II.    LEGAL STANDARD

In an action for patent infringement, the law of the regional circuit, here the Ninth Circuit, governs the standards for deciding a Rule 59(e) motion to amend the judgment.[1]  Under Federal Rule of Civil Procedure 59(e), a party may move to alter or amend a judgment within 28 days of the judgment. Amendment or alteration of a judgment is appropriate under Rule 59(e) "if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law."[2]  "A district court has considerable discretion when considering a motion to amend a judgment under Rule 59(e)."[3]

---

[1] *See, e.g., Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1369 (Fed. Cir. 2004).
[2] *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001).
[3] *Turner v. Burlington Northern Santa Fe R.R.*, 338 F.3d 1058, 1063 (9th Cir. 2003).

## III.   ARGUMENT

A modified judgment is warranted based on newly discovered evidence that was not available at the time of the Court's Order.  EscapeX's dismissal of this suit was not based on the merits of its case but rather another Court's determination that the claims were directed to patent ineligible subject matter.

### a.  Pre-Suit Investigation

The Order Granting Motion For Attorney's Fees Under § 285 (Dkt. No. 57) ("Order") states that EscapeX failed to conduct a serious pre-suit investigation. EscapeX respectfully disagrees.

As documented in the Declarations of Carlos Gorrichategui (Exhibit A) and Simon Sunatori (Exhibit B), meticulous steps were undertaken to investigate Google's alleged infringement before initiating legal action. A professional engineer well-versed in patent procurement meticulously prepared claim charts more than one-year prior to initiating this suit to scrutinize Google's infringing product.[4] The body of the complaints was drafted by an attorney specializing in patent law, who also reviewed the claim charts intended for incorporation into the complaints.

Mr. Sunatori's declaration provides that he is a professional engineer and has a Master of Engineering (Engineering Physics) degree from McMaster University in Hamilton, Ontario, Canada and is a member of the Professional Engineers Ontario (PEO), and is a senior member of the Institute of Electrical and Electronics Engineers (IEEE).[5]  He has published articles in the Journal of Applied Physics and in 2017 he won the Grand Prize of Innovation150 Canadian

---

[4] Ex. B, Declaration of Simon Sunatori at ¶7.
[5] Ex. B, Declaration of Simon Sunatori at ¶2.

4

MOTION TO AMEND JUDGMENT - CASE NO.: 3:22-CV-08711-VC

Life Hacks Contest, organized by the Perimeter Institute for Theoretical Physics. Further, in 2019, NASA Tech Briefs published his discovery "Anisotropic Electromagnetic Force Phenomena."[6]  His experience further includes the filing of more than 60 patent applications as the sole inventor in various fields including electronics, magnetics, optics, dynamics, software, hardware, energy, safety, environment, medical, consumer products, sporting goods, fashion, and the like.[7]

Mr. Sunatori used these experiences to conduct his pre-suit investigation, where he examined U.S. Patent No. 9,009,113 ("the '113 Patent"), researched YouTube Music and YouTube Video, and drafted a claim chart that verified infringement of certain claims of U.S. Patent No. 9,009,113 by Google LLC.[8]

Mr. Sunatori's pre-suit investigation revealed that "Auto Add" was known prior to the priority date of U.S. Patent No. 9,009,113.[9]  However, YouTube's "Auto Add" does not include the claimed "dynamic album ... in association with an artist specific application (ASA)," and as such, U.S. Patent No. 9,009,113 patent claims include features not in the prior art.[10] The U.S. Patent and Trademark Office indicated that the claim feature "wherein the dynamic album is stored via information encoding the plurality of songs at the user device in association with an artist specific application," together with other claim features was novel over the prior art.[11]

Although the initial claim chart contained some errors, it is crucial to note that the Original Complaint was amended to include an updated claim chart before

---

[6] Ex. B, Declaration of Simon Sunatori at ¶4.
[7] Ex. B, Declaration of Simon Sunatori at ¶¶5-6.
[8] Ex. B, Declaration of Simon Sunatori at ¶7.
[9] Ex. B, Declaration of Simon Sunatori at ¶8.
[10] *Id.*
[11] *Id.*

MOTION TO AMEND JUDGMENT - CASE NO.: 3:22-CV-08711-VC

Google had prepared and filed an Answer.  In other words, EscapeX worked with Google to correct issues Google had identified.

Furthermore, Google's allegations of EscapeX's inadequate pre-suit investigation and claims of invalidity were conveyed solely through off-the-record letters to EscapeX's counsel. Google refrained from presenting these arguments through official briefings or counterclaims, which would have allowed EscapeX to address these contentions properly. For instance, Google contended in its letters to EscapeX that YouTube Video's Auto Add predated the '113 patent. However, this single fact alone, even if true, would not suffice to invalidate the claims given the existence of other novel features not previously known at the time of the invention. For example, the claims require "dynamic album ... in association with an artist specific application (ASA)." This is a feature that was not known at the time of the invention.[12]  Google never provided any evidence that this claim element was present in the YouTube Video or YouTube Music.[13]

In effect, the award of fees could not be based on the record as Google had advanced its arguments privately, apparently with the intent of leveraging these letters later in pursuit of fees. By opting not to include its arguments on the record, Google not only prevented substantive adjudication but also accused EscapeX of filing a frivolous lawsuit without providing the requisite opportunity for rebuttal. Had Google been genuinely committed to its positions, it could have presented the same arguments through a Motion to Dismiss, thus affording EscapeX the opportunity to respond on the record.

Referencing *Octane Fitness, LLC v. Icon Health & Fitness, Inc.,* 134 S.Ct. 1749, (2014), it is evident that cases warranting attorney fees must exhibit

---

[12] Ex. A, Declaration of Carlos Gorrichategui at ¶8

[13] Ex. B, Declaration of Simon Sunatori at ¶9; Ex. A, Declaration of Carlos Gorrichategui at ¶6.

6

subjective bad faith or exceptionally meritless claims. *Octane*, 134 S.Ct. at 1757. In the present case, prior to the Motion for Attorney Fees, the record contained only Complaints, Answers, and an unopposed Motion to Transfer. Notably, there were no allegations of patent invalidity or non-infringement in the record. Moreover, the claim charts were meticulously crafted by a highly experienced scientist and engineer. These factors collectively indicate that there was no clear indication of bad faith or exceptionally meritless claims.

It is noted that the patent-at-issue was invalidated by another court in another case.[14]  But this also does not equate with meritless claims as the patent was invalidated after extensive briefing.  As previously noted, the Opinion invalidating the patent-at-issue provided a detailed and intricate analysis, underscoring the complexity of the matter and refuting any notion of frivolousness.

Google raises the issue of EscapeX's voluntary dismissals in other cases involving the '113 Patent and attempts to draw a negative inference from them. (See Dkt. No. 41 at 15-16). However, it's crucial to emphasize that these unrelated cases should not be conflated with the present situation. Google's insinuation that EscapeX has a pattern of filing meritless suits for settlement purposes is speculative and unfounded. In this specific case, it's essential to recognize that the present case was still in the early stages of pleadings, with no allegations of patent invalidity or non-infringement on the record. Therefore, any claims of frivolousness or bad faith would have to be premature, as no adjudication of these matters had even occurred.

The Order suggests that EscapeX waited an extended period before dismissing the case following the '113 patent's invalidation in another court.

---

[14] *EscapeX IP LLC v Block, Inc.,* 22-CV-3575 (JMF) (S.D.N.Y. Aug. 8, 2022).

MOTION TO AMEND JUDGMENT - CASE NO.: 3:22-CV-08711-VC

Appx0508

Contrary to this assertion, EscapeX promptly filed a stipulated Motion to Dismiss just days after the parties conferred.

The Order also characterizes EscapeX's initial stipulated dismissal statement, which erroneously asserted that each party would bear its own fees, as litigation misconduct. EscapeX respectfully submits that this was a simple mistake and should not be equated with misconduct.[15] EscapeX recognized the error and withdrew the initial stipulated dismissal on the same day it was filed, demonstrating a commitment to rectify inadvertent misstatements.[16] Such actions should not be misinterpreted as misconduct.

Lastly, the Order insinuates that this lawsuit was an attempt to pressure a tech giant into a settlement by filing a frivolous suit. (Dkt. No. 57 at 2.) It is important to clarify that Google's litigation history does not align with the assumption that it would capitulate easily. Moreover, pursuing claims believed to be infringed and valid cannot be labeled as frivolous solely on the basis of prior patent litigation by EscapeX.

### b. There is Insufficient Evidence To Support the Awarded Fees

The Order allowed a fee of $140,615.73 for preparing only two nearly identical Answers, a Motion to Transfer, and two letters (not of record) as allegedly facially reasonable. EscapeX requests reconsideration. Even if the evidence showed that Google's highest-paid attorney in this case completed all the work personally, this would amount to approximately 180 hours of work—equivalent to over four weeks of working full time on this case alone—for preparing only two nearly identical Answers, a Motion to Dismiss and two letters.

---

[15] See Dkt. No. 45 at ¶¶ 4-6 (Declaration of Susan Kalra).
[16] *Id.*

It is pertinent to note that Google did not furnish a detailed breakdown of services provided by each person involved in this litigation, nor did it offer a summary of the time allocated to each individual, in accordance with Civil Local Rule 54-5(b)(2). Instead, Google relied on conclusory statements regarding fees, which were accepted by this Court.  EscapeX requests the Court disregard Google's fee evidence as it did not comply with the Local Rules.

In the present case, Google did not allege noninfringement or invalidity on the record, thus, these issues could not have been adjudicated and EscapeX's dismissal of this suit was not based on the merits of this case.  There was nothing exceptional about this case.  Furthermore, Google failed to show specific support to justify the incredibly high fees for the minimal work done at the earliest stages of the case. Sophisticated tech giant Google should have done better.

## IV.   CONCLUSION

In light of the above, EscapeX respectfully requests that the judgment be amended and the case not found to be exceptional or warranting fees to reflect the merit of EscapeX's arguments and to rectify any misconceptions regarding the conduct of this case.

Dated: September 13, 2023                    Respectfully submitted,


RAMEY LLP

*/s/ Susan S.Q. Kalra*
Susan S.Q. Kalra (State Bar No. 167940)
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
Telephone: (800) 993-7499
Fax: (832) 900-4941
Email: skalra@rameyfirm.com

9

MOTION TO AMEND JUDGMENT - CASE NO.: 3:22-CV-08711-VC

Appx0510

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ESCAPEX IP LLC,<br>Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | Case No. 22-cv-08711-VC |
| GOOGLE LLC,<br>Defendant | §<br>§<br>§ | |

### DECLARATION OF CARLOS GORRICHATEGUI

I, Carlos Gorrichategui, declare:

1. My name is Carlos Gorrichategui, and I am over the age of eighteen and competent to make this declaration. The facts stated herein are within my personal knowledge. If called upon, I could and would testify competently to them.

2. I am currently president of Plaintiff EscapeX IP LLC (a Texas limited liability company).

3. As part of pre-suit investigation, I employ professionals to draft claim charts that verify infringement.  For example, I employed Simon Sunatori to prepare all claim charts associated with this lawsuit prior to January 12, 2021. Simon Sunatori is a professional electrical engineer with a Master of Engineering (Engineering Physics)  from McMaster University in Canada.  I understand that Mr. Sunatori worked as a professional engineer and is an

1

Appx0512

experienced inventor with over 60 patents in which he is the sole named inventor.

4. I marketed for sale U.S. Patent No. 9,009,113 in good faith for over one-year before attempting to enforce the '113 patent in litigation.

5. I have a reasonable belief that the claim charts prepared by Simon Sunatori for this case were sound and sufficiently showed infringement by Google LLC.

6. I certify to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances that (1) the purpose of this lawsuit was not improper; (2) the legal assertions were not frivolous; and (3) the factual contentions had evidentiary support.

7. During the pendency of the lawsuit, Google contended that both YouTube Video and YouTube Music disclosed all of the claim elements of the claims of the '113 patent. However, Google never identified nor provided any evidence that the claim element of "dynamic album ... in association with an artist specific application (ASA)" was in YouTube Video or YouTube Music before the priority date of the patent.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed September 13, 2023,

_____
Carlos Gorrichategui, Ph.D.

2

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| ESCAPEX IP LLC**,** | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 22-cv-08711-VC |
| | § | |
| GOOGLE LLC, | § | |
| Defendant | § | |

**DECLARATION OF SIMON SUNATORI**

I, Simon Sunatori, declare:

1.  My name is Simon Sunatori, and I am over the age of eighteen and competent to make this declaration. The facts stated herein are within my personal knowledge. If called upon, I could and would testify competently to them.

2.  I am a professional engineer and I have a Master of Engineering (Engineering Physics) degree from McMaster University in Hamilton, Ontario, Canada.  I am a member of the Professional Engineers Ontario (PEO), and a senior member of the Institute of Electrical and Electronics Engineers (IEEE).

3.  I have worked as senior integrated circuit designer for the CMOS standard cell library, as senior design system integrator for the GaAs cell library, and as UNIX systems administrator.

1

Appx0514

4. I have published articles in the Journal of Applied Physics. In 2017, I won the Grand Prize of Innovation150 Canadian Life Hacks Contest, organized by the Perimeter Institute for Theoretical Physics.  In 2019, NASA Tech Briefs published his discovery "Anisotropic Electromagnetic Force Phenomena."

5. I have drafted and filed more than 60 patent applications as the sole inventor in various fields including electronics, magnetics, optics, dynamics, software, hardware, energy, safety, environment, medical, consumer products, sporting goods, fashion, etc.

6. I founded HyperInfo Canada Inc. in 1989 to pursue research and development on information processing and publishing technology as well as electromagnetic technology applications.

7. As part of pre-suit investigation, I examined U.S. Patent No. 9,009,113 ("the '113 Patent"), researched YouTube Music and YouTube Video, and drafted their claim charts that verify infringement of certain claims of U.S. Patent No. 9,009,113 by Google LLC.  I began drafting the claim charts on January 12, 2021. I believe that the claim charts I prepared for the present litigation sufficiently show infringement by Google LLC.

8. My pre-suit investigation revealed that "Auto Add" was known prior to the priority date of U.S. Patent No. 9,009,113.  However, YouTube's "Auto Add" does not include the claimed "dynamic album ... in association with an artist specific application (ASA)," and as such, U.S. Patent No. 9,009,113 patent claims include features not in the prior art. The U.S. Patent and Trademark Office indicated that the claim feature "wherein the dynamic album is stored

2

Appx0515

via information encoding the plurality of songs at the user device in association with an artist specific application," together with other claim features was novel over the prior art. (See Exhibit I)

9.  During the pendency of the lawsuit, Google contended that both YouTube Video and YouTube Music disclosed all of the claim elements of the claims of the '113 patent.  However, Google never identified nor provided any evidence that the claim element of "dynamic album… in association with an artist specific application" was in YouTube Video or YouTube Music before the priority date of the patent.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed <u>September 13, 2023,</u>

 

_____
Simon Sunatori, P.Eng./ing., M.Eng.

3

Appx0516

Kate E. Lazarus (SBN 268242)
klazarus@kblfirm.com
Asim M. Bhansali (SBN 194925)
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350

Additional attorneys listed on signature page.

Attorneys for Defendant
GOOGLE LLC

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ESCAPEX IP LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>　　　　Defendant. | § CASE NO. 3:22-cv-08711-VC<br>§<br>§ **GOOGLE LLC'S RESPONSE TO**<br>§ **PLAINTIFF'S MOTION TO AMEND**<br>§ **JUDGMENT (DKT. NO. 59)**<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

Appx0526

## I.  INTRODUCTION

Rather than deal with the consequences of filing their frivolous case, EscapeX and its attorneys have compounded that error by filing a frivolous motion that only serves to harass and further burden Defendant and the Court.[1] EscapeX's Motion to Amend Judgment (Dkt. No. 59 ("Mtn.")) cannot meet the Rule 59 standard because there is no newly discovered evidence and it only rehashes old arguments. In fact, EscapeX's only evidence submitted with its motion is two declarations the Court previously told EscapeX not to submit. For this reason alone the Court should deny EscapeX's motion. Moreover, even if considered, on their face the new declarations contain only self-serving, conclusory statements that cannot serve to rebut the Court's express findings. EscapeX and its attorneys cite no cases supporting the propriety of their submissions, which further underscores the frivolousness of this motion. The Court should deny EscapeX's motion.[2]

## II.  THE COURT ALREADY TOLD ESCAPEX'S ATTORNEY NOT TO SUBMIT NEW DECLARATIONS

As an initial matter, and indicative of the unreasonable manner in which EscapeX and its attorneys continue to pursue this case, one of the EscapeX attorneys who signed its motion to

---

[1] EscapeX failed to notice its motion pursuant to Local Rule 7-2 which requires, *inter alia*, that a hearing date be noticed on the assigned judge's calendar. Civil L.R. 7-2(a), (b)(1). This alone would justify striking EscapeX's motion as improperly filed. *Robinson v. Delgado*, No. CV 02-1538 NJV, 2010 WL 3448558, at *3 (N.D. Cal. Aug. 31, 2010) ("Plaintiff's failure to notice his motion in compliance with Civil Local Rule 7–2 provides an independent basis for the Court to strike the motion from the record. *See* Civil L.R. 1–4 (authorizing sanctions for failure to comply with local rules)."), *aff'd sub nom. Robinson v. Lamarque*, 581 F. App'x 695 (9th Cir. 2014); *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, No. 4:17-CV-05928-YGR, 2023 WL 2176758, at *5 (N.D. Cal. Feb. 15, 2023) (holding that "failing to comply [with Local Rule 7-2(b)] is significant" and justifies denying motion as untimely).

[2] After reviewing EscapeX's motion, Google promptly contacted EscapeX's counsel to request withdrawal of this frivolous motion and, failing that, a meet and confer on Google's anticipated request for sanctions under at least 28 U.S.C. § 1927, 35 U.S.C. § 285, and the Court's inherent power to be levied jointly and severally against EscapeX, the attorneys signing the motion, and law firms representing EscapeX. Declaration of Brian C. Banner ("Banner Decl."), Exhibit 1. Google followed up again three days later via phone call and as of the filing of this motion still has not received any response from EscapeX or its attorneys. Banner Decl. ¶ 3.

GOOGLE LLC'S RESPONSE TO PLAINTIFF'S
MOTION TO AMEND JUDGMENT
CASE NO 3:22-CV-08711-VC

amend was already told by the Court not to submit additional declarations:

> MS. KALRA: So, I was not part of the firm when the case was filed, of course.
>
> THE COURT: That's not relevant.
>
> MS. KALRA: I understand. But, respectfully, there's nothing except conclusory statements in the Defendant's brief about what, if any, pre-filing investigation was done. And at the very least, *I would respectfully request leave to file a declaration on behalf of --*
>
> THE COURT: You've had a chance to respond to respond to [sic] the motion. The motion was filed. You've had your chance to respond. So -- and I'm giving you a chance to respond now. *So, don't -- don't respond to my question by asking to file a declaration.* You're hear [sic] at argument. You had your chance to file your papers in opposition to the motion. Tell me what you want to tell me.

07/20/2023 Hearing Transcript, Dkt. No. 60, 7:9–24 (emphasis added). Later, the Court reminded EscapeX's counsel that the Court did not want any additional submissions and EscapeX's counsel responded that she understood:

> THE COURT: … And no -- no further argument. I've -- this -- your response is limited just to what -- objecting to the additional fees that they're requesting incurred in connection with this motion. You've had your opportunity to make all the -- all your arguments, and *it's too late to make -- file further declarations or make further arguments.*
>
> MS. KALRA: *Understood.*

*Id.*, 9:2–11 (emphasis added). Instead of heeding the Court's admonition against filing additional declarations, the very same attorney, after acknowledging she understood the Court's instruction, filed EscapeX's motion to amend attaching two additional declarations. As shown below, the declarations fail to meet the Rule 59 standard invoked by EscapeX and further demonstrate the unreasonable manner in which EscapeX and its attorneys have prosecuted this case.

## III. ESCAPEX'S DECLARATIONS ARE NOT "NEWLY DISCOVERED EVIDENCE"

EscapeX and its attorneys correctly state that amending a judgment under Rule 59(e) is appropriate only "if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3)

- 2 -

there is an intervening change in controlling law." Dkt. No. 59 ("Mtn.") at 3 (quoting *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001)). But they have made no attempt to satisfy this test.[3] EscapeX and its attorneys rely solely on the first prong of this test, citing declarations from (1) Dr. Carlos Gorrichategui, EscapeX's president (Dkt. No. 59-1), and (2) Simon Sunatori, an engineer who drafted Plaintiff's claim charts (Dkt. No. 59-2), as "newly discovered evidence that was not available at the time of the Court's Order." Mtn. at 4. But nothing in the declarations is newly discovered evidence. For example, Dr. Gorrichategui merely recounts who he hired to prepare claim charts for purposes of the lawsuit (Dkt. No. 59-1, ¶ 3); that he marketed the '113 patent before filing suit (*id.* ¶ 4); his subjective, conclusory belief that his lawsuit was reasonable (*id.* ¶¶ 5–6); and a self-serving complaint about what Google didn't do during the pendency of the litigation (*id.* ¶ 7). There can be no plausible argument, and EscapeX and its attorneys don't even attempt to advance one, that any of this is "newly discovered evidence" as it is all admittedly within the personal knowledge of EscapeX's president (*id.* ¶ 1) and necessarily happened before or during the pendency of the case. Similarly, Mr. Sunatori recounts his credentials (Dkt. No. 59-2, ¶¶ 2–7), his "pre-suit investigation" (*id.* ¶¶ 7–8), and the same verbatim complaint about Google's position found in Dr. Gorrichategui's declaration (*compare id.* ¶ 9, *with* Dkt. No. 59-1, ¶ 7). Once again, nowhere in the motion does EscapeX or its attorneys even attempt to explain how any of this is "newly discovered evidence" sufficient to meet the Rule 59 standard, and Mr. Sunatori avers that all of this is within his personal knowledge (Dkt. No. 59-2, ¶ 1).[4]

---

[3] Nor is this the first time EscapeX's attorneys have improperly invoked Rule 59. Just last week, a Western District of Texas judge chastised EscapeX's attorneys for arguments in a Rule 59 motion, which was denied. *See* Order, *LS Cloud Techs., LLC v. Amazon.com, Inc.*, Case No. 1:22-cv-1167-RP, Dkt. No. 39, at 5–7 (W.D. Tex. Sept. 21, 2023) (noting counsel's argument had "several flaws" and describing his primary excuse of blaming his paralegals as "immaterial" to the analysis) (attached as Banner Decl., Exhibit 2).

[4] Tellingly, neither Dr. Gorrichategui nor Mr. Sunatori addresses how any of the facts in their declarations are "newly discovered evidence." It is thus unclear if EscapeX's counsel informed either declarant of the standard for bringing this motion.

- 3 -

Under well-established Ninth Circuit law,[5] an affidavit that could have been submitted during the original briefing on an issue is not "newly discovered evidence." *See Coastal Transfer Co. v. Toyota Motor* Sales*, U.S.A.*, 833 F.2d 208, 210, 212 (9th Cir. 1987) (expert testimony and affidavits submitted with Rule 59 motion were not "newly discovered" where they were "in the moving party's possession at the time of trial or could have been discovered with reasonable diligence"); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 892 n.6 (9th Cir. 1994), *as amended on denial of reh'g* (July 14, 1994) (affidavit was not "newly discovered evidence" where "[n]o attempt was made to show why this information was not presented at the . . . hearing" and movant "did not claim the evidence was unavailable to him" during briefing); *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("late filed documents [are not] 'newly discovered evidence.'"). Here, EscapeX and its attorneys could have filed these declarations when they opposed Google's motion for attorneys' fees but chose not to. The actual events recounted in the declarations are all just an attempt to justify EscapeX bringing and maintaining suit, so *ipso facto* all occurred well before EscapeX and its attorneys filed their opposition to Google's motion for attorneys' fees. The remainder of the declarations are simply arguments that could have been raised previously. EscapeX and its attorneys make no attempt to explain how any of the evidence in the declarations is newly discovered.[6] Consequently, this Court should reject EscapeX's untimely declarations. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) ("Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" (citation omitted)); *G & G Closed Cir. Events LLC v. Govan*, No. C 13-05488 SI, 2014 WL

---

[5] As EscapeX concedes (Mtn. at 3), Ninth Circuit law governs the standards for deciding a Rule 59(e) motion. *See, e.g., Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1369 (Fed. Cir. 2004).

[6] Notably in *Wallis*, cited above, the Ninth Circuit observed that a "district court is required only to consider [a] tardy affidavit if it constituted 'newly discovered evidence' within the meaning of Rule 59." 26 F.3d at 892 n.6. But because the movant in *Wallis* failed to make **any** attempt to show why the affidavit met the Rule 59 standard, the Ninth Circuit approved of the district court denying the motion for reconsideration without comment. *Id*.

GOOGLE LLC'S RESPONSE TO PLAINTIFF'S
MOTION TO AMEND JUDGMENT
CASE NO 3:22-cv-08711-VC

3670176, at *2 (N.D. Cal. July 23, 2014) (same); *Frederick S. Wyle Prof'l Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985) (holding that to meet the Rule 59 standard a movant is "'<u>obliged</u> to show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing.'" (quoting *Engelhard Industries, Inc. v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir. 1963)) (emphasis in original)).

## IV. ESCAPEX'S DECLARATIONS DO NOT WARRANT AMENDING THIS COURT'S PRIOR ORDER GRANTING ATTORNEYS' FEES

EscapeX's untimely declarations—even if considered—do not contain any information that warrants amending the Court's prior Order. Each declaration contains (1) the declarant's subjective (and incorrect) belief that EscapeX's claim charts "sufficiently show[ed] infringement by Google" (Dkt. No. 59-2 ¶ 7; Dkt. No. 59-1 ¶ 5), and (2) an argument that "Google never identified nor provided any evidence that the claim element of 'dynamic album… in association with an artist specific application' was in YouTube Video or YouTube Music before the priority date of the patent" (Dkt. No. 59-2 ¶ 9; Dkt. No. 59-1 ¶ 7).[7]

The declarants' subjective belief in the sufficiency of the claim charts is not credible especially where EscapeX admits in its motion that "the initial claim chart contained some errors . . . ." Mtn. at 5. Indeed, as the Court found, "EscapeX's initial and first amended complaints cobbled together features from two different YouTube products to allege infringement of its purported patent." Dkt. No. 57 at 1. The Court's finding, which EscapeX does not dispute, confirms the claim charts submitted with those complaints were insufficient. This fact directly contradicts the subjective opinions stated in both of EscapeX's declarations. Even more concerning is Mr. Sunatori's averment that his "pre-suit investigation revealed that 'Auto Add' was known

---

[7] Even now, EscapeX's declarants continue to refer to YouTube Music. But that product did not include the "Auto Add" feature, which Google pointed out to EscapeX and which is why EscapeX withdrew its allegations against YouTube Music and focused solely on YouTube Video in its Second Amended Complaint. Dkt. No. 57 at 1.

- 5 -

*prior to* the priority date of" the patent. Dkt. No. 59-2 ¶ 8 (emphasis added). But as shown in Google's motion for attorneys' fees, months after the filing of the complaint, EscapeX and its attorneys served infringement contentions that asserted "that the 'Start of Auto-Add feature' is 2015-07-26," which is *after* the priority date of the asserted patent. Dkt. No. 41 at 5 (citation omitted). If Mr. Sunatori's statement is correct, then it raises serious questions as to whether EscapeX and its attorneys knowingly served infringement contentions with an incorrect start date for the Auto-Add feature to obscure the fact that they were accusing a feature launched before the priority date of EscapeX's patent in the hopes of extracting a nuisance settlement before being discovered.[8]

Next, EscapeX and its attorneys attempt to argue through the declarants that Google failed to show that an "artist specific application" existed before the patent's priority date. As discussed, *supra*, this is not "newly discovered evidence" and, perhaps equally important, is also not true. Google's November 7 letter expressly pointed out that EscapeX's own infringement allegations showed the patent was invalid because EscapeX accused a product that predated the patent:

> EscapeX's allegations are baseless because the Accused Auto Add Feature (***and all other features identified in EscapeX's PICs***) predates the '113 patent's October 21, 2014 priority date, thus rendering the '113 patent invalid under at least 35 U.S.C. § 102.

Dkt. No. 41-8 at 2 (emphasis added). More specifically, EscapeX alleged that YouTube Video was an "artist specific application" and that the "Auto Add" feature provided "dynamic albums." Dkt. No. 41-6 at 4–5. Thus, Google's showing (in the November 7 letter) that YouTube Video had the "Auto Add" feature prior to the patent's priority date was *ipso facto* a showing of the existence of dynamic albums in an artist specific application under EscapeX's own theory of infringement. Put another way, because EscapeX accused YouTube Video of being an artist specific application, there was nothing more for Google to do than to point to the existence of that product prior to the

---

[8] The other explanation is that Mr. Sunatori's statement that his pre-suit investigation showed Auto-Add pre-dated the asserted patent is false. Mr. Sunatori presented no evidence to support this assertion.

- 6 -

priority date of the patent to show that the accused product invalidated the patent under EscapeX's own infringement read. *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001) ("[I]t is axiomatic that that which would literally infringe if later anticipates if earlier." (citations omitted)). Moreover, as detailed in Google's motion for attorneys' fees (Dkt. No. 41 at 5–8), EscapeX never substantively responded to any of these issues, and so should not now be heard to complain about any purported insufficiencies in what Google pointed out.

## V. ESCAPEX'S OTHER ARGUMENTS SIMPLY REHASH ONES THE COURT PREVIOUSLY REJECTED

EscapeX and its attorneys make a number of other improper assertions that simply rehash arguments they already made and that this Court already rejected. This Court should again reject these arguments because "Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters….'" *Exxon Shipping Co.*, 554 U.S. at 486 n.5. EscapeX's remaining attempts to relitigate old matters are set forth below with citation to where in the record EscapeX previously raised the issue:

- fees are not warranted because Google did not file a motion to dismiss (or other motion) or otherwise put the dispute "on the record" (*compare* Mtn. at 6–7, *with* Dkt. No. 44 at 6, 8);

- Judge Furman's opinion invalidating the patent somehow confirms the complexity of the issues in this case (*compare* Mtn. at 7, *with* Dkt. 60 at 6–7);

- Plaintiff's false statement to this Court is not misconduct (*compare* Mtn. at 8, *with* Dkt. No. 45 ¶ 5);[9] and

- the evidence Google submitted with its fees motions is insufficient under the local rules (*compare* Mtn. at 8–9, *with* Dkt. 44 at 13–14).

---

[9] In fact, the Court explicitly stated that it would have found EscapeX's conduct exceptional under Section 285 even absent the false statement. Dkt. No. 57 at 2. So even if EscapeX were right, it would not change the result of the order.

GOOGLE LLC'S RESPONSE TO PLAINTIFF'S
MOTION TO AMEND JUDGMENT
CASE NO 3:22-cv-08711-VC

Appx0535

Each of EscapeX's rehashed arguments should be rejected as improper under Rule 59 because they were previously raised by EscapeX and considered by the Court. And to the extent EscapeX attempts to raise new arguments, those should be rejected because they could have been raised in opposition to Google's motion for attorneys' fees and are untimely. *See Exxon Shipping Co.*, 554 U.S. at 486 n.5.

## VI. CONCLUSION

EscapeX and its attorneys never should have filed this case, and certainly should not have filed this motion. Further, they should have withdrawn the motion when presented with black letter law showing EscapeX's declarations are not "newly discovered evidence." Google asks that the Court deny EscapeX's motion to amend the judgment.

Dated: September 27, 2023

KWUN BHANSALI LAZARUS LLP

Kate E. Lazarus (SBN 268242)
klazarus@kblfirm.com
Asim M. Bhansali (SBN 194925)
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350

By: */s/ Brian C. Banner*
Brian C. Banner (*pro hac vice*)
bbanner@sgbfirm.com
Nellie F. Slayden (*pro hac vice*)
nslayden@sgbfirm.com
SLAYDEN GRUBERT BEARD PLLC
401 Congress Avenue, Suite 1650
Austin, TX 78701
(512) 402-3550

*Attorneys for Defendant*
GOOGLE LLC

GOOGLE LLC'S RESPONSE TO PLAINTIFF'S
MOTION TO AMEND JUDGMENT
CASE NO 3:22-cv-08711-VC

# Exhibit 1

## Brian Banner

| | |
|---|---|
| **From:** | Brian Banner |
| **Sent:** | Tuesday, September 19, 2023 3:20 PM |
| **To:** | William Ramey; skalra@rameyfirm.com |
| **Cc:** | Asim Bhansali; klazarus@kblfirm.com |
| **Subject:** | EscapeX v. Google: Google Request for EscapeX to Withdraw its Motion to Amend Judgment (Dkt. No. 59) |

Bill & Susan,

I email on behalf of Google to request EscapeX immediately withdraw its Motion to Amend Judgment (Dkt. No. 59). In the event EscapeX will not withdraw its motion, I request your availability to meet and confer regarding Google's motion for further fees and costs under 35 U.S.C. 285, 28 U.S.C. 1927, Rule 11, and the court's inherent power.  Google's motion will ask the court to levy sanctions against EscapeX, each of the attorneys who signed the frivolous Rule 59 motion, and the law firms involved in its filing (to be liable jointly and severally with EscapeX and the fees it already owes to Google).

The sole basis for EscapeX's motion is alleged "newly discovered evidence," and Ninth Circuit law is very clear that untimely declarations such as those EscapeX submitted in support of its motion are not "newly discovered evidence." *See Sch. Dist. No. 1J, Multnomah County, v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("The overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.'"). Moreover, EscapeX's motion rehashes already rejected arguments and, to the extent any arguments are new, they are untimely. Under Supreme Court precedent, these arguments are improper. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) ("Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" (citation omitted)).

Please promptly confirm EscapeX will withdraw its motion or, if not, provide your availability Wednesday or Thursday for a call to meet and confer on Google's proposed motion for fees.

Brian C. Banner

**sgb** | **SLAYDEN GRUBERT BEARD** PLLC
401 Congress Ave, Ste 1650 | Austin, TX 78701 | USA
[O] 512.402.3569 | [C] 512.468.6297 | sgbfirm.com

This message was sent by an attorney at law and may contain privileged and/or confidential matter.  Please let the sender know if this message was received in error.

Kate E. Lazarus (SBN 268242)
klazarus@kblfirm.com
Asim M. Bhansali (SBN 194925)
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350

Additional attorneys listed on signature page.

Attorneys for Defendant
GOOGLE LLC

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ESCAPEX IP LLC,<br><br>　　Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>　　Defendant. | § CASE NO. 3:22-cv-08711-VC<br>§<br>§ **GOOGLE LLC'S NOTICE OF**<br>§ **MOTION AND MOTION FOR**<br>§ **ATTORNEYS' FEES PURSUANT TO 35**<br>§ **U.S.C. § 285, 19 U.S.C. § 1927, AND THE**<br>§ **COURT'S INHERENT POWERS**<br>§<br>§ <u>Hearing</u><br>§ Date: January 11, 2024<br>§ Time: 10 a.m.<br>§ Judge: Hon. Vince Chhabria<br>§<br>§ Date Filed: November 13, 2023<br>§ Trial Date: N/A |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on January 11, 2024, at 10 a.m., or as soon thereafter as this matter may be heard by the Honorable Vince Chhabria in Courtroom 4, Floor 17, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Google LLC will and hereby does move the Court under 19 U.S.C. § 1927, the Court's inherent powers, and 35 U.S.C. § 285 for an order granting Google its reasonable attorneys' fees incurred in this litigation, in particular with respect to responding to Plaintiff EscapeX LLC's Motion to Amend Judgment (Dkt. No. 59). Google bases its motion on this notice, the accompanying memorandum of points and authorities, the supporting declarations of Brian C. Banner and Asim Bhansali, all pleadings and documents on file in this action, and other such materials or arguments as the Court may consider.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Pursuant to Rule 54(d)(2), Google moves for attorneys' fees pursuant to 19 U.S.C. § 1927, the Court's inherent powers, and 35 U.S.C. § 285.[1] For the reasons set forth below, Google respectfully requests that the Court enter an order awarding fees and costs incurred in responding to EscapeX's frivolous motion to amend judgment as well as the fees and costs incurred in bringing this second motion for fees. Google requests the Court further order that such additional fees and costs be taxed, jointly and severally, against EscapeX and its attorneys, William Ramey and Susan Kalra. Further, Google requests that the Court, subject to its inherent power, extend its previous fees award (Dkt. No. 59) to tax those fees and costs, jointly and severally, against EscapeX and its

---

[1] Rule 54(d)(2) requires a motion for attorneys' fees "be filed no later than 14 days after the entry of judgment." Because this motion relates to EscapeX's filings after the judgment and dismissal of the case, Google was unable to move within 14 days after entry of the judgment, but is moving within 14 days of entry of the order related to the underlying conduct. *See Bailey v. Cty. of Riverside*, 414 F.3d 1023, 1024 (9th Cir. 2005) (fees motion timely when filed within 14 days after resolution of a Rule 59 motion).

attorneys as a deterrence against further frivolous conduct that wastes the Court's limited resources.

The Court can award fees and sanction attorneys for acting unreasonably and violating the Court's orders under 28 U.S.C. § 1927 and the Court's inherent powers to manage its docket. *Barnd v. City of Tacoma*, 664 F.2d 1339, 1342–43 (9th Cir. 1982). EscapeX and its attorneys' conduct in this case is exactly what these remedies are intended to deter. The Court already determined EscapeX's lawsuit against Google was frivolous from the very start and awarded Google attorneys' fees. Dkt. No. 57. Undeterred, EscapeX and its attorneys filed a frivolous Motion to Amend Judgment (Dkt No. 59), persisting even after Google made clear to counsel for EscapeX that the motion was improper, again forcing Google and the Court to expend needless resources. Indeed, the Court found "EscapeX has wholly failed to meet the Rule 59(e) standard for amending a judgment." Dkt. No. 65.

Additionally, attorneys' fees are available pursuant to 35 U.S.C. § 285 "to compensate a defendant for attorneys' fees it should not have been forced to incur." *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013). As the Supreme Court has instructed, when deciding whether to award fees, a court can consider "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 n.6 (2014).

In view of EscapeX's and its attorneys' frivolous Motion to Amend, Google respectfully requests that the Court (i) extend its prior exceptional case finding under § 285 to the motion to amend, (ii) find that EscapeX and EscapeX's attorneys unreasonably and vexatiously multiplied these proceedings by filing the frivolous Rule 59 motion, and, (iii) pursuant to 28 U.S.C. § 1927,

2

Appx0555

35 U.S.C. § 285, and the Court's inherent powers and power to impose sanctions for civil contempt, award Google its reasonable attorneys' fees and costs to be levied jointly and severally against EscapeX and its attorneys William Ramey and Susan Kalra.

## II.  STATEMENT OF FACTS

On August 16, 2023, the Court granted Google's motion for attorneys' fees, finding the case exceptional and awarding fees because "[i]t is obvious that EscapeX conducted no serious pre-suit investigation and that this case was frivolous from the start." Dkt. No. 57 at 1. The Court further put EscapeX and its attorneys on notice that their conduct was so egregious that "[t]he attorneys for EscapeX are lucky that Google did not separately ask the Court to impose sanctions on them." *Id*. at 2. Despite this, on September 13, 2023, EscapeX filed a motion to amend judgment pursuant to Federal Rule of Civil Procedure 59 seeking reversal of the Court's fees Order that was based largely on two declarations submitted by EscapeX's president and an engineer hired to make claim charts. Dkt. No. 59. Neither declaration contained any facts that were unknown to EscapeX prior to Google's first motion for fees. Moreover, in violation of Local Rule 7-2, EscapeX did not notice a hearing date for its motion to amend judgment, and only did so after Google repeatedly raised this issue. Declaration of Brian C. Banner, ¶ 22 ("Banner Decl.").

After reviewing the motion, and in an effort to avoid costly briefing and the waste of Court resources, Google promptly provided EscapeX with long-standing Ninth Circuit precedent demonstrating the baselessness of EscapeX's motion and requested that EscapeX withdraw the motion or, at the very least, meet and confer. Banner Decl. ¶ 15. Having received no response, Google's counsel left a voicemail on September 22 for both Mr. Ramey and Ms. Kalra reiterating Google's request for a meet and confer before needing to file Google's response. Banner Decl. ¶¶ 16–18. EscapeX never responded before Google's deadline and so Google was forced to file its response on September 27. Dkt. No. 61. Google then reached out again to EscapeX's

3

Appx0556

counsel on October 6 and October 9 to try to schedule a meet and confer, which finally happened on October 13—well after the deadline for Google to respond and for EscapeX to file any reply (which it never did). Banner Decl. ¶ 19; Dkt. No. 61-1, ¶¶ 2, 3. When the parties' counsel finally met and conferred,[2] EscapeX refused to withdraw its frivolous motion. On that call, rather than identify any proper basis for its Rule 59 motion, EscapeX's counsel stated that his goal in filing the motion was to supplement the record. Banner Decl. ¶ 20. The Court denied EscapeX's motion on October 30, 2023, finding "EscapeX has wholly failed to meet the Rule 59(e) standard for amending a judgment." Dkt. No. 65.

## III. LEGAL STANDARD

### A.  28 U.S.C. § 1927

Section 1927 allows courts to sanction individual attorneys[3] for unreasonably and vexatiously multiplying proceedings. 28 U.S.C. § 1927. The attorney may be personally liable for payment of "excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id*. Regional circuit law controls § 1927 motions in patent cases. *Gust, Inc. v. Alphacap Ventures, LLC*, 905 F.3d 1321, 1327 (Fed. Cir. 2018). In the Ninth Circuit, § 1927 sanctions must be accompanied by a finding that the sanctioned attorney "acted recklessly or in bad faith or intended to increase costs." *Barnd v. City of Tacoma*, 664 F.2d 1339, 1343 (9th Cir. 1982).

---

[2] Google also gave EscapeX notice that it would seek its fees and costs against EscapeX and its attorneys if it had to respond to EscapeX's motion. Banner Decl. ¶¶ 15–18. The parties met and conferred regarding Google's anticipated fees motion on this same call. *Id*. ¶ 20. Google later followed up after the Court denied EscapeX's motion to ask if EscapeX believed a further meet and confer was needed. *Id*. ¶ 23. EscapeX never responded. *Id*.

[3] In the Ninth Circuit, § 1927 sanctions can be levied against an individual attorney, but not a law firm. *See Kaass L. v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015).

4

**B. The Court's Inherent Powers to Impose Sanctions and Hold Attorneys Jointly and Severally Liable for Fee Awards**

"Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haege*r, 581 U.S. 101, 107 (2017) (citation omitted); *see also In re Facebook, Inc. Consumer Privacy User Profile Litigation*, --- F. Supp. 3d ---, 2023 WL 1871107, at *20 (N.D. Cal. Feb. 9, 2023) ("A court may impose sanctions under its inherent powers when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.") (citations omitted). For example, "a district court has inherent authority to sanction miscreant attorneys...." *Zambrano v. City of Tustin*, 885 F.2d 1473, 1478 (9th Cir. 1989).[4]

Federal courts can also impose sanctions for civil contempt. *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) ("Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both."). A court may award the moving party's attorneys' fees in obtaining the contempt finding as a form of compensatory contempt sanctions. *See, e.g.*, *Donovan v. Burlington N.*, 781 F.2d 680, 684 (9th Cir. 1986).

---

[4] Here, two attorneys signed the improper Rule 59 motion: Susan S.Q. Kalra and William P. Ramey, III. Dkt. No. 59 at 9–10. Although Mr. Ramey has not appeared in this Court, that does not limit the court's authority to levy sanctions against him. *See Allen v. Campbell*, Case No. 4:20-cv-00218-DCN, slip op. at *2 (D. Ida. May 5, 2022) (concluding the court could sanction a non-resident attorney using its inherent powers) (citing *Zambrano*, 885 at 1478); *AFD Fund v. Sill*, No. CIV.A. 303CV0291H, 2003 WL 22466202, at *6 (N.D. Tex. Oct. 22, 2003) (holding that "an out-of-state attorney cannot escape sanctions for his failures to comply with the orders of the Court and the requirements of a district…."), *report and recommendation adopted*, No. CIV.A.3:03-CV-0291-H, 2004 WL 51327 (N.D. Tex. Jan. 5, 2004).

5

### C. 35 U.S.C. § 285

In patent cases, a district court may award reasonable attorney fees to the prevailing party in exceptional cases. 35 U.S.C. § 285. To be entitled to an award under § 285, the prevailing party must prove the case is "exceptional" by a preponderance of the evidence. *Octane Fitness*, 572 U.S. at 554. An exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id*. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id*. In determining whether to award fees, district courts can consider a nonexclusive list of factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (citation omitted).

## IV. ARGUMENT

### A. EscapeX's Attorneys Should be Sanctioned Under 28 U.S.C. § 1927

EscapeX's attorneys' blatant disregard of the Court's instructions and their filing of a motion that no attorney could find reasonable based on long-standing and binding case law warrants sanctions under 28 U.S.C. § 1927. "An attorney who unreasonably and vexatiously 'multiplies the proceedings' may be required to pay the excess fees and costs caused by his conduct." *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1218–19 (9th Cir. 2010) (citing 28 U.S.C. § 1927). EscapeX's attorneys did exactly what § 1927 prohibits.

### 1. EscapeX's Motion was Frivolous

EscapeX's Motion to Amend Judgment is frivolous, EscapeX having "wholly failed to meet the Rule 59(e) standard for amending a judgment." Dkt. No. 65. EscapeX's attorneys should

6

have known that the motion failed to meet the Rule 59(e) standard. A successful Rule 59 motion requires the movant (1) present the district court with newly discovered evidence, (2) establish the district court committed clear error or made a manifestly unjust initial decision, or (3) establish an intervening change in controlling law. Fed. R. Civ. P. 59(e). EscapeX's motion failed to establish any of these three prongs. *See generally* Dkt. No. 61 at 2–8. Additionally, Google's counsel contacted EscapeX's attorneys on September 19, eight days before Google's opposition was due, to (1) notify EscapeX of the frivolous nature of its motion, and (2) provide binding case law that forecloses EscapeX's attempt to rely on new declarations as "new evidence" in a Rule 59 motion. Banner Decl. ¶¶ 15–18. Thus, EscapeX and its attorneys were on ample notice of the law governing Rule 59 motions and their failure to meet the standard based on Google's communication. Moreover, as demonstrated in Google's opposition, ExcapeX and its attorneys made no attempt to show how the new declarations could possibly meet the Rule 59 standard, something this Court recognized in denying EscapeX's motion as having "wholly failed to meet the Rule 59(e) standard." Dkt. No. 65. EscapeX's attorneys should be sanctioned via an award of Google's attorneys' fees in opposing the motion and in filing this motion to deter EscapeX and its attorneys from filing further frivolous motions.

## 2. EscapeX Compounds Its Error by Refusing to Engage with Google

Google sought to avoid the cost of responding to the frivolous motion by attempting to contact EscapeX's attorneys through both email and telephone before its response was due. Google incurred fees to research the relevant case law and then provided this to EscapeX and its attorneys. Banner Decl. ¶¶ 15–18. As they have done throughout this litigation, EscapeX's attorneys ignored those emails and phone calls until well after Google's opposition was due. *See* Dkt. No. 61-1 ¶¶ 2, 3; Banner Decl. ¶¶ 15–23. When Google's attorneys were finally able to discuss EscapeX's motion

with its attorneys, EscapeX's attorneys refused to withdraw the motion citing the need to add to the record. Banner Decl. ¶ 20.

Further, EscapeX and its attorneys did not file a reply in support of its motion. While a reply is not required, considering the totality of EscapeX and its attorneys' actions in this case, the failure to file a reply is additional evidence that EscapeX is indifferent to the result of the motion because its only goal was to try to improperly supplement the record. Banner Decl. ¶ 20. Indeed, when viewed together with its other actions,[5] including its failure to notice a hearing on its motion, EscapeX and its attorneys appear to have filed the motion knowing it was without merit.

"Recklessness suffices for § 1927 sanctions, but sanctions imposed under the district court's inherent authority require a bad faith finding." *Lahiri*, 606 F.3d at 1219. There is no other interpretation of the filing of the Motion to Amend Judgment other than that EscapeX's attorneys acted in bad faith. The motion is blatantly groundless, and counsel failed to comply with the local rules in filing the motion (by not noticing a hearing date), failed to engage in discussions with Google's counsel until well after Google's opposition was due, and failed to file a reply in support of the motion. Each of these actions supports a finding that EscapeX's attorneys acted in bad faith—or at a minimum recklessly—and should be sanctioned and held jointly and severally liable under § 1927 and/or the Court's inherent power.

---

[5] EscapeX's and its attorneys may have sought to delay the consequences of the Court's previous attorneys' fees award by failing to comply with Local Rule 7-2 which requires the movant to notice a hearing date on the assigned judge's calendar. Civil L.R. 7-2(a), (b)(1). Had Google not prompted EscapeX to remedy this deficiency, the motion could have remained pending indefinitely, protecting EscapeX from ever having to file a notice of appeal (which deadline is tolled by filing a Rule 59 motion (Fed. R. App. P. 4(a)(4)(A)(iv))) or paying Google's attorneys' fees.

8

Appx0561

**B. EscapeX's Attorneys Should Also Be Sanctioned and Held Jointly and Severally Liable Pursuant to the Court's Power to Impose Sanctions for Civil Contempt**

The Court already told EscapeX—and its attorneys—not to submit additional declarations or submissions opposing Google's motion for attorneys' fees. Dkt. No. 61 at 1–2 ("THE COURT: . . . don't respond to my question by asking to file a declaration" . . . "it's too late to make -- file further declarations or make further arguments"). Yet they did precisely that in their motion to amend. *See generally* Dkt. No. 59. The Court further put EscapeX's attorneys on notice that it would have at least considered sanctions against them in addition to awarding fees against their client. Dkt. No. 57 at 2. As a result, the Court should hold EscapeX and its attorneys in civil contempt for intentional disobedience of a specific and definite court order. *See Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014) ("Civil contempt ... consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply.") (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)).

In the Ninth Circuit, a party alleging that another person should be held in civil contempt must establish that the alleged contemnor (1) "violated the court order," (2) "beyond substantial compliance," (3) "not based on a good faith and reasonable interpretation of the order," (4) "by clear and convincing evidence." *United States v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010) (quotations omitted). EscapeX and its attorneys violated and did not substantially comply with the Court's instruction ***not*** to submit additional declarations or arguments by filing the Motion to Amend Judgment *and* accompanying declarations. EscapeX and its attorneys' violation is not based on a good faith and reasonable interpretation of the Court's order because there is no reasonable interpretation other than that the Court ***did not*** want EscapeX to present additional declarations or arguments. As such, there is clear and convincing evidence EscapeX and its

attorneys have failed to substantially comply with the Court's instructions and that the non-compliance was not based on a good faith, reasonable interpretation of the Court's instructions.

"Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *Gen. Signal*, 787 F.2d at 1380. A court may award the moving party's attorneys' fees in obtaining the contempt finding as a form of compensatory contempt sanctions. *See, e.g.*, *Donovan*, 781 F.2d at 684 (quoting *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985)) (recognizing "the cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party") (citation and brackets omitted). Whether to award fees and expenses as a remedial measure in a contempt action is left to the discretion of the court. *Perry*, 759 F.2d at 705.

Because both EscapeX and its attorneys acted in concert to violate the Court's instructions, as a sanction for EscapeX's non-compliance with the Court's previous instructions, EscapeX and its attorneys should be held jointly and severally liable for Google's attorneys' fees, not only the fees incurred in responding to EscapeX's motion to amend judgment, but for all attorneys' fees awarded in conjunction with defending itself against this baseless litigation. *See, e.g.*, *Goodyear Tire*, 581 U.S. at 107 (holding district courts have the inherent power to fashion appropriate sanctions "to achieve the orderly and expeditious disposition of cases").

## C. Additional Fees are Warranted Under § 285 Because EscapeX and its Attorneys' Actions Continue to be Unreasonable

As the Court already acknowledged, Google is the prevailing party for purposes of § 285. Dkt. No. 57 at 1 ("Google is the prevailing party because the parties stipulated to the dismissal of EscapeX's claims with prejudice."). And this Court has likewise found that this case has been exceptional from the start because of EscapeX's determination to pursue a frivolous case. *See* Dkt.

10

No. 57 at 1. EscapeX continues its pattern of baseless filings with its motion to amend judgment, warranting the award of additional attorneys' fees under § 285. *See* Section IV.A, *supra*. These abuses warrant the Court awarding attorneys' fees under § 285. *See SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015) ("a pattern of litigation abuses . . . is relevant to a district court's exceptional case determination under § 285"). Further, to deter EscapeX from future efforts to evade enforcement of the Court's orders, Google respectfully requests that the Court impose a significant enough penalty to prevent future abuses. *See* Sections IV.A and IV.B, *supra*.

## V.  CONCLUSION

Just as EscapeX's lawsuit was frivolous, so too is its Motion to Amend Judgment. As such, Google asks the Court to award Google its attorneys' fees and costs associated with opposing the motion and filing this request for fees, totaling approximately $34,447.65 to date (Banner Decl. ¶ 14), and if the Court deems it appropriate, for its additional fees and costs incurred through the conclusion of this motion. Google asks that these additional fees and costs, as well as the previously awarded fees and costs, be levied jointly and severally against EscapeX and the attorneys who signed the frivolous Motion to Amend Judgment.

Dated: November 13, 2023                            KWUN BHANSALI LAZARUS LLP

By:     */s/ Brian C. Banner*
        Kate E. Lazarus (SBN 268242)
        klazarus@kblfirm.com
        Asim M. Bhansali (SBN 194925)
        abhansali@kblfirm.com
        KWUN BHANSALI LAZARUS LLP
        555 Montgomery Street, Suite 750
        San Francisco, CA 94111
        Tel: (415) 630-2350

        Of Counsel:

11

Brian C. Banner (*pro hac vice*)
bbanner@sgbfirm.com
Nellie N. Slayden (*pro hac vice*)
nslayden@sgbfirm.com
SLAYDEN GRUBERT BEARD PLLC
401 Congress Avenue, Suite 1650
Austin, TX 78701
(512) 402-3550

Attorneys for Defendant
GOOGLE LLC

12

Kate E. Lazarus (SBN 268242)
klazarus@kblfirm.com
Asim M. Bhansali (SBN 194925)
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350

Additional attorneys listed on signature page.

Attorneys for Defendant
GOOGLE LLC

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ESCAPEX IP LLC,<br><br>　　　Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>　　　Defendant. | §<br>§<br>§<br>§　CASE NO. 3:22-cv-08711-VC<br>§<br>§　**DECLARATION OF BRIAN C.**<br>§　**BANNER IN SUPPORT OF**<br>§　**DEFENDANT GOOGLE LLC'S**<br>§　**MOTION FOR ATTORNEYS' FEES**<br>§<br>§　Judge: Hon. Vice Chhabria<br>§<br>§　Date Filed: November 13, 2023<br>§<br>§<br>§<br>§ |

- 1 -
Appx0567

time spent on this matter by SGB secretaries, assistants, or librarians. Administrative tasks performed by attorneys were not charged, and therefore are not included in the fees above.

11.    I reviewed all invoices before they were sent to Google to assure that the time charged accurately reflected the work performed and that the work performed was performed by persons at the appropriate level.

12.    Google will provide invoices and documentation to support its request for Attorneys' fees at the request of the Court.

13.    I have also reviewed the Declaration of Asim M. Bhansali in Support of Defendant Google LLC's Motion for Attorneys' Fees Re: Rule 59 Motion, which is submitted to the Court along with this declaration. Mr. Bhansali indicates Google has incurred a total of $5,704.65 in fees from his firm related to the .

14.    Thus, the total amount of attorneys' fees sought by Google for defending itself in this district court action is $34,447.65.

**MY CORRESPONDENCE WITH PLAINTIFF'S COUNSEL**

15.    After EscapeX filed its Rule 59 motion, I researched the relevant case law and then provided this to EscapeX and its attorneys on September 19, 2023, when I emailed EscapeX's attorneys (Mr. Ramey and Ms. Kalra). In my email, I notified EscapeX of the frivolous nature of its motion and of binding case law that forecloses EscapeX's attempt to rely on new declarations as "new evidence" in a Rule 59 motion. I requested that EscapeX withdraw the motion or, at the very least, meet and confer. I also sought to discuss Google's plan to seek fees from EscapeX and its attorneys if EscapeX would not withdraw the Rule 59 motion. A true and correct copy of my September 19 email is attached as Exhibit 1.

- 4 -

16. On September 22, I left a voicemail for both of EscapeX's counsel, Mr. Ramey, and Ms. Kalra, requesting a conference to discuss EscapeX's basis for filing the Rule 59 motion and Google's request for fees for having to respond to the motion.

17. On October 6, I sent a follow-up email to EscapeX's attorneys (Mr. Ramey and Ms. Kalra). I again requested a conference related to the Rule 59 motion and for EscapeX's position Google seeking fees for having to respond. A true and correct copy of my October 6 email is attached as Exhibit 2.

18. On October 9, I sent a follow-up email to EscapeX's attorneys (Mr. Ramey and Ms. Kalra). I again requested a conference related to the Rule 59 motion and for EscapeX's position Google seeking fees for having to respond. A true and correct copy of my October 9 email is attached as Exhibit 3.

19. EscapeX's attorneys did not respond to my email or telephone requests until October 9, which was after (1) the September 27 due date for Google's response to the Rule 59 motion and (2) the October 4 due date for EscapeX's reply.

20. On October 13, 2023, I conferred with EscapeX's counsel (Mr. Ramey) via telephone. EscapeX's counsel did not agree to withdraw its frivolous motion and did not provide any Ninth Circuit law supporting its filing. EscapeX's counsel indicated that they filed the Rule 59 motion to supplement the record for an appeal. I also discussed Google's desire to seek fees for having to respond to the Rule 59 motion. EscapeX's counsel did not agree that fees were warranted.

21. Attached as Exhibit 4 is a true and correct copy of an email I sent to EscapeX's counsel (Mr. Ramey) on October 13, 2023.

- 5 -

DECLARATION OF BRIAN C. BANNER IN SUPPORT OF
GOOGLE LLC'S MOTION FOR ATTORNEY FEES
CASE NO 3:22-cv-08711-VC

Appx0572

22.     I sent multiple emails to EscapeX's counsel informing them that EscapeX was in violation of Local Rule 7-2 for not noticing a hearing date. *See* Exhibits 2-4. EscapeX did not notice a hearing date until after Google repeatedly raised this issue.

23.     On November 1, 2023, after the Court denied EscapeX's Rule 59 motion, I emailed EscapeX's counsel to ask whether EscapeX would reconsider paying Google's fees for having to respond to the motion. EscapeX's counsel has not responded.  A true and correct copy of my November 1 email is attached as Exhibit 5.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 13th day of November 2023 at Austin, Texas.


By:     */s/ Brian C. Banner*
        Brian C. Banner

DECLARATION OF BRIAN C. BANNER IN SUPPORT OF
GOOGLE LLC'S MOTION FOR ATTORNEY FEES
CASE NO 3:22-cv-08711-VC

Appx0573

# Exhibit 1

## Brian Banner

| | |
|---|---|
| **From:** | Brian Banner |
| **Sent:** | Tuesday, September 19, 2023 3:20 PM |
| **To:** | William Ramey; skalra@rameyfirm.com |
| **Cc:** | Asim Bhansali; klazarus@kblfirm.com |
| **Subject:** | EscapeX v. Google: Google Request for EscapeX to Withdraw its Motion to Amend Judgment (Dkt. No.  59) |

Bill & Susan,

I email on behalf of Google to request EscapeX immediately withdraw its Motion to Amend Judgment (Dkt. No. 59). In the event EscapeX will not withdraw its motion, I request your availability to meet and confer regarding Google's motion for further fees and costs under 35 U.S.C. 285, 28 U.S.C. 1927, Rule 11, and the court's inherent power.  Google's motion will ask the court to levy sanctions against EscapeX, each of the attorneys who signed the frivolous Rule 59 motion, and the law firms involved in its filing (to be liable jointly and severally with EscapeX and the fees it already owes to Google).

The sole basis for EscapeX's motion is alleged "newly discovered evidence," and Ninth Circuit law is very clear that untimely declarations such as those EscapeX submitted in support of its motion are not "newly discovered evidence." *See Sch. Dist. No. 1J, Multnomah County, v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("The overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.'"). Moreover, EscapeX's motion rehashes already rejected arguments and, to the extent any arguments are new, they are untimely. Under Supreme Court precedent, these arguments are improper. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) ("Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" (citation omitted)).

Please promptly confirm EscapeX will withdraw its motion or, if not, provide your availability Wednesday or Thursday for a call to meet and confer on Google's proposed motion for fees.

Brian C. Banner

**sgb** | **SLAYDEN GRUBERT BEARD** PLLC
401 Congress Ave, Ste 1650 | Austin, TX 78701 | USA
[O] 512.402.3569 | [C] 512.468.6297  | sgbfirm.com

This message was sent by an attorney at law and may contain privileged and/or confidential matter.  Please let the sender know if this message was received in error.

# Exhibit 2

**Monday, November 13, 2023 at 16:53:28 Central Standard Time**

**Subject:** Re: EscapeX v. Google: Google Request for EscapeX to Withdraw its Motion to Amend Judgment (Dkt. No. 59)

**Date:** Friday, October 6, 2023 at 1:39:59 PM Central Daylight Time

**From:** Brian Banner

**To:** William Ramey, skalra@rameyfirm.com

**CC:** Asim Bhansali, klazarus@kblfirm.com

Bill & Susan,

I just left a voicemail for each of you. Please let me know when you are available for a call to discuss the following issues:

1. Google's motion for additional fees for having to respond to EscapeX's Motion to Amend Judgment; and
2. A motion hearing date for both Google's forthcoming fees motion and EscapeX's Motion to Amend Judgment.

The first issue is addressed in my email below, to which I did not receive a response.

The second issue is noted in Google's Opposition brief. In short, EscapeX failed to notice a motion hearing date for its Motion to Amend Judgment, and Google requests that be remedied so that the issue can be resolved. We can discuss further when we talk, but it probably makes sense for the Court to handle EscapeX's motion and Google's additional fees motion in the same hearing. In other words, we should coordinate the hearing dates.

Regards,

Brian C. Banner

**sgb | SLAYDEN GRUBERT BEARD PLLC**

401 Congress Ave, Ste 1650 I Austin, TX 78701 I USA
[O] 512.402.3569 I [C] 512.468.6297 I sgbfirm.com

This message was sent by an attorney at law and may contain privileged and/or confidential matter. Please let the sender know if this message was received in error.

---

**From:** Brian Banner
**Sent:** Tuesday, September 19, 2023 3:19 PM
**To:** William Ramey <wramey@rameyfirm.com>; skalra@rameyfirm.com <skalra@rameyfirm.com>
**Cc:** Asim Bhansali <abhansali@kblfirm.com>; klazarus@kblfirm.com <klazarus@kblfirm.com>
**Subject:** EscapeX v. Google: Google Request for EscapeX to Withdraw its Motion to Amend Judgment (Dkt. No. 59)

Bill & Susan,

I email on behalf of Google to request EscapeX immediately withdraw its Motion to Amend Judgment (Dkt. No. 59). In the event EscapeX will not withdraw its motion, I request your availability to meet and confer regarding Google's motion for further fees and costs under 35 U.S.C. 285, 28 U.S.C. 1927, Rule 11, and the court's inherent power.  Google's motion will ask the court to levy sanctions against EscapeX, each of the attorneys who signed the frivolous Rule 59 motion, and the law firms involved in its filing (to be liable jointly and severally with EscapeX and the fees it already owes to Google).

The sole basis for EscapeX's motion is alleged "newly discovered evidence," and Ninth Circuit law is very clear that untimely declarations such as those EscapeX submitted in support of its motion are not "newly discovered evidence." *See Sch. Dist. No. 1J, Multnomah County, v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("The overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.'"). Moreover, EscapeX's motion rehashes already rejected arguments and, to the extent any arguments are new, they are untimely. Under Supreme Court precedent, these arguments are improper. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) ("Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" (citation omitted)).

Please promptly confirm EscapeX will withdraw its motion or, if not, provide your availability Wednesday or Thursday for a call to meet and confer on Google's proposed motion for fees.

Brian C. Banner

**sgb** | **SLAYDEN GRUBERT BEARD** PLLC

401 Congress Ave, Ste 1650 | Austin, TX 78701 | USA
[O] 512.402.3569 | [C] 512.468.6297  | sgbfirm.com

This message was sent by an attorney at law and may contain privileged and/or confidential matter.  Please let the sender know if this message was received in error.

# Exhibit 3

**Monday, November 13, 2023 at 16:52:41 Central Standard Time**

**Subject:** Re: EscapeX v. Google: Google Request for EscapeX to Withdraw its Motion to Amend Judgment (Dkt. No. 59)

**Date:** Monday, October 9, 2023 at 4:37:31 PM Central Daylight Time

**From:** Brian Banner

**To:** William Ramey, skalra@rameyfirm.com

**CC:** Asim Bhansali, klazarus@kblfirm.com

Hi Bill (& Susan),

I've seen a number of emails from you on another matter (LS Cloud v. Google), but you have not yet responded to my two previous emails or my two voicemail messages related to the EscapeX matter.

Do you have time to talk today or tomorrow?  We need to know when you and/or Ms. Kalra are available for a motions hearing on EscapeX's Motion to Amend Judgment and Google's forthcoming attorney fees motion. (See my email below.)

You can call me any time at 512-468-6297 (my mobile). Or you can respond to this email with your/Susan's availability and I will accommodate.

Thanks,

Brian C. Banner

**sgb** I **SLAYDEN GRUBERT BEARD** PLLC

401 Congress Ave, Ste 1650 I Austin, TX 78701 I USA
[O] 512.402.3569 I [C] 512.468.6297  I  sgbfirm.com

This message was sent by an attorney at law and may contain privileged and/or confidential matter.  Please let the sender know if this message was received in error.

---

**From:** Brian Banner <bbanner@sgbfirm.com>
**Sent:** Friday, October 6, 2023 1:39 PM
**To:** William Ramey <wramey@rameyfirm.com>; skalra@rameyfirm.com <skalra@rameyfirm.com>
**Cc:** Asim Bhansali <abhansali@kblfirm.com>; klazarus@kblfirm.com <klazarus@kblfirm.com>
**Subject:** Re: EscapeX v. Google: Google Request for EscapeX to Withdraw its Motion to Amend Judgment (Dkt. No. 59)

Bill & Susan,

I just left a voicemail for each of you. Please let me know when you are available for a call to discuss the following issues:

# Exhibit 4

**Monday, November 13, 2023 at 16:51:25 Central Standard Time**

**Subject:** RE: EscapeX v. Google: Google Request for EscapeX to Withdraw its Motion to Amend Judgment (Dkt. No. 59)

**Date:** Friday, October 13, 2023 at 4:39:44 PM Central Daylight Time

**From:** Brian Banner

**To:** William Ramey, Susan Kalra

**CC:** Asim Bhansali, klazarus@kblfirm.com

Hi Bill

Thanks for the call earlier today. I've had a chance to discuss the issues with my client. Google would prefer EscapeX set a hearing for its Rule 59 motion as soon as possible so that the court can decide that issue.

-------- Original message --------
From: Brian Banner <bbanner@sgbfirm.com>
Date: 10/11/23 12:48 PM (GMT-06:00)
To: William Ramey <wramey@rameyfirm.com>, Susan Kalra <skalra@rameyfirm.com>
Cc: Asim Bhansali <abhansali@kblfirm.com>, klazarus@kblfirm.com
Subject: RE: EscapeX v. Google: Google Request for EscapeX to Withdraw its Motion to Amend Judgment (Dkt. No. 59)

Hi Bill,

I didn't receive a response or a call yesterday. Please call me today any time except 3-3:30 central. Please confirm receipt.

Regards,
Brian

-------- Original message --------
From: Brian Banner <bbanner@sgbfirm.com>
Date: 10/10/23 9:58 AM (GMT-06:00)
To: William Ramey <wramey@rameyfirm.com>, Susan Kalra <skalra@rameyfirm.com>
Cc: Asim Bhansali <abhansali@kblfirm.com>, klazarus@kblfirm.com
Subject: RE: EscapeX v. Google: Google Request for EscapeX to Withdraw its Motion to Amend Judgment (Dkt. No. 59)

I'm free anytime except 2-2:30 central. What time works for you?

Brian

-------- Original message --------

From: William Ramey <wramey@rameyfirm.com>
Date: 10/10/23 6:27 AM (GMT-06:00)
To: Brian Banner <bbanner@sgbfirm.com>, Susan Kalra <skalra@rameyfirm.com>
Cc: Asim Bhansali <abhansali@kblfirm.com>, klazarus@kblfirm.com
Subject: RE: EscapeX v. Google: Google Request for EscapeX to Withdraw its Motion to Amend Judgment (Dkt. No. 59)

Brian,

How is this afternoon?

Bill

---

**From:** Brian Banner <bbanner@sgbfirm.com>
**Sent:** Monday, October 9, 2023 4:58 PM
**To:** William Ramey <wramey@rameyfirm.com>; Susan Kalra <skalra@rameyfirm.com>
**Cc:** Asim Bhansali <abhansali@kblfirm.com>; klazarus@kblfirm.com
**Subject:** Re: EscapeX v. Google: Google Request for EscapeX to Withdraw its Motion to Amend Judgment (Dkt. No. 59)

Hi Bill,

I've outlined the issues we need to discuss in my previous email (below).  Are you available for a call right now?  It might be easier to talk through it. I can be reached at my office or my cell (numbers below).

Brian C. Banner

**sgb** | **SLAYDEN GRUBERT BEARD** PLLC

401 Congress Ave, Ste 1650 I Austin, TX 78701 I USA
[O] 512.402.3569  I  [C] 512.468.6297  I  sgbfirm.com

This message was sent by an attorney at law and may contain privileged and/or confidential matter.  Please let the sender know if this message was received in error.

---

**From:** William Ramey <wramey@rameyfirm.com>
**Sent:** Monday, October 9, 2023 4:42 PM
**To:** Brian Banner <bbanner@sgbfirm.com>; Susan Kalra <skalra@rameyfirm.com>
**Cc:** Asim Bhansali <abhansali@kblfirm.com>; klazarus@kblfirm.com <klazarus@kblfirm.com>
**Subject:** RE: EscapeX v. Google: Google Request for EscapeX to Withdraw its Motion to Amend Judgment (Dkt. No. 59)

Brian,

We view any motion for fees as an abuse of process.  Google is essentially saying that we are not allowed to move the Court for relief.  If Google files its motion, we reserve the right to seek fees.

Susan S.Q. Kalra (State Bar No. 167940)
Email: skalra@rameyfirm.com
RAMEY LLP
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (800) 993-7499
Fax: (832) 900-4941

William P. Ramey, III (*pro hac vice anticipated*)
Email: wramey@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175

*Attorneys for Plaintiff*
ESCAPEX IP, LLC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| ESCAPEX IP, LLC, | Case No.: 3:22-cv-08711-VC |
|---|---|
| Plaintiff, | |
| v. | **NOTICE OF APPEAL** |
| GOOGLE LLC, | |
| Defendant. | |

1

Notice is hereby given that Plaintiff, EscapeX IP, LLC ("EscapeX"), in the above-named case, hereby appeals to the United States Court of Appeals for the Federal Circuit from:

• the Order Granting Motion for Attorneys' Fees Under 35 U.S.C. §285 on August 16, 2023 (Doc. No. 57) and

• the minute Order denying Plaintiff's Motion to Motion to Amend the Judgment on October 30, 2023 (Doc. No. 65).

The appropriate fees for this Notice of Appeal are paid currently.

Dated: November 27, 2023        Respectfully submitted,


RAMEY LLP

/s/ Susan S.Q. Kalra
Susan S.Q. Kalra (State Bar No. 167940)
RAMEY LLP
_____

_____
Telephone: (800) 993-7499
Fax: (832) 900-4941
Email: skalra@rameyfirm.com

/s/ William P. Ramey, III
William P. Ramey, III
(pro hac vice anticipated)
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175
Email: wramey@rameyfirm.com

Attorneys for Plaintiff
ESCAPEX IP, LLC

2

Susan S.Q. Kalra (California State Bar No. 167940)
Email: skalra@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
Telephone: (800) 993- 7499
Fax: (832) 900-4941

William P. Ramey, III (pro hac vice anticipated)
Email: wramey@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175

*Attorneys for Plaintiff*
ESCAPEX IP, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| ESCAPEX IP, LLC, | Case No.: 3:22-cv-08711-VC |
| Plaintiff, | |
| v. | **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285, 19 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS** |
| GOOGLE LLC, | |
| Defendant. | |
| | Date: January 11, 2024 |
| | Time: 10:00 a.m. |
| | Judge Vince Chhabria |

i

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35
U.S.C. § 285, 19 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS - Case No.: 3:22-CV-08711-VC

EscapeX IP, LLC ("EscapeX") files this Response to Defendant Google LLC's ("Google") Motion for Attorneys' Fees Pursuant To 35 U.S.C. § 285, 19 U.S.C. § 1927, and the Court's Inherent Powers ("Google's Second Motion for Fees")[1] showing the Court that it should be denied because the client EscapeX requested that its attorneys file the Motion to Amend because it believed that the Court was intentionally deprived of the full facts by the manner in which Google litigated the underlying case thus resulting in a manifest injustice.  Further, Google's lead attorney Brian Banner filed a false declaration in support of Defendant's Second Motion for Fees in an apparent effort to cast a negative light on Ramey LLP.  Contrary to Banner's assertions, Lead counsel for EscapeX had a long phone conversation with Mr. Banner about scheduling the hearing for this motion and why EscapeX was filing the Motion to Amend the Judgment to which Mr. Banner responded that he understood the basis, but disagreed that EscapeX was entitled to the relief it sought:[2]

## I.      INTRODUCTION

EscapeX and its counsel Ramey LLP carefully considered the Court's Oder awarding fees and the evidence before the Court prior to filing its Motion to Amend the Judgment.[3]  Both had a good faith belief that the standards for a Motion to Amend the Judgment were met when considering the law of this Circuit, namely that "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. There

---

[1] Doc. No. 66.
[2] Declaration of William P. Ramey, III ("Ramey Decl.") at ¶5.
[3] Ramey Decl. at ¶3.

1

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285, 19 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS - Case No.: 3:22-CV-08711-VC

Appx0600

may also be other, highly unusual, circumstances warranting reconsideration.[4]  Plaintiff uses this case law as it is the case law Banner sent EscapeX on September 19, 2022, when complaining about the Motion to Amend the Judgment.[5]  Plaintiff's Motion provided facts the Court had not previously considered that Plaintiff believed would correct a manifest injustice from the highly unusual circumstance of the case that Plaintiff believed warranted reconsideration.

## II.     BACKGROUND FACTS

On April 28, 2022, Plaintiff EscapeX IP LLC sued Google LLC for infringing its U.S. Patent No. 9,009,113 (the '113 patent") (Original Complaint, Dkt. No. 1) in the Western District of Texas. EscapeX filed a First Amended Complaint on May 23, 2022 (Dkt. No. 8) and a Second Amended Complaint on September 29, 2022 (Dkt. No. 15).  Google filed an Answer to the First Amended Complaint on July 5, 2022 (Dkt. No. 9) and an Answer to the Second Amended Complaint on October 17, 2022 (Dkt. No. 17).  Notably, the First Amended Complaint and the Second Amended Complaint are nearly identical (see Dkt. No. 45-1).

On November 21, 2022, Google filed a Motion Under 28 U.S.C. § 1404(a) to Transfer Venue to the Northern District of California (Dkt. No. 18).  This Motion was not opposed, leading to this case being transferred to the Northern District of California.  Google also presented substantive arguments in letters dated August 5, 2022, and November 7, 2022, concerning the issues of invalidity and non-infringement (Dkt. Nos. 41-5 and 41-8, respectively). Notably, these letters were not made part of the official record until after the case's dismissal. This rendered EscapeX unable to address these critical allegations of invalidity and non-infringement on the record, and as such, the court did not have the opportunity to adjudicate these matters.

---

[4] *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).
[5] Doc. No. 61-2 at 2.

2

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285, 19 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS - Case No.: 3:22-CV-08711-VC

Appx0601

In a separate case, *EscapeX IP LLC v Block, Inc.*, 22-CV-3575 (JMF) (S.D.N.Y. Aug. 8, 2022), the '113 patent was invalidated as not being patent eligible under Section 101 of the Patent Act ("Opinion" Dkt. No. 30 for case no. 22-CV-3575). The Opinion, spanning 19 pages, provided a detailed and intricate analysis, underscoring the complexity of the matter and refuting any notion of frivolousness.  The parties subsequently filed a Joint Stipulation of Dismissal Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) on March 7, 2023 (Dkt. No. 40), resulting in the case's dismissal.  Upon Google's motion, the Court awarded fees in the amount of $191,302.18.[6] Plaintiff then sought a motion to amend the judgment[7] which this Court denied.[8]  Google next filed a second motion for fees seeking fees from EscapeX's counsel.[9]

In summary, after the Court's Order awarding fees, Plaintiff sought relief allowed by the Federal Rules of Civil Procedure, specifically under Rule 59 which the Court denied without written opinion.  Nothing more happened in this case.  In sum, after the Court's order awarding fees, nothing makes this case rare as it does not stand out from the rest.  This was normal litigation.  The sanction of dismissal and awarding fees was adequate and no further sanction under Section 285, Section 1927, the Court's inherent powers or otherwise is warranted.

## III.    RELEVANT LAW

The Patent Act provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in

---

[6] Doc. No. 57 at 2.
[7] Doc. No. 59.
[8] Doc. No. 65.
[9] Doc. No. 66.

3

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285, 19 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS - Case No.: 3:22-CV-08711-VC

which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id*. A nonexclusive list of factors to consider includes frivolousness, motivation, objective unreasonableness as to facts or legal components of the case, and the need in particular circumstances to advance considerations of compensation and deterrence. *See Octane Fitness*, 572 U.S. at 554 n.6. The prevailing party must prove an "exceptional case" by a preponderance of the evidence. *See id*. at 557-58.

Fees are not to be awarded "as a penalty for failure to win a patent infringement suit." *Octane Fitness*, 572 U.S. at 548-49 (quoting *Park-In-Theatres, Inc. v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951)). In areas of evolving law, "it is particularly important to allow attorneys the latitude necessary to challenge and thus solidify the legal rules without the chill of direct economic sanctions." *See, e.g., Gust, Inc. v. Alphacap Ventures*, *LLC*, 905 F.3d 1321, 1329 (Fed. Cir. 2018).  A case is not necessarily exceptional necessitating a fee award even where a court determines the party applied an incorrect legal standard.  This is especially true in areas where the law is changing or where the party's pleadings can be taken as a good faith effort to change the law[10] or a reasonable basis under then existing law.

Section 1927 provides that a court may require an attorney to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred" when the attorney "multiplies the proceedings in any case unreasonably and vexatiously."[11]  However, a lawyer should not be

---

[10] *Mankes v. Vivid Seats Ltd.*, 822 F.3d 1302, 1312 (Fed. Cir. 2016).
[11] 28 U.S.C. § 1927.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285, 19 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS - Case No.: 3:22-CV-08711-VC

sanctioned for failing to abandon his client's case at the drop of a motion, unless there is no colorable defense to the motion that can be advocated and no possible merit to any argument that can be advanced.[12] The Supreme Court has cautioned that court's must find fraud or abuse of the judicial process sufficiently beyond 'exceptional' before it can invoke its inherent sanctioning power.[13] The Ninth Circuit requires evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court.[14] "Sanctions pursuant to section 1927 must be supported by a finding of subjective bad faith."[15] "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent."[16] Section 1927 only authorizes shifting fees that are associated with the persistent prosecution of a meritless claim.[17]

The Ninth Circuit is clear that an award of sanctions under a court's inherent authority must be preceded by a finding of bad faith, or conduct that constituted or was tantamount to bad faith.[18]

Rule 11 sanctions are only available with regard to papers filed with the court, not attorney misconduct.[19] Rule 11 expressly requires that an attorney presenting a pleading, motion, or other paper before a court certify that the attorney has performed "an inquiry reasonable under the circumstances" such that he can verify that (1) "it is not being presented for any improper

---

[12] *Stitt v. Williams,* 919 F.2d 516, 528 (9th Cir.1990).
[13] *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S. Ct. 2123, 115 L.Ed.2d 27 (1991).
[14] *See In re Keegan Management Co.,* 78 F.3d 431, 436 (9th Cir.1996).
[15] *New Alaska Dev. Corp. v. Guetschow,* 869 F.2d 1298, 1306 (9th Cir.1989).
[16] *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995).
[17] *Browning v. Kramer,* 931 F.2d 340, 345 (5th Cir.1991).
[18] *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001).
[19] Fed.R.Civ.P. 11; *see also United Energy Owners Comm., Inc. v. United States Energy Management Systems, Inc.,* 837 F.2d 356, 364–65 (9th Cir. 1988).

5

---

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285, 19 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS - Case No.: 3:22-CV-08711-VC

purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," (2) "the claims ... are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law;" (3) "the factual contentions have evidentiary support or, ... will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."[20] A Rule 11 analysis is a strictly objective inquiry and inquiries into any alleged motivation behind a filing are improper.[21] "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution. Such sanctions can have an unintended detrimental impact on an attorney's career and personal well-being.[22]

## IV.     ARGUMENT

### A. Google's Second Motion for Fees Seeks to Prevent EscapeX's Access to the Procedures Afforded by the Rules of Civil Procedure.

Google's Second Motion for Fees begins with the premise that EscapeX's counsel should be sanctioned for disregarding the Court's instructions.[23] However, EscapeX did not ask the court for reconsideration of its prior ruling based on the submission of a new declaration. Rather, EscapeX, after consultation with its client and consideration of the Court's Order awarding fees, strongly believed that Google's actions by not presenting the full record to the Court likely resulted in manifest injustice. In short, EscapeX and its counsel believed this was one of those rare, unusual cases where submission of the full record would be appropriate.[24] EscapeX and its counsel attempted, in good faith, to make new arguments on the new evidence, and was not

---

[20] Fed.R.Civ.P. 11(b)(1)–(3).
[21] *Fed. Deposit Ins. Corp. v. Maxxam, Inc.,* 523 F.3d 566, 580 (5th Cir. 2008); *Jenkins v. Methodist Hosp. of Dallas,* 478 F.3d 255, 264 (5th Cir. 2007).
[22] *Conn v. Borjorquez,* 967 F.2d 1418, 1421 (9th Cir. 1992).
[23] Google's Second Motion for Fees at 6.
[24] *See, e.g., Sch. Dist. No. 1J, Multnomah Cnty., Or.*, 5 F.3d at 1263.

6

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285, 19 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS - Case No.: 3:22-CV-08711-VC

arguing for reconsideration of the previous facts before the court.  There simply is no evidence of bad faith, objective or subjective.

Its is true that the Court denied EscapeX's Motion to Amend the Judgment by providing that that EscapeX wholly failed to meet the standard.[25]  However, the Court's Order does not say that the Motion was frivolous, contrary to Google's Second Motion for Fees.[26]

### B. Google's Statements that Counsel for EscapeX Failed to Engage are False and Sanctionable Under Rule 11

Google requested to speak with counsel for EscapeX by e-mail on October 9, 2023.[27] That same day, at 4:42 p.m., counsel for EscapeX responded asking what needed to be discussed as it felt that any motion for fees was an abuse of process.[28]  Again, on October 10, 2023, counsel for EscapeX sought to engage counsel for Google and in the e-mail chain requested that Ramey LLP's counsel in California set the hearing:

-------- Original message --------
From: William Ramey <wramey@rameyfirm.com>
Date: 10/13/23 4:41 PM (GMT-06:00)
To: Brian Banner <bbanner@sgbfirm.com>, Susan Kalra <skalra@rameyfirm.com>
Cc: Asim Bhansali <abhansali@kblfirm.com>, klazarus@kblfirm.com, LitigationParalegals <LitParalegals@rameyfirm.com>
Subject: RE: EscapeX v. Google: Google Request for EscapeX to Withdraw its Motion to Amend Judgment (Dkt. No. 59)

Susan,

Can we please set the hearing for the Rule 59 motion?

Thanks,

Bill
[29]

Counsel for Google was copied on the e-mail and knows the process was started for setting the

---

[25] Doc. No. 65.
[26] Doc. No. 66 at 6-7.
[27] Ex. A, e-mail chain between Banner and Ramey, Ramey Dec. at ¶6.
[28] Ex. A.
[29] Ex. C, Ramey Decl. at ¶8.

7

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285, 19 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS - Case No.: 3:22-CV-08711-VC

hearing.

In the same chain, by e-mail dated October 16, 2023, Google's counsel provided two dates for the hearing. Counsel for Ramey LLP provided that only one was available.[30] In short, there were ongoing discussions for an available hearing date. Google's suggestion otherwise can only be categorized as a misrepresentation and false.

Further, Banner's declaration is dated September 27, 2023 and states that no one from Ramey LLP engaged with him after his September 19, 2023 e-mail and September 22, 2023 phone message.[31]

However, Banner's statement that counsel for EscapeX would not engage in discussions is the true misrepresentation.[32] As Exhibit D illustrates, Brian Banner had a 4 minute and 3 second phone call with William Ramey, counsel for EscapeX. During the phone call, Banner and Ramey discussed a hearing date and the basis for the Motion to Amend the Judgment.[33] Ramey explained that he felt the record was not complete and that the Federal Circuit's case law prefers fee awards based upon a full record.[34] Banner responded that he understood why Ramey LLP was filing the motion but he did not agree that we were entitled to the relief we requested.[35] As such, for Banner to swear that there were no discussions belies belief. There were detailed discussions. Perhaps Google means that Ramey should respond more immediately to every call or e-mail received or perhaps banner forgot the call. Either way, Banner himself has responded

---

[30] Ex. C at e-mails dated 2023-10-16.
[31] Doc. No. 61-1 at ¶3.
[32] Ex. D, Ramey Decl. at ¶5.
[33] Ramey Decl. at ¶5.
[34] Ramey Decl. at ¶5.
[35] Ramey Decl. at ¶5.

8

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285, 19 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS - Case No.: 3:22-CV-08711-VC

in other cases that responses might be delayed because Google was busy. [36] We all understand that each of us is busy but for Google to seek sanctions based on facts that are not true is improper. Google's Second Motion for Fees should be denied.

### C. Google's Second Motion for Fees is an Improper Motion to Amend the Judgment

Google's Second Motion for Fees is really a request for the Court to amend its prior judgment from the prior fee award and is improper. It seeks fees based on what it contends are frivolous pleadings. However, if the Court were to consider the pleadings frivolous, when Ramey LLP cites the correct standard and makes a good faith attempt to meet that standard, then Google's pleading for a modified judgment outside of 28-days is without basis. There simply is no basis to add Ramey LLP to the prior months old fee award and the request borders on frivolous.

### D. Fees are Not Warranted

Google is not entitled to further fees. The Court assessed fees already and such sanction was adequate for this case. EscapeX has appealed that decision but that should not affect whether Google is entitled to more fees. This is not a case where EscapeX continued to litigate meritless positions but rather a case that was still in the early stages. EscapeX was prepared to test the merits of its infringement position and there is no evidence to the contrary. Even though the Court found the case warranted fees, that sanction was adequate and no further sanction under Section 285, Section 1927, the Court's inherent power or otherwise is warranted.

Further, Google has made no showing, other than hand waving, that counsel for EscapeX

---

[36] Ex. B, e-mail chain explaining that Google would be slow to respond as it was in trial, Ramey Decl. at ¶7.

9

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285, 19 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS - Case No.: 3:22-CV-08711-VC

Appx0608

should be independently sanctioned.  There is simply no "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court."[37]  Here, the case was at the early stages. Google's request for sanctions against counsel for EscapeX is designed to have a chilling effect on Ramey LLP and its ability to file lawsuits, is inappropriate and without legal basis.  Google has presented no evidence to the Court that Ramey LLP's conduct (or the conduct of its lawyers) warrants sanction under Section 1927, the inherent power of the Court or Rule 11.  In fact, the only evidence presented by Google is refuted by an over four-minute phone call.  There simply is no evidence to overcome the presumption that the lawsuit was filed in good faith.[38]

**V.     CONCLUSION**

For the foregoing reasons, Google's Second Motion for Fees should be denied.

Dated: December 4, 2023

Respectfully submitted,

RAMEY LLP

*/s/ Susan S.Q. Kalra*
Susan S.Q. Kalra, CA SBN 167940
Email: skalra@rameyfirm.com
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
Telephone: (800) 993- 7499
Fax: (832) 900-4941

*Northern California Office:*
303 Twin Dolphin Drive, Suite 600
Redwood, California 94065

*/s/ William P. Ramey, III*
William P. Ramey, III (pro hac vice anticipated)
Email: wramey@rameyfirm.com

---

[37] *Edwards v. Gen. Motors Corp.,* 153 F.3d 242, 246 (5th Cir.1998).
[38] *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017).

10

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285, 19 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS - Case No.: 3:22-CV-08711-VC

Susan S.Q. Kalra (CA State Bar No. 16740)
Email: skalra@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
Telephone: (800) 993-7499
Fax: (832) 900-4941

William P. Ramey, III (*pro hac vice* anticipated)
Email: wramey@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175

*Attorneys for Plaintiff*
ESCAPEX IP, LLC

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| ESCAPEX IP, LLC, | Case No.: 3:22-CV-08711-VC |
| Plaintiff, | **DECLARATION OF WILLIAM P. RAMEY, III IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285, 19 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS** |
| v. | |
| GOOGLE LLC, | |
| Defendant. | Date: January 11, 2024 |
| | Time: 10:00 a.m. |
| | Judge Vince Chhabria |

I, William Ramey, declare as follows:

Appx0611

1. My name is William P. Ramey, III.  I am over the age of 21. I have personal knowledge of the facts contained herein, which are true and correct. If called as a witness, I could competently testify to these statements.

2. I am licensed to practice law in the state of Texas and am an attorney with the law firm of Ramey LLP. I represent the Plaintiff in the above-captioned lawsuit.

3. After receiving the Court's Order awarding fees in Doc. No. 57, my client EscapeX, though Carlos Gorrichategui, Ph.D approached me about what steps could be taken.  He and I discussed the finality of the Court's Order and what it meant. We specifically discussed the unusual events that led to the fee award and whether a motion to amend the judgment would be proper.  Neither Dr. Gorrichategui or I intended to file any evidence previously considered by the Court nor advance arguments the Court had already considered based on already considered evidence. However, we both felt that under the unusual circumstances of the case, providing the full pre-suit investigation would correct what we believed was manifest injustice.

4. We both felt the unusual circumstances included (1) the way in which the case arrived before this Court; (2) the lack of a fully developed record on the pre-suit investigation as Google only attacked the pleadings in its motion for fees; (3) the lack by Google of any prior motion to dismiss where the merits of EscapeX's positions could be discussed; and, (4) the length of time the case was pending before the Court.

5. I was surprised to read Brian Banner's declaration where he contends Plaintiff did not engage with him after September 22, 2023.  I attach as Exhibit D, a true and

2

correct copy of the firm's phone log for the 22nd which shows Mr. Banner's call on the 22nd with me that lasted over 4 minutes. During the over 4-minute call we had on the 22nd, we discussed the hearing date and the basis for why we were filing the Motion to Amend the Judgment. I explained that I understood that the Federal Circuit Court of Appeals prefers a fully developed record for the assessment of fees. I told Mr. Banner that I did not believe the record was complete. He particularly stated that he understood why I was filing the motion but he disagreed that I was entitled to the relief I sought.

6.  Exhibit A is a true and correct copy of an e-mail chain dated October 9, 2023, between me and Brian Banner.

7.  Exhibit B is a true and correct copy of an e-mail chain dated October 3, 2023, between me and Brian Banner.

8.  Exhibit C is a true and correct copy of an e-mail chain dated October 13, 2023, between me and Brian Banner.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 4, 2023.

_____
William P. Ramey, III

3

# EXHIBIT A

| | |
|---|---|
| **From:** | William Ramey |
| **To:** | Brian Banner; Susan Kalra |
| **Cc:** | Asim Bhansali; klazarus@kblfirm.com |
| **Subject:** | RE: EscapeX v. Google: Google Request for EscapeX to Withdraw its Motion to Amend Judgment (Dkt. No. 59) |
| **Date:** | Monday, October 9, 2023 4:42:00 PM |

Brian,

We view any motion for fees as an abuse of process.  Google is essentially saying that we are not allowed to move the Court for relief.  If Google files its motion, we reserve the right to seek fees.

What do we need to discuss?

Bill

**From:** Brian Banner <bbanner@sgbfirm.com>
**Sent:** Monday, October 9, 2023 4:38 PM
**To:** William Ramey <wramey@rameyfirm.com>; Susan Kalra <skalra@rameyfirm.com>
**Cc:** Asim Bhansali <abhansali@kblfirm.com>; klazarus@kblfirm.com
**Subject:** Re: EscapeX v. Google: Google Request for EscapeX to Withdraw its Motion to Amend Judgment (Dkt. No. 59)

Hi Bill (& Susan),

I've seen a number of emails from you on another matter (LS Cloud v. Google), but you have not yet responded to my two previous emails or my two voicemail messages related to the EscapeX matter.

Do you have time to talk today or tomorrow?  We need to know when you and/or Ms. Kalra are available for a motions hearing on EscapeX's Motion to Amend Judgment and Google's forthcoming attorney fees motion. (See my email below.)

You can call me any time at 512-468-6297 (my mobile). Or you can respond to this email with your/Susan's availability and I will accommodate.

Thanks,

Brian C. Banner

**sgb | SLAYDEN GRUBERT BEARD PLLC**

401 Congress Ave, Ste 1650 | Austin, TX 78701 | USA

[O] 512.402.3569 | [C] 512.468.6297 | sgbfirm.com

This message was sent by an attorney at law and may contain privileged and/or confidential matter.  Please let the sender know if this message was received in error.

**From:** Brian Banner <bbanner@sgbfirm.com>
**Sent:** Friday, October 6, 2023 1:39 PM
**To:** William Ramey <wramey@rameyfirm.com>; skalra@rameyfirm.com <skalra@rameyfirm.com>
**Cc:** Asim Bhansali <abhansali@kblfirm.com>; klazarus@kblfirm.com <klazarus@kblfirm.com>
**Subject:** Re: EscapeX v. Google: Google Request for EscapeX to Withdraw its Motion to Amend Judgment (Dkt. No. 59)

Bill & Susan,

I just left a voicemail for each of you. Please let me know when you are available for a call to discuss the following issues:

1. Google's motion for additional fees for having to respond to EscapeX's Motion to Amend Judgment; and
2. A motion hearing date for both Google's forthcoming fees motion and EscapeX's Motion to Amend Judgment.

The first issue is addressed in my email below, to which I did not receive a response.

The second issue is noted in Google's Opposition brief. In short, EscapeX failed to notice a motion hearing date for its Motion to Amend Judgment, and Google requests that be remedied so that the issue can be resolved. We can discuss further when we talk, but it probably makes sense for the Court to handle EscapeX's motion and Google's additional fees motion in the same hearing. In other words, we should coordinate the hearing dates.

Regards,

Brian C. Banner

**sgb** | **SLAYDEN GRUBERT BEARD** PLLC

401 Congress Ave, Ste 1650 | Austin, TX 78701 | USA

[O] 512.402.3569 | [C] 512.468.6297 | sgbfirm.com

This message was sent by an attorney at law and may contain privileged and/or confidential matter. Please let the sender know if this message was received in error.

---

**From:** Brian Banner
**Sent:** Tuesday, September 19, 2023 3:19 PM
**To:** William Ramey <wramey@rameyfirm.com>; skalra@rameyfirm.com <skalra@rameyfirm.com>
**Cc:** Asim Bhansali <abhansali@kblfirm.com>; klazarus@kblfirm.com <klazarus@kblfirm.com>
**Subject:** EscapeX v. Google: Google Request for EscapeX to Withdraw its Motion to Amend Judgment (Dkt. No. 59)

Bill & Susan,

I email on behalf of Google to request EscapeX immediately withdraw its Motion to Amend

Judgment (Dkt. No. 59). In the event EscapeX will not withdraw its motion, I request your availability to meet and confer regarding Google's motion for further fees and costs under 35 U.S.C. 285, 28 U.S.C. 1927, Rule 11, and the court's inherent power.  Google's motion will ask the court to levy sanctions against EscapeX, each of the attorneys who signed the frivolous Rule 59 motion, and the law firms involved in its filing (to be liable jointly and severally with EscapeX and the fees it already owes to Google).

The sole basis for EscapeX's motion is alleged "newly discovered evidence," and Ninth Circuit law is very clear that untimely declarations such as those EscapeX submitted in support of its motion are not "newly discovered evidence." *See Sch. Dist. No. 1J, Multnomah County, v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("The overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.'"). Moreover, EscapeX's motion rehashes already rejected arguments and, to the extent any arguments are new, they are untimely. Under Supreme Court precedent, these arguments are improper. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) ("Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" (citation omitted)).

Please promptly confirm EscapeX will withdraw its motion or, if not, provide your availability Wednesday or Thursday for a call to meet and confer on Google's proposed motion for fees.


Brian C. Banner


**sgb** I **SLAYDEN GRUBERT BEARD** PLLC

401 Congress Ave, Ste 1650 I Austin, TX 78701 I USA

[O] 512.402.3569 I [C] 512.468.6297  I  sgbfirm.com


This message was sent by an attorney at law and may contain privileged and/or confidential matter.  Please let the sender know if this message was received in error.

Kate E. Lazarus (SBN 268242)
klazarus@kblfirm.com
Asim M. Bhansali (SBN 194925)
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350

Additional attorneys listed on signature page.

Attorneys for Defendant
GOOGLE LLC

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ESCAPEX IP LLC,<br><br>    Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | § CASE NO. 3:22-cv-08711-VC<br>§<br>§ **GOOGLE LLC'S REPLY IN SUPPORT**<br>§ **OF MOTION FOR ATTORNEYS' FEES**<br>§ **PURSUANT TO 35 U.S.C. § 285, 19**<br>§ **U.S.C. § 1927, AND THE COURT'S**<br>§ **INHERENT POWERS**<br>§<br>§ <u>Hearing</u><br>§ Date: January 11, 2024<br>§ Time: 10 a.m.<br>§ Judge: Hon. Vince Chhabria<br>§<br>§ Date Filed: November 13, 2023<br>§ Trial Date: N/A |

EscapeX attempts to relitigate the Court's previous fee award, wrongly accuses Google's counsel of filing a false declaration, and improperly presents new arguments supporting its frivolous Motion to Amend Judgment. *See generally* ECF No. 73. EscapeX's arguments are just an attempt to distract from the heart of Google's fee motion—EscapeX and its attorneys filed a frivolous motion and ignored opportunities to withdraw the motion, thus forcing the Court and Google to expend resources addressing the frivolous request. Because EscapeX's opposition provides no convincing reason to deny Google's motion, and because EscapeX and its attorneys have made false accusations, refused to even engage when confronted with contrary evidence of the falsity of their accusations, and have refused to correct those accusations, Google requests the Court grant Google's motion, award fees, and find that EscapeX and its attorneys are jointly and severally liable. Joint and several liability is necessary to deter future frivolous lawsuits and false representations to this Court.

## I.   ESCAPEX'S SHIFTING JUSTIFICATION FOR FILING ITS MOTION TO AMEND JUDGMENT CONFIRMS THE MOTION WAS FRIVOLOUS AS FILED

Amending a judgment under Rule 59(e) is appropriate "if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001). In its Motion to Amend Judgment, EscapeX argued the basis for its motion was the first prong—"newly discovered evidence that was not available at the time of the Court's Order." ECF No. 59 at 4. Having "wholly failed to meet the Rule 59(e) standard" under that prong (ECF No. 65), EscapeX abandons its original justification and argues—for the first time—that its motion was proper because the Court's

1

prior decision "likely resulted in manifest injustice." ECF No. 73 at 6.[1] However, "'after thoughts' or 'shifting of ground' do not constitute an appropriate basis for reconsideration." *Fay Corp. v. BAT Holdings One, Inc.*, 651 F. Supp. 307, 309 (W.D. Wash. 1987), *aff'd* 896 F.2d 1227 (9th Cir. 1990). That EscapeX does not even attempt to defend its previous "newly discovered evidence" assertion is a tacit admission that the motion, as filed, was frivolous. Fees are warranted on this basis alone.

EscapeX's new argument that its motion was required to correct a manifest injustice fares no better. As an initial matter, this argument is untimely, and thus waived. *Boardman v. Estelle*, 957 F.2d 1523, 1535 (9th Cir. 1992) ("[A]rguments not timely presented" are ordinarily "deemed waived."). In addition, the Court's fee award is not manifestly unjust because EscapeX's new declarations would not have changed the result. In *Zimmerman*, for example, the plaintiffs argued (as EscapeX does here) it would be "manifestly unjust" for the district court to issue its ruling without first obtaining and considering particular evidence. 255 F.3d at 740–41. The Ninth Circuit held the district court did not abuse its discretion when it denied the plaintiffs' motion under Rule 59(e) because the evidence, even if considered, would still have failed to change the district court's conclusion in the case. *Id.* Here, EscapeX's additional declarations submitted with its Motion to Amend do not warrant amending this Court's prior order granting attorneys' fees for the reasons provided in Google's opposition. *See* ECF No. 61 at 5–7. Thus, EscapeX's new

---

[1] The first sentence under the heading "Argument" of EscapeX's Motion to Amend Judgment states: "A modified judgment is warranted based on newly discovered evidence that was not available at the time of the Court's Order." ECF No. 59 at 4. Taking this at face value, Google explained in its opposition to the Motion to Amend Judgment that "EscapeX and its attorneys rely solely on the [newly discovered evidence] prong of this test. . . . But nothing in the declarations is newly discovered evidence." ECF No. 61 at 3. If EscapeX's motion was based on the "manifestly unjust" prong (as it now argues), EscapeX should have filed a reply, which it did not. In fact, EscapeX's moving papers mention "manifestly unjust" just once (in its quotation of the Rule 59 standard), which belies any argument that that was the basis for its motion.

2

justification is also unavailing and thus does not change the fact that the motion lacked merit and was a waste of this Court's and Google's resources.

## II.    ESCAPEX AND ITS COUNSEL'S ACCUSATIONS THAT GOOGLE'S COUNSEL MADE FALSE STATEMENTS ARE BASELESS

EscapeX's accusations that Google's counsel submitted a false declaration are false and offensive and serve no purpose other than to distract from the substance of Google's motion. Contrary to EscapeX's opposition and its counsel's sworn declaration, Google's Motion for Fees and supporting declaration contain no misrepresentations. Google's counsel, Mr. Banner, submitted a declaration, supported by ample evidence, documenting his attempts to engage EscapeX's counsel, Mr. Ramey, after EscapeX filed its Motion to Amend Judgment. *See* ECF Nos. 66-1 through 66-5. EscapeX and its counsel's characterization of those efforts are the actual misrepresentations. Google's counsel promptly advised Mr. Ramey of the inaccuracies in his submission to this Court, yet he refused to take any corrective action. Perhaps most tellingly, most of the operative facts that Mr. Ramey complains are falsely stated were also part of Google's opposition to EscapeX's motion to amend. ECF No. 61 at 1 n.2. If Mr. Ramey and EscapeX truly believed that Google's counsel had submitted a false declaration they could have, *and should have*, pointed this out in any reply to EscapeX's motion to amend. Their silence speaks volumes.

### A.    Misrepresentation by Mr. Ramey: "During the over 4-minute call we had on [September] 22nd, we discussed the hearing date and the basis for why we were filing the Motion to Amend the Judgment. . . ." ECF No. 73-1 ¶ 5

The Court need only read the already-submitted correspondence to determine Mr. Ramey's statement is false. *See* ECF Nos. 66-3 through 66-5. That correspondence confirms that Mr. Ramey and Mr. Banner did not speak on the phone on September 22. Specifically, on October 9, Mr. Banner emailed Mr. Ramey and Ms. Kalra, stating that Mr. Banner "just left a voicemail for each of you." ECF No. 66-3 at 1. Mr. Banner sought to discuss "Google's motion for additional fees for

3

Appx0638

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, District Judge

ESCAPEX IP, LLC,                    )
                                    )
          Plaintiff,                )
                                    )
vs.                                 )   No. C 22-08711-VC
                                    )
GOOGLE, LLC,                        )
                                    )
          Defendant.                )
_____)

                              San Francisco, California
                              Thursday, January 25, 2024


 TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
             RECORDING 1:32 - 1:45 = 13 MINUTES


APPEARANCES:

For Plaintiff:
                         Ramey, LLP
                         5020 Montrose Boulevard
                         Suite 800
                         Houston, Texas 77006
                    BY:  WILLIAM P. RAMEY, III, ESQ.

For Defendant:
                         Slayden Grubert Beard, PLLC
                         401 Congress Avenue
                         Suite 1650
                         Austin, Texas 78701
                    BY:  BRIAN CHRISTOPHER BANNER, ESQ.

                         Kwun Bhansali Lazarus
                         555 Montgomery Street
                         Suite 750
                         San Francisco, California
                          94111
                    BY:  KATE ELLIS LAZARUS, ESQ.

Thursday, January 25, 2024                          1:32 p.m.

                    P-R-O-C-E-E-D-I-N-G-S

                         --oOo--

          THE CLERK:  Now calling Civil Case 22-8711,
Escapex IP, LLC versus Google, LLC.

     Will counsel please state your appearances for the
record, starting with the Plaintiff.

          MR. RAMEY (via Zoom):  Good afternoon, your Honor.
This is Bill Ramey for the Plaintiff Escapex IP, LLC.  We're
ready to proceed.

          THE COURT:  Hi.

          MR. RAMEY:  Hi, your Honor.

          MR. BANNER (via Zoom):  Good morning, your Honor.
Brian Banner, and Kate Lazarus is with me on behalf of
Defendant Google, LLC, and we are ready.

          THE COURT:  Hi.

     Okay.  So, Mr. Ramey, it seems like the -- you know,
the motion that they are seeking sanctions for now was even
more frivolous than the conduct I sanctioned you for
previously.  So, why shouldn't I grant the motion for
attorney's fees sanctions?

          MR. RAMEY:  Yes, your Honor.  We -- we'd go back
to what the -- the Ninth Circuit says, that there's simply
no evidence of bad faith or improper motive.  We -- we -- I
calculate with my Defendant.  We -- my client, who wanted to

file the motion for new -- to amend the judgment, and we --

THE COURT: But --

MR. RAMEY: Yes, your Honor?

THE COURT: And it was objectively frivolous, and I also don't -- I don't even understand the purpose of it.

MR. RAMEY: The purpose of it, we thought that if you looked at the Ninth Circuit precedent, the way the -- one of the factors is that there's unusual circumstances. We felt that this case, your Honor, fell within that category of unusual circumstances.

THE COURT: Unusual circumstances?

MR. RAMEY: Yes, your Honor. Simply, as I said in my declaration, which is recorded at 73-001 in paragraph four, just the way in which this case arrived before this Court, the lack of the fully developed record, the absence of any motion by Google to dismiss to where we could discuss the merits of the case and the length of time that the case was pending before the Court. We felt that those circumstances -- and the -- and the Federal Circuit's comments that they like a fully developed record for 285 awards, your Honor. That's -- that's why we filed it, just to -- to put in the record what wasn't there before. We never had the opportunity to put in what the pretrial investigation --

THE COURT: What do you mean you didn't have the

opportunity?  I mean, there was a motion for attorney's fees, and you had an opportunity to respond to it, and you -- and you -- both in writing and in the hearing.  I don't -- I just don't understand what you're saying.

MR. RAMEY:  Yes, your Honor.  We thought we adequately responded to it then.  The client wanted us to try to put in more.  So, I was actually acting on behalf of my client's interest when we filed the motion to amend the judgment, and we were seeking to do it by not having the Court reconsider evidence that it previously considered but only consider evidence that had not been considered before.  So, we were trying to meet the Court's burden and at the same time correct what we thought was a manifest injustice that would -- that -- because of the lack of a fully developed record.

It is somewhat unusual in my experience to have the merits not attacked by a motion to dismiss and the case be thrown out under a 101 from another court, and we -- we quickly -- we dismissed -- it took a month, but we dismissed as we were contemplating whether to appeal that other order and when we did -- we did get to this case and dismiss it.  And that's -- we just felt that the -- the totality of the circumstances, your Honor, but we could provide a Rule 59 motion within the Rules that gave something for the Court to consider.  We were -- we were 100 percent trying not to act

in bad faith to the Court. The declarations that were submitted with that motion, your Honor, are declarations from the client and what the client did, and I was representing my client to the best of my abilities and presenting what we thought was evidence that the Court hadn't had the chance to consider before, and we were trying to meet the Court's burden when we did that, your Honor.

THE COURT: Okay. Any -- any response from the other side?

MR. BANNER: Yes, your Honor. You know, and I think we addressed this in our reply, but this idea that the Rule 59 motion was submitted to correct a manifest injustice is just after the fact shifting sands justification for a motion that should never have been brought in the first place, for a motion that Google should not have had to expend time and resources addressing.

If you look at the motion as filed, the -- the term "manifest injustice" is quoted once in the standard -- you know, the legal standard for the -- you know, what are -- how you can bring a Rule 59 motion. But if you look at the headings and all the other arguments in that motion, the Plaintiff said, We have new evidence. We're filing this rule 59 motion because of this new evidence, which is the two declarations from Escapex's own President, Manager, and one of their engineers, something they had all along. And

this was the point we made. We -- we told them in -- in emails that we sent to them right after we got the motion, we said, Look, the Ninth Circuit forecloses this as new evidence. This is not new evidence. It's not -- it does not justify a Rule 59 motion. And, as your Honor found in the -- the order disposing of this motion, the basis on which they brought it, Escapex wholly failed to satisfy the Rule 59 requirements.

So, for Escapex to come in today and come in in response to this and say, Oh, we were trying to correct a manifest injustice, I mean, that's just -- that's just changing the story. It's not -- it's not what happened. And, in fact, what they're trying to do through that is to relitigate the issues that were already discussed in the initial fees motion.

THE COURT: And what's your argument for bad -- bad faith as opposed to just incompetence?

MR. BANNER: So, there's bad faith for a number of reasons. Now, first, I -- I might -- I might just point out --

THE COURT: I mean, I know we have a lot of evidence of bad faith from the -- from the earlier proceedings, but --

MR. BANNER: Correct.

THE COURT: -- I think we need to -- and that's --

that's not irrelevant, but what's the evidence?  What's the -- what's the basis for finding bad faith in -- in connection with this motion?

MR. BANNER:  Okay.  So -- so, I will say there -- there is evidence of bad faith we have in our -- we've briefed in our motion.  The fact that your Honor in the last hearing when it was offered to provide additional declarations regarding the presuit -- prefiling investigations, your Honor, mentioned that the -- at the last hearing that the time had already passed for that, that that time had -- had run and so no new evidence was going to be listened to.  And, so, what did they do?  Right after that hearing, they put in a new declaration.

So, I think that was a -- not a good faith attempt to follow your Honor's orders at the last hearing.

I might also add that the bad faith prong comes into play if you're -- you know, there is a requirement of bad faith if the Court is using its inherent power to issue sanctions.

Here we are also moving under 1927, which just requires a finding of recklessness.  And at the very least, the way that Escapex and its attorneys handled this was reckless.  They filed the motion saying this was new evidence.  When Google immediately tried to address the issues or not -- you know, tried to -- to not have to spend all the money and

time to respond to that frivolous Rule 59 motion, Escapex and its attorneys simply ignored us. They -- they ignored us. We had to go through the -- the expense of filing our opposition, and then they didn't come to the table and have a discussion about why they were filing their motion until long after the reply in -- in that instance was due, which they didn't even bother to -- to file.

So, the way it was handled was at least reckless. They aren't thinking about the costs that -- that Google was having to incur in having to respond to all these frivolous motions, and I think that that is justification for, you know, sanctions under 1927.

Now, their opposition also presents more recklessness, and that is Escapex's attorneys making false accusations, calling Google and me personally basically liars in their -- in their opposition.

Now, I think in our reply, we point to all the evidence. I think it's abundantly clear that neither Google nor I made any false representations. But, again, I think that is -- you know, and I'm happy to get into those details if the Court's interested in that, but, you know, I think it's clear based on the evidence that was submitted. But that is just additional -- you know, additional evidence that -- that the way that Escapex and its attorneys are handling this is -- it's just reckless. It's putting --

it's making Google, who is -- who's already basically won in this -- in this case, go through all these hoops.  We have to defend ourselves against reckless allegations.  It's -- it's -- frankly, it's -- it's not how this process is supposed to work, and that is exactly why Google is seeking these fees and has filed this motion, because we think there -- there needs to be a deterrent to this type of behavior in the future.  And, frankly, the Court's prior order which grants fees against, you know, the -- Escapex as -- as an entity, as a shell company that probably doesn't even have any money apparently is enough of a deterrent here.

So, we don't take this lightly.  This is not something we do every day, but in this case, someone needs to -- to get the message that this type of unreasonable litigation is not how it's supposed to be done.  And, so, that's why, for all those reasons, Google thinks that there was plenty of bases, either bad faith or reckless, to award fees and -- and specifically award fees against Escapex's attorneys here.

THE COURT:  Okay.  And then you -- in terms of the amount of fees, do -- are you going to need to submit something after the hearing that accounts for the hearing?

MR. BANNER:  Yes, your Honor.  I think the amount of fees that was submitted along with the motion was up to that -- up to the date of the motion, but I think we had

fees -- additional fees for filing the reply, addressing the false accusations, and then the hearing as well.

MR. RAMEY: Your Honor, if I might, can I -- may I address the --

THE COURT: Hold on.

MR. RAMEY: Yes, your Honor.

THE COURT: Hold on a second.

So, by Monday, why don't -- why don't you file a supplemental fee request justifying -- you know, specifying the total you want and -- and justifying it, and then by Tuesday, the -- Mr. Ramey can file a response. If Mr. Ramey has any objection to the amounts -- this is just to the amount of fees -- he can -- he can file something on Tuesday objecting to that.

Sorry. Go ahead, Mr. Ramey.

MR. RAMEY: My apologies, your Honor. Yes, I want to object. I've -- I am the only person that put before this Court corroboration of an over four-minute phone call. He -- he puts a declaration where he said it didn't occur. I have a phone log where the call clearly occurred. That's in Document, your Honor, 73-005. It shows the over four-minute phone call that took place. So, I -- that phone call happened. He wasn't sitting on hold for four minutes. Our hold -- I went through the system -- takes 16 to 20 seconds to answer the questions, the people that answer the phone

for us.  So, that phone call did occur.  It 100 percent did occur.  And what I said in my declaration is 100 percent what we talked about, and I can remember exactly how it happened, your Honor.

He called once, and I wasn't able to answer the phone. He called right back on my other number he has, and both go to the same phone.  And when I -- sorry.  He called back on the same phone, and when I picked -- but I saw his name flash across, and I picked it up because I remember the Court saying in its order awarding fees that the lack of communication was one factor the Court looked at.  So, I wanted to make sure that that did not happen again, and I 100 percent had that conversation with him where I talked to him about why we were doing it.  He said he understood that the Federal Circuit likes a fully developed record. Everything that was in the declaration did occur.  I mean, I have corroboration of that call in my declaration, your Honor.

THE COURT:  Okay.  I'll -- I'll await the request from Google and any objection from Mr. Ramey, and then I'll issue a ruling.

Thank you.

ALL:  Thank you, your Honor.

(Proceedings adjourned at 1:45 p.m.)

Susan S.Q. Kalra (State Bar No. 167940)
Email: skalra@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (800) 993-7499
Fax: (832) 900-4941

William P. Ramey, III (*pro hac vice anticipated*)
Email: wramey@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175

*Attorneys for Plaintiff*
ESCAPEX IP, LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| ESCAPEX IP, LLC, | Case No.: 3:22-cv-08711-VC |
|---|---|
| Plaintiff, | |
| v. | **REPLY IN SUPPORT OF PLAINTIFF'S OBJECTIONS TO DEFENDANT'S SUPPLEMENTAL EVIDENCE RE: SECOND MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285** |
| GOOGLE LLC, | |
| Defendant. | |

Pursuant to the Court's request during the January 25, 2024 Hearing, Plaintiff Escapex IP, LLC's ("Escapex") provides this reply in support of its objections to Defendant Google LLC's ("Google") Supplemental Evidence Re: Second Motion for Attorneys' Fees Pursuant to 35 U.S.C. §285 ("Second Supplement") (ECF 83).

1

OBJECTIONS TO SUPPLEMENT RE MOTION FOR ATTY FEES - CASE NO.: 3:22-CV-08711-VC

Google's response to Plaintiff's objection confirms that a call was transferred from the call service to William Ramey's phone line.  Mr. Banner's version of the events belies belief as it requires evidence that a 1 minute and 55 second phone message was left on Mr. Ramey' line, for which there is none.  Doc. No. 84-2 is an e-mail from the call service establishing that Mr. Banner called on September 22, 2024 at 4:06:49.  The call lasted 4 minutes and 6 seconds, or until 4:10:55.  The transfer from the call service to Mr. Ramey's phone line was completed at 4:09:01.  Therefore, Mr. Banner was connected to Mr. Ramey's phone line from at least 4:09:01 to 4:10:55, or 1 minute and 54 seconds.  This is evidence from a third-party call service and is easily verifiable.

Google conflates an indication of when the call service e-mailed a record concerning the call, not when the call occurred.  A record from the call service was e-mailed to Mr. Ramey at 4:09:23.  The record e-mailed from the call service is attached as Exhibit B to this reply.[1]  Based on Mr. Banner's denial of a call, as stated in the objections to Google's supplement to its second motion for fees, the call service was contacted to provide more detail about the call.[2]  The call service, a third party, provided the details of the call were:

Call Duration: 4 mins 6s
Connected at 04:06:49 pm
Connected to agent at 04:07:02 pm
Customer endpoint: +17134263923 ( William Ramey's Line)
Number of holds 1
Hold duration: 00:00:12
Transfer completed at 04:09:01 pm
Message sent at 04:09:23 PM[3]

Mr. Banner's further comments that Mr. Ramey's prior declaration is factually inconsistent is incorrect.  Mr. Banner did have an over 4-minute phone call when he called my phone line.  From 4:06:49 pm until 4:09:01, Mr. Banner was speaking with Ramey LLP's

---

[1] Ex. B to the February 1, 2024 Declaration of William P. Ramey, III ("Ramey Dec.").
[2] Doc. 84-1 at ¶¶3-4; Doc. No. 84-2, Ex. A at 1.
[3] Doc. 84-2, Ex. A at 1.

OBJECTIONS TO SUPPLEMENT RE MOTION FOR ATTY FEES - CASE NO.: 3:22-CV-08711-VC

answering service.  At 4:09:01, the transfer to Mr. Ramey was complete and Mr. Banner spoke with Mr. Ramey until 4:10:55.[4]

The call service does not save the client's portion of the phone call.  In the process of drafting the objections to the supplement to the fee motion, Mr. Ramey verified with his call service that they are not recording his calls.  Cody Noonan of LexReception confirmed the client portions of the call are not recorded:

> It was a pleasure speaking with you earlier. As explained when the Agents transfer calls to you or anyone else on your account, and leaves the call themselves, that is where our recording software stops recording the calls. Similarly, if there is no call transfer completed, the recording will continue until the Agent ends the call, or the caller they have on the line disconnects the call from their side.[5]

Mr. Banner admits to calling Mr. Ramey on September 22, 2024,[6] and the call service verifies the details of the call, including when it began, when it was transferred to Mr. Ramey and when it ended.[7]  These are facts that can be further verified by a third party.

Google's complaint that Ramey LLP had a duty to save the recording is nonsensical as the recording would only include the call center portion, i.e. the portion of the call not in dispute. However, Ramey LLP has requested that the recording be recovered if possible.  Prior to this issue, Mr. Ramey did not know that the call center recorded any portion of a call.[8]  However, the call service does know when the call begins and ends as indicated by Ms. Kara McKay's e-mail.[9] Therefore, a third party confirms that the call from Mr. Banner was transferred to Mr. Ramey's line and the call did not end for another 1 minute and 54 seconds.[10]

Mr. Banner has never alleged that he left an almost 2-minute message for Mr. Ramey, nor could he as the call center verifies the call was transferred to Mr. Ramey's line.[11]  Further, as Mr.

---

[4] Doc. 84-2, Ex. A at 1.
[5] Ex. C to the Ramey Decl.
[6] Doc. No. 74-1 at ¶2.
[7] Doc. 84-1 at ¶¶3-4; Doc. No. 84-2 Ex. A at 1.
[8] Ramey Decl. at ¶5.
[9] Doc. 84-1 at ¶¶3-4; Doc. No. 84-2, Ex. A at 1.
[10] Doc. No. 84-2, Ex. A at 1.
[11] Ex. B to the Ramey Decl.

OBJECTIONS TO SUPPLEMENT RE MOTION FOR ATTY FEES - CASE NO.: 3:22-CV-08711-VC

Banner has admitted, he and Mr. Ramey spoke often, including on October 13, 2023.  In that call, Mr. Banner requested that we withdraw the Motion to Amend the Judgment but that does not change the fact that discussions were also had on September 22, 2023.[12].

Therefore, Google should not be awarded the fees it seeks in its Supplement as they include time for an issue created by Google.  Mr. Banner's version of the events belies belief as it requires evidence that a 1 minute and 55 second phone message was left on Mr. Ramey' line.

Dated: February 1, 2024

Respectfully submitted,

RAMEY LLP

*/s/ Susan S.Q. Kalra*
Susan S.Q. Kalra (State Bar No. 167940)
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
Telephone: (800) 993-7499
Fax: (832) 900-4941
Email: skalra@rameyfirm.com


*/s/ William P. Ramey, III*
William P. Ramey, III (pro hac vice
        anticipated)
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175
Email: wramey@rameyfirm.com

Attorneys for Plaintiff
ESCAPEX IP, LLC

---

[12] Ramey Decl. at ¶6.

4

OBJECTIONS TO SUPPLEMENT RE MOTION FOR ATTY FEES - CASE NO.: 3:22-CV-08711-VC

Appx0729

Susan S.Q. Kalra (State Bar No. 167940)
Email: skalra@rameyfirm.com
RAMEY LLP
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (800) 993-7499
Fax: (832) 900-4941

William P. Ramey, III (*pro hac vice anticipated*)
Email: wramey@rameyfirm.com
RAMEY LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 426-3923
Fax: (832) 689-9175

*Attorneys for Plaintiff*
ESCAPEX IP, LLC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESCAPEX IP, LLC, | Case No.: 3:22-cv-08711-VC |
| Plaintiff, | |
| v. | **AMENDED NOTICE OF APPEAL** |
| GOOGLE LLC, | |
| Defendant. | |

1

AMENDED NOTICE OF APPEAL - CASE NO.: 3:22-CV-08711-VC

Appx0740

Amended Notice is hereby given that Plaintiff, EscapeX IP, LLC ("EscapeX"), in the above-named case, hereby appeals to the United States Court of Appeals for the Federal Circuit from:

• the Order Granting Motion for Attorneys' Fees Under 35 U.S.C. §285 on August 16, 2023 (Doc. No. 57);

• the minute Order denying Plaintiff's Motion to Motion to Amend the Judgment on October 30, 2023 (Doc. No. 65); and,

• The Order Granting Motion For Attorneys' Fees Under 28 U.S.C. §1927 dated February 12, 2024.

The appropriate fees for this Notice of Appeal were previously paid.

Dated: February 12, 2024                    Respectfully submitted,


                                            RAMEY LLP

                                            */s/ Susan S.Q. Kalra*
                                            Susan S.Q. Kalra (State Bar No. 167940)
                                            RAMEY LLP
                                            303 Twin Dolphin Dr., Suite 600
                                            Redwood City, CA 94065
                                            Telephone: (800) 993-7499
                                            Fax: (832) 900-4941
                                            Email: skalra@rameyfirm.com

                                            */s/ William P. Ramey, III*
                                            William P. Ramey, III
                                            (pro hac vice anticipated)
                                            5020 Montrose Blvd., Suite 800
                                            Houston, Texas 77006
                                            Telephone: (713) 426-3923
                                            Fax: (832) 689-9175
                                            Email: wramey@rameyfirm.com

AMENDED NOTICE OF APPEAL - CASE NO.: 3:22-CV-08711-VC

Appx0741